# PETITIONERS' EXHIBITS TO PETITION FOR PERMISSION TO APPEAL PURSUANT TO 28 U.S.C.§ 1453(c)

## INDEX TO EXHIBITS

| EXHIBIT NO. | DOCKET ENTRY | DESCRIPTION |
| --- | --- | --- |
| A. | DE-62 | Order Granting Plaintiffs Motion to Remand by Judge Manuel L. Real, United States District Court for the Central District of California, Civil Case No. 2:13-cv-07139-R-RZ |
| B. | DE-54-5 | Third Amended Consolidated Complaint ("TACC") entitled *Lawrence J. Cantor, etc., et al., v. MetLife Inc., etc. et al.*, Civil Action No. BC446497 and *Sam Gupta, etc., et al., v. Larry Bagby, etc., et al.*, Civil Action No. BC456651 in the Superior Court of California, Los Angeles County. |
| C. | DE-54-6 | Plaintiff Larry W. Stilley's Responses to Requests for Admissions Propounded by Defendants MetLife, Inc.; New England Life Insurance Company; New England Securities Corporation; Tony Russon; Russon Financial Services, Inc. (Set One) dated December 28, 2012. |
| D. | DE-54-6 | Plaintiff Larry W. Stilley's Responses to Special Interrogatories Propounded by Defendants MetLife, Inc.; New England Life Insurance Company; New England Securities Corporation (Set Three) dated July 29, 2013. |
| E. | DE-41 | Declaration of Thomas G. Foley, Jr. in support of Motion to Remand |
| F. | DE-41-1 | Declaration of Thomas G. Foley, Jr. in support of Motion to Remand Exhibit II |
| G. | DE-55-1 | Supplemental Declaration of Thomas G. Foley, Jr. in Support of Reply for Motion to Remand |
| H. | DE-55-2 | Supplemental Declaration of Thomas G. Foley, Jr. in Support of Reply Motion to Remand Exhibit "D" |
| I. | DE-54-7 | August 8, 2013 Ms. Haas letter to Plaintiffs' counsel; August 16, 2013 letter from Plaintiff counsel Mr. Foley to Ms. Haas; August 20, 2013 Ms. Haas letter to Plaintiff counsel Mr. Foley |
| J. | DE-54-7 | MetLife et al., Amended Fourth Set of Interrogatories to Plaintiff Lawrence J. Cantor |

| EXHIBIT NO. | DOCKET ENTRY | DESCRIPTION |
|---|---|---|
| K. | DE-54-7 | Plaintiff Lawrence J. Cantor's Responses to Special Interrogatories Propounded by Defendants MetLife, et al. |
| L. | DE-38 | Plaintiffs' Notice of Motion and Motion to Remand |

# EXHIBIT A

JS-6

1

2

3

4

5

6

7

8

9

10 UNITED STATES DISTRICT COURT

11 CENTRAL DISTRICT OF CALIFORNIA

12

13 ***IN RE DLG RELATED CASES***    )    CASE NO.    CV 13-07139-R
                          )

14 LAWRENCE J. CANTOR, et al.,    )    ORDER GRANTING PLAINTIFFS'
                          )    MOTION TO REMAND

15           Plaintiffs,    )

16         v.                )

17 METLIFE, INC., et al.,        )

18           Defendants.    )

19 _____ )

20       Defendants, three years after this action was initially brought, removed this class action

21 pursuant to the Class Action Fairness Act. The parties have disputed the size of the class and

22 whether it meets the 100 member numerosity requirement of Title 28 U.S.C. § 1332(d). On

23 October 28, 2013 Plaintiffs moved to remand this case to state court. Having been thoroughly

24 briefed the Court took the matter under submission on December 5, 2013.

25       A notice of removal may be filed within 30 days after receipt of a paper from which it may

26 be first ascertained that the case is one which is or has become removable. Title 28 U.S.C.

27 § 1446(b)(2)(C)(3). We "don't charge defendants with notice of removability until they've

28 received a paper that gives them enough information to remove." *Kuxhausen v. BMW Fin. Servs.*

*NA LLC*, 707 F.3d 1136, 1141 (9th Cir. 2013)(quoting *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006)). This time limit is triggered only when the information supporting removal is unequivocally clear and certain. *Mattel, Inc. v. Bryant*, 441 F. Supp. 2d 1081, 1090 (C.D. Cal. 2005). When a plaintiff moves to remand, the removing party has the burden of establishing by a preponderance of the evidence that removal was proper. *Id.* At 1089.

On July 29, 2013, Plaintiffs served Defendants with a list of 247 putative class members. Defendants admit that this list satisfies by the preponderance of the evidence that numerosity is satisfied.

When Defendants received the list of 247 putative class members, it was clear that there were at least 100 class members. If the 247 putative class member list had been attached to the initial complaint, this case would have been immediately removable. Defendants' subsequent removal on September 26, 2013 was thus untimely, as it was over 30 days after it was clear the class had over 100 members.

Whether to grant fees under Title 28 U.S.C. § 1447(c) permissively allows courts to award fees when a removed case is remanded. This Court finds that fees are not warranted in this case.

IT IS ORDERED that Plaintiffs' motion to remand is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' request for cost and fees is DENIED.

Dated:  December 18, 2013.

_____
MANUEL L. REAL
UNITED STATES DISTRICT JUDGE

# EXHIBIT B

1  Counsel Listed on Following Page

2

3

4

5

6

7              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8             **COUNTY OF LOS ANGELES, CENTRAL DISTRICT,**

9                            **CENTRAL CIVIL WEST**

10  ***IN RE DLG RELATED CASES***            ) Assigned for All purposes to the Hon. Elihu
                                             ) M. Berle, CCW Dept. 323 – All Related
11  ———————————————————                      )
                                             )
12  THIS PLEADING RELATES TO THE             ) **CASE NOS. BC446497, BC443270,**
    CONSOLIDATED CASES OF:                   ) **BC446630, BC450293, BC452092,**
13                                           ) **BC456412, BC456561, SC108930,**
                                             ) **LC090700, BC454198, BC454632,**
14  LAWRENCE J. CANTOR, etc., et al.,        ) **BC456560, BC 460697,**
                                             ) **BC 456405, BC456651**
15          Plaintiffs,                      )
                                             )
16          vs.                              ) **Case No.: Lead Case No.BC446497 (BC**
                                             ) **456651 consolidated with BC446497)**
17                                           )
    METLIFE, INC., etc., et al.,             )
18          Defendants.                      ) **THIRD AMENDED CONSOLIDATED**
                                             ) **COMPLAINT FOR:**
19  ————————————————                         )
                                             )
20  SAM GUPTA, etc., et al.,                 ) **CLASS CLAIMS**
                                             )
21          Plaintiffs,                      )    **1.    Negligent Training and**
                                             )           **Supervision;**
22                                           )    **2.    Negligent Misrepresentation;**
            vs.                              )    **3.    Violation of California**
23                                           )           **Corporations Code §§ 25401**
                                             )           **and 25504.1;**
24  LARRY BAGBY, etc., et al.,               )    **4.    Unfair Competition [B&P**
                                             )           **§17200, et. seq.]; and**
25          Defendants.                      )    **5.    Financial Elder Abuse [W&I**
                                             )           **§15600, et. seq.]**
26                                           )
                                             )
27                                           ) **INDIVIDUAL GUPTA  CLAIMS**
28  ————————————————                         )    **6.    Negligence;**

                                        1                    **Case No.: BC446497**
                        THIRD AMENDED CONSOLIDATED COMPLAINT

| | | 7. | Negligent Misrepresentation; |
|---|---|---|---|
| | | 8. | Breach of Fiduciary Duty; |
| | | 9. | Aiding and Abetting Breach of Fiduciary Duty; |
| | | 10. | Negligent Hiring and Retention |

Thomas Foley, SBN 65812
Robert A. Curtis, SBN 203870
Justin P. Karczag, SBN 223764
FOLEY, BEZEK, BEHLE & CURTIS, LLP
15 W. Carrillo Street
Santa Barbara, CA 93101
Telephone: (805) 962-9495
Facsimile: (805) 962-0722
Email: tfoley@foleybezek.com; rcurtis@foleybezek.com; jkarczag@foleybezek.com

Richard E. Donahoo, SBN 186957
Sarah Kokonas, SBN 262875
DONAHOO & ASSOCIATES
440 West First Street, Suite 101
Tustin, CA 92780
Telephone: (714) 953-1010
Facsimile: (714) 953-1777
Email: rdonahoo@donahoo.com; skokonas@donahoo.com

John A. Stillman, SBN 43731
Heidi S. Lewis, SBN 98046
GOOD, WILDMAN, HEGNESS & WALLEY
5000 Campus Drive
Newport Beach, CA 92660
Telephone: (949) 955-1100
Facsimile: (949) 833-0633
Email: jstillman@goodwildman.com; hlewis@goodwildman.com

Attorneys for Plaintiffs and all others similarly situated

Exhibit A - 000011

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.      NATURE OF THE CONSOLIDATED ACTIONS ............................................5

II.     JURISDICTION AND VENUE ......................................................................6

III.    THE PARTIES ................................................................................................6

IV.     INFORMATION AND BELIEF ...................................................................12

V.      GENERAL FACTUAL ALLEGATIONS ....................................................12

        A.      Facts Related To Samuel Gupta .......................................................20

        B.      Facts Related To Plaintiff Cantor.....................................................21

        C.      Facts Related To Plaintiff Larry Stilley.............................................22

        D.      Facts Related To Samuel Gupta And Janet Gupta.............................22

VI.     CLASS ACTION ALLEGATIONS...............................................................23

VII.    THE CLASS ACTION CAUSES OF ACTION ..........................................28

        FIRST CAUSE OF ACTION
        Negligent Supervision and Training.............................................................28

        SECOND CAUSE OF ACTION
        Negligent Misrepresentation .......................................................................31

        THIRD CAUSE OF ACTION
        Violation of California Corporations Code §§ 25401 and 25504.1 .................42

        FOURTH CAUSE OF ACTION
        Unfair Competition [California Business & Professions Code §17200, et. seq.]
        ........................................................................................................................48

        FIFTH CAUSE OF ACTION
        Financial Elder Abuse – California Welfare & Institutions Code § 15600, et.
        seq. .................................................................................................................53

VIII.   THE GUPTAS' INDIVIDUAL CLAIMS ....................................................56

Case No.: BC446497

THIRD AMENDED CONSOLIDATED COMPLAINT

Exhibit A - 000012

**SIXTH CAUSE OF ACTION**
**Negligence-Negligence Per Se** .............................................................. 56

**SEVENTH CAUSE OF ACTION**
**Negligent Misrepresentation** ................................................................. 59

**EIGHTH CAUSE OF ACTION**
**Breach of Fiduciary Duty** ...................................................................... 61

**NINTH CAUSE OF ACTION**
**Aiding and Abetting A Breach of Fiduciary Duty** ............................... 62

**TENTH CAUSE OF ACTION**
**Negligent Hiring and Retention** ............................................................ 63

**PRAYER FOR RELIEF** ..................................................................................... 65

**THE CLASS ACTION**
**CAUSES OF ACTION NOS. ONE THROUGH FIVE** ...................... 65

**THE GUPTAS' INDIVIDUAL CLAIMS**
**CAUSES OF ACTION NOS. SIX THROUGH TEN** ......................... 67

**INDEX OF EXHIBITS** ....................................................................................... 69

4

**Case No.: BC446497**

THIRD AMENDED CONSOLIDATED COMPLAINT

Exhibit A - 000013

1.     COME NOW Plaintiffs Lawrence J. Cantor, Larry W. Stilley, and Samuel Gupta ("Class Action Named Plaintiffs") who allege on behalf of themselves and all other similarly situated (the "Putative Class") in Causes of Action Nos. One through Five, upon information and belief (except those allegations that pertain to themselves, which are alleged based on personal knowledge) against Defendants MetLife, Inc. ("MetLife"), New England Life Insurance Company ("NELICO"), and its wholly-owned subsidiaries, Defendant New England Securities Corporation (erroneously referred to as New England Securities, Inc. in the Caption) ("NES") and New England Financial ("NEF"), Tony Russon ("Russon") and the Russon Financial Services, Inc., ("Russon Agency"), and Does 1 through 30 (the "Class Claims").

2.     COME NOW Plaintiffs Samuel Gupta and Janet Gupta, as individuals on their own behalf, who allege individual claims, separate and distinct from the Class Claims, as set forth in Causes of Action Six through Ten, against JAMES DAVIDSON, an individual, TONY RUSSON, an individual, RUSSON FINANCIAL SERVICES, INC., ("Russon Agency"), METLIFE, INC. ("MetLife"), NEW ENGLAND FINANCIAL, ("NEF"), and NEW ENGLAND SECURITIES CORPORATION ("NES"), and DOES 31 to 50 ("the Individual Gupta Claims").

## I.     NATURE OF THE CONSOLIDATED ACTIONS

3.     By this consolidated action, Lawrence J. Cantor, Larry W. Stilley and Samuel Gupta for themselves and on behalf of the Putative Class, seek in Causes of Action Nos. One through Five, damages and other relief against MetLife, NELICO, NEF, NES, Russon, the Russon Agency and Does 1-30 relating to their transactions with Diversified Lending Group, Inc. ("DLG") ("the Class Action").

4.     By this consolidated action, Samuel Gupta and Janet Gupta (the "Guptas") bring the Individual Gupta Claims in Causes of Action Nos. Six through Ten against certain common defendants and additional defendants arising out the activities of those

Exhibit A - 000014

certain Defendants in providing years of financial professional services to the Guptas unrelated to DLG.

5. The Class Action, brought against Defendants MetLife, NELICO, NEF, NES, Russon, the Russon Agency and Does 1 through 30, is based on the conduct of insurance agents affiliated with MetLife and NELICO and registered representatives affiliated with NES. The Class Action is brought by the Class Action Named Plaintiffs on behalf of a class of similarly situated individuals and entities who, as a result of solicitations by an insurance agent ("Agent") affiliated with Defendants NELICO, MetLife, Russon and/or the Russon Agency, or a registered securities representative ("Salesperson") affiliated with Defendants NEF, NES, Russon, or the Russon Agency, invested in what were denominated as "Contracts" issued by DLG.

6. The Individual Gupta Claims relate to approximately 18 years of financial services provided regularly to the Guptas for their retirement planning and included the sale to them of life insurance on the lives of both the Guptas.

## II. JURISDICTION AND VENUE

7. This Court has personal jurisdiction over Defendants because they are authorized and licensed to transact business in California and transacted business as alleged in this Complaint in the County of Los Angeles. Based upon information and belief, those individuals named in this complaint as defendants are residents of the County of Los Angeles.

## III. THE PARTIES

8. Plaintiff Lawrence J. Cantor ("Cantor") is an individual who resides in the State of California. Plaintiff Larry W. Stilley ("Stilley") is an individual who resides in the State of California. Plaintiffs Samuel Gupta and Janet Gupta are, and at all times relevant hereto were, husband and wife who resided in the County of Los Angeles, State of California.

Exhibit A - 000015

9.     Defendant MetLife is a Delaware corporation qualified to transact business, including retirement planning, financial planning, and selling life insurance and long-term disability care products throughout the United States, including the State of California, through a network of insurance agents and insurance brokers.

10.     Defendant NELICO (which utilizes the "service mark" New England Financial ("NEF")) is a Massachusetts corporation and a wholly-owned subsidiary of MetLife qualified to transact business and sell life insurance and investment products throughout the United States, including in the State of California.

11.     Defendant New England Securities Corporation ("NES"), a wholly-owned subsidiary of Defendant MetLife, is a Massachusetts corporation and member of the Financial Industry Regulatory Authority ("FINRA") qualified to transact business throughout the United States, including in the State of California.

12.     Defendant James Davidson ("Davidson") is, and at all times relevant hereto was, an individual residing in the County of Los Angeles, State of California. Davidson is, and at all times relevant hereto was, licensed by the California Department of Insurance. Based on reviewing the California Department of Insurance website, Plaintiffs are informed and believe that at all times alleged in this Complaint, Defendant Davidson had "Company Appointments" to transact insurance and annuity business directly with consumers in the State of California on behalf Defendant MetLife. Based on reviewing the publicly available records available on FINRA's website, Davidson was a registered representative affiliated with NEF during most of the relevant times referenced in this Complaint.

13.     Sales and distribution of MetLife and NELICO products are conducted through an agency system, which consists of approximately 45 marketing firms – each a separate "general agency" administered by a "Managing Partner" – which general agencies are made up of approximately 3,500 insurance agents appointed by NELICO throughout the United States. NELICO sells securities to the public through its wholly-owned subsidiary, Defendant NES. NES conducts its securities business from NELICO's

Exhibit A - 000016

45 regional general agencies utilizing registered representatives under the supervision of a Field Management Registered Principal. Plaintiffs are informed and believe that Defendants NES and NELICO do business jointly, under the service mark New England Financial Services ("NEF"), selling insurance, securities, and other investment and financial products and services to members of the general public. Plaintiffs are informed and believe that MetLife, NELICO, NEF and NES conduct their business as an integrated enterprise, referred to by MetLife as the "MetLife Enterprise."

14.    At all times alleged in this Third Amended Consolidated Complaint ("TACC"), Defendants NELIC and MetLife were members of the American Council of Life Insurance, an association of American life insurance carriers based in Washington D.C. The American Council of Life Insurance promotes the life insurance industry to the public through various means of advertising and communication, including the publishing of a Code of Conduct to which its members agree to adhere. As a member, NELICO agrees to and represents publicly and privately to its agents and representatives as well as its customers that it will maintain a system of supervision and review over its agents and representatives that is reasonably designed to achieve compliance with the Insurance Marketplace Standards Association's Principles of Ethical Market Conduct ("Principles"), which supervision and review is designed, in part, to provide assurances to members of the public that by dealing with insurance companies who agree to abide by the Code of Conduct, they will be dealing with ethical insurance agents. These Principles include, but are not limited to, (i) conducting business according to high standards of honesty and fairness, (ii) providing competent and client-focused sales and service of insurance and investment products; and, (iii) providing proper and adequate training to agents and representatives to ensure that the insurance and investment products offered and sold are legal, proper and appropriate.

15.    At all relevant times, the Russon Agency was an insurance brokerage and registered securities representative located in Woodland Hills, California. On information and belief, at all times relevant hereto, Russon Financial was a general agency for

**Case No.: BC446497**
THIRD AMENDED CONSOLIDATED COMPLAINT

Exhibit A - 000017

NELICO and a NELICO Corporate Managing Partner. On information and belief, Russon Financial also was an NES Corporate Registered Principal. Plaintiffs are informed and believe that the Russon Agency was the Office of Supervisory Jurisdiction ("OSJ") for NES, covering the MetLife Enterprise's NELICO and NES sales and distribution operations in the Southern California territory, conducting MetLife Enterprise's business under the service mark New England Financial.

16.    On information and belief, Russon owns all or a majority of the Russon Agency. Russon was at all relevant times the lead "Managing Partner" of the Russon Agency with respect to its insurance operations under the terms of the Managing Partner Contract for the Southern California territory. On information and belief, Russon also was the Field Management Registered Principal for NES under the terms of the Registered Rep. Agreement for the Southern California territory.

17.    As a Managing Partner of Defendant NELICO, the Russon Agency was paid, as a commission, a portion of the premium generated by life insurance agents it supervised when those agents sold NELICO and MetLife life insurance products. A portion of the premiums generated by life insurance agents affiliated with Defendants NELICO and MetLife were also paid to Defendants NELICO and MetLife. One of the Russon Agency's responsibilities as a Managing Partner for Defendant NELICO was to introduce and promote, to life insurance agents it supervised, products and techniques that they could use to market and sell NELICO and MetLife insurance products in order to generate additional premium income, a portion of which would be paid to Defendant Russon Agency.

18.    As the Field Management Registered Principal for Defendant NES, the Russon Agency received a portion of the commissions earned by the registered representatives affiliated with NES when those registered representatives sold securities. A portion of the commissions earned by registered representatives affiliated with Defendant NES supervised by Russon and the Russon Agency were also paid to Defendant NES. As the Field Management Registered Principal for Defendant NES, the

Exhibit A - 000018

1  Russon Agency was to introduce investment products that the registered representatives
2  were permitted to market and sell, in order to generate additional commissions, a portion
3  of which would be paid to the Russon Agency and NES.

4      19.    The MetLife Enterprise, at all times referenced in this TACC, undertook a
5  supervisory and compliance policy designed to ensure that its insurance agents and
6  registered representatives, and the Managing Partners and Managing Principals of its
7  NELICO general agencies and NES registered representatives complied with applicable
8  rules, regulations, and applicable laws regarding their sales activities, including the
9  Compliance Policies of the MetLife Enterprise. Plaintiffs are informed and believe that
10  the MetLife Enterprises Compliance Policies expressly apply to "Career" insurance
11  agents affiliated with NELICO.

12      20.    Both defendants NELICO and NES were, at all times alleged in this TACC,
13  subject to oversight and supervision by the MetLife Enterprise Home Office Compliance
14  Department and related regional compliance and field managers. The MetLife Enterprise
15  Home Office Compliance Department has established a comprehensive supervisory and
16  compliance structure that is intended to protect members of the public who did business
17  with insurance agents and registered representatives affiliated with the MetLife
18  Enterprise to prevent the purchasing of insurance or financial products which were not
19  suitable for the customer.

20      21.    The MetLife Enterprise's Compliance Department was charged with
21  reviewing, monitoring, auditing and investigating the business activities of NELICO and
22  MetLife Managing Partners, carrier agents, NES Field Management Registered Principals
23  and registered agents, and with monitoring and ensuring compliance with applicable laws
24  and regulations and the MetLife Enterprises' own internal policies.

25      22.    The MetLife Enterprise Compliance Rules, published in its Compliance
26  Manual, applied to NELICO's Managing Partners, career agents, NES Registered
27  Principals and registered representatives.

28

Exhibit A - 000019

23.    Registered representatives affiliated with Defendant NES were prohibited from participating in any manner in the purchase, sale, or solicitation of private securities transactions outside the scope of his/her association with NELICO and NES and from selling or referring for sale promissory notes, unless the promissory notes had been reviewed and pre-approved for sale by the MetLife Enterprise Compliance Department.

24.    NELICO's and NES' audit and compliance function (implemented through the MetLife Enterprise's Compliance Department) also was designed to, and was supposed to, monitor both incoming and outgoing correspondence and electronic mail (email) relating to the sales activities of agents and representatives as required by FINRA Conduct Rule 3010(D)(2). This FINRA rule required NES, operating out of NEF offices with NELICO agents, and acting under the supervision of the MetLife Enterprise's Compliance Department, to implement an audit and compliance review system to monitor incoming and outgoing email correspondence of all registered representatives, including a system to directly monitor the emails of registered representatives to determine if they, in fact, were forwarding the emails to the appropriate Compliance Officers and Registered Principals. The MetLife Enterprise Compliance Program was at all times alleged in this TACC applied to career agents, to prevent them from selling insurance or financial products which were not suitable to customers.

25.    Plaintiffs are unaware of the true names, identities and capacities of the Defendants sued herein as Does 1 through 30. When a name or capacity is known, Plaintiffs will amend this Complaint to allege the true names and capacities of Does 1 through 30. Plaintiffs are informed and believe, and thereupon allege, that each of the Defendants sued herein as a DOE is legally responsible in some manner for the events and happenings set forth herein, and have proximately caused injuries and damages to Plaintiffs as set forth below.

26.    Does 1 through 30 are identified generally as entities, institutions and individuals who acted as Agents of Defendants MetLife and NELICO, or registered representatives of NEF, NES, or any other Defendant. Upon further investigation and

Exhibit A - 000020

1  uncovering of facts justifying naming the fictitiously named Defendants, Plaintiffs will

2  amend this Complaint to allege the true names and capacities of Does 1 through 30.

3      27.    Defendants, and each of them, carried out their acts both directly and/or

4  through the acts and/or omissions of their agents, independent contractors, servants

5  and/or employees, who at all times were acting within the course and scope of said

6  agency, independent contractor agreement and/or employment and the acts and omissions

7  of said agents, independent contractors, servants and/or employees were authorized and

8  ratified by all other said Defendants.

9      28.    Whenever this Complaint references the acts, omissions or representations

10  of any Defendant or Defendants, such allegation shall be deemed to mean the act,

11  omission or representation of those Defendants named in the particular cause of action

12  and each of them acting individually, jointly, and severally and/or in concert with the

13  other Defendant(s).

14

15  **IV.    INFORMATION AND BELIEF**

16      29.    Allegations made in this Complaint have been based on information and

17  belief, except those allegations that pertain directly to Plaintiffs, which are based on their

18  personal knowledge. Plaintiffs' information and belief is based on the investigation

19  conducted by Plaintiffs and Plaintiffs' attorneys after their retention. Each and every

20  allegation and factual contention contained in this Complaint has evidentiary support or,

21  alternatively, is likely to have evidentiary support after reasonable opportunity for further

22  investigation or discovery by Plaintiffs and their counsel.

23

24  **V.    GENERAL FACTUAL ALLEGATIONS**

25      30.    At all times referenced in this TACC, Diane Marie Cano ("Cano") was the

26  president of Applied Equities, Inc. ("AEI"), a California corporation which was a

27  subsidiary of DLG. At all times referenced in this TACC, Cano was also a licensed

28

THIRD AMENDED CONSOLIDATED COMPLAINT

Exhibit A - 000021

1  insurance agent in the State of California, who, according to the records of the California
2  Department of Insurance, held an appointment to sell insurance for Defendant MetLife.

3      31.    AEI, according to the records of the California Department of Insurance,
4  held an appointment from Defendant NELICO at all times referenced in this TACC to
5  sell insurance in the state of California.

6      32.    Plaintiffs are informed and believe that Cano and AEI, acting within the
7  course and scope of their respective agency as insurance agents for Defendants MetLife
8  and NELICO aided and abetted Bruce Friedman ("Friedman"), the President of DLG, and
9  DLG to develop a program to encourage insurance agents affiliated with Defendants
10  MetLife and NELICO to solicit members of the public to purchase DLG 9% or 12%
11  Contracts as a form of premium financing to assist the customers in purchasing life
12  insurance products issued by Defendants MetLife and NELICO.

13      33.    Plaintiffs are informed and believe that Cano, acting within the course and
14  scope of her agency with Defendants MetLife and NELICO, helped DLG develop the
15  "Welcome Packet" provided by DLG to insurance agents affiliated with MetLife and
16  NELICO and registered representatives affiliated with NES which Welcome Packet was
17  to be utilized to market DLG's 9% and 12% Contracts as a form of premium financing.

18      34.    Plaintiffs are informed and believe that Defendants NELICO and MetLife
19  knew that insurance agents affiliated with MetLife and NELICO, acting within the course
20  and scope of their agency as agents of NELICO and MetLife, were encouraging customers
21  to purchase DLG 9% and 12% Contracts (which were unregistered securities), as a form
22  of premium financing, based on the fact that the checks to make premium payments for
23  new policy holders were being sent to NELICO and MetLife by AEI as the "Servicing
24  Agent" for DLG, the entity providing the premium financing. Attached hereto as Exhibit
25  "A" is a true and correct copy of an email dated August 14, 2007, from Cano, acting in her
26  capacity as an agent of Defendants MetLife and NELICO to MetLife insurance agent
27  Scott Brandt ("Brandt") outlining "guidelines" for how premium financing on new
28  MetLife and NELICO insurance policies was to be arranged. Plaintiffs are informed and

**Case No.: BC446497**

THIRD AMENDED CONSOLIDATED COMPLAINT

Exhibit A - 000022

1  believe that after AEI began sending DLG checks directly to Defendants MetLife and
2  NELICO to pay the premium payments on new policies for insureds who used DLG as a
3  form of premium financing, MetLife instructed Cano and AEI to instead have DLG send
4  the monthly checks directly to the insured, and then have the insured mail the premium
5  payment directly to Defendants MetLife and NELICO.

6      35.    Plaintiffs are informed and believe that Cano, acting within the course and
7  scope of her agency as an agent of Defendant MetLife, also worked with registered
8  representatives of Defendants NES and NEF to cause the registered representatives to sell
9  DLG 9% and 12% Contracts to members of the public as investments, which fact was
10  known to Defendants MetLife, NES and NEF. Attached hereto as Exhibit "B" is a copy of
11  a letter dated January 5, 2006 from Yakov Tentser addressed to Cano and Joseph Castro, a
12  Managing Associate for New England Financial. In his letter, Mr. Tenster requests
13  confirmation that his investment of SEP IRA funds was received by Polycomp, his IRA
14  Administrator. In his January 5, 2006 letter, Mr. Tentser also inquires of Cano and Mr.
15  Castro why DLG and AEI were not registered securities dealers.

16      36.    At all times referenced in this TACC, Brandt was licensed to sell insurance
17  in the State of California, and was a "Career Agent" affiliated with Defendants MetLife
18  and NELICO. At all times referenced in this TACC, Defendants Russon and the Russon
19  Agency had responsibility, as a Managing Partner for NELICO, to supervise for the
20  MetLife Enterprise, the conduct of Brandt while acting as a Career Agent for Defendants
21  MetLife and NELICO.

22      37.    At all times referenced in this TACC, Larry Bagby ("Bagby") was licensed
23  to sell insurance in the State of California, and an agent of NELICO and MetLife, as well
24  as a registered representative affiliated with Defendant NEF. Based on a review of public
25  records available on the website of the Financial Industries Regulatory Association
26  ("FINRA"), Bagby was a registered representative affiliated with NEF during most of the
27  relevant times referenced in this Complaint. At all times referenced in this TACC,
28  Defendants Russon and the Russon Agency had responsibility, as a Managing Partner for

Exhibit A - 000023

1   NELICO, to supervise, for the MetLife Enterprise, the conduct of Bagby while he was
2   acting as an agent for Defendant NELICO. At all times referenced in this TACC,
3   Defendants Russon and Russon Agency had responsibility, as the Field Management
4   Registered Principal of Defendant NES, on behalf of the MetLife Enterprise, to monitor
5   and supervise the activity of Bagby as a registered representative affiliated with Defendant
6   NES. On information and belief, Plaintiffs allege that Bagby has filed for bankruptcy.
7   Based on that information, a Request for Dismissal of Bagby was filed in this matter.

8       38.    At all times referenced in this TACC, James Davidson ("Davidson") was
9   licensed to sell insurance in the State of California, and was an agent of Defendant
10  NELICO, as well as a registered representative for Defendant NES. At all times
11  referenced in this TACC, Defendants Russon and the Russon Agency had responsibility,
12  as a Managing Partner for NELICO, to supervise, for the MetLife Enterprise, the conduct
13  of Davidson while he was acting as an agent for Defendant NELICO. At all times
14  referenced in this TACC, Defendants Russon and Russon Agency had responsibility, as
15  the Field Management Registered Principal of Defendant NES, on behalf of the MetLife
16  Enterprise, to monitor and supervise the activity of Davidson as a registered
17  representative affiliated with Defendant NES.

18      39.    In December of 2004, Russon organized, produced and presided at a
19  meeting of agents affiliated with Defendants MetLife and NELICO and registered
20  representatives affiliated with Defendants NEF and NES at the Russon Agency's offices
21  in Woodland Hills, California, at which meeting Friedman was authorized by Russon to
22  make a presentation about how DLG's investment products could be utilized by the
23  agents and registered representatives as a form of "premium financing." Premium
24  financing as used herein refers to the lending of funds to a person or company and
25  allowing the interest or return on the loan to cover the cost of an insurance premium.

26      40.    Friedman's presentation at the December 2004 meeting focused on how
27  investments in DLG promissory notes, including the 9% purported Reinsured Investment
28  Notes and the 12% Corporate Guaranteed Notes, could be utilized as a form of "premium

15

**Case No.: BC446497**

THIRD AMENDED CONSOLIDATED COMPLAINT

Exhibit A - 000024

financing" to enable individuals to generate income, which income in turn could be utilized to purchase NELICO and MetLife insurance products. Plaintiffs are informed and believe that Defendant Russon, acting within the course and scope of his agency as a Managing Partner of MetLife and NELICO and Field Management Registered Principal for Defendant NES, allowed Friedman to make the presentation to the assembled insurance agents and registered representatives regarding utilizing DLG products to generate additional sales of NELICO and MetLife insurance products which would earn additional commission and premium income for Defendants Russon Agency, NELICO, NES and MetLife.

41.    Plaintiffs are informed and believe that at all times relevant to the factual allegations in this Complaint, the MetLife Enterprise, consisting of Defendants MetLife, NELICO, NES and the Russon Agency had a written compliance policy that only insurance products or financial products that had been vetted and approved by the MetLife Enterprise Compliance Department could be sold by insurance agents and registered representatives affiliated with the MetLife Enterprise. By allowing Friedman to make a presentation about DLG investment products at the December 2004 meeting at MetLife's, NEF's, and NES's offices in Woodland Hills, it was foreseeable to Russon and the Russon Agency that the assembled agents and registered representatives would believe that Defendants MetLife's Compliance Department had conducted due diligence of Friedman, DLG, AEI and the investment products of DLG, which products Friedman presented to the assembled agents and representatives.

42.    At the December 2004 meeting, Russon introduced Friedman's DLG program to the insurance agents and registered representatives in the same way and same manner as Russon had previously presented other approved MetLife financial products. After Russon's introduction, Friedman told the insurance agents and registered representatives in attendance at the meeting that DLG offered two separate investment "Contracts." Friedman represented that one DLG Contract paid investors a "minimum guaranteed rate of 9%," and Friedman further represented to the insurance agents and

Exhibit A - 000025

1  representatives that the investors' principal, which was invested in the 9% Contract,
2  would be guaranteed to be repaid to the investor by the assignment, by DLG to the
3  investor, of an annuity issued by a highly-rated insurance company in the full principal
4  amount of the investment.

5      43.    Friedman also told the agents and registered representatives at the
6  December 2004 meeting that DLG also offered a second Contract, which allegedly paid a
7  "minimum guaranteed rate of 12%" to the investor. Friedman represented to the agents
8  and registered representatives at that December 2004 meeting that the principal and
9  interest payments on the 12% Contracts were guaranteed to be repaid to the investor by
10 DLG.

11     44.    Among the insurance agents affiliated with MetLife and NELICO who
12 attended the December 2004 meeting were Brandt, Bagby and Davidson. Bagby and
13 Davidson were also registered representatives affiliated with Defendant NES.

14     45.    During that presentation in December 2004, Friedman provided marketing
15 materials, including copies of DLG's "Welcome Packet" that the assembled insurance
16 agents and registered representatives could utilize in soliciting Plaintiffs and Class
17 members to participate in DLG Programs. Defendant Russon knew, or should have
18 known, that the insurance agents in attendance who were affiliated with Defendants
19 NELICO and MetLife and the registered representatives affiliated with Defendant NES,
20 who were provided with the marketing materials, including the Welcome Packet, would
21 utilize those marketing materials to solicit Plaintiffs and Class Members to purchase DLG
22 investment products at least as a form of premium financing of MetLife and NELICO
23 insurance products. Defendant Russon and the Russon Agency, acting in the course and
24 scope of their agency as Managing Partner for Defendant NELICO and Field
25 Management Registered Principal of Defendant NES, encouraged the insurance agents
26 affiliated with Defendants MetLife and NELICO and the registered representatives
27 affiliated with Defendant NES to solicit their existing customers and new customers to

28

Exhibit A - 000026

1     purchase DLG's 9% Notes and 12% Notes as a form of premium financing in order to

2     sell additional MetLife and NELICO insurance products.

3          46.     Defendant Russon subsequently warned one registered representative

4     affiliated with Defendant NES who had attended the December 2004 meeting that the

5     representative could not directly "sell" DLG Notes to clients because if the representative

6     did so, the representative could lose their registered representative license because the

7     DLG Notes were unregistered securities. Instead, Russon recommended to the insurance

8     agents and registered representatives to direct their clients and prospects to go to DLG to

9     invest in the 9% and 12% Notes to be utilized as premium financing, and with the income

10    from the DLG Note, the client could purchase a MetLife or NELICO insurance product.

11    In fact, Bagby and Davidson referred persons, including Sam and Janet Gupta, who were

12    interested in the DLG Contracts to a specific person for the purposes of arranging for that

13    sale as they did not want to risk their registered representative license by selling

14    unregistered securities.

15         47.     As the Managing Partner of NELICO, Russon earned an "override" of

16    110% of the first year's premium on each MetLife or NELICO insurance product sold by

17    an insurance agent affiliated with the Russon Agency. For example, if the first year's

18    premium on a MetLife or NELICO policy was $5,000.00, then Russon earned an override

19    of $5,500.00 on that sale of that policy by an agent affiliated with the Russon Agency.

20         48.     Plaintiffs are informed and believe that the insurance agents affiliated with

21    Defendants Russon, the Russon Agency, NELICO and MetLife were paid a portion of the

22    premium paid by customers who purchased NELICO and MetLife insurance products

23    using DLG Contracts as a form of premium financing, and Defendants Russon, the

24    Russon Agency, NELICO and MetLife were also each paid a portion of the premium

25    paid by the customer who purchased a NELICO or MetLife insurance product.

26         49.     It was foreseeable to Defendants Russon and the Russon Agency, acting in

27    their capacity as a Managing Partner for NELICO and as a Field Management Registered

28    Principal, that insurance agents affiliated with NELICO and MetLife and registered

18            <b>Case No.: BC446497</b>

THIRD AMENDED CONSOLIDATED COMPLAINT

1    representatives affiliated with NES who solicited customers to purchase NELICO and
2    MetLife insurance products, utilizing DLG Contracts as a form of premium financing,
3    might fail to sell a NELICO or MetLife insurance product, but would induce the potential
4    customer to purchase a DLG 9% or 12% Note as an investment.

5        50.    From and after the meeting in December 2004, Defendant Russon and the
6    Russon Agency knew that Brandt, a Career Agent with Defendants NELICO and
7    MetLife, and Bagby and Davidson, who were both insurance agents affiliated with
8    Defendants NELICO and MetLife and registered representatives affiliated with NES,
9    were encouraging existing MetLife and NELICO clients and new potential customers to
10   purchase DLG 9% Notes and 12% Notes as a form of premium financing when soliciting
11   customers to purchase MetLife and NELICO insurance products. Plaintiffs are informed
12   and believe, based on the complaint filed by the court appointed receiver for DLG, that
13   the receiver is suing Russon personally for receipt of $479,689.37 in "commissions" that
14   were paid by DLG to Russon based on MetLife and NELICO customers that Russon
15   referred to DLG to purchase 9% and 12% Notes, which purchases were to be used as a
16   form of premium financing to enable the clients that Russon referred to DLG to purchase
17   insurance products from MetLife and NELICO, on which Russon would earn an
18   "override" of 110% of the first years premium.

19       51.    Plaintiffs are informed and believe that Friedman, as additional
20   consideration for Russon encouraging insurance agents and registered representatives
21   affiliated with the Russon Agency to refer MetLife and NELICO clients to DLG to
22   purchase 9% and 12% Notes as a form of premium financing, agreed to purchase a $25
23   million policy of life insurance from MetLife, which generated a commission to Russon
24   of approximately $100,000.00. Attached hereto as Exhibit "C" is a copy of an email
25   dated January 5, 2007 from Russon, using his official New England Financial email
26   account, to Friedman forwarding to Friedman information on the $25 million MetLife
27   policy. Exhibit "C" confirms that Friedman, in turn, emailed Cano, acting in her capacity

28

Exhibit A - 000028

as a MetLife insurance agent, and asked Cano if the MetLife policy recommended by Russon was suitable for Friedman.

52.    The knowledge of Russon and the Russon Agency that Brandt, Bagby and Davidson were encouraging clients of MetLife and NELICO to purchase DLG's 9% Notes and 12% Notes as a form of premium financing to assist clients to purchase additional MetLife and NELICO insurance products is imputed to Defendants MetLife, NELICO, and NES because Russon, Brandt, Bagby and Davidson were all acting within the course and scope of their respective agencies with Defendants MetLife, NELICO, NES and NEF at the time they recommended the clients purchase DLG products as a form or premium financing.

A.    **Facts Related To Samuel Gupta**

53.    In July of 2007, Bagby and Davidson, who were insurance agents affiliated with Defendants Russon Agency, NELICO and MetLife and registered representatives affiliated with NES, after attending the December 2004 meeting at which Friedman touted DLG as a form of premium financing, solicited existing MetLife insurance client Plaintiff Samuel Gupta, to borrow against his existing MetLife insurance policies in order to obtain funds to invest in DLG 12% Corporate Guaranteed Notes, and to use the income generated from such 12% Notes to purchase additional insurance products issued by MetLife and other insurers. As insurance agents affiliated with MetLife and NELICO and registered representatives of NES and NEF, Bagby and Davidson had previously provided financial planning advice to the Guptas. Messrs. Bagby and Davidson referred Samuel Gupta to another individual, Scott Brandt, to purchase the actual DLG 12% Notes, while Bagby and Davidson themselves sold additional insurance products to the Guptas utilizing the 12% DLG Notes as premium financing.

/ / /

/ / /

THIRD AMENDED CONSOLIDATED COMPLAINT

Exhibit A - 000029

**B.  Facts Related To Plaintiff Cantor.**

54.    On or about January 2006, Plaintiff Lawrence J. Cantor met with Brandt, a licensed insurance broker who was a Career Agent with Defendant NELICO, a member of the MetLife Enterprise. Brandt solicited Cantor to participate in DLG's 12% Secured Investment Note program by making oral representations related to DLG. Brandt also provided Cantor with copy of a "Welcome Packet" containing written materials regarding DLG's 12% Contract. A copy of DLG's Welcome Packet for 12% Notes offered in 2007 is attached hereto as Exhibit "D." DLG also made available to insurance agents and registered representatives Welcome Packets for 9% Notes, which contained information related to collateral assignments of annuities issued by AA-rated insurance companies, which collateral assignments were represented to "secure" the full repayment of the investor's principal invested in DLG 9% Notes.

55.    The Welcome Packet contained a document entitled "Information Circular," a one-page performance history describing DLG's most recent performance, a sample DLG 12% Contract, and an Application.

56.    In reliance on the oral representations made by Brandt, and the written representations contained in the Welcome Packet, Plaintiff Cantor, on or about January 28, 2006, delivered $250,000 in funds to Brandt, payable to DLG, and received DLG Contract No. 06-01008, which Contract had a stated yield of 12%.

57.    In reliance on the oral representations made by Brandt and the written representations contained in the Welcome Packet, Plaintiff Cantor, on or about June 2006, entered into a second DLG 12% Contract for $500,000, and received DLG Contract No. 06-01059 dated June 29, 2006. In late 2008, Brandt and Bruce Friedman met with Plaintiff Cantor and provided Plaintiff Cantor with a document entitled Private Placement Memorandum ("PPM"), which contained written representations regarding DLG. Brandt and Bruce Friedman also made oral representations to Cantor that the DLG 12% Contract was a safe and secure investment.

**Case No.: BC446497**

THIRD AMENDED CONSOLIDATED COMPLAINT

Exhibit A - 000030

58.     In reliance on the oral representations made by Brandt and Bruce Friedman, and the written representations as set forth in the Welcome Packet and PPM, Plaintiff Cantor in or about late 2008 entered into DLG Contract Numbers 08-01370 and 08-01371 for $663,000.

**C.     Facts Related To Plaintiff Larry Stilley.**

59.     In or about April 2008, Plaintiff Larry Stilley was approached by Brandt to purchase disability insurance through Defendant MetLife. During that discussion, Brandt explained to Plaintiff Stilley the concept of premium financing. During that meeting in April 2008, Brandt made oral representations of a current factual basis to Plaintiff Stilley regarding DLG, including oral representations that DLG invested in real property, and that the principal invested in DLG's 12% Corporate Guaranteed Note Program was guaranteed by DLG, and that the 12% interest was also guaranteed by DLG. Brandt also provided Plaintiff Stilley at the meeting with a copy of DLG's Welcome Packet. Based upon and in reliance on the oral representations made by Brandt, and the written representations contained in the Welcome Packet, Plaintiff Stilley on or about May 2008 invested in a DLG 12% Contract through his individual retirement account the sum of $597,768.00. Plaintiff Stilley was 67 years old at the time that he entered into DLG Note Contract No. 08-01481 in May of 2008.

**D.     Facts Related To Samuel Gupta And Janet Gupta.**

60.     Bagby and Defendant Davidson as agents respectively for MetLife, NEF, NELICO, Russon and the Russon Agency, failed to properly invest or otherwise protect the Guptas' retirement funds, which were entrusted to said defendants all to the Guptas' detriment, which caused the Guptas to suffer damages.

/ / /

/ / /

Exhibit A - 000031

## VI. CLASS ACTION ALLEGATIONS

61.    Class Action Named Plaintiffs Lawrence Cantor, Larry W. Stilley and Samuel Gupta bring causes of action Nos. One through Six on their own behalf, and as Class representatives pursuant to California Code of Civil Procedure section 382. The Class is defined, as of the date of the filing of this TACC, as follows: All Persons who entered into a Contract with DLG and invested funds with DLG between December 2004 and March 4, of 2009, after being provided with a copy of the DLG Welcome Packet by an insurance agent affiliated with Defendants NELICO and MetLife, or by a registered representative affiliated with Defendant NES, and whose entire principal investment was not repaid by DLG (the "Class").

62.    A subclass of the Class is comprised of all persons who had attained age sixty-five (65) at the time that they were provided with a copy of the DLG Welcome Packet by an insurance agent affiliated with Defendants NELICO and/or MetLife, or a registered representative affiliated with Defendant NES, and in reliance upon the representations contained in the Welcome Packet, entered into a Contract with DLG between December 2004 and March 2009, based on the representations contained in the Welcome Packet, and whose entire investment was not repaid by DLG (the "Elder Abuse Subclass").

63.    Upon completion of discovery with respect to the scope of the Class, Plaintiffs reserve the right to amend the class definition and to define additional sub-classes if necessary.

64.    Excluded from the definition of the Class and Elder Abuse Subclass are the Defendants and any person, corporation, or other entity related to, controlled by, or affiliated with, any Defendant. Also excluded from the Class are the Court, the Court's spouse, all persons within the third degree of relationship to the Court, and the spouses of such persons. Included in the term "Persons" in the definitions of the Class and Subclass are entities and representatives of these entities. Also excluded from the Class and Subclass are individuals who have previously settled their claims with Defendants

**Case No.: BC446497**

THIRD AMENDED CONSOLIDATED COMPLAINT

Exhibit A - 000032

MetLife and NEF and NES related to their investments in DLG and executed a release of claims.

65.     Plaintiffs are informed and believe and based thereon allege that the members of the Class and Elder Abuse Subclass, collectively, do not exceed 100 persons.

66.     The members of the Class and Elder Abuse Subclass are so numerous that joinder of all of them is impracticable.

67.     There are questions of law and fact that are common to the Class and Elder Abuse Subclass, which predominate over questions affecting any individual Class or Elder Abuse Subclass member. The common questions related to the Class include, inter alia, the following:

(i)     Whether insurance agents and registered affiliated with Defendants encouraged Plaintiffs and Class members to invest in DLG's Programs;

(ii)     Whether insurance agents and registered representatives affiliated with Defendants made negligent oral misrepresentations to Plaintiffs and members of the Class and Elder Abuse Subclass to induce them to invest in DLG Products;

(iii)     Whether insurance agents and registered representatives affiliated with Defendants had a duty to conduct reasonable due diligence into the nature of DLG's business operations and the business background of Friedman prior to making oral representations soliciting Plaintiffs and members of the Class and Elder Abuse Subclass to invest in DLG Programs;

(iv)     Whether insurance agents and registered representatives affiliated as registered securities representatives with Defendants had a duty to conduct reasonable due diligence into the nature of DLG's business operations and the business background of Friedman prior to making the oral representations alleged in this Complaint and providing copies of the Welcome Packet when encouraging Plaintiffs and members of the Class and Elder Abuse Subclass to invest in DLG Programs as a form of premium financing;

Exhibit A - 000033

(v)     Whether the insurance agents and registered representatives affiliated with Defendants, who, had a confidential and fiduciary relationship with Plaintiffs and members of the Class and Elder Abuse Subclass and as registered securities representatives, requested Plaintiffs and members of the Class and Elder Abuse Subclass to confide confidential financial information to said Brokers Agents and Salespersons to enable the Brokers, Agents and Salespersons to recommend appropriate investments;

(vi)     Whether insurance agents and registered representatives affiliated with Defendants breached their fiduciary duties to Plaintiffs and members of the Class and Elder Abuse Subclass by making misrepresentations without having a reasonable basis for doing so in soliciting members of the Class and Elder Abuse Subclass to invest in DLG Programs;

(vii)     Whether Defendants MetLife and NEF and NES were "controlling persons" under the Securities and Exchange Act of 1934 with regard to their registered representatives, and thereby had a duty to supervise their registered representatives when those registered representatives encouraged members of the public to purchase DLG 9% and 12% Notes as a form of premium financing, and whether said Defendants failed to properly supervise the Brokers and Salespersons affiliated with Defendants who solicited Plaintiffs and members of the Class and Elder Abuse Subclass to invest in DLG's Programs;

(viii)     Whether Defendants MetLife and NES and NEF had a common law duty to supervise their registered representatives and not allow them to sell unregistered securities to existing clients of MetLife and NES and NEF;

(ix)     Whether Defendants MetLife and NELICO, as insurance companies had a duty to supervise their appointed insurance agents and not to allow them to solicit existing MetLife clients and potential MetLife clients to invest in DLG 9% Notes and 12% Notes as a form of premium financing, with the income allegedly generated by the DLG investments to be utilized by existing MetLife clients and potential MetLife clients to purchase insurance policies or long term care policies from MetLife.

Exhibit A - 000034

1        (x)    Whether Defendants, by and through the insurance agents and registered

2   representatives affiliated with those Defendants, engaged in an unlawful business practice

3   as defined in Business and Professions Code §17200 by making negligent

4   misrepresentations in soliciting Plaintiffs and members of the Class and Elder Abuse

5   Subclass to invest in DLG Products;

6        (xi)   Whether Plaintiffs and members of the Class and Elder Abuse Subclass

7   were financially damaged as a result of relying upon the representations made by

8   insurance agents and registered representatives affiliated with Defendants when they

9   invested in DLG Products;

10       (xii)   Whether Defendants are liable for the negligent oral representations and

11   written representations made in the Welcome Packet made by Agents and registered

12   representatives affiliated with Defendants as alleged in this Complaint;

13       (xiii)  Whether Defendants are liable for the breaches of Business and Professions

14   Code §17200, et seq., made by Agents and registered representatives affiliated with

15   Defendants as alleged in this Complaint;

16       (xiv)  Whether Defendants are liable to the members of the Elder Abuse Subclass

17   for Elder Abuse as defined in California Welfare & Institutions Code §15600, et. seq.,

18   based on the conduct of insurance agents and registered representatives affiliated with

19   Defendants as alleged in this Complaint; and

20       (xv)   Whether Defendants, based on the conduct of insurance agents and

21   registered representatives affiliated with Defendants, violated California Corporations

22   Code §§ 25401 and 25501.1.

23       68.    The claims of Plaintiffs are typical of the claims of the members of the

24   Class and Elder Abuse Subclass as a whole. All Plaintiffs who are members of the Class

25   and Elder Abuse Subclass have suffered harm, and are likely to continue to suffer harm

26   due to the loss of the funds they invested with DLG based on the actions of the agents

27   affiliated with Defendants NELICO and MetLife and registered representatives affiliated

28   with Defendant NES.

Exhibit A - 000035

69. Plaintiffs will fairly and adequately protect the interests of the Class and Elder Abuse Subclass. The interests of Plaintiffs are consistent with, and not antagonistic to, the interests of the Class and Elder Abuse Subclass. Plaintiffs have agreed to act for the benefit of all of the victims similarly situated and not to put their individual interest ahead of any member of the Class or Elder Abuse Subclass.

70. The prosecution of a multitude of separate actions by individual Class members and members of the Elder Abuse Subclass may establish incompatible standards of conduct for the parties opposing the Class and Elder Abuse Subclass, may substantially impair or impede the interests of other Class and Elder Abuse Subclass members to protect their interests, and will result in a waste of judicial resources.

71. The actions of Defendants directly and by and through the agents and registered representatives affiliated with them applicable to the Plaintiffs apply generally to the Class members, thereby making the final relief granted by the Court to the Plaintiffs applicable to the Class and Elder Abuse Subclass as a whole.

72. This Class Action would be superior to other available methods for the fair and efficient adjudication of the controversy between the parties. The interest of most Class members and the Elder Abuse Subclass in individually controlling the prosecution of separate actions appears low, due to the complexity of the case and the fact that few individual actions have been filed by individual Class and Elder Abuse Subclass members against Defendants. Separate suits on the smaller claims would be impractical, yet settlements with the Defendants will require complete closure of all claims by all claimants favoring the use of the Class mechanism. Concentrating litigation in this forum will also promote judicial efficiency.

73. This proposed Class Action is manageable. There are less than one hundred members of the Class and Elder Abuse Subclass. Participation in the case by Class members who do not opt out will be assured by the size of the loss sustained by each member.

**Case No.: BC446497**

THIRD AMENDED CONSOLIDATED COMPLAINT

Exhibit A - 000036

**VII.    THE CLASS ACTION CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

Negligent Supervision and Training

(By Class Action Named Plaintiffs for Themselves and the Class and the Elder Abuse Subclass Against Defendants MetLife, NELIC, NEF, NES, Russon, the Russon Agency and Does 1-30.)

74.    Class Action Named Plaintiffs Cantor, Stilley and Samuel Gupta, incorporate by reference as though set forth in full paragraphs 1 through 73.

75.    Class Action Named Plaintiffs are informed and believe and thereon allege, that in doing the acts herein alleged, Russon knew, or in the exercise of reasonable diligence, should have known in permitting the dissemination of the DLG Welcome Packets during the December, 2004 meeting with Friedman conducted in Russon's office, that neither Brandt, Bagby, Davidson and/or any other Agents, Brokers or Salespersons attending the meeting, would conduct adequate due diligence of these investment materials provided by DLG prior to disseminating the same to third parties to induce investment, but instead would be motivated by the commission potential, thereby causing third party investors, including the Class Action Named Plaintiffs herein and the putative class, undue risk of harm as a result of the lack of training and supervision relating to the DLG investments.

76.    Despite this advance knowledge, Class Action Named Plaintiffs are informed and believed that Russon did not perform any training of Brandt, Bagby, Davidson and/or the other Agents or registered representatives relating to conducting adequate due diligence of the information contained in the DLG Welcome Packets upon which Brandt, Bagby, Davidson and/or the other insurance agents and registered representatives intended to rely in recommending DLG Notes as investments to third party investors as a form of premium financing, including the Class Action Named Plaintiffs herein and the putative class, in conscious disregard of the financial interests of the third party investors.  Further, Plaintiffs are informed and believe and thereon alleged,

THIRD AMENDED CONSOLIDATED COMPLAINT

Exhibit A - 000037

1   that despite this advance knowledge, Russon did not provide the necessary supervision of
2   Brandt, Bagby, Davidson and/or the other insurance agents and registered representatives
3   in connection with the sale of the DLG investments to third party investors, including the
4   Plaintiffs herein and the putative class, in conscious disregard of the financial interests of
5   the third party investors.

6       77.     The knowledge of Russon is imputed to Defendants MetLife, NELICO,
7   NEF and NES as he was acting within the course and scope of his agency as the
8   Managing Partner for Defendants MetLife and NELICO and/or Field Management
9   Registered Principal for Defendant NES.

10      78.     Defendants MetLife, NELICO, NES and NEF had a duty to supervise
11  Russon and the Russon Agency, who were acting as the Managing Partner for Defendant
12  NELICO in the general agency in Southern California, and together with Russon and the
13  Russon Agency to supervise Brandt, who was a Career Agent for Defendant NELICO, to
14  supervise Bagby, who was licensed as a MetLife and NELICO insurance agent, to
15  supervise Davidson, who was a MetLife and NELICO insurance agent, to supervise Cano
16  who was a MetLife insurance agent, and to supervise AEI acting in its capacity as an
17  appointed agent for NELICO in their sales activities in the course and scope of their
18  agency with MetLife, NELICO, and NES in selling MetLife and NELICO insurance
19  products.

20      79.     Included in that duty to supervise Russon, the Russon Agency, Brandt,
21  Bagby, Davidson, Cano and AEI was the duty to monitor their conduct when acting
22  within the course and scope of their agency selling MetLife and NELICO insurance
23  products to determine if Russon, the Russon Agency, Brandt, Bagby, Davidson, Cano
24  and AEI were complying with the MetLife Enterprise's Compliance Agency Policies and
25  to make sure there was such compliance, and that insurance agents who held
26  appointments with MetLife and NELICO were not recommending to potential purchasers
27  of MetLife and NELICO insurance products, that they purchase unregistered securities
28  offered by DLG as a form of premium financing.

Exhibit A - 000038

80.     Defendants MetLife and NES had a duty to supervise Russon and the Russon Agency, who were acting as a Field Management Registered Principal for Defendant NES in the NES general agency in Southern California, and together with Russon and the Russon Agency to supervise Bagby, Davison and other registered representatives affiliated with Defendants MetLife and NES when they were acting within the course and scope of their agency as registered representatives affiliated with Defendant NES.

81.     Included in that duty by MetLife and NES to supervise Russon and the Russon Agency, and together with Russon and the Russon Agency to supervise Bagby and Davidson was the duty to monitor Russon and the Russon Agency and together with Russon and the Russon Agency, to monitor Bagby and Davidson when they were acting within the course and scope of their agency relationship with MetLife and NES to determine that Russon, the Russon Agency, Bagby and Davidson were complying the MetLife Enterprise's Compliance Policies, and that registered representatives affiliated with the Russon Agency who held appointments with MetLife and NELICO complied with the MetLife Enterprise's Compliance Policies, applicable statutes and regulations and were not recommending to members of the public that they purchase unregistered securities issued by DLG.

82.     Defendants Russon and the Russon Agency, as the Managing Partner for NELICO, had an obligation to supervise the insurance agents affiliated with the Russon Agency who held appointments with MetLife and NELICO, including Brandt, Bagby and Davidson to determine whether the insurance agents were complying with all MetLife Enterprise's Compliance policies related to insurance agents who were selling MetLife and NELICO insurance products, as well as all statues and regulations that applied to insurance agents..

83.     Defendants Russon and the Russon Agency, as the Field Management Registered Principal for NES, had an obligation to supervise the registered representatives affiliated with the Russon Agency whose FINRA licenses were registered

THIRD AMENDED CONSOLIDATED COMPLAINT

Exhibit A - 000039

with NES, including Bagby and Davidson, to determine whether the registered representatives in offering to sell securities to members of the general public were complying with the MetLife Enterprise's Compliance Department's internal policies related to registered representatives, as well as all statues and regulations that applied to registered representatives.

84.     As a proximate result of MetLife, NELICO, NES, NEF, Russon and the Russon Agency's negligent training and supervision of Brandt, Bagby, Davidson and the other Russon agents/subagents, Class Action Named Plaintiffs and the putative class have suffered damage according to proof at the time of trial. At all times, Russon's negligent supervision and training was a substantial factor in causing the damage to the Plaintiffs and putative class herein. As a proximate result of Defendants MetLife and NELICO's negligent training and supervision of Cano and AEI, Class Action Named Plaintiffs and members of the putative class have suffered damage according to proof at the time of trial.

## SECOND CAUSE OF ACTION

### Negligent Misrepresentation

**(By Class Action Named Plaintiffs, for Themselves and the Class and the Elder Abuse Subclass Against Defendants METLIFE, NELICO, NES, RUSSON, the RUSSON AGENCY and Does 1 thru 30.)**

85.     Class Action Named Plaintiffs Cantor, Stilley and Samuel Gupta incorporate the allegations of paragraphs 1 through 84 as though fully set forth herein.

86.     Defendants MetLife, NELICO, NES and NEF had a duty to supervise Russon and the Russon Agency, who were acting as the Managing Partner for Defendant NELICO in the general agency in Southern California, to supervise Brandt, who was a Career Agent for Defendant NELICO, to supervise Bagby, who was licensed as a MetLife and NELICO insurance agent and a registered representative whose broker dealer was NEF, to supervise Davidson, who was a MetLife and NELICO insurance

Exhibit A - 000040

1  agent and a registered representative with NEF, and to supervise Cano and AEI who were
2  licensed MetLife and NELICO insurance agents in their sales activities in the course and
3  scope of their agency with MetLife, NELICO, and NES in selling MetLife and NELICO
4  insurance products, and encouraging members of the public to use DLG Notes as a form
5  of premium financing.

6      87.    Included in that duty to supervise Russon, the Russon Agency, Brandt,
7  Bagby, Davidson, Cano and AEI was the duty to monitor their conduct when acting
8  within the course and scope of their agency selling MetLife and NELICO insurance
9  products to determine if Russon, the Russon Agency, Brandt, Bagby, Davidson, Cano
10 and AEI were complying with the MetLife Enterprise's Compliance Agency Policies and
11 to make sure there was such compliance, and that insurance agents who held
12 appointments with MetLife and NELICO were not recommending to potential purchasers
13 of MetLife and NELICO insurance products, that they purchase unregistered securities
14 offered by DLG as a form of premium financing.

15     88.    Defendants MetLife and NES had a duty to supervise Russon and the
16 Russon Agency, who were acting as a Field Management Registered Principal for
17 Defendant NES in the NES general agency in Southern California, and Bagby and
18 Davison when they were acting within the course and scope of their agency as registered
19 representatives affiliated with Defendant NES.

20     89.    Included in that duty by MetLife and NES to supervise Russon, the Russon
21 Agency, Bagby and Davidson was the duty to monitor Russon, the Russon Agency,
22 Bagby, Davidson and other registered representatives when they were acting within the
23 course and scope of their agency relationship with MetLife and NES to determine and
24 ensure that Russon, the Russon Agency, Bagby, Davidson and other registered
25 representatives were complying with the MetLife Enterprise's Compliance Policies, and
26 that registered representatives affiliated with the Russon Agency who held appointments
27 with MetLife and NELICO complied with the MetLife Enterprise's Compliance Policies,
28

applicable statutes and regulations and were not recommending to members of the public that they purchase unregistered securities issued by DLG.

90.    Defendants Russon and the Russon Agency, as the Managing Partner for NELICO, had an obligation to supervise the insurance agents affiliated with the Russon Agency who held appointments with MetLife and NELICO, including Brandt, Bagby and Davidson to determine whether the insurance agents were complying with all MetLife Enterprise's Compliance policies related to insurance agents who were selling MetLife and NELICO insurance products, as well as all statues and regulations that applied to insurance agents..

91.    Defendants Russon and the Russon Agency, as the Field Management Registered Principal for NES, had an obligation to supervise the registered representatives affiliated with the Russon Agency whose FINRA licenses were registered with NES, including Bagby and Davidson, to determine whether the registered representatives in offering to sell securities to members of the general public were complying with the MetLife Enterprise's Compliance Department's internal policies related to registered representatives, as well as all statues and regulations that applied to registered representatives.

92.    The insurance agents who held appointments with MetLife to sell MetLife and NELICO products, including Brandt, Bagby, Davidson, Cano and AEI, acting within the course and scope of their agency as MetLife and NELICO agents, had a duty to conduct due diligence regarding DLG prior to making representations about DLG's 9% and 12% Contracts to Plaintiffs and members of the Class and Elder Abuse Subclass when soliciting Plaintiffs and Class and Elder Abuse Subclass members to invest in DLG's Contracts as a form of premium financing.

93.    The registered representatives whose FINRA licenses were registered with NES, including but not limited to, Bagby and Davidson, had a duty acting within the course and scope of their positions as representatives of Defendants MetLife and NES to

Exhibit A - 000042

1   conduct due diligence regarding DLG prior to making representations about DLG's 9%
2   and 12% Contracts to Plaintiffs and members of the public.

3           94.     On or about January 2006, Class Action Named Plaintiff Lawrence J.
4   Cantor met with Brandt, who was at the time a licensed insurance broker and a Career
5   Agent with Defendant NELICO, and a member of the MetLife Enterprise. Brandt
6   solicited Cantor to participate in DLG's Secured Investment Note program by making
7   oral representations related to DLG. Brandt also provided Cantor with copy of a
8   "Welcome Packet."

9           95.     On or about April 2008, Class Action Named Plaintiff Larry Stilley was
10  approached by Brandt to purchase disability insurance through Defendant MetLife. At
11  that time Brandt solicited Stilley to participate in DLG's Secured Investment Note
12  program by making oral representations related to DLG. Brandt also provided Cantor
13  with copy of a "Welcome Packet."

14          96.     Brandt, acting within the course and scope of his agency as an insurance
15  agent for Defendants MetLife and NELICO, made the following oral representations and
16  written representations contained in the Welcome Packets which Brandt provided to
17  Plaintiffs Stilley, Cantor, and other members of the Class and Elder Abuse Subclass when
18  Brandt solicited them to purchase DLG 9% Contracts as a form of premium financing:

19          (i)     That DLG invested the funds provided by participants in real estate
20  investments and in making mortgage loans on real property;

21          (ii)    That an investment in DLG's 9% Reinsured Investment Note Program was
22  a safe investment and that DLG would cause to be assigned a "collateral assignment" of
23  an annuity on the life of Friedman and owned by DLG to investors in the full principal
24  amount of Plaintiffs and Class and Elder Abuse Subclass members' principal investment;
25  and,

26          (iii)   That the 9% interest payments to Plaintiffs and all Class and Elder Abuse
27  Subclass members were "guaranteed" by a collateral assignment of an annuity issued by

28

1    an insurance company rated AA or better to DLG, which annuity in the principal amount

2    of their investment would be assigned by DLG to the investor in a 9% Note.

3        (iv)    That the 9% DLG Notes were legal to sell in California.

4        97.    Brandt, acting within the course and scope of his agency as a Career Agent

5    for Defendants MetLife and NELICO, made the following uniform oral and written

6    representations contained in the Welcome Packet of a past or existing material fact to

7    Plaintiffs Stilley and Cantor and other members of the Class and Elder Abuse Subclass

8    members with regard to DLG's 12% Corporate Guaranteed Investment Note when

9    Brandt solicited them to invest in DLG as a form of premium financing to assist them in

10   purchasing MetLife and NELICO insurance products:

11       (i)    That DLG invested the funds provided by participants in its 12% Note

12   Program in real estate investments and in mortgage loans on real property; and

13       (ii)    That the investment in DLG's 12% Note Program was a good investment

14   because the full amount of the principal invested in DLG's 12% Program, and the 12%

15   interest payments, were both guaranteed by DLG.

16       (iii)    That the 12% DLG Notes were legal to sell in California.

17       98.    On or about July, 2007, Bagby and Davidson acting within their course and

18   scope as insurance agents affiliated with Defendants Russon Agency, NELICO and

19   MetLife and registered representatives affiliated with NES/NEF, solicited existing

20   MetLife insurance client Class Action Plaintiff Samuel Gupta, to borrow against his

21   existing MetLife insurance policies in order to obtain funds to invest in DLG 12%

22   Corporate Guaranteed Notes, and to use the income generated from such 12% Notes to

23   purchase additional insurance products issued by MetLife and other insurers. As

24   insurance agents affiliated with MetLife and NELICO and registered representatives of

25   NES and NEF, Bagby and Davidson had previously provided financial planning advice to

26   the Guptas. Messrs. Bagby and Davidson referred Samuel Gupta to Scott Brandt, to

27   purchase the actual DLG 12% Notes, while Bagby and Davidson themselves sold

28   additional insurance products to the Guptas utilizing the 12% DLG Notes as premium

35

**Case No.: BC446497**

THIRD AMENDED CONSOLIDATED COMPLAINT

financing. During the course of the solicitation of Samuel Gupta, Bagby, Davidson and Brandt made the following uniform oral and written representations contained in the Welcome Packet of a past or existing material fact to Plaintiffs Stilley and Cantor and other members of the Class and Elder Abuse Subclass members with regard to DLG's 12% Corporate Guaranteed Investment Note when Brandt solicited him to invest in DLG as a form of premium financing to assist him in purchasing MetLife and NELICO insurance products:

    (i)    That DLG invested the funds provided by participants in its 12% Note Program in real estate investments and in mortgage loans on real property; and

    (ii)    That the investment in DLG's 12% Note Program was a good investment because the full amount of the principal invested in DLG's 12% Program, and the 12% interest payments, were both guaranteed by DLG.

    (iii)    That the 12% DLG Notes were legal to sell in California.

    99.    Brandt made the representations set forth in paragraphs 96, 97 and 98 to Plaintiffs Stilley, Cantor, Samuel Gupta and other members of the putative Class and Elder Abuse Subclass without reasonable grounds for believing the oral representations or written representations contained in the Welcome Packet to be true, because Brandt, acting in the course and scope of his agency with Defendants MetLife and NELICO, had made no effort to conduct reasonable due diligence on the background and business operations of DLG and Friedman to possess sufficient knowledge regarding the actual investments made by DLG or whether DLG was actually providing a collateral assignment in the full principal amount of the funds invested in DLG's 9% Notes, or whether DLG had sufficient assets or net worth to fully guarantee the principal amount of the 12% Notes, or the interest payments to participants in both DLG's 9% Note Program and the 12% Note Program.

    100.    Bagby and Davidson made the representations set forth in paragraph 98 to Class Action Named Plaintiff Samuel Gupta and other members of the Class and Elder Abuse Subclass without reasonable grounds for believing the oral representations or

Exhibit A - 000045

written representations contained in the Welcome Packet to be true, because Bagby and Davidson, acting in the course and scope of their agency with Defendants MetLife and NELICO and as registered representatives of NES, had made no effort to conduct reasonable due diligence on the background and business operations of DLG and Friedman to possess sufficient knowledge regarding the actual investments made by DLG or whether DLG was actually providing a collateral assignment in the full principal amount of the funds invested in DLG's 9% Notes, or whether DLG had sufficient assets or net worth to fully guarantee the principal amount of the 12% Notes, or the interest payments to participants in both DLG's 9% Note Program and the 12% Note Program.

101. The oral and written representations made by Brandt, as alleged in paragraphs 96, 97 and 98, and those made by Bagby and Davidson, as alleged in paragraph 98, were made with the intent to induce Class Action Named Plaintiffs and other members of the putative Class and Elder Abuse Subclass to rely on the representations, and as a result of that reasonable reliance, to invest in either DLG's 9% Note Program or DLG's 12% Note Program so that Brandt, Bagby, Davidson and Russon would earn commissions from selling MetLife and NELICO insurance products.

102. Brandt, Bagby and Davidson made the oral and written representations alleged in paragraphs 96, 97 and 98 to Class Action Named Plaintiffs and other members of the putative class, acting in the course and scope of their agency with Defendants MetLife and NELICO, and in the case of Bagby and Davidson, their agency with NES, without having any reasonable ground for believing the representations to be true because they failed to perform a reasonable investigation and due diligence to determine: (i) whether DLG actually utilized investors funds to purchase real estate and to make mortgage loans as he represented orally and in writing to Class Action Named Plaintiffs and members of the putative Class and Elder Abuse Subclass members; (ii) whether DLG invested the funds received from investors in real estate investments or mortgages (iii) whether the full principal amounts invested in DLG's 9% Note Program were in fact fully guaranteed by the collateral assignment of an annuity on the life of Friedman issued to

Exhibit A - 000046

DLG by an insurance company rated AA or better; or (iv) whether DLG itself had the assets to perform on its purported guarantee of the full principal amounts invested in DLG's 12% Note Program, and the interest payments on both the 9% Note Program and the 12% Note Program.

103. Class Action Named Plaintiffs and other members of the putative Class and Elder Abuse Subclass who were encouraged by Brandt, Bagby and Davidson to purchase DLG Notes as a form of premium financing justifiably relied on the oral misrepresentations made by Brandt, Bagby and Davidson and the written representations contained in the Welcome Packet. Their reliance was justified because these agents presented themselves to Plaintiffs and all members of the Class and Subclass as being experienced to be able to provide financial planning, insurance and investment advice to Plaintiffs and members of the putative Class and Elder Abuse Subclass.

104. The facts represented by Brandt, Bagby and Davidson to Class Action Named Plaintiffs Stilley, Cantor, Samuel Gupta and members of the putative Class and Elder Abuse Subclass were false in that (i) DLG did not purchase real estate or make mortgage investments as represented; (ii) DLG did not assign an annuity issued by a AA-rated insurance company in the full principal amount invested in its 9% Note Program to participants in said Program, but instead only assigned an annuity with a value of 10% of the principal amount invested by Plaintiffs and members of the Class and Elder Abuse Subclass members who invested in DLG's 9% Note Program; (iii) DLG did not have sufficient assets to guarantee repayment of the full principal amount of Plaintiffs or other Class and Elder Abuse Subclass members' investments in DLG's 12% Note Program, or (iv) to pay the "guaranteed" interest to Plaintiffs and all Class and Elder Abuse Subclass members who participated in DLG's 9% Program or DLG's 12% Program.

105. At all times relevant to the facts alleged in this Complaint, DLG did not have the financial resources to perform on its "guarantee" to repay all principal invested in the 12% Note Program, or to perform on its "guarantee" to pay interest to participants in DLG's 9% Program or 12% Program.

Exhibit A - 000047

106. Defendants MetLife and NELICO failed to properly supervise Brandt, Bagby, Davidson, Cano and AEI to ascertain whether they had conducted a reasonable investigation to confirm the true facts related to DLG and Friedman prior to making the oral and written representations referenced in paragraphs 94 and 95 of this Second Cause of Action.

107. Defendants MetLife and NELICO were required to establish, maintain and enforce written procedures to supervise the types of business in which Brandt, Bagby, Davidson, Cano and AEI engaged while acting within the course and scope of their agency as insurance agents for Defendants MetLife and NELICO, and to supervise their activities while acting within the course and scope of their agency with defendants MetLife and NELICO. Plaintiffs are informed and believe that Defendants MetLife and NELICO failed to maintain and enforce its procedures designed to supervise the types of business in which their appointed insurance agents were engaged, including the oral and written representations that Brandt made when soliciting Class Action Named Plaintiffs Stilley, Cantor, Samuel Gupta and members of the putative Class and Elder Abuse Subclass to invest in DLG Products as a form of premium financing when selling MetLife and NELICO insurance products.

108. As a direct and proximate cause of the negligent misrepresentations alleged in this Second Cause of Action made by Brandt, Bagby and Davidson to Class Action Named Plaintiffs and members of the putative Class and Elder Abuse Subclass and the failure of Defendants MetLife and NELICO to properly supervise Russon, the Russon Agency, Brandt, Bagby and Davidson, Class Action Named Plaintiffs and the members of the putative Class and Elder Abuse Subclass who were encouraged by Brandt, Bagby and Davidson to purchase DLG Notes as a form of premium financing were damaged in amounts to be established at trial.

109. Plaintiffs are informed and believe that Defendant Russon knew that DLG was assigning to DLG 9% Note investors collateral assignments, which only had a value of approximately ten percent (10%) of the principal amount invested in a DLG 9% Note.

Exhibit A - 000048

110. Plaintiffs are informed and believe that Niles Russon, the father of Defendant Russon, invested $1,000,000 in DLG's 9% Reinsured Investment Note Program, and was collaterally assigned an annuity on the life of Friedman, which had been purchased by DLG from Jackson National Life Insurance Company ("Jackson National"). Plaintiffs are further informed and believe that Russon subsequently learned at least as early as May 12, 2007, and possibly earlier, that the value of the annuity that was initially collaterally assigned by DLG to Niles Russon only had a value of $100,000.00, which was only ten percent (10%) of the amount invested by Niles Russon in DLG's 9% Reinsured Investment Notes, and that Defendant Russon thereafter required Friedman to increase the value of the annuity issued by Jackson National and collaterally assigned to Niles Russon to the full $1,000,000 principal amount of Russon's father's 9% DLG Reinsured Investment Note.

111. Plaintiffs are informed and believe that despite learning that Friedman had misrepresented the value of the annuity collaterally assigned by DLG to Niles Russon, Defendant Russon, the "Managing Partner" for Defendants MetLife and NELICO and the Field Management Registered Principal of Defendants NEF and NES, did not disclose to other investors who had already purchased DLG Contracts through agents affiliated with Defendants MetLife and NELICO or registered representatives affiliated with affiliated with Defendants NEF and NES that Friedman and DLG had misrepresented the value of the annuity assigned to his father, and did not inform Brandt, Bagby or Davidson, all of whom continued to sell DLG products to customers of MetLife and NELICO, that Friedman and DLG had misrepresented the value of the annuity initially collaterally assigned to Niles Russon.

112. The knowledge of Russon, as a "Managing Partner" for Defendants MetLife and NELICO and as a Field Management Registered Principal of NES and NEF, that insurance agents affiliated with MetLife and NELICO and registered representatives affiliated with Defendants NES, NEF were soliciting existing and potential customers and clients of NES, NEF, NELICO and MetLife to purchase DLG investment products as a

Exhibit A - 000049

1  form of premium financing to purchase additional insurance products from MetLife, was
2  both actual and constructive knowledge to Defendants NES, NEF and MetLife of that
3  activity.

4      113.  Through their actions alleged herein, Brandt, Bagby, Davidson, Cano, AEI,
5  Russon and the Russon Agency, acting in the course and scope of their agency as
6  insurance agents affiliated with MetLife and NELICO, and Bagby, Davidson, Russon and
7  the Russon Agency acting in the course and scope of their agency as registered
8  representatives affiliated with Defendant NES and Does 1-30 made negligent
9  misrepresentations as alleged in this Second Cause of Action. As the employer and or
10 principal of Brandt, Bagby, Davidson, Cano, AEI, Russon and the Russon Agency, all of
11 whom were acting as insurance agents in the course and scope of their agency with, and
12 for the benefit of, Defendants MetLife and NELICO, Defendants MetLife and NELICO
13 are liable for the conduct of Brandt, Bagby, Davidson, Cano, AEI, Russon and the
14 Russon Agency as herein alleged.

15     114.  As the employer or principal of Bagby, Davidson, Russon and the Russon
16 Agency acting as registered representatives, acting within the course and scope of their
17 employment or agency with, and for the benefit of Defendants NES and MetLife,
18 Defendants NES and MetLife are liable for the conduct of Bagby, Davidson, Russon, and
19 the Russon Agency as alleged herein.

20     115.  As the employer or principal of Brandt, Bagby and Davidson acting as
21 insurance agents within the course and scope of their agency with, and for the benefit of,
22 Russon and the Russon Agency, Defendants Russon and the Russon Agency are liable for
23 the conduct of Brandt, Bagby and Davidson as alleged herein.

24     116.  As the employer or principal of Bagby and Davidson, acting as registered
25 representatives within the course and scope of their agency with, and for the benefit of,
26 Defendants Russon and the Russon Agency, Defendants Russon and the Russon Agency
27 are liable for the conduct of Bagby and Davidson acting as registered representatives as
28 alleged herein.

Exhibit A - 000050

117.   As a proximate result of the negligent misrepresentations as alleged herein, Class Action Named Plaintiffs and the putative class and Elder Abuse Subclass have suffered damage according to proof at the time of trial. At all times, the negligent misrepresentation was a substantial factor in causing the damage to the Class Action Named Plaintiffs and the putative Class and Elder Abuse Subclass herein.

## THIRD CAUSE OF ACTION

### Violation of California Corporations Code §§ 25401 and 25504.1

**(By Class Action Named Plaintiffs for Themselves and the Class Against Defendants MetLife, NEF, NES, Russon, the Russon Agency, and Does 1-30.)**

118.   Class Action Named Plaintiffs incorporate the allegations of paragraphs 1 through 117 herein above as though fully set forth herein.

119.   California Corporations Code §25401 provides that it is unlawful for any person to offer to sell or sell a security in California by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in light of the circumstances under which the statements were made, not misleading.

120.   Class Action Named Plaintiffs Stilley and Cantor were solicited by Brandt, acting in the course and scope of his agency as a Career Agent for Defendant NELICO, to purchase DLG 9% and 12% Notes, which Notes were unregistered securities, by means of oral representations as alleged in the First and Second Causes of Action and written representations in the Welcome Packet, which oral and written representations contained untrue statements of material fact or failed to state material facts necessary to make the facts stated not misleading, in violation of California Corporations Code §§25401 and 25501.

121.   Class Action Named Plaintiff Samuel Gupta was solicited by Bagby and Davidson, with assistance from Brandt (acting in the course and scope of Brandt's agency as Career Agent for Defendant NELICO), and Bagby and Davidson acting in their

**Case No.: BC446497**

THIRD AMENDED CONSOLIDATED COMPLAINT

Exhibit A - 000051

representative status with NES/NEF, to purchase DLG 12% Notes, which Notes were unregistered securities, by means of oral representations as alleged in the First and Second Causes of Action and written representations in the Welcome Packet, which oral and written representations contained untrue statements of material fact or failed to state material facts necessary to make the facts stated not misleading, in violation of California Corporations Code §§25401 and 25501.

122. The other members of the Class and Subclass were solicited by Brandt, Bagby, Davidson, Cano, Russon, or other insurance agents affiliated with Defendants MetLife and NELICO and registered representatives affiliated with Defendant NES to purchase DLG 9% and 12% Notes by means of oral representations and written representations in the Welcome Packet distributed to potential investors, which oral and written representations contained untrue statements of material fact or failed to state material facts necessary to make the facts stated not misleading, in violation of California Corporations Code §§25401 and 25501.

123. The Welcome Packet contained the following representations regarding DLG's 9% and 12% Notes that were either false, or failed to state facts necessary to make the facts stated not misleading:

(i)     It failed to state that the 9% and 12% DLG Notes were unregistered securities;

(ii)    It represented that DLG would seek to invest substantially all its net investable funds in real property and mortgage loans;

(iii)   It represented that DLG had conducted business as a privately held corporation continuously since 1983;

(iv)    It represented that DLG's "principal investment objectives" were to (a) provide cash distributions from the rental income earned on its properties, (b) preserve the investors' capital contributions and (c) realize growth in the value of its real properties;

Exhibit A - 000052

(v)     It represented that DLG would obtain an appraisal for each property in which it invested;

(vi)    It represented that DLG's investments in real property would generally take the form of holding fee title in the properties that DLG acquired;

(vii)   It represented that DLG conducted its real estate mortgage business under a license issued by the State of California;

(viii)  The welcome packet included a copy of the last calendar year's financial results for DLG, which financial statements overstated DLG's income;

(ix)    It represented that the full amount of principal and interest on DLG's 12% Notes were fully guaranteed by DLG;

(x)     It represented that an investment in DLG's 9% Reinsured Investment Note was a secure investment because DLG would provide the investor with a "collateral assignment" of an annuity issued by an insurance company rated AA or better on the life of Friedman, which collateral assignment would guarantee the full principal amount of the investor's principal investment;

124.    Defendants Russon and the Russon Agency knew that the DLG 9% and 12% Notes were unregistered securities for which no exemption had been obtained to allow DLG to sell the Notes in California or any other state.

125.    Defendants Russon and the Russon Agency were registered broker-dealers, acting within the course and scope of their agency as a Field Management Registered Principal of Defendants NES and MetLife, when Russon permitted Friedman at the December 2004 meeting to provide DLG's Welcome Packets to the insurance agents and registered representatives who attended the meeting at Russon's request.

126.    California Corporations Code § 25504.1 provides that every person who materially assists in any violation of Section 25401 with intent to deceive or defraud is jointly and severally liable with any other person liable for a violation of Section 25401. In committing the acts set forth herein, including encouraging the insurance agents affiliated with Defendants MetLife and the registered representatives affiliated with NES,

Exhibit A - 000053

which insurance agents and registered representatives were all affiliated with the Russon general agency to encourage customers to purchase DLG Notes as a form of premium financing, and allowing Friedman to provide those insurance agents and registered representatives with copies of the DLG Welcome Packet to assist them in inducing customers to purchase DLG Notes, Russon and the Russon Agency and Does 1-30, acting within the course and scope of their duties as Managing Partner of NELICO and Field Management Registered Principal of Defendant NES, materially assisted in the violation of Section 25401, and did so in furtherance of the conspiracy with the intent to deceive or defraud Plaintiffs in order to sell MetLife Enterprise products, in order to receive the substantial commissions and insurance premiums as "overrides" on the MetLife and NELICO insurance products which the customers would purchase utilizing DLG Notes as a form of premium financing.

127.    The insurance agents affiliated with MetLife and NELICO, including but not limited to Brandt, Bagby, Davidson, Cano, and AEI, acting within the course and scope of their agency with Defendants MetLife and NELICO, and Bagby and Davidson acting within the course and scope of their agency with Defendant NES, materially aided in the act of making the false and or misleading oral and written representations by DLG and pursuant to Corporations Code §25504 are jointly and severally liable with DLG and Friedman to Plaintiffs and members of the Class and Subclass.

128.    Defendants MetLife and NELICO had both actual knowledge and constructive knowledge that insurance agents affiliated with said defendants were soliciting customers of MetLife and members of the general public to purchase DLG Notes as a form of premium financing to induce those customers and members of the public to purchase MetLife and NELICO insurance products. Defendants MetLife and NELICO also had both actual and constructive knowledge that the DLG Notes being touted by their affiliated insurance agents were unregistered securities.

129.    Defendant NES had both actual and constructive knowledge that registered representatives affiliated with NES, including but not limited to Bagby, Davidson, and

45

**Case No.: BC446497**

THIRD AMENDED CONSOLIDATED COMPLAINT

Joseph Castro ("Castro"), acting within the course and scope of their agency as registered representatives affiliated with NES, were soliciting members of the public to purchase DLG Notes as investments. Defendant NES had actual and constructive knowledge that the DLG Notes were unregistered securities. Defendants MetLife and NELICO failed to adequately train and supervise Russon, its Managing Partner in Southern California, and to adequately train and supervise its affiliated insurance agents, including Brandt, Bagby, Davidson and Cano, to prevent their agents from soliciting customers and members of the public to purchase unregistered securities. Because the insurance agents were acting within the course and scope of their duties as licensed insurance agents selling MetLife and NELICO insurance products when Brandt solicited Class Action Named Plaintiffs Stilley and Cantor, and Bagby and Davidson, with the assistance of Brandt, solicited Class Action Named Plaintiff Samuel Gupta, and other members of the Class to purchase DLG Notes, Russon, the Russon Agency, MetLife and NELICO are responsible under the doctrine of principal and agent and respondeat superior for the conduct of Brandt, Bagby, Davidson, in selling unregistered securities to Plaintiffs and members of the Class and Subclass.

130.   Defendant NES failed to adequately train and supervise Russon, its Field Management Registered Principal in Southern California, and to adequately train and supervise its affiliated registered representatives, including Bagby, Davidson, and Castro to prevent its registered representatives from soliciting customers and members of the public to purchase DLG Notes, which were unregistered securities.

131.   Because the registered representatives, including but not limited to Bagby, Davidson and Castro were acting within the course and scope of their duties as registered representatives for NES when they solicited Mr. and Mrs. Gupta and other members of the Class and Subclass to purchase DLG Notes, Russon, the Russon Agency, MetLife and NELICO are responsible under the doctrine of principal and agent and respondeat superior for the conduct of Bagby, Davidson, Castro and other registered representatives who sold DLG Notes to members of the Class and Subclass.

**Case No.: BC446497**

THIRD AMENDED CONSOLIDATED COMPLAINT

Exhibit A - 000055

132. Alternatively, Defendants' conduct as alleged herein was a reckless disregard by Defendants of DLG's conduct in making "untrue" and "false" statements about DLG's 9% Reinsured Investment Notes and 12% Corporate Guaranteed Investment Notes. MetLife, NES, NEF, Russon, the Russon Agency and Does 1-30 knew that only MetLife, NEF, or NES-approved insurance or financial products could be sold by an Agent, Broker, or Salesperson affiliated with MetLife, NEF, or NES, and yet Defendants allowed its Agents, Brokers, or Salespersons to sell DLG products, which they knew were not fully vetted and thus probably not MetLife, NEF, or NES approved.

133. Class Action Named Plaintiffs relied on Defendants' misrepresentations as set forth in this First Amended Complaint, and relied upon the absence of omitted facts necessary to make the facts represented not misleading in purchasing the DLG securities. Plaintiffs would not have purchased the DLG securities had they known the true facts, and the facts that were not disclosed by Defendants.

134. As described hereinabove, when Russon and the Russon Agency received the DLG misleading and false materials describing the two DLG investment Contracts, Russon and the Russon Agency had actual knowledge that DLG was misleading its investors in order to raise investor funds. In sum, MetLife, NEF, NES, Russon, the Russon Agency and Does 1-30 had actual and constructive knowledge, imputed from Russon, that DLG was marketing the 9% Reinsured Investment Note and 12% Corporate Guaranteed Investment Note as completely guaranteed, which they were not, because Russon's own father was told by Jackson at least as early as May 12, 2007 and possibly earlier that his investment was only 10% insured by Jackson, rather than 100%. Russon's father, in turn, told Russon of this fact and Russon managed to get DLG and Friedman to increase the amount of the annuity assigned to his father to equal the amount of his investment.

135. As a direct and proximate result of Defendants' wrongful, deceptive and/or fraudulent conduct, Class Action Named Plaintiffs and the putative class members are entitled to rescind their respective DLG investments, and obtain return of their principal

Exhibit A - 000056

1  investments plus interest at the legal rate from the dates of said investments less any
2  return actually paid on those investments plus additional damages that they have
3  incurred. In the alternative, said Plaintiffs have sustained economic harm, damage and
4  loss, in amounts to be proved at trial.

5  136.  Pursuant to California Civil Code §3287(a), Class Action Named Plaintiffs
6  are further entitled to prejudgment interest as a direct and proximate result of Defendants'
7  wrongful conduct as hereinabove alleged. The amount of damages suffered by Class
8  Action Named Plaintiffs and the putative class as a result of these acts was a sum certain,
9  capable of calculation, under the terms of the subject DLG investment, and Class Action
10  Plaintiffs are entitled to interest, costs and such other and further relief as this Court
11  deems just and proper, in an amount to be set forth at the time of trial, according to proof.

12

13  **FOURTH CAUSE OF ACTION**

14  **Unfair Competition [California Business & Professions Code §17200, et. seq.]**

15  **(By Class Action Named Plaintiffs for Themselves and the Class and Elder Abuse**

16  **Subclass against Defendants METLIFE, NELICO, NEF, NES, RUSSON, THE**

17  **RUSSON AGENCY and Does 1 thru 30.)**

18  137.  Class Action Named Plaintiffs incorporate the allegations of paragraphs 1
19  through 136 as though fully set forth herein.

20  138.  At all times relevant hereto, California Business and Professions Code
21  §§17200, et seq., were in full force and effect. Section 17200 of the Business and
22  Professions Code provides, in relevant part, that "unfair competition shall mean and
23  include any unlawful, unfair, or fraudulent business act or practice. . ."

24  139.  Defendants MetLife, NEF, NES, Russon, the Russon Agency and Does 1-
25  30, and each of them, are "persons" as defined under Business and Professions Code
26  §17021. Each of the directors, officers, and/or agents of Defendants, are equally
27  responsible for the acts of the other directors, officers, employees and/or agents as set
28  forth in Business and Professions Code §17095.

48

**Case No.: BC446497**

THIRD AMENDED CONSOLIDATED COMPLAINT

140.  Class Action Named Plaintiffs and the members of the Class and Elder Abuse Subclass, and each of them, have suffered injury in fact and have lost money as a result of the conduct of Brandt, or another insurance agents affiliated with Defendants MetLife, NELICO, the Russon Agency or registered representatives, including but not limited to Bagby and Davidson, affiliated with NES, NEF and the Russon Agency, Russon individually, and Does 1-30 as previously alleged.

141.  Class Action Named Plaintiffs bring this cause of action to pursue claims during a four-year statute of limitations under §17208 of the California Business and Professions Code.

142.  As alleged herein above, insurance agents, including but not limited to Brandt, Bagby and Davidson, affiliated with Defendants MetLife, NELICO, and in Brandt, Bagby and Davidson's cases, the Russon Agency, and registered representatives, including but not limited to Bagby and Davidson, affiliated with Defendants NEF, NES, Russon, the Russon Agency and Does 1-30 engaged in an unfair, unlawful and deceptive business practice of soliciting individuals to loan funds to DLG, which DLG represented would be deposited into "investment pools," which combined funds would allegedly be used by DLG to purchase distressed real properties and make mortgage loans on real property.

143.  The conduct of Brandt, Bagby, Davidson, Cano, Russon and the Russon Agency, acting in the course and scope of their agency as insurance agents affiliated with Defendants MetLife and NELICO, and Bagby, Davidson, Russon and the Russon Agency, acting in the course and scope of their agency as registered representatives affiliated with Defendant NES, in making negligent misrepresentations to Class Action Named Plaintiffs and members of the putative Class and Elder Abuse Subclass was wrongful. Brandt, Russon, Bagby and Davidson, acting in the course and scope of their respective agencies with Defendants MetLife, NELICO, and NES, failed to conduct due diligence prior to making the representations about DLG and Friedman that they made to Class Action Named Plaintiffs Stilley, Cantor and Samuel Gupta and members of the

putative Class and Elder Abuse Subclass when soliciting Plaintiffs and members of the Class and Elder Abuse Subclass to invest in DLG's Programs. Defendants MetLife and NELICO failed to adequately train and supervise insurance agents, including but not limited to, Brandt, Bagby, Cano, Davidson, Russon and the Russon Agency to prevent said insurance agents from making representations to Class Action Named Plaintiffs and the members of the Class and Elder Abuse Subclass regarding DLG, which said agents had no reasonable grounds for believing to be true at the time they made the representations, or provided Class Action Named Plaintiffs and members of the Class and Elder Abuse Subclass with copies of the DLG Welcome Packet.

144. Defendants MetLife and NELICO failed to adequately train and supervise insurance agents, including but not limited to, Brandt, Bagby, Cano, Davidson, Russon and the Russon Agency to prevent said insurance agents from encouraging Class Action Named Plaintiffs and the members of the putative Class and Elder Abuse Subclass from purchasing unregistered securities in the guise of purchasing premium financing.

145. Defendants Russon and the Russon Agency failed to adequately train and supervise insurance agents, including but not limited to Brandt, Bagby and Davidson, those insurance agents under its general agency, including but not limited to Brandt, Bagby and Davidson, which insurance agents negligently misrepresented the characteristics as alleged in the First and Second Causes of Action, and which insurance agents sold unregistered securities to Class Action Named Plaintiffs and members of the Class and Subclass.

146. Defendant MetLife and NES failed to adequately train and supervise registered representatives, including but not limited to, Russon, Russon Agency, Bagby and Davidson, which registered representatives made negligent misrepresentations to Class Action Named Plaintiff Samuel Gupta and members of the putative Class and Elder Abuse Subclass, and which registered representatives sold unregistered securities to Class Action Named Plaintiff Samuel Gupta and members of the putative Class and Elder Abuse Subclass.

Exhibit A - 000059

147. Through their actions alleged herein, Brandt, Bagby, Davidson, Cano, Russon and the Russon Agency, acting in the course and scope of their agency as insurance agents affiliated with MetLife and NELICO, and Bagby, Davidson, Russon and the Russon Agency acting in the course and scope of their agency as registered representatives affiliated with Defendant NES and Does 1-30 have engaged in unfair competition within the meaning of California Business & Professions Code § 17200, because their conduct constituted an unfair business practice perpetrated against members of the general public. As the employer and or principal of Brandt, Bagby, Davidson, Cano, Russon and the Russon Agency, who were acting as insurance agents in the course and scope of their agency with, and for the benefit of, Defendants MetLife and NELICO, Defendants MetLife and NELICO are liable for the conduct of Brandt, Bagby, Davidson, Cano, Russon and the Russon Agency as alleged herein.

148. As the employer or principal of Bagby, Davidson, Russon and the Russon Agency acting as registered representatives and acting within the course and scope of their employment or agency with, and for the benefit of Defendants NES and MetLife, Defendants NES and MetLife are liable for the conduct of Bagby, Davidson, Russon, and the Russon Agency as alleged herein.

149. As the employer or principal of Brandt, Bagby and Davidson acting as insurance agents within the course and scope of their agency with, and for the benefit of, Russon and the Russon Agency, Defendants Russon and the Russon Agency are liable for the conduct of Brandt, Bagby and Davidson as alleged herein.

150. As the employer or principal of Bagby and Davidson, acting as registered representatives within the course and scope of their agency with, and for the benefit of, Defendants Russon and the Russon Agency, Defendants Russon and the Russon Agency are liable for the conduct of Bagby and Davidson acting as registered representatives as alleged herein.

Exhibit A - 000060

151.   Business and Professions Code §17203 provides that the Court may take those steps necessary to prevent such unfair conduct and may order Defendants to pay restitution to an aggrieved party.

152.   Section 17202 of the California Business and Professions Code states: "Notwithstanding Section 3369 of the Civil Code, specific or preventive relief may be granted to enforce a penalty, forfeiture, or penal law in a case of unfair competition."

153.   Beginning at a date unknown to Class Action Named Plaintiffs, but at least as early as 2004, the agents affiliated with Defendants MetLife, NELICO and the Russon Agency and the registered representatives affiliated with Defendants NEF, NES and the Russon Agency committed, and continued to commit, acts of unfair competition, as defined by California Business & Professions Code §17200, et seq., by and among other things, making negligent oral and written representations regarding investments in DLG, as alleged in paragraphs 94 and 95 herein above.

154.   Defendants MetLife, NEF, NES, the Russon Agency and the insurance agents and registered representatives affiliated with said Defendants, including but not limited to Russon, Cano, Brandt, Davidson, and Bagby, and Does 1 to 30 were paid commissions in exchange for sales made by soliciting Plaintiffs and members of the putative class by making oral and written negligent misrepresentations to induce them to purchase DLG Products.

155.   Defendants MetLife and NEILCO were paid commissions on sales of MetLife and NELICO insurance products by members of the putative class who were encouraged by Cano and AEI to purchase DLG Notes as a method of premium financing so that the class members could purchase MetLife and NELICO insurance products.

156.   As the actual and proximate cause of insurance agents and registered representatives affiliated with Defendants MetLife, NEF, NES, the Russon Agency and Does 1 to 30 engaging in unfair business practices in violations of California Business & Professions Code section 17200, et seq., Class Action Named Plaintiffs and the putative Class and Elder Abuse Subclass members have lost their investments totaling an amount

Exhibit A - 000061

1  to be established at trial. Plaintiffs seek all equitable remedies available, including but not

2  limited to restitution and disgorgement.

3

4                          **FIFTH CAUSE OF ACTION**

5  **Financial Elder Abuse – California Welfare & Institutions Code § 15600, et. seq.**

6  **(By Plaintiff Stilley for himself and the Elder Abuse Subclass Against Defendants**

7  **MetLife, NELIC, NEF, NES, Russon, the Russon Agency and Does 1-30.)**

8       157.  Class  Action  Named  Plaintiff  Stilley  incorporates  the  allegations  of

9  paragraphs 1 through 156 herein above as though fully set forth herein.

10      158.  At  all  relevant  times,  California  Welfare  and  Institutions  Code

11  §15610.30(a)(1) and similar elder abuse statutes in other states where Agents and Brokers

12  of Defendant MetLife and Salespersons of MetLife, NEF, and NES marketed DLG's

13  Programs (hereinafter referred to as the "Market States") were in effect and provided that

14  "financial abuse" of an elder or dependent adult occurs when a person or entity takes,

15  secretes, appropriates, or retains real or personal property of an elder or dependent adult

16  to a wrongful use or with intent to defraud, or both.

17      159.  California Welfare and Institutions Code §15610.30(a)(2) provides that

18  financial elder abuse also occurs when a person or entity "Assists in taking, secreting,

19  appropriating, or retaining real or personal property of an elder or dependent adult to a

20  wrongful use or with intent to defraud, or both."(emphasis added)

21      160.  Defendant MetLife knew the danger of financial elder abuse and even

22  commissioned studies on financial elder abuse. MetLife caused a pamphlet to be

23  published in 2007 describing Financial Abuse on elderly citizens; a true and correct copy

24  of that pamphlet is attached hereto as Exhibit "E." By publishing and disseminating the

25  Elder Abuse pamphlet, Defendant MetLife encouraged senior citizens to trust that

26  Agents, Brokers and Salespersons affiliated with MetLife, NEF, and NES would not

27  market insurance or investment products which would take advantage of senior citizens.

28

Exhibit A - 000062

161.  At the time the acts alleged in this TACC occurred, Class Action Named Plaintiff Stilley was age 65 or older and a resident of the State of California, an "elder" within the meaning of California Welfare & Institutions Code §15610, et seq. At all times referenced in this Complaint, the other members of the Elder Abuse Subclass were "elders" within the meaning of California Welfare & Institutions Code § 15610, et seq., or similar elder abuse statues in the Market States in which they resided.

162.  At all times herein mentioned, the acts and omissions of Defendants MetLife, NEF, NES, Russon, the Russon Agency, and Does 1-30, by and through their agents and registered representatives as alleged in this Complaint, constituted financial elder abuse within the meaning of Welfare & Institutions Code §15610.30 and similar statues in the Market States. Defendants MetLife, NEF, NES, Russon, the Russon Agency, and Does 1-30, either directly, or thru the actions of their appointed and authorized insurance agents and registered representatives engaged in acts of taking, secreting, appropriating, and/or retaining of personal property, i.e., cash, of Class Action Named Plaintiff Stilley and the other members of the Elder Abuse Subclass to a wrongful use, or with an intent to defraud, or assisted in such acts.

163.  At all times herein mentioned, DLG retained the funds of Class Action Named Plaintiff Stilley and the members of the Elder Abuse Subclass, which Class Action Named Plaintiff Stilley and the members of the Elder Abuse Subclass invested based on the negligent misrepresentations and breaches of fiduciary duty by the insurance agents and registered representatives affiliated with Defendants MetLife, NEF, NES, Russon, the Russon Agency and Does 1-30.

164.  The Agents and Brokers of Defendant MetLife and Salespersons of Defendants MetLife, NEF, NES, the Russon Agency and Does 1-30 negligently made representations to Class Action Named Plaintiff Stilley and members of the Elder Abuse Subclass as alleged in paragraphs 96, 97 and 98 herein above, without having a reasonable basis for making said representations to Class Action Named Plaintiff Stilley and to members of the Elder Abuse Subclass.

165.   As a direct result of Class Action Named Plaintiff Stilley and members of the Elder Abuse Subclass' reliance on the negligent oral and written representations made by Agents, Brokers and Salespersons of MetLife, NEF, NES, Russon, the Russon Agency and Does 1-30, Class Action Named Plaintiff Stilley and the other members of the Elder Abuse Subclass have suffered and continue to suffer economic injury, namely the failure of DLG to repay their funds.

166.   Under Welfare and Institutions Code §15657.5, Defendants MetLife, NEF, NES, Russon, the Russon Agency and Does 1-30, and each of them, are liable for reasonable attorneys' fees and costs, including reasonable fees for the services of counsel, for Class Action Named Plaintiff Stilley and members of the Elder Abuse Subclass, expended in connection with the litigation of this claim.

167.   Pursuant to California Civil Code §3345, Defendants, and each of them, are liable for treble damages and penalties because: (i) Defendants, and each of them, knew or should have known that they or their insurance agents and registered representatives were marketing DLG Programs to senior citizens; (ii) the conduct of Defendants, Defendants' insurance agents and registered representatives in making the negligent oral and written representations to Class Action Named Plaintiff Stilley and members of the Elder Abuse Subclass, caused those individuals who were age 65 or older when they entered into Contracts with DLG based on the recommendation of the insurance agents and registered representatives, to suffer substantial loss of their funds set aside for retirement, and of assets essential to their health and welfare; and (iii) Class Action Named Plaintiff Stilley and members of the Elder Abuse Subclass are senior citizens whom the state legislatures, which adopted Elder Abuse statues, determined were substantially more vulnerable than other members of the public to the type of negligent representations made by Defendants, Defendants' Agents and Defendants' Salespersons because of their age, impaired understanding, impaired health and/or restricted mobility, and Class Action Named Plaintiff Stilley and members of the Elder Abuse Subclass

Exhibit A - 000064

actually suffered substantial economic damages resulting from Defendants' Agents and Salespersons negligent representations and breaches of fiduciary duty.

## VIII.  THE GUPTAS' INDIVIDUAL CLAIMS

### SIXTH CAUSE OF ACTION

**Negligence-Negligence Per Se**

**(By Plaintiffs Samuel Gupta and Janet Gupta, as Individuals Against Defendants Davidson, MetLife, NELIC, NEF, NES, Russon, the Russon Agency and Does 31-50.)**

168.    Plaintiffs Samuel Gupta and Janet Gupta ("Plaintiffs") have separate claims that are unrelated to their investment in Diversified Lending Group, Inc. ("DLG Related Claims"). These separate claims are set forth in Causes of Action Six through Ten and are separate and apart from the Causes of Action One through Five. However, Plaintiff Janet Gupta, individually, suffered physical damages and severe emotional distress based on both the advice of Bagby and Defendant Davidson related to retirement planning, and the purchase of the DLG 12% Notes as alleged herein below. Plaintiff Sam Gupta is not asserting a claim for physical injury or emotional distress related to the financial planning advice, including the advice provided by Bagby and Defendant Davidson to purchase DLG 12% Notes.

169.    At all relevant times alleged, Defendant Tony Russon was an employee and agent of Russon Financial, and a managing partner of NES and NEF.

170.    Bagby and Defendant Davidson served as insurance agents providing insurance services for Defendant MetLife, and as registered representatives for Defendants NEF and NES.

171.    Bagby and Defendant Davidson, in their capacities as insurance agents for MetLife and registered representatives for Defendants NES and NEF for approximately 18 years, met at least annually with the Guptas, usually at their home, and provided

**Case No.: BC446497**

THIRD AMENDED CONSOLIDATED COMPLAINT

Exhibit A - 000065

1   financial counseling to them for their retirement planning, and advising them regarding
2   life insurance on the lives of both of them, and their children.

3       172.    Bagby and Defendant Davidson encouraged Plaintiffs to repose trust and
4   confidence in them as insurance agents appointed by MetLife and registered
5   representatives affiliated with NES and NEF by providing financial services and insurance
6   advice to them. Plaintiffs were not sophisticated in the area of financial planning for their
7   retirement. The Guptas similarly did not possess financial sophistication or sophistication
8   in evaluating insurance. Because Plaintiffs reposed trust and confidence in Bagby,
9   Defendant Davidson, and MetLife, they invariably followed the advice and
10  recommendations of Bagby and Defendant Davidson as to which investments to purchase
11  to generate income for their retirement planning, and what insurance products to purchase
12  to provide insurance protection for their family.

13      173.    Plaintiffs are informed and believe, and on that basis allege, that at all times
14  relevant hereto, Bagby and each Defendant was the agent, servant, and employee of each
15  of the remaining Defendants acting within the purpose and course of said agency, service
16  and employment, with the express and/or implied knowledge, permission, and consent of
17  the remaining Defendants, and each of them, and each of said Defendants ratified and
18  approved the acts of the other Defendants.

19      174.    Bagby and Defendant Davidson owed a duty of due care, which was
20  standard in the financial planning industry to properly advise Plaintiffs how to invest their
21  funds for their retirement planning so that when they reached retirement age they would
22  have sufficient funds to retire and continue to live in a lifestyle similar to the lifestyle they
23  experienced prior to retirement. Specifically, the investments recommended to Plaintiffs
24  for 18 years by Bagby and Defendant Davidson failed to diversify the investments in
25  Plaintiffs' retirement portfolio such that there were no stocks or bonds purchased; only
26  insurance policies were recommended as suitable investments for their retirement
27  accounts, which insurance policies were not in fact appropriate investments for a
28  retirement account. The insurance policies that Bagby and Defendant Davidson

Exhibit A - 000066

recommended to Plaintiffs as investments for their retirement funds in fact earned premiums for Bagby, and Defendants Davidson and MetLife each year when the insurance policies were renewed. However, the value of the insurance policies that Bagby and Defendant Davidson advised Plaintiffs to purchase to fund their retirement, and which Plaintiffs did in fact purchase based on the recommendation of Bagby and Defendant Davidson, did not increase in value, and instead, decreased in value.

175. Bagby and Defendant Davidson, as licensed insurance agents, owed Plaintiffs a duty of due care, which was standard in the life industry, to properly advise Plaintiffs as to which life insurance products were suitable for their personal needs as described by Plaintiffs to Bagby and Defendant Davidson, and not to encourage Plaintiffs to purchase excess life insurance products that they did not need, and only served to generate premium income for Bagby, and Defendants Davidson and MetLife. In addition, Bagby and Defendant Davidson owed Plaintiff specific duties relating to replacement insurance transactions pursuant to California Insurance Code §§ 10509.4 and 10509.6.

176. Bagby and Defendant Davidson breached their duties owed to Plaintiffs as registered representatives by negligently advising Plaintiffs to invest their retirement funds in transactions and investments that caused Plaintiffs to suffer charges and fees, which depleted their funds available at retirement, and which investment products did not generate an increase in the principal amount of their funds available to support them when they retired.

177. Bagby and Defendant Davidson breached their duties owed to Plaintiffs as insurance agents by negligently advising Plaintiffs to purchase excess insurance which was not suitable for their actual needs, and by failing to abide by the provisions of the California Insurance Code §§ 10509.4 and 10509.6.

178. It was reasonably foreseeable to Bagby and Defendant Davidson, and to Defendant NES, which had a duty to supervise Bagby and Defendant Davidson, that Plaintiffs would be damaged if their retirement funds were not properly invested, including not having sufficient funds to retire and maintain the same lifestyle that they

THIRD AMENDED CONSOLIDATED COMPLAINT

Exhibit A - 000067

had while working, and that Plaintiff Janet Gupta would suffer physical ailments and severe emotional distress based on the conduct Bagby and Defendant Davidson, acting as agents and representatives of Defendants MetLife, NEF and NES based on the fact that she and her husband, after years of investing for their retirement based on the advice of Bagby and Defendant Davidson, and relying upon and trusting Bagby and Defendant Davidson's advice, they will not have sufficient funds to retire upon reaching retirement age because the investments recommended by Defendants served only to enrich Bagby and Defendant Davidson who received commissions each year when the insurance policies purchased by Plaintiffs based on the advice of Bagby and Defendant Davidson were automatically renewed.

179.   As a direct and proximate result of the negligence of Bagby and Defendant Davidson, acting as appointed agents of Defendant MetLife and registered representatives affiliated with Defendants NES and NEF, Plaintiffs Sam Gupta and Janet Gupta suffered damages in excess of the jurisdictional limit of this Court, the exact amount to be proven at trial. Additionally, Plaintiff Janet Gupta suffered physical ailments and severe emotional distress based on her reliance on the financial planning advice of Bagby and Defendant Davidson, acting in their capacity as appointed agents of Defendant MetLife and registered representatives of Defendants NES and NEF.

## SEVENTH CAUSE OF ACTION

### Negligent Misrepresentation

**(By Plaintiffs Samuel Gupta and Janet Gupta, as Individuals Against Defendants Davidson, MetLife, NELIC, NEF, NES, and Does 31-50.)**

180.   Plaintiffs repeat and incorporate herein by reference each and every allegation in paragraphs 168 through 179, inclusive, as though fully set forth herein.

181.   Plaintiffs are informed and believe, and hereon allege, that when Bagby and Defendant Davidson negligently represented to Plaintiffs that by investing in their retirement funds in insurance policies, their retirement savings would increase. Plaintiffs

Exhibit A - 000068

1    are informed and believe, and hereon allege, that Bagby and Defendant Davidson had no

2    reasonable basis for believing that these representations were true, yet made these

3    representations to Plaintiffs nonetheless.

4         182.   Plaintiffs are informed and believe, and hereon allege, that Bagby, and

5    Defendants Davidson and MetLife intended that Plaintiffs rely on these representations

6    when deciding in which type of investments they should invest their retirement savings.

7    In fact, Plaintiffs did rely on Bagby, and Defendants Davidson and MetLife's negligent

8    representations and were harmed by their retirement savings not increasing, and in fact

9    decreasing in value.

10         183.   Plaintiffs' reliance on Bagby, and Defendants Davidson and MetLife's

11    negligent representations that investing retirement funds in insurance policies would

12    provide a sufficient amount of retirement funds to enable Plaintiffs to retire and continue

13    to experience a lifestyle similar to the lifestyle Plaintiffs experienced during their

14    working years was a substantial factor in causing Plaintiffs damages as alleged herein.

15         184.   At the time that Bagby and Defendant Davidson made the negligent

16    misrepresentations alleged herein regarding investments for their retirement accounts,

17    they were acting in the course and scope of their capacity as registered representatives

18    with Defendants NES and NEF. At the times that Bagby and Defendant Davidson made

19    their negligent representations to Plaintiffs about insurance products that Plaintiffs should

20    purchase, Plaintiffs are informed and believe that the actions alleged herein were done in

21    the course and scope of their agency with Defendant MetLife. Defendants MetLife, NEF,

22    NES knew, or should have known, that Bagby and Defendant Davidson were making

23    negligent misrepresentations to both Plaintiffs, and that by accepting commissions and

24    making profits on said transactions, which were based on Bagby's and Defendant

25    Davidson's negligent misrepresentations, ratified their tortious conduct.

26         185. As a result of Bagby and Defendant Davidson's negligent

27    misrepresentations as alleged herein above, Plaintiffs were damaged in an amount

28    exceeding the jurisdictional limit of this Court, the exact amount to be proven at trial, and

Exhibit A - 000069

Plaintiff Janet Gupta experienced physical injury and severe emotional distress based on the negligent financial planning, including purchasing the DLG 12% Notes. Plaintiff Sam Gupta is not asserting a claim for physical injury or emotional distress.

### EIGHTH CAUSE OF ACTION

**Breach of Fiduciary Duty**

**(By Plaintiffs Samuel Gupta and Janet Gupta, as Individuals Against Davidson, MetLife, NELIC, NEF, NES and Does 31-50.)**

186.   Plaintiffs Samuel Gupta and Janet Gupta repeat and incorporate herein by reference each and every allegation in paragraphs 168 through 185, inclusive, as though fully set forth herein.

187.   Based on the relationship of registered representatives, and the relationship of trust and confidence they solicited and encouraged, and the trust and confidence that Plaintiff reposed in them, Bagby and Defendant Davidson were Plaintiffs' agents with regard to their retirement funds invested MetLife insurance policies.

188.   As agents, Bagby, and Defendants Davidson and MetLife were fiduciaries of Plaintiffs and subject to the highest standard of good faith. Defendants were precluded from obtaining any advantage over Plaintiffs by virtue of the agency and fiduciary relationship. Moreover, Bagby and Defendants Davidson and MetLife were charged with the duty of fullest disclosure of all material facts concerning transactions that might affect Plaintiffs' decision regarding investment of their retirement funds.

189.   Plaintiffs are informed and believe, and hereon allege, that Bagby and Defendants Davidson, NES, NEF and MetLife breached their fiduciary duties by, *inter alia*, failing to Plaintiffs are informed and believe that Does 1-30 breached their fiduciary duties by, *inter alia*, effectuating transactions on Plaintiffs' behalf with full knowledge that the transactions were to Plaintiffs' detriment and failing to disclose to Plaintiffs the surrender charges that were being incurred by those transactions.

Exhibit A - 000070

190.  As a result of these breaches of fiduciary duty, Plaintiffs were damaged in an amount that exceeds the jurisdictional limits of this Court, the exact amount to be proven at trial. Plaintiff Janet Gupta, individually, also suffered physical injury and severe emotional distress based on the breach of fiduciary duty, including the advice to purchase DLG 12% Notes. Plaintiff Sam Gupta is not alleging a claim for physical injury or emotional distress.

191.  The conduct of Bagby, and Defendants Davidson, NES, NEF, and Does 1-30, in breaching their fiduciary duties to Plaintiff, and Defendants MetLife, NES and NEF aiding and abetting Bagby and Defendants Davidson, NES, NEF, and the Doe Defendants' breaches of fiduciary duty owed to Plaintiffs, was intentional, malicious and in conscious disregard for the rights of Plaintiffs, and justify an award of punitive damages.

## NINTH CAUSE OF ACTION

### Aiding and Abetting A Breach of Fiduciary Duty

### (By Plaintiffs Samuel Gupta and Janet Gupta, as Individuals Against Defendants MetLife, NELIC, NEF, NES, and Does 31-50.)

192.  Plaintiffs Samuel Gupta and Janet Gupta repeat and incorporate herein by reference each and every allegation in paragraphs 168 through 191 inclusive, as though fully set forth herein.

193.  Plaintiffs are informed and believe that Defendants MetLife, NELICO, NES and NEF not only breached its own fiduciary duties to Plaintiffs, but also aided and abetted Bagby and Defendant Davidson in breaching their individual fiduciary duties owed to Plaintiffs. Plaintiffs are informed and believe, and hereon allege, that Defendants MetLife, NES and NEF *knew,* by virtue of monitoring and supervising Bagby and Defendant Davidson's transactions with Plaintiffs that assisted, and aided and abetted Bagby and Defendant Davidson in breaching Bagby and Defendant Davidson's own fiduciary duties owed to Plaintiffs, and that said Defendants MetLife, NES and NEF did

1  so to earn commissions, fees and premiums, all at the expense of Plaintiffs. Plaintiffs are

2  informed and believe that Defendants MetLife, NES and NEF earned commissions,

3  premiums and other cash payments based on the wrongful transactions of Bagby and

4  Defendant Davidson alleged in this individual portion of this Consolidated Complaint.

5      194.   As a result of those breaches of fiduciary duties by Bagby and Defendant

6  Davidson, which were knowingly aided and abetted by Defendants MetLife, NES and

7  NEF and Does 1-30, Plaintiffs were damaged by suffering general and special damages in

8  an amount to be proven at trial. Additionally, Plaintiff Janet Gupta suffered physical

9  ailments and emotional distress based on the alleged breaches of fiduciary duty and

10 aiding and abetting those breaches of fiduciary duty, which physical ailments and

11 emotional distress were foreseeable to Bagby and Defendant Davidson, and Defendants

12 MetLife, NES and NEF. Plaintiff Sam Gupta is not alleging a claim against Defendants

13 for physical injury or emotional distress.

14     195.   The conduct of Defendants MetLife, NES, and NEF, in aiding and abetting

15 Bagby and Defendant Davidson in breaching their fiduciary duties to Plaintiffs, was

16 intentional, malicious and in conscious disregard for the rights of Plaintiffs, and justifies

17 an award of punitive damages.

18

19                         **TENTH CAUSE OF ACTION**

20                         **Negligent Hiring and Retention**

21 **(By Plaintiffs Samuel Gupta and Janet Gupta, as Individuals Against Defendants**

22   **MetLife, NELIC, NEF, NES, Russon, the Russon Agency and Does 31-50.)**

23     196.   Plaintiffs Samuel Gupta and Janet Gupta repeat and incorporate herein by

24 reference each and every allegation in paragraphs 168 through 195, inclusive, as though

25 fully set forth herein.

26     197.   As a licensed securities broker-dealer the Russon Agency, and Defendants

27 NES and NEF, as licensed broker-dealers had a duty not to hire as employees or contract

28 with as independent contractors. unfit persons or allow unfit persons to operate under

Exhibit A - 000072

their respective broker-dealer securities licenses, and had both a common law duty and a duty as a "controlling person" under the Securities and Exchange Act of 1934 to supervise the activities of Bagby and Defendant Davidson as registered representatives to determine if they were complying with applicable duties owed to their clients, who were also clients of Defendants NES and NEF.

198.   As broker dealers and controlling persons licensed by FINRA, Defendants Russon Financial, NEF and NES had a duty to properly train, monitor and supervise the activities of registered representatives Bagby and Defendant Davidson whom they authorized to transact securities transactions on their behalf.

199.  Plaintiffs Sam Gupta and Janet Gupta are informed and believe and hereon allege that Bagby and Defendant Davidson were unfit registered representatives based on their conduct as alleged herein above. As a direct and proximate cause of Defendants Russon Financial, NES and NEF's negligence recruitment as independent contractors, or hiring as employees, and failure to train, monitor and supervise the activities of Bagby and Defendant Davidson as registered representatives, Plaintiffs were harmed in an amount exceeding the jurisdictional limits of this Court in an exact amount to be proven at trial. Additionally Plaintiff Janet Gupta suffered physical ailments which, together with the stress caused by the acts of Bagby and Defendant Davidson, proximately and foreseeably caused Plaintiff Janet Gupta severe emotional distress.

200.   Defendant MetLife, as a licensed insurance company conducting business in the State of California, had a duty to supervise the activities of Brandt, Bagby and Defendant Davidson as appointed agents of Defendant MetLife, who were selling to consumers, including Plaintiffs Sam Gupta and Janet Gupta, MetLife insurance products.

201.   Plaintiffs Sam Gupta and Janet Gupta are informed and believe and hereon allege that Bagby and Defendant Davidson were unfit appointed insurance agents based on their conduct as alleged herein above.

202.  As a direct and proximate cause of Defendant MetLife's negligent recruitment as independent contractors, or hiring as employees, and failure to train,

Exhibit A - 000073

monitor and supervise the activities of Brandt, Bagby and Defendant Davidson as appointment agents, Plaintiffs were harmed in an amount exceeding the jurisdictional limits of this Court in an exact amount to be proven at trial. Additionally, Plaintiff Janet Gupta suffered physical ailments, which, together with the stress caused by the acts of Bagby and Defendant Davidson, proximately and foreseeably caused Plaintiff Janet Gupta both physical injury and severe emotional distress. Plaintiff Sam Gupta is not asserting a claim for physical injury or emotional distress.

## PRAYER FOR RELIEF

## THE CLASS ACTION

## CAUSES OF ACTION NOS. ONE THROUGH FIVE

WHEREFORE, Class Action Named Plaintiffs respectfully pray that this Court grant the following relief:

## FOR THE FIRST CAUSE OF ACTION FOR NEGLIGENT TRAINING AND SUPERVISION

1. For special damages according to proof, all in a sum to be determined at time of trial;

2. For general damages according to proof, all in a sum to be determined at time of trial;

3. For other economic and consequential damages according to proof, all in a sum to be determined at trial.

## FOR THE SECOND CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION:

1. For special damages according to proof, all in a sum to be determined at time of trial;

**Case No.: BC446497**
THIRD AMENDED CONSOLIDATED COMPLAINT

Exhibit A - 000074

2.      For general damages according to proof, all in a sum to be determined at time of trial;

3.      For other economic and consequential damages according to proof, all in a sum to be determined at trial; and,

## FOR THE THIRD CAUSE OF ACTION FOR
## VIOLATION OF CALIFORNIA CORPORATIONS CODE §§ 25401 AND 25504.1:

1.      For special damages according to proof, all in a sum to be determined at time of trial;

2.      For general damages according to proof, all in a sum to be determined at time of trial;

3.      For other economic and consequential damages according to proof, all in a sum to be determined at trial; and,

4.      For punitive and exemplary damages according to proof.

## FOR THE FOURTH CAUSE OF ACTION FOR VIOLATION OF
## BUSINESS & PROFESSIONS CODE §17200, et seq.:

1.      An order, ordering all Defendants, their agents, servants, and employees, and all persons acting, directly or indirectly, in concert with them, to restore and disgorge all funds to each member of the Class acquired by means of any act or practice declared by this Court to be unlawful, unfair, or fraudulent and therefore constitute unfair competition under Section 17200, et seq. of the California Business and Professions Code;

2.      For injunctive relief pursuant to California Business & Professions Code § 17203, consisting of, inter alia: (a) a declaration that Defendants have engaged in unlawful and unfair and fraudulent business acts and practices in violation of California Business & Professions Code § 17200, et seq.; (b) a preliminary and/or permanent

66                                    **Case No.: BC446497**

Exhibit A - 000075

injunction enjoining Defendants and their respective successors, agents, servants, officers, directors, employees and all other persons acting in concert with them from pursuing the policies, acts and practices complained of herein and prohibiting Defendants from continuing such acts of unfair and illegal business practices;

3. For an equitable accounting; and,

4. Restitution, including, but not limited to, Plaintiffs' principal amounts.

### FOR THE FIFTH CAUSE OF ACTION FOR ELDER ABUSE:

1. For special damages according to proof, all in a sum to be determined at time of trial;

2. For general damages according to proof, all in a sum to be determined at time of trial;

3. For treble damages according to proof;

4. For reasonable attorneys' fees and costs.

### FOR CAUSES OF ACTION ONE THROUGH FIVE:

1. For an order certifying the case as a class action naming Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel;

2. For prejudgment interest;

3. For costs of suit; and,

4. For such other relief as may be appropriate.

### PRAYER FOR RELIEF
### THE GUPTAS' INDIVIDUAL CLAIMS
### CAUSES OF ACTION NOS. SIX THROUGH TEN

1. For compensatory damages, including all economic and non-economic damages allowable by law, according to proof.

2. For reasonable attorney's fees and costs

Exhibit A - 000076

3.    For prejudgment interest.

4.    For all other relief the Court deems just and proper.

And on the **Ninth Cause of Action**:

1.    For punitive damages.

## JURY DEMAND

Plaintiffs demand a trial by Jury for all issues which may be so resolved.

DATED this 4th[th] day of November, 2011

FOLEY BEZEK BEHLE & CURTIS, LLP
DONAHOO & ASSOCIATES
GOOD, WILDMAN, HEGNESS & WALLEY

By: Thomas G. Foley, Jr., SBN 65812
Justin P. Karczag, SBN 223764
Richard E. Donahoo, SBN 186957
Sarah Kokonas, SBN 262875
John Stillman, SBN 43731
Heidi Lewis, SBN 98046
Attorneys for Plaintiffs and the putative class

Exhibit A - 000077

| | | |
|---|---|---|
| **INDEX OF EXHIBITS** | | |
| **Exhibit No.:** | **Document Description** | **Identifying Paragraph No.:** |
| **A** | August 14, 2007 email from Cano to Brandt acting in her capacity as an agent of Defendant MetLife and NELICO to MetLife insurance agent Scott Brandt | 34 |
| **B** | January 5, 2006 correspondence from Tentser to Cano and Joseph Castro, a Managing Associate for New England Financial | 35 |
| **C** | January 5, 2007 email from Russon, using his official New England Financial email account, to Friedman forwarding to Friedman information on the $25 million MetLife policy | 51 |
| **D** | DLG's Welcome packet | 54 |
| **E** | A true and correct copy of MetLife's pamphlet published in 2007 describing Financial Abuse on elderly citizens | 160 |

**Case No.: BC446497**
THIRD AMENDED CONSOLIDATED COMPLAINT

Exhibit A - 000078

# EXHIBIT A

# EXHIBIT A

-----Original Message-----
From: Diane Cano [mailto:DianeC@Appliedequities.com]
Sent: Tuesday, August 14, 2007 12:54 PM
To: Scott Brandt.
Cc: Bruce Friedman; Kevin Keller; Sloane Kaplan; Brian Gledhill; Yvonne
Barajas
Subject:

Hi Scott,
This should provide guidelines for the premium finance processing. Let me
know if you anything else.
The following Standard Operating Procedures are to be followed for
effective and efficient processing  in either Premium Finance or Mortgage
Refinance in connection with the DLG investment pool:


1.       Supply by email or Fax the Applied Equities, Inc. Spreadsheet
Request Form to
dianec@appliedequities.com<mailto:dianec@appliedequities.com> and
briang@appliedequities.com<mailto:briang@appliedequities.com> or fax to
(626) 305-1264.  If sent to Brian, please cc Diane.

2.       Forward insurance illustration to Brian & Diane

3.       Spreadsheet will be created by the information supplied by
agent.

4.       Agent is to communicate weekly with Diane on status of case's
progression.

5.       Once insurance policy has been issued and accepted, agent will
forward policy invoice and payment instructions to Yvonne at
yvonneb@appliedequities.com<mailto:yvonneb@appliedequities.com>  and cc
dianec@appliedequities.com<mailto:dianec@appliedequities.com> for payment
setup.

6.       Promissory and Secured Note will be created and forwarded to
Client. Once signed notes have been returned to DLG for processing,
premium payment will be sent to insurance carrier.

7.       AEI is to be added to contract as Servicing Agent.

Diane will be the ultimate coordinator of cases that require either
Premium Financing or Mortgage Refinancing with the DLG investment pool.

Exhibit A Page 1 of 1

Exhibit A - 000080

# EXHIBIT B

# EXHIBIT B

01.05.2006

**Ms.Diane Cano,**
**AEI (DLG, Inc)**
**14930 Ventura Blvd., Suite 340,**
**Sherman Oaks, Ca. 91403**

**Cc: Mr. Joseph Castro,**
**Managing associate,**
**New England Financial,**
**18881 Van Karman, Suite 720**
**Irvine, Ca 92612**

Dear Diane and Joseph,

It was a pleasure working with you in 2005.

This letter was triggered by my meetings and conversations with tax advisor and few potential investors. The matter of fact is that unless this issue is clear to me I can not do it by myself nor convince other investors (even with double digit return of investment).

1.00 What type of investment is this?

- Is this an annuity (private or otherwise)
- REIT
- life insurance trust
- debt
- hybrid of the above mentioned
- something different altogether?

2.00 The structure and underlying components of the investment program that you are proposing are still not clear to us. Can you provide us with some form of visual representation what all the pieces of the investment program are and how they come together. Some of the pieces that I've gathered from our conversation thus far are the Jackson National Life Insurance and the DLG Secured Investment Note (SIN). What are the other pieces involved? Are JNL annuity and the DLG SIN fit together? Having this diagrammatically depicted would be the most helpful.

3.00 Other Specific Questions:

- Our inquiry into National Association of Securities Dealers indicates that neither DLG,Inc. nor AEI are not registered as Securities Dealers. There should be some form of registration with the Securities and Exchange Commission and regulatory offices of the state of California.
- The investor application terms this investment as being a Secured Investment Note (SIN). I have never heard of this type of investment and my research on

Exhbit B Page 1 of 2

the internet came up empty. Is a SIN a rare or special type of investment/financial vehicle? If not why is there such a dearth of information? Does a SIN go by a different, more common name? Can you provide some layman's literature explaining SINs and any benefit they may have over other vehicles such as REITs and annuities?

- In our meeting you did not mention that the overall investment strategy would ultimately include any upfront and or associated fees from insurance agents, accountants, or lawyers?
- Are there any trustees associated with this investment program?

Also, I still did not receive any documents from Polycomp proofing receipt of my investment of SEP IRA funds.

I think it's a good idea to clarify all of the issues above; it will definitely raise the confidence to a proper level.


Sincerely,
 Yakov Tentser,
1120 22nd street, Santa Monica, Ca.90403,
310.829.4179
mail@memate.com

# EXHIBIT C

# EXHIBIT C

| From: | Bruce Friedman |
|---|---|
| **Sent:** | Friday, January 05, 2007 2:31 PM |
| **To:** | Diane C |
| **Subject:** | FW: |
| **Attachments:** | friedman-25mil.pdf |

Diane,
Is this the best policy for me?
Bruce

**CONFIDENTIALITY NOTICE:** The information in this e-mail may be confidential and may be legally privileged. It is intended only for the use of the individual(s) named above. If you are the intended recipient, be aware that your use of any confidential or personal information may be restricted by state and federal privacy laws. If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this e-mail. If you have received this e-mail in error, please notify the sender and delete the message. Thank you.

**Circular 230 disclaimer**: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

---

**From:** trusson@la-finance.nef.com [mailto:trusson@la-finance.nef.com]
**Sent:** Friday, January 05, 2007 2:16 PM
**To:** Bruce Friedman
**Cc:** kdevereaux@la-finance.nef.com
**Subject:**

Bruce-
This is the info. on the approved policy.
I will see you Monday morning at 8:30 in my office.
Thanks

Tony N. Russon
Managing Partner

New England Financial
19935 Ventura Blvd., First Floor
Woodland Hills, CA  91364
818-999-2800, ext. 1321

Exhibit C Page 1 of 2

CA Ins. Lic. No. 0469828
A Registered Representative of New England Securities

New England Financial is the service mark for New England Life Insurance Company and related companies. Securities products and investment advisory services are offered through registered representatives and financial advisers respectively of New England Securities, a broker/dealer (member NASD/SIPC) and a registered investment adviser, Boston, MA 02116.

Please do not leave any securities trade requests by email as orders cannot be processed in this manner.

"WorldSecure <nef.com>" made the following annotations on 01/05/07 17:04:04
--------------------------------------------------------------------------

The information contained in this message may be CONFIDENTIAL and is for the intended addressee only. Any unauthorized use, dissemination of the information, or copying of this message is prohibited. If you are not the intended addressee, please notify the sender immediately and delete this message.
==========================================================================
==================

Exhibit C Page 2 of 2

Exhibit A - 000086

# EXHIBIT D

# EXHIBIT D

Exhibit A - 000087



*Offering More*
*To Meet Your*
*Financial Needs*

Exhibit A - 000088

**Forward Looking Statements May Not Be Reliable**

This Information Circular and other written reports and oral statements made from time to time by us may contain forward-looking statements. Such statements may be identified by the use of forward-looking words such as "may," "will," "expects," "plans," "estimates," "forecasts," "projects," "anticipates," "believes," or words of similar meaning. Forward looking statements are likely to address such matters as our business strategy, future operating results, future sources of funding for mortgage loans purchased by us, future economic conditions, and other forward-looking information. When considering such forward-looking statements you should keep in mind the risk factors and other cautionary statements in this Information Circular. Although we believe that the expectations reflected in such forward-looking statements are based on reasonable assumptions, there are certain factors, in addition to these risk factors and cautioning statements, such as general economic conditions, local real estate conditions, adequacy of reserves, weather, or other natural occurrences that might cause a difference between actual results and those forward-looking statements. Some of the factors which could affect future results are set forth in the discussion under "Management's Discussion and Analysis of Risk Factors" at page 18.

**DESCRIPTION OF BUSINESS**

**HISTORY AND ORGANIZATION**

Diversified Lending Group, Inc. ("DLG," also referred to in this report as "the Company," "we," "us," "our" or "The Fund") is a licensed mortgage company is the State of California. DLG was organized April 16, 2003 and is engaged in the acquisition and operation of income producing real estate, real estate lending, insurance premium financing strategies and financial service brokerage business and private investment pools in the contiguous 48 states. The business has been conducted as a privately held corporation continuously since 1983 under the auspices of the General Manager ("Manager").

**OUR BUSINESS STRATEGY**

We will seek to invest substantially all of our net investable funds and distribution reinvestments in real property and mortgage loans, after paying applicable fees and expenses, if any. The allocation of our investments between real property and mortgages will be at the discretion of our Manager depending on the amounts available for investment and investment opportunities. We anticipate investing approximately 70% of our net investable funds in real property and 30% in mortgage loans. However, such percentages are only a guideline, the actual percentages may vary. Although the Mortgage Program Guidelines of the North American Securities Administrators Association, Inc. and the Real Estate Program Guidelines of the North American Securities Administration Association, Inc. (together the "NASAA Guidelines") require reserves of not less than 1% of the Investment proceeds, at least 3% of net investable funds will be held as a working capital cash reserve.

Exhibit D Page 2 of 72

Exhibit A - 000089

## EMPLOYEES

As of March 1, 2007, "The Company" employed 17 personnel. All employees are at-will and none are covered by collective bargaining agreements.

## REAL ESTATE PROGRAM OBJECTIVES

We anticipate investing approximately 70% of our net investable funds in real property. However, this percentage is only a guideline, the actual percentage may vary.

We will invest in income producing multifamily residential units, office, industrial and retail properties, assisted living facilities, and other income-producing real property, such as hotels and resorts, casinos, restaurants, parking lots, amusement parks, or other leasehold properties. We intend to apply our prior experience in investing in mortgage loans to our evaluation and investment in real property. Accordingly, we intend to invest in real property throughout the areas in which "The Company" and its correspondents have experience, within the contiguous 48 states. We intend to purchase properties in the range of $2 million to $30 million. However, our actual purchases may vary from these guidelines.

Our principal investment objectives are to:

- Provide cash distributions from the rental income earned on our properties;
- Preserve your capital contribution; and
- Realize growth in the value of our properties.

We cannot assure you that we will achieve these objectives or that your capital will not decrease. "The Company" may change its' overall investment strategy, subject to the fiduciary obligations that it owes to all investors. However, "The Company" may not change the investment objectives above, except upon approval of a majority of our Board. "The Company" has no authority to do anything that would impair our ability to carry on our ordinary business as a mortgage or real property investor.

## MORTGAGE PROGRAM OBJECTIVES

We anticipate investing approximately 30% of our net investable funds in mortgage loans. However, this percentage is only a guideline, the actual percentage may vary.

Our principal investment objectives are to:

- Produce revenues from the interest income on our mortgage loans;
- Provide cash distributions from the net income earned on our mortgage loans;
- Preserve your capital contributions; and
- Reinvest to the extent permissible, payments of principal and proceeds of prepayments, sales and insurance proceeds, net of expenses.

3

Exhibit A - 000090

We intend to invest in mortgage loans throughout the areas in which "The Company" and its correspondents have experience, primarily Arizona, California, Hawaii, Nevada and Texas. Depending on the market and on our performance, we may expand our mortgage investments throughout the United States. However, "The Company" has limited experience outside of the Southwest. The loans we invest in will be selected by "The Company" from among loans originated by affiliated or non-affiliated mortgage brokers.

When "The Company" or someone else originates a loan for us, that person identifies the borrower, processes the loan application, makes or invests in the loan, and brokers or sells the loan to us. We believe that our loans are attractive to borrowers because of the expediency of "The Company's" loan approval process, which takes about 10 to 20 days.

We believe there is a significant market opportunity to invest in mortgage loans to borrowers whose financing needs are not met by traditional mortgage lenders. Factors that often preclude such borrowing are perceived credit risks (based on standards created by the lenders), bank aversion to cyclical conditions in markets, and other industry risks. As a non-conventional lender, we are more willing to invest in mortgage loans to borrowers that conventional lenders would not deem to be creditworthy. See "Management's Discussion and Analysis of Risk Factors" at page 18. Because of our willingness to fund riskier loan types and borrowers, borrowers are willing to pay us an interest rate that is above the rates charged by conventional lenders. We intend to invest in a significant amount of loans in which the real property being developed is not generating any income to the borrower. We anticipate investing 15% to 25% of our mortgage assets in raw and unimproved land loans, 10% to 25% in acquisition and development loans, 10% to 70% in construction loans, 20% to 50% in commercial property loans, and approximately 5% of our mortgage assets in residential property loans. Our second mortgage investments are riskier because our rights will be subject to the rights of the first mortgage lender. The "balloon payment" loans and bridge loans in which we invest are riskier because the borrower's repayment depends on its ability to refinance the loan or develop the property so it can refinance the loan. We anticipate investing up to 50% of our mortgage assets in bridge loans. The actual allocations may vary materially from the guidelines above depending on the amount available for investment in mortgages. All of these loans are described in greater detail under "Types of Loans We Invest In" at page 14.

In addition to the policies contained in this Information Circular, "The Company" may establish additional written policies on loans and borrowings.

**REAL ESTATE PROGRAM POLICIES AND GUIDELINES**

We primarily invest in income producing multifamily residential units, office, industrial, and retail properties, assisted living facilities and other income-producing real property, such as hotels and resorts, casinos, restaurants, parking lots, amusement parks or other leasehold properties. We intend to primarily lease out the real property owned by us. We intend to purchase our real property through cash transactions. However, if we are able to obtain favorable financing for the purchase of real property at a later date, we may choose to finance the purchase of our real property. We will not finance property to greater than 35% Loan to Value of the property.

---

4

Exhibit A - 000091

By investing in different types of properties, we believe we will reduce our overall portfolio risk and enhance our overall portfolio returns. No single property will comprise more than 10% of our assets.

We may acquire income-producing properties which have been developed with funds provided by us pursuant to our mortgage program. For example, we may make a loan to a developer for the purchase of unimproved land. After the developer has improved the land, we may then purchase the real property.

We will seek to invest in properties that will satisfy our investment objectives of maximizing monthly and/or quarterly distributions, preserving our investors' capital contributions and realizing capital appreciation. We intend to invest in properties located in the United States.

"The Company" has previously been engaged in the business of direct investment in real property. In making investment decisions, "The Company" will consider relevant real estate property and financial factors, such as the location of the property, its income-producing capacity, the prospects for long-range appreciation, return on capital and its liquidity, and income tax considerations. "The Company" will have absolute discretion with respect to the selection of specific investments.

We will obtain appraisals for each property in which we invest. Additionally, we will rely on our own independent analysis of various criteria, including such appraisals, in determining whether or not to invest in a particular property. Appraisals are estimates of value and should not be relied upon as measures of true worth or realizable value.

Our obligation to purchase any property will generally be conditioned upon the delivery and verification of certain documents from the seller or developer, including, environmental reports, evidence of marketable title, audited financial statements covering recent operations of properties with operating histories and title and liability insurance policies. We will attempt to ensure that all of our properties are adequately insured to cover casualty losses. However, there are types of losses which are uninsurable or not economically insurable or may be insurable subject to limitations, such as large deductibles or co-payments.

Our investments generally will take the form of holding fee title in the properties we acquire. We will acquire such interests directly or through wholly owned subsidiaries, which may be formed in the future. We may also invest in real property through joint ventures pursuant to the NASAA Guidelines. In no event will we acquire an interest in real property through any structure which would cause us to be deemed an investment company under the Investment Company Act of 1940.

Exhibit A - 000092

## LEASING

The terms and conditions of any lease that we enter into with our tenants may vary substantially. However, we expect that our leases will be the type customarily used between landlords and tenants in the geographic area where the property is located. We intend to maintain the diversity of our portfolio.

*Multifamily.* Multifamily leases provide for terms of 6 months to 3 years and require the tenant to pay monthly lease payments and a security deposit equal to one month's rent. Under such leases, the landlord is generally directly responsible for all real estate taxes, sales and use taxes, special assessments, insurance and building repairs.

*Office.* Office leases generally have terms of 3 to 10 years and require tenants to pay monthly lease payments and a security deposit equal to one month's rent. The landlord may be responsible for all real estate taxes, sales and use taxes, special assessments, insurance and building repairs, utilities and other building operation and management costs.

*Industrial.* Industrial leases generally have terms of 5 to 20 years and require tenants to pay monthly lease payments and a security deposit equal to one month's rent. The tenant typically is responsible for its shares of building operation and management costs, including real estate taxes, sales and use taxes, special assessments, insurance and building repairs and utilities.

*Retail.* Retail leases generally have terms of 3 to 5 years with multiple options and require tenants to pay monthly lease payments and a security deposit equal to one month's rent. The tenant typically is responsible for its shares of building operation and management costs, including real estate taxes, sales and use taxes, special assessments, insurance and building repairs and utilities.

*Assisted Living.* Assisted living leases have terms of 1 to 2 years and require tenants to pay monthly lease payments and a security deposit equal to one month's rent. The landlord is generally directly responsible for all real estate taxes, sales and use taxes, special assessments, insurance and building repairs.

We will execute new tenant leases and tenant lease renewals, expansions and extensions with terms that are dictated by the current market conditions. If it is economically practical, we will verify the creditworthiness of each tenant. If we verify the creditworthiness of each tenant, we will use industry credit rating services to determine the creditworthiness of potential tenants and any guarantors of each potential tenant. We will also obtain relevant financial data from potential tenants and guarantors, such as income statements and balance sheets and cash flow statements. We may require personal guaranties from shareholders of our corporate tenants. However, there can be no guarantee that the tenants selected will not default on their leases.

Exhibit D Page 6 of 72

Exhibit A - 000093

Tenant improvements will be funded by us from our cash flow or our credit line. When one of our tenants vacates its space in one of our buildings, we may, in order to attract new tenants, be required to expend funds for tenant improvements. In addition, we may provide free rent for a certain time period, provide tenant improvement allowances, and provide other concessions in order to attract new tenants.

## BORROWING POLICIES

We may borrow funds to acquire our properties. We will not incur debt in an amount greater than the sum of 35% of the aggregate purchase price of all the real property owned by us plus 20% of the aggregate fair market value of all our other assets.

"The Company" will have the authority to select the lender and negotiate the terms of the loan.

## PARTICIPATION

We may also participate in the operation and purchase of real property with other purchasers, including affiliates as permitted by NASAA Guidelines. We will own any jointly purchased real property in direct fee title.

We will participate in the operation and/or purchase with non-affiliates if we acquire a controlling interest, alone or with any of our publicly registered affiliates meeting the requirements below, in such participation. A controlling interest would enable us to direct or cause the direction of the management and policies of such participation, which would include the authority to:

- review all material contracts;
- cause a sale or refinancing of the property or our interest therein subject in certain cases to limitations imposed by the participation agreement between the parties;
- approve budgets and major capital expenditures, subject to a stated minimum amount;
- veto any sale or refinancing of a property, or alternately, to receive a specified preference on sale or refinancing proceeds; and
- exercise a right of first refusal on any desired sale or refinancing by a participant of its interest in a property except for transfer to its affiliate.

In the event of participation with a publicly registered affiliate, the investment objectives of the participants shall be substantially identical. There shall be no duplicate fees. The compensation to the sponsors must be substantially identical, and the investment of each participant must be on substantially the same terms and conditions. Each participant shall have right of first refusal to buy the other's interest if the co-participant decides to sell its interest. We may participate in joint ventures or partnerships with affiliates that are not publicly registered if, the investment is necessary to relieve "The Company" from any commitment to purchase a mortgage entered into prior to the closing of the offering, there are no duplicate fees, the investment of each entity is on the same terms and condition and the participants have a right of first refusal to buy if "The Company" wishes to sell a mortgage held in the joint venture.

7

Exhibit A - 000094

We will not give any affiliates any consideration similar to rebates or give-backs or enter into reciprocal arrangements with affiliates that might be entered into in lieu of participations.

## DISPOSITION

We anticipate that periodically, we may sell our properties. We intend to hold various real properties in which we invest until such time as a sale or other disposition appears to be advantageous to achieve our investment objectives or until it appears that such objectives will not be met. We will consider multiple factors in deciding on whether or not to dispose of our properties, including potential capital appreciation, cash flow and income tax considerations. We will decide when to sell our properties based upon economic and market conditions. "The Company" will have absolute discretion as to whether and when to sell a property, and we will have no obligation to sell properties at any particular time.

"The Company" or one of its affiliates may receive a real estate commission of 3% if "The Company" or one of its affiliates acts as our broker in the sale of real property.

## MORTGAGE PROGRAM POLICIES AND GUIDELINES

We anticipate that a majority of our collateral on our mortgage loans will be the real property that the borrower is purchasing, refinancing or developing with the funds that we make available. We sometimes refer to these real properties as the security properties. While we may invest in other types of loans, we believe that most of the loans in which we invest will have been made to real estate developers with a lesser proportion of loans involving land loans and bridge financing. Our mortgage investments will not be insured or guaranteed by any government agency. We will not give any rebates or enter into any reciprocal agreement with any affiliates that enables "The Company" or its affiliates to receive a rebate.

"The Company" will continuously evaluate prospective investments, select the mortgages in which we invest and make all investment decisions on our behalf in its sole discretion. You are not entitled to act on any proposed investment. In evaluating prospective mortgage loan investments, "The Company" considers such factors as the following:

- the ratio of the amount of the investment to the value of the property by which it is secured;
- the potential for capital appreciation or depreciation of the property securing the investment;
- expected levels of rental and occupancy rates (if applicable);
- potential for rental increases (if applicable);
- current and projected revenues from the property;
- the status and condition of the record title of the property securing the investment;
- geographic location of the property securing the investment;
- the financial condition of the borrower and its principals, if any, who guarantee the loan; and
- the previous business and borrowing experience of the borrower.

8

Exhibit A - 000095

"The Company" may obtain our loans from non-affiliated mortgage brokers and previous borrowers, and by solicitation of new borrowers in those states where permissible. We may purchase existing loans that were originated by third party lenders and acquired by "The Company" to facilitate our purchase of the loans. There are no specific requirements or guidelines governing "The Company's" discretion in determining which mortgage loans it will place with us and which it will place with other funding sources.

When selecting mortgage loans for us, "The Company" will adhere to the following guidelines, which are intended to control the quality of the collateral given for our loans:

1. *Priority of Mortgages.* We anticipate investing at least 90% of our assets allocated for mortgages in secured first mortgages. First mortgages are mortgages secured by a full or divided interest in a first deed of trust secured by the property. Other mortgages that we invest in on the security property will not be junior to more than one other mortgage. The only subordinated mortgages we currently intend to invest in at this time are second mortgages, although in the future we may invest in wraparound, or all-inclusive, mortgages.

2. *Loan-to-Value Ratio.* We do not anticipate that the amount of our loan combined with the outstanding debt secured by a senior mortgage on a security property will exceed the following percentage of the appraised value of the security property at origination:

| Type of Secured Property | Loan-to-Value Ratio |
|---|---|
| Residential | 75% |
| Unimproved Land | 60% (of the anticipated as-if developed value) |
| Acquisition and Development | 60% (of the anticipated as-if developed value) |
| Commercial Property | 75% (of the anticipated post-development value) |
| Construction | 75% (of the anticipated as-if developed value) |
| Bridge | 75% (of the anticipated as-if developed value) |
| Leasehold Interest | 75% (of value of leasehold interest) |

9

Exhibit D Page 9 of 72

We may deviate from these guidelines under certain circumstances. For example, "The Company", in its discretion, may increase any of the above loan-to-value ratios if, in its opinion, a given loan is supported by credit adequate to justify a higher loan-to-value ratio, including personal guarantees. Occasionally, our collateral may include personal property as well as real property. We do not have specific requirements with respect to the projected income or occupancy levels of a property securing our investment in a particular loan. These loan-to-value ratios will not apply to financing offered by us to the purchaser of any real estate acquired through foreclosure, or to refinance an existing loan that is in default when it matures. In those cases, "The Company", in its sole discretion, shall be free to accept any reasonable financing terms it deems to be in our best interest. Nevertheless, in no event will the loan-to-value ratio on any loan exceed 80% of the independently appraised as-if developed value of the property at the time of loan origination. The target loan-to-value ratio for our loan portfolio as a whole is approximately 70%.

"The Company" will receive an appraisal at the time of loan underwriting, which may precede the placement of the loan with us. Copies of these appraisals will not be available for your review at the offices of "The Company". Generally, these appraisals will be completed within twelve months prior to funding of the loan. Also, the appraisal may have been previously performed for the borrower. The appraisal may be for the current estimated "as-if developed" value of the property. We will engage appraisers who are licensed or qualified as independent appraisers and certified by or hold designations from one or more of the following organizations: the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the National Association of Review Appraisers, the Appraisal Institute, the Society of Real Estate Appraisers, M.A.I., Class IV Savings and Loan appraisers or from among appraisers with other qualifications acceptable to "The Company".

However, appraisals are only estimates of value and cannot be relied on as measures of realizable value. The appraisal may be for the current estimated "as-if developed" or "as-if completed" value of the property or, in the case of acquisition and development loans or construction loans, for the estimated value of the property upon completion of the project. As-if completed or as-if developed values on raw land loans or acquisition and development loans often dramatically exceed the immediate sales value and may include anticipated zoning changes, selection by a purchaser against multiple alternatives, and successful development by the purchaser, upon which development is dependent on availability of financing. An employee or agent of "The Company" will review each appraisal report and will conduct a physical inspection for each property. A physical inspection includes an assessment of the subject property, the adjacent properties and the neighborhood but generally does not include entering any structures on the subject property.

We depend upon our real estate security to protect us on the loans that we make. We depend upon the skill of appraisers to value the security underlying our loans. However, notwithstanding the experience of the appraisers, they may make mistakes, or the value of the real estate may decrease due to subsequent events. In addition, most of the appraisals will be prepared on an "as if-developed basis." If the loan goes into default prior to completion of the project, the market value of the property may be substantially less than the appraised value. As a result, there may be less security than anticipated at the time the loan was originally made.

---

10

Exhibit A - 000097

3. *Terms of Mortgage Loans.* Most of our loans will range from a six-month term to a five-year term. Our original loan agreements, however, will permit extensions to the term of the loan by mutual consent. Such extensions will generally be provided on loans where the original term was 12 months or less and where a borrower requires additional time to complete a construction project or negotiate take out financing. The loans and/or extensions will be subject to the following conditions:

- Borrowers will obtain title insurance coverage for all loans, with the title insurance policy naming us as the insured and providing title insurance in an amount at least equal to the principal amount of the loan. Title insurance insures only the validity and priority of our deed of trust, and does not insure us against loss by other causes, such as diminution in the value of the security property.

- Borrowers will obtain fire and casualty insurance for all loans secured by improved real property, naming us as loss payee in an amount sufficient to cover the replacement cost of improvements.

- All insurance policies, notes, deeds of trust or mortgages, escrow agreements, and any other loan documents for a particular transaction will name us as payee and beneficiary.

4. *Note Hypothecation.* We may also acquire mortgage loans secured by assignments of secured promissory notes. These mortgage loans must satisfy our stated investment standards, including our loan-to-value ratios, and also may not exceed 80% of the principal amount of the assigned note. For example, if the property securing a note we acquire is commercial property, the total amount of outstanding debts secured by the property must not exceed 75% of the appraised as-if developed value of the property, and the mortgage loan will not exceed 80% of the principal amount of the assigned note. For mortgage loans secured by promissory notes, we will rely on the appraised as-if developed value of the underlying property, as determined by a written appraisal which was conducted within the then-preceding twelve months at the time of loan origination. If an appraisal was not conducted within that period, then we will arrange for a new appraisal to be prepared for the property.

5. *Participation.* We may also participate in loans with other lenders, including affiliates as permitted by NASAA Guidelines, by providing funds for or purchasing an undivided interest in a loan meeting our investment guidelines described above. We will directly own any loans purchased jointly with other lenders. We would be more likely to participate in loans if, for example:

- we did not have sufficient funds to invest in an entire loan;
- we are seeking to increase the diversification in our loan portfolio; or
- "The Company" originated a loan that fit within our investment guidelines but it would constitute more than 10% of our anticipated capital contribution or otherwise be disproportionately large given our then existing portfolio.

---

11

Exhibit A - 000098

We will participate in loans with non-affiliates if we acquire a controlling interest, alone or with any of our publicly registered affiliates meeting the requirements below, in such participation. A controlling interest would enable us to direct or cause the direction of the management and policies of such participation, which would include the authority to:

- review all material contracts;
- cause a sale of the mortgage or our interest therein subject in certain cases to limitations imposed by the participation agreement between the parties;
- approve budgets and major capital expenditures, subject to a stated minimum amount;
- veto any sale of a mortgage, or alternatively, to receive a specified preference on sale or proceeds; and
- exercise a right of first refusal on any desired sale by a participant of its interest in a loan except for transfer to its affiliate.

In the event of participation with a publicly registered affiliate, the investment objectives of the participants shall be substantially identical. There shall be no duplicate fees. The compensation to the sponsors must be substantially identical, and the investment of each participant must be on substantially the same terms and conditions. Each participant shall have a right of first refusal to buy the other's interest if the co-participant decides to sell its interest. We will not participate in joint ventures or partnerships with affiliates that are not publicly registered except as permitted by NASAA Guidelines.

In addition to participation agreements, we may enter into intercreditor agreements. Pursuant to intercreditor agreements, a co-lender may participate in certain loans with us. In the event of borrower non-performance, the intercreditor agreement generally provides the Lead Lenders with some or all of the rights to either (i) continue to remit to the co-lender the interest due on the participation amount; (ii) substitute an alternative loan acceptable to the co-lender; or (iii) repurchase the participation from the co-lender for the outstanding balance of the participation plus accrued interest.

Consequently, mortgage loan financing under an intercreditor arrangement is accounted for as a secured borrowing in accordance with SFAS No. 140, Accounting for Transfers and Servicing of Financial Assets and Extinguishments of Liabilities. We believe that it is in our best long term interest to have in place relationships with third parties willing to enter into such arrangements in order to expand our funding sources. We will pursue this strategy, even when we have substantial uninvested funds, in order to maintain relationships with such third party lenders.

6. *Diversification.* The NASAA Guidelines provide that we neither invest in nor make mortgage loans on any one property which would exceed, in the aggregate, an amount equal to 20% of our capital nor may we invest in or make mortgage loans to or from any one borrower which would exceed, in the aggregate, an amount greater than 20% of our capital. As of March 1, 2007, we had no mortgage loans that accounted for more than 20% of our investors' equity. Our initial investments may exceed the NASAA Guidelines until we have sufficient funds to further diversify. NASAA Guidelines permit the minimum standards to be exceeded if the mortgage loans are made pursuant to sound underwriting criteria.

---

12

Exhibit A - 000099

7. *Reserve Fund.* Although the NASAA Guidelines require reserves of not less than 1%, we will establish contingency working capital reserves of at least 3% of our net investable funds to cover our unexpected cash needs.

8. *Credit Evaluations.* Before making a loan, "The Company" must first determine that a borrower has sufficient equity in the security property to meet the loan-to-value ratios described above. "The Company" may also consider the income level and creditworthiness of a borrower to determine its ability to repay the mortgage loan.

9. *Sale of Mortgage Investments.* Although "The Company" has no plan to do so, "The Company" may sell our mortgage loans or interests in our loans to either affiliates or non-affiliated parties when "The Company" believes that it is advantageous to us to do so. However, we do not expect that the loans will be marketable or that a secondary market will ever develop for them.

## TYPES OF LOANS WE INVEST IN

We primarily invest in loans which are secured by first or second mortgages on real property. Such loans fall into the following categories: raw and unimproved land, acquisition and development, construction, commercial, residential and bridge loans. We intend to make investments based upon the guidelines set forth below. However, the actual allocation may vary from the guidelines below depending on the amount available for investment in mortgages, and may vary materially.

### Raw and Unimproved Land Loans

Approximately 15% to 25% of our mortgage assets may be invested in loans made for the purchase or development of raw, unimproved land. Generally, we determine whether to invest in these loans based upon the appraised value of the property and the borrower's actual capital investment in the property. Typically, we will invest in loans with a face value of up to 60% of the as-if developed appraised value of the property and we usually require that the borrower has invested in the property actual capital expenditures of at least 25% of the property's value. As-if developed values on raw and unimproved land loans often dramatically exceed the immediate sales value and may include anticipated zoning changes, selection of a purchaser against multiple alternatives, and successful development by the purchaser; upon which development is dependent on availability of financing. These loans are riskier because the property is not capable of generating any income, as compared to a commercial property.

### Acquisition and Development Loans

Approximately 10% to 25% of our mortgage assets may be invested in acquisition and development loans. These loans enable borrowers to acquire and/or complete the basic infrastructure and development of their property prior to the construction of buildings or structures. Such development may include installing utilities, sewers, water pipes, and/or streets. Generally, we will invest in loans with a face value of up to 60% of the as-if developed appraised value of the property. Such appraisals have the same valuation limitations as raw and unimproved land loans, described above.

13

Exhibit A - 000100

### Construction Loans

Approximately 10% to 70% of our mortgage assets may be invested in construction loans. A construction loan provides funds for the construction of one or more structures on developed land. Funds under this type of loan will generally not be forwarded to the borrower until work in the previous phase of the project has been completed and an independent inspector has verified certain aspects of the construction and its costs. We will typically require material and labor lien releases by the borrower per completed phase of the project. We will review the appraised value of the property and proposed improvements, and will arrange loans for up to 75% of the as-if developed appraised value. Such appraisals have the same valuation limitations as raw and unimproved land loans, described above. These loans are riskier than loans secured by income producing properties because during construction the borrower does not receive income from the property to make payments on the loan.

### Commercial Property Loans

Approximately 20% to 50% of our mortgage assets may be invested in commercial property loans. Commercial property loans provide funds to allow commercial borrowers to acquire income-producing property or to make improvements or renovations to the property in order to increase the value or net operating income of the property so that it may qualify for institutional refinancing. We will review the appraised value of the property and will invest in loans for up to 75% of such appraised value. To the extent such loans include renovations, appraisals may include as-if developed valuations with the limitations described above. These loans are riskier because there is no assurance that the commercial borrower will qualify for the refinancing or that the improvements will yield the anticipated increase in value and income.

### Residential Loans

Approximately 5% of our mortgage assets may be invested in residential loans. Such loans facilitate the purchase or refinance of one to four family residential property units provided the borrower uses one of the units on the property as such borrower's principal residence. We will review the appraised value of the property and will invest in loans for up to 75% of such appraised value.

### Bridge Loans

Up to 50% of our mortgage assets may be invested in bridge loans. These loans provide interim financing to enable commercial borrowers to qualify for permanent refinancing. We will review the appraised value of the property and will generally invest in loans of up to 75% of that value. Such appraisals may be based on either an as-is basis or as-if developed basis, depending on the circumstances, and therefore, may not be an accurate indicator of the fair value of the property. These loans are riskier because there is no assurance that the developer will qualify for the refinancing.

---

Exhibit D Page 14 of 72

Exhibit A - 000101

### Collateral

The types of collateral that will secure the loans brokered by us include a first deed of trust, a second deed of trust or a leasehold interest.

### First Deed of Trust

The majority of the loans invested in by us will be secured by a first deed of trust. Thus, we will have rights as a first mortgage lender of the collateralized property.

### Second Deed of Trust

We will not invest in a second deed of trust unless (i) such loan involves the sale of real property owned by us, or (ii) we also act as the first mortgage lender on the loan.

### Leasehold Interest

We may invest in loans where the collateral is an interest in a lease. These loans are riskier because the only rights we will have are to assume the borrower's obligations under the lease and to use the property for the length of time and in the limited manner permitted under the lease.

## PREPAYMENT PENALTIES AND EXIT FEES

We anticipate that a majority of the loans we invest in will not contain prepayment penalties or exit fees. If our loans are at a high rate of interest in a market of falling interest rates, the failure to have a prepayment penalty provision or exit fee in the loan allows the borrower to refinance the loan at a lower rate of interest, thus providing a lower yield to us on the reinvestment of the prepayment proceeds. However, these loans will usually be written with relatively high minimum interest rates, which we would expect to minimize the risk of lower yields.

## EXTENSIONS TO TERM OF LOAN

Our original loan agreements will permit extensions to the term of the loan by mutual consent. Such extensions are generally provided on loans where the original term was 12 months or less and where a borrower requires additional time to complete a construction project or negotiate take out financing. When we initially grant loans we, among other things, review the financial condition of the borrower and any guarantors, perform a title search, and receive an appraisal. Based upon our review of the factors above as well as other considerations, we decide whether and for how long a loan should be granted. Loan extensions are often contemplated at the time of the initial loan, usually for 90 day increments. Generally, loan extensions will only be made for up to one year from the original date of maturity of the loan. We generally provide extensions on loans which are in full compliance with the terms of the loan. We reevaluate loans on a quarterly basis whether or not the loans are made pursuant to an extension.

15

Exhibit A - 000102

## BALLOON PAYMENT

We anticipate that at least 90% of the loans we invest in or purchase will require the borrower to make a "balloon payment" on the principal amount upon maturity of the loan. There are no specific criteria used in evaluating the credit quality of borrowers for mortgage loans requiring balloon payments. Furthermore, a substantial period of time may elapse between the review of the financial statements of the borrower and the date when the balloon payment is due. As a result, there is no assurance that a borrower will have sufficient resources to make a balloon payment when due. To the extent that a borrower has an obligation to pay mortgage loan principal in a large lump sum payment, its ability to repay the loan may be dependent upon its ability to sell the property, obtain suitable refinancing or otherwise raise a substantial amount of cash. As a result, these loans can involve a higher risk of default than loans where the principal is paid at the same time as the interest payments.

## REPAYMENT OF MORTGAGES ON SALES OF PROPERTIES

We may require a borrower to repay a mortgage loan upon the sale of the mortgaged property rather than allow the buyer to assume the existing loan. We will require repayment if we determine that repayment appears to be advantageous to us based upon then-current interest rates, the length of time that the loan has been held by us, the creditworthiness of the buyer and our objectives. We will either invest our net investable funds from any capital transaction in new mortgage loans or hold the net investable funds as cash. These net investable funds will also include the principal of a loan deemed to be repaid for tax purposes as a result of the nature of a loan modification or loan extension. Capital transactions include payments of principal, foreclosures and prepayments of mortgages, to the extent classified as a return of capital under the Internal Revenue Code, and any other disposition of a mortgage or property.

## VARIABLE RATE LOANS

Occasionally we may acquire variable rate loans. Variable rate loans originated by "The Company" may use as indices the one and five year Treasury Constant Maturity Index, the Prime Rate Index and the Monthly Weighted Average Cost of Funds Index for Eleventh District Savings Institutions (Federal Home Loan Bank Board). "The Company" may negotiate spreads over these indices of 2.5% to 5.5%, depending upon market conditions when the loan is made.

It is possible that the interest rate index used in a variable rate loan will rise (or fall) more slowly than the interest rate of other loan investments available to us. "The Company" attempts to minimize this interest rate differential by tying variable rate loans to indices that are sensitive to fluctuations in market rates. Additionally, most variable rate loans originated by "The Company" contain provisions under which the interest rate cannot fall below the initial rate.

16

Exhibit A - 000103

## INTEREST RATE CAPS

Variable rate loans generally have interest rate caps. We anticipate that the interest rate cap will be a ceiling that is 6-7% above the starting rate with a floor rate equal to the starting rate. For these loans there is the risk that the market rate may exceed the interest cap rate.

Variable rate loans of five to ten year maturities are not assumable without the prior consent of "The Company". We do not expect to invest in or purchase a significant amount of other assumable loans. To minimize our risk, any borrower assuming an existing mortgage loan will be subject to the same underwriting criteria as the original borrower.

## BORROWING

We may incur indebtedness:

- to finance our investments in mortgage loans,
- to prevent a default under mortgage loans that are senior to our mortgage loans,
- to discharge senior mortgage loans if this becomes necessary to protect our investment in mortgage loans, or
- to operate or develop a property that we acquired under a defaulted loan.

At no time will our indebtedness exceed 35% of the fair market value of our mortgage loans. This indebtedness may be with recourse to our assets. As of March 1, 2007, "The Company" has not created any indebtedness.

In addition, we may enter into structured arrangements with lenders in order to provide them with a senior position in mortgage loans which we might jointly fund. For example, we might establish a wholly-owned special purpose corporation which would borrow funds from an institutional lender under an arrangement where the resulting mortgage loans would be assigned to a trust, and the trust would issue a senior certificate to the institutional lender and a junior certificate to the special purpose corporation. This would assure the institutional lender of repayment in full prior to our receipt of any repayment on the jointly funded mortgage loans.

## NO TRUST OR INVESTMENT COMPANY ACTIVITIES

We have not qualified as a real estate investment trust under the Internal Revenue Code, and therefore we are not subject to the restrictions on its activities that are imposed on real estate investment trusts. We intend to conduct our business so that we are not an "investment company" within the meaning of the Investment Company Act of 1940. Last, we intend to conduct our business so that we are not to be deemed a "dealer" in mortgage loans for federal income tax purposes.

---

17

Exhibit A - 000104

## MANAGEMENT'S DISCUSSION AND ANALYSIS OF RISK FACTORS

There are risks associated with investing in the "the Fund," most of which "The Company" does not control, such as trends in the economy, general interest rates, income tax laws, governmental regulations, and the availability of satisfactory investment opportunities. You cannot properly evaluate whether to invest in the Fund without careful analysis of your own investment objectives and risk tolerance level. Accordingly, it is important for you to discuss any intended investment in the Fund with your own professional advisors before making a decision.

This investment may not be suitable for all investors. Unit values and returns will fluctuate. Investors are cautioned that data based on less than five years may not be sufficient to establish a track record on which investment decisions should be made. The Fund is not guaranteed and past performance may not be repeated.

18

Exhibit A - 000105

## CONSOLIDATED BALANCE SHEETS December 31, 2006 and 2005

| As at December 31, | | 2006 | | 2005 |
|---|---|---|---|---|
| **Assets** | | | | |
| Current | | | | |
| Cash | $ | 121,031,813 | $ | 135,283,738 |
| Marketable securities | | 25,840,504 | | 12,467,785 |
| Accounts receivable | | 13,598,521 | | 15,843,965 |
| Prepaid expenses | | 1,847,695 | | 1,258,478 |
| Current portion of other assets | | 1,425,252 | | 949,300 |
| Current portion of mortgages and loans | | 9,584,575 | | 6,876,011 |
| | | 173,328,360 | | 172,679,277 |
| Deferred charges | | 592,951 | | 953,614 |
| Other assets | | 83,006,888 | | 71,040,237 |
| Mortgages and loans | | 45,387,928 | | 40,197,408 |
| Investment Properties | | 216,560,003 | | 166,301,653 |
| Intangible assets | | 5,278,550 | | 5,051,213 |
| Goodwill | | 47,525,112 | | 45,019,359 |
| | $ | 571,679,792 | $ | 501,242,761 |
| **Liabilities** | | | | |
| Current | | | | |
| Demand loans | $ | 250,000 | $ | 940,003 |
| Accounts Payable and accrued | | 11,901,312 | | 14,585,695 |
| Income taxes payable | | 31,131,511 | | 16,674,632 |
| Investor deposits | | 100,730,758 | | 94,446,300 |
| Current portion of long-term debt | | 762,204 | | 2,012,600 |
| Current portion of obligation under capital leases | | 16,800 | | 37,893 |
| | | 144,792,585 | | 128,697,123 |
| Investor deposits | | 177,681,901 | | 125,142,060 |
| Long-term debt | | 683,783 | | 1,445,987 |
| Obligation under capital leases | | 23,251 | | 56,848 |
| Future income taxes | | 10,476,694 | | 9,529,169 |
| | | 333,658,214 | | 264,871,187 |
| **Shareholders' Equity** | | | | |
| Common Stock | | 31,568,965 | | 31,568,965 |
| Other paid in capital | | 98,651,563 | | 98,651,563 |
| Contributed surplus | | 0 | | 64,568 |
| Retained earnings | | 107,801,050 | | 106,086,478 |
| | | 238,021,578 | | 236,371,574 |
| | $ | 571,679,792 | $ | 501,242,761 |

19

Exhibit D Page 19 of 72

Exhibit A - 000106

**CONSOLIDATED STATEMENTS OF INCOME AND RETAINED EARNINGS**
December 31, 2006 and 2005

| As at December 31, | | 2006 | | 2005 |
|---|---|---|---|---|
| Revenue | | | | |
| Rental, Commissions and other income | $ | 191,285,270 | $ | 158,087,288 |
| Net interest and investment income | | 5,820,514 | | 3,698,954 |
| | | 197,105,784 | | 161,786,242 |
| | | | | |
| Expenses | | | | |
| Operating expenses | | -51,887,751 | | -38,486,062 |
| Amortization of start up and reorganization costs | | -274,403 | | -331,736 |
| Operating Income | | 144,943,630 | | 122,968,444 |
| Income (loss) from equity investments | | 245,856 | | 104,528 |
| (Loss) gain on sale of assets | | 118,884 | | 346,720 |
| Interest and financing costs on long-term debt | | -199,523 | | -1,106,720 |
| Amortization of intangible assets | | -51,307 | | -44,184 |
| Amortization of capital assets | | -542,698 | | -703,111 |
| Income before income taxes | | 144,514,842 | | 121,565,677 |
| Income taxes | | -27,590,460 | | -23,188,200 |
| NET INCOME FOR THE YEAR | | 116,924,382 | | 98,377,477 |
| Retained earnings beginning of year | | 106,086,478 | | 70,769,561 |
| Pool Distribution | | -30,625,210 | | -36,710,000 |
| Accrued Pool Distribution | | -34,584,600 | | -26,350,560 |
| Dividends Paid | | -50,000,000 | | 0 |
| Retained earnings, end of year | $ | 107,801,050 | $ | 106,086,478 |

**INVESTMENT PROPERTIES**

| | Cost | Accumulated Amortization | Net book value |
|---|---|---|---|
| **2006** | | | |
| Land | $ 18,569,854 | - | 18,569,854 |
| Office Buildings | 35,258,965 | 627,853 | 34,631,112 |
| Casino/Gaming | 24,984,917 | 603,330 | 24,381,587 |
| Industrial | 24,663,252 | 1,204,380 | 23,458,872 |
| Multi Family | 106,525,847 | 4,329,556 | 102,196,291 |
| Retail | 12,548,966 | 768,901 | 11,780,065 |
| Other | 1,588,987 | 46,765 | 1,542,222 |
| | $ 224,140,788 | $ 7,580,785 | $ 216,560,003 |
| | | | |
| **2005** | | | |
| Land | 16,740,012 | - | 16,740,012 |
| Office Buildings | 32,704,671 | 582,372 | 32,122,299 |
| Casino/Gaming | 24,984,917 | 583,332 | 24,401,585 |
| Industrial | 18,745,854 | 839,411 | 17,906,443 |
| Multi Family | 67,310,430 | 2,678,871 | 64,631,559 |
| Retail | 9,841,320 | 616,494 | 9,224,826 |
| Other | 1,304,960 | 30,031 | 1,274,929 |
| | $ 171,632,164 | $ 5,330,511 | $ 166,301,653 |

Exhibit D Page 20 of 72

Exhibit A - 000107

## VARIOUS OTHER POLICIES AND PROCEDURES

We will not invest in other limited partnerships, except as permitted under the NASAA Guidelines.

We will not invest in limited partnership interests of any other limited partnership of which "The Company" serves as a managing or general partner.

We will not engage in the following:

- issue senior securities;
- acquire property for membership interests;
- underwrite securities of other issuers; or
- make loans to its affiliates.

Without approval of a majority of the Board, we will not:

- invest in the securities of other issuers for the purpose of exercising control, except when exercising our rights as a secured lender;
- discontinue providing our investors with the reports described in our circular;
- offer securities in exchange for property; or
- change the nature of our business or our investment policies.

## COMPETITION AND GENERAL ECONOMIC CONDITIONS

There are hundreds of commercial banks, insurance companies, mortgage brokers, pension funds and other institutional lenders competing to make the type of loans in which we invest. No particular competitor dominates the market. For the past few years, the institutional lenders have not been as active in the commercial mortgage market as in prior years. Recently, however, many major institutional lenders have re-entered the commercial mortgage market due to a stronger economy, stabilized or increased property values and leasing rates, and the decrease in demand for residential loans. As a result, we anticipate competition for investments in mortgages secured by commercial properties, which creates pressure on lenders to lower interest rates.

21

Exhibit D Page 21 of 72

Exhibit A - 000108

## REGULATION

Our operations are conducted by "The Company". "The Company's" operations as a mortgage company are subject to extensive regulation by federal, state and local laws and governmental authorities. "The Company" conducts its real estate mortgage business under a license issued by the State of California. As of May 1, 2004, "The Company" is regulated by the Mortgage Lending Division of the State of California, Department of Real Estate. Under applicable California law, the division has broad discretionary authority over "The Company's" activities, including the authority to conduct periodic regulatory audits of all aspects of "The Company's" operations.

We are also subject to the Equal Credit Opportunity Act of 1974, which prohibits creditors from discriminating against loan applicants on the basis of race, color, sex, age or marital status, and the Fair Credit Reporting Act of 1970, which requires lenders to supply applicants with the name and address of the reporting agency if the applicant is denied credit.

Should we or "The Company" not adhere to these regulations, we could face potential disciplinary or other civil action that could have a material adverse effect on our business.

Exhibit D Page 22 of 72

Exhibit A - 000109



*Diversified Lending Group, Inc.*

# Information
# Circular

*15260 Ventura Boulevard*
*Suite 1240*
*Sherman Oaks, CA 91403*
*(818) 905-3337 ■ (800) 914-4441*

Rev. July 2007

Exhibit A - 000111



*Diversified Lending Group, Inc.*

# Information Circular

*15260 Ventura Boulevard*
*Suite 1240*
*Sherman Oaks, CA 91403*
*(818) 905-3337 ■ (800) 914-4441*

Rev. July 2007

Exhibit A - 000112



*Offering More*
*To Meet Your*
*Financial Needs*

Exhibit A - 000113

### Forward Looking Statements May Not Be Reliable

This Information Circular and other written reports and oral statements made from time to time by us may contain forward-looking statements. Such statements may be identified by the use of forward-looking words such as "may," "will," "expects," "plans," "estimates," "forecasts," "projects," "anticipates," "believes," or words of similar meaning. Forward looking statements are likely to address such matters as our business strategy, future operating results, future sources of funding for mortgage loans purchased by us, future economic conditions, and other forward-looking information. When considering such forward-looking statements you should keep in mind the risk factors and other cautionary statements in this Information Circular. Although we believe that the expectations reflected in such forward-looking statements are based on reasonable assumptions, there are certain factors, in addition to these risk factors and cautioning statements, such as general economic conditions, local real estate conditions, adequacy of reserves, weather, or other natural occurrences that might cause a difference between actual results and those forward-looking statements. Some of the factors which could affect future results are set forth in the discussion under "Management's Discussion and Analysis of Risk Factors" at page 18.

## DESCRIPTION OF BUSINESS

### HISTORY AND ORGANIZATION

Diversified Lending Group, Inc. ("DLG," also referred to in this report as "the Company," "we," "us," "our" or "The Fund") is a licensed mortgage company is the State of California. DLG was organized April 16, 2003 and is engaged in the acquisition and operation of income producing real estate, real estate lending, insurance premium financing strategies and financial service brokerage business and private investment pools in the contiguous 48 states. The business has been conducted as a privately held corporation continuously since 1983 under the auspices of the General Manager ("Manager").

### OUR BUSINESS STRATEGY

We will seek to invest substantially all of our net investable funds and distribution reinvestments in real property and mortgage loans, after paying applicable fees and expenses, if any. The allocation of our investments between real property and mortgages will be at the discretion of our Manager depending on the amounts available for investment and investment opportunities. We anticipate investing approximately 70% of our net investable funds in real property and 30% in mortgage loans. However, such percentages are only a guideline, the actual percentages may vary. Although the Mortgage Program Guidelines of the North American Securities Administrators Association, Inc. and the Real Estate Program Guidelines of the North American Securities Administration Association, Inc. (together the "NASAA Guidelines") require reserves of not less than 1% of the investment proceeds, at least 3% of net investable funds will be held as a working capital cash reserve.

---

2

Exhibit D Page 27 of 72

Exhibit A - 000114

## EMPLOYEES

As of March 1, 2007, "The Company" employed 17 personnel. All employees are at-will and none are covered by collective bargaining agreements.

## REAL ESTATE PROGRAM OBJECTIVES

We anticipate investing approximately 70% of our net investable funds in real property. However, this percentage is only a guideline, the actual percentage may vary.

We will invest in income producing multifamily residential units, office, industrial and retail properties, assisted living facilities, and other income-producing real property, such as hotels and resorts, casinos, restaurants, parking lots, amusement parks, or other leasehold properties. We intend to apply our prior experience in investing in mortgage loans to our evaluation and investment in real property. Accordingly, we intend to invest in real property throughout the areas in which "The Company" and its correspondents have experience, within the contiguous 48 states. We intend to purchase properties in the range of $2 million to $30 million. However, our actual purchases may vary from these guidelines.

Our principal investment objectives are to:

- Provide cash distributions from the rental income earned on our properties;
- Preserve your capital contribution; and
- Realize growth in the value of our properties.

We cannot assure you that we will achieve these objectives or that your capital will not decrease. "The Company" may change its' overall investment strategy, subject to the fiduciary obligations that it owes to all investors. However, "The Company" may not change the investment objectives above, except upon approval of a majority of our Board. "The Company" has no authority to do anything that would impair our ability to carry on our ordinary business as a mortgage or real property investor.

## MORTGAGE PROGRAM OBJECTIVES

We anticipate investing approximately 30% of our net investable funds in mortgage loans. However, this percentage is only a guideline, the actual percentage may vary.

Our principal investment objectives are to:

- Produce revenues from the interest income on our mortgage loans;
- Provide cash distributions from the net income earned on our mortgage loans;
- Preserve your capital contributions; and
- Reinvest to the extent permissible, payments of principal and proceeds of prepayments, sales and insurance proceeds, net of expenses.

---

3

Exhibit A - 000115

We intend to invest in mortgage loans throughout the areas in which "The Company" and its correspondents have experience, primarily Arizona, California, Hawaii, Nevada and Texas. Depending on the market and on our performance, we may expand our mortgage investments throughout the United States. However, "The Company" has limited experience outside of the Southwest. The loans we invest in will be selected by "The Company" from among loans originated by affiliated or non-affiliated mortgage brokers.

When "The Company" or someone else originates a loan for us, that person identifies the borrower, processes the loan application, makes or invests in the loan, and brokers or sells the loan to us. We believe that our loans are attractive to borrowers because of the expediency of "The Company's" loan approval process, which takes about 10 to 20 days.

We believe there is a significant market opportunity to invest in mortgage loans to borrowers whose financing needs are not met by traditional mortgage lenders. Factors that often preclude such borrowing are perceived credit risks (based on standards created by the lenders), bank aversion to cyclical conditions in markets, and other industry risks. As a non-conventional lender, we are more willing to invest in mortgage loans to borrowers that conventional lenders would not deem to be creditworthy. See "Management's Discussion and Analysis of Risk Factors" at page 18. Because of our willingness to fund riskier loan types and borrowers, borrowers are willing to pay us an interest rate that is above the rates charged by conventional lenders. We intend to invest in a significant amount of loans in which the real property being developed is not generating any income to the borrower. We anticipate investing 15% to 25% of our mortgage assets in raw and unimproved land loans, 10% to 25% in acquisition and development loans, 10% to 70% in construction loans, 20% to 50% in commercial property loans, and approximately 5% of our mortgage assets in residential property loans. Our second mortgage investments are riskier because our rights will be subject to the rights of the first mortgage lender. The "balloon payment" loans and bridge loans in which we invest are riskier because the borrower's repayment depends on its ability to refinance the loan or develop the property so it can refinance the loan. We anticipate investing up to 50% of our mortgage assets in bridge loans. The actual allocations may vary materially from the guidelines above depending on the amount available for investment in mortgages. All of these loans are described in greater detail under "Types of Loans We Invest In" at page 14.

In addition to the policies contained in this Information Circular, "The Company" may establish additional written policies on loans and borrowings.

## REAL ESTATE PROGRAM POLICIES AND GUIDELINES

We primarily invest in income producing multifamily residential units, office, industrial, and retail properties, assisted living facilities and other income-producing real property, such as hotels and resorts, casinos, restaurants, parking lots, amusement parks or other leasehold properties. We intend to primarily lease out the real property owned by us. We intend to purchase our real property through cash transactions. However, if we are able to obtain favorable financing for the purchase of real property at a later date, we may choose to finance the purchase of our real property. We will not finance property to greater than 35% Loan to Value of the property.

4

Exhibit A - 000116

By investing in different types of properties, we believe we will reduce our overall portfolio risk and enhance our overall portfolio returns. No single property will comprise more than 10% of our assets.

We may acquire income-producing properties which have been developed with funds provided by us pursuant to our mortgage program. For example, we may make a loan to a developer for the purchase of unimproved land. After the developer has improved the land, we may then purchase the real property.

We will seek to invest in properties that will satisfy our investment objectives of maximizing monthly and/or quarterly distributions, preserving our investors' capital contributions and realizing capital appreciation. We intend to invest in properties located in the United States.

"The Company" has previously been engaged in the business of direct investment in real property. In making investment decisions, "The Company" will consider relevant real estate property and financial factors, such as the location of the property, its income-producing capacity, the prospects for long-range appreciation, return on capital and its liquidity, and income tax considerations. "The Company" will have absolute discretion with respect to the selection of specific investments.

We will obtain appraisals for each property in which we invest. Additionally, we will rely on our own independent analysis of various criteria, including such appraisals, in determining whether or not to invest in a particular property. Appraisals are estimates of value and should not be relied upon as measures of true worth or realizable value.

Our obligation to purchase any property will generally be conditioned upon the delivery and verification of certain documents from the seller or developer, including, environmental reports, evidence of marketable title, audited financial statements covering recent operations of properties with operating histories and title and liability insurance policies. We will attempt to ensure that all of our properties are adequately insured to cover casualty losses. However, there are types of losses which are uninsurable or not economically insurable or may be insurable subject to limitations, such as large deductibles or co-payments.

Our investments generally will take the form of holding fee title in the properties we acquire. We will acquire such interests directly or through wholly owned subsidiaries, which may be formed in the future. We may also invest in real property through joint ventures pursuant to the NASAA Guidelines. In no event will we acquire an interest in real property through any structure which would cause us to be deemed an investment company under the Investment Company Act of 1940.

---

5

Exhibit A - 000117

## LEASING

The terms and conditions of any lease that we enter into with our tenants may vary substantially. However, we expect that our leases will be the type customarily used between landlords and tenants in the geographic area where the property is located. We intend to maintain the diversity of our portfolio.

*Multifamily.* Multifamily leases provide for terms of 6 months to 3 years and require the tenant to pay monthly lease payments and a security deposit equal to one month's rent. Under such leases, the landlord is generally directly responsible for all real estate taxes, sales and use taxes, special assessments, insurance and building repairs.

*Office.* Office leases generally have terms of 3 to 10 years and require tenants to pay monthly lease payments and a security deposit equal to one month's rent. The landlord may be responsible for all real estate taxes, sales and use taxes, special assessments, insurance and building repairs, utilities and other building operation and management costs.

*Industrial.* Industrial leases generally have terms of 5 to 20 years and require tenants to pay monthly lease payments and a security deposit equal to one month's rent. The tenant typically is responsible for its shares of building operation and management costs, including real estate taxes, sales and use taxes, special assessments, insurance and building repairs and utilities.

*Retail.* Retail leases generally have terms of 3 to 5 years with multiple options and require tenants to pay monthly lease payments and a security deposit equal to one month's rent. The tenant typically is responsible for its shares of building operation and management costs, including real estate taxes, sales and use taxes, special assessments, insurance and building repairs and utilities.

*Assisted Living.* Assisted living leases have terms of 1 to 2 years and require tenants to pay monthly lease payments and a security deposit equal to one month's rent. The landlord is generally directly responsible for all real estate taxes, sales and use taxes, special assessments, insurance and building repairs.

We will execute new tenant leases and tenant lease renewals, expansions and extensions with terms that are dictated by the current market conditions. If it is economically practical, we will verify the creditworthiness of each tenant. If we verify the creditworthiness of each tenant, we will use industry credit rating services to determine the creditworthiness of potential tenants and any guarantors of each potential tenant. We will also obtain relevant financial data from potential tenants and guarantors, such as income statements and balance sheets and cash flow statements. We may require personal guaranties from shareholders of our corporate tenants. However, there can be no guarantee that the tenants selected will not default on their leases.

6

Exhibit A - 000118

Tenant improvements will be funded by us from our cash flow or our credit line. When one of our tenants vacates its space in one of our buildings, we may, in order to attract new tenants, be required to expend funds for tenant improvements. In addition, we may provide free rent for a certain time period, provide tenant improvement allowances, and provide other concessions in order to attract new tenants.

## BORROWING POLICIES

We may borrow funds to acquire our properties. We will not incur debt in an amount greater than the sum of 35% of the aggregate purchase price of all the real property owned by us plus 20% of the aggregate fair market value of all our other assets.

"The Company" will have the authority to select the lender and negotiate the terms of the loan.

## PARTICIPATION

We may also participate in the operation and purchase of real property with other purchasers, including affiliates as permitted by NASAA Guidelines. We will own any jointly purchased real property in direct fee title.

We will participate in the operation and/or purchase with non-affiliates if we acquire a controlling interest, alone or with any of our publicly registered affiliates meeting the requirements below, in such participation. A controlling interest would enable us to direct or cause the direction of the management and policies of such participation, which would include the authority to:

- review all material contracts;
- cause a sale or refinancing of the property or our interest therein subject in certain cases to limitations imposed by the participation agreement between the parties;
- approve budgets and major capital expenditures, subject to a stated minimum amount;
- veto any sale or refinancing of a property, or alternately, to receive a specified preference on sale or refinancing proceeds; and
- exercise a right of first refusal on any desired sale or refinancing by a participant of its interest in a property except for transfer to its affiliate.

In the event of participation with a publicly registered affiliate, the investment objectives of the participants shall be substantially identical. There shall be no duplicate fees. The sponsors must be substantially identical, and the investment of each participant must be on substantially the same terms and conditions. Each participant shall have right of first refusal to buy the other's interest if the co-participant decides to sell its interest. We may participate in joint ventures or partnerships with affiliates that are not publicly registered if, the investment is necessary to relieve "The Company" from any commitment to purchase a mortgage entered into prior to the closing of the offering, there are no duplicate fees, the investment of each entity is on the same terms and condition and the participants have a right of first refusal to buy if "The Company" wishes to sell a mortgage held in the joint venture.

7

Exhibit D Page 32 of 72

Exhibit A - 000119

We will not give any affiliates any consideration similar to rebates or give-backs or enter into reciprocal arrangements with affiliates that might be entered into in lieu of participations.

## DISPOSITION

We anticipate that periodically, we may sell our properties. We intend to hold various real properties in which we invest until such time as a sale or other disposition appears to be advantageous to achieve our investment objectives or until it appears that such objectives will not be met. We will consider multiple factors in deciding on whether or not to dispose of our properties, including potential capital appreciation, cash flow and income tax considerations. We will decide when to sell our properties based upon economic and market conditions. "The Company" will have absolute discretion as to whether and when to sell a property, and we will have no obligation to sell properties at any particular time.

"The Company" or one of its affiliates may receive a real estate commission of 3% if "The Company" or one of its affiliates acts as our broker in the sale of real property.

## MORTGAGE PROGRAM POLICIES AND GUIDELINES

We anticipate that a majority of our collateral on our mortgage loans will be the real property that the borrower is purchasing, refinancing or developing with the funds that we make available. We sometimes refer to these real properties as the security properties. While we may invest in other types of loans, we believe that most of the loans in which we invest will have been made to real estate developers with a lesser proportion of loans involving land loans and bridge financing. Our mortgage investments will not be insured or guaranteed by any government agency. We will not give any rebates or enter into any reciprocal agreement with any affiliates that enables "The Company" or its affiliates to receive a rebate.

"The Company" will continuously evaluate prospective investments, select the mortgages in which we invest and make all investment decisions on our behalf in its sole discretion. You are not entitled to act on any proposed investment. In evaluating prospective mortgage loan investments, "The Company" considers such factors as the following:

- the ratio of the amount of the investment to the value of the property by which it is secured;
- the potential for capital appreciation or depreciation of the property securing the investment;
- expected levels of rental and occupancy rates (if applicable);
- potential for rental increases (if applicable);
- current and projected revenues from the property;
- the status and condition of the record title of the property securing the investment;
- geographic location of the property securing the investment;
- the financial condition of the borrower and its principals, if any, who guarantee the loan; and
- the previous business and borrowing experience of the borrower.

8

Exhibit A - 000120

"The Company" may obtain our loans from non-affiliated mortgage brokers and previous borrowers, and by solicitation of new borrowers in those states where permissible. We may purchase existing loans that were originated by third party lenders and acquired by "The Company" to facilitate our purchase of the loans. There are no specific requirements or guidelines governing "The Company's" discretion in determining which mortgage loans it will place with us and which it will place with other funding sources.

When selecting mortgage loans for us, "The Company" will adhere to the following guidelines, which are intended to control the quality of the collateral given for our loans:

1. *Priority of Mortgages.* We anticipate investing at least 90% of our assets allocated for mortgages in secured first mortgages. First mortgages are mortgages secured by a full or divided interest in a first deed of trust secured by the property. Other mortgages that we invest in on the security property will not be junior to more than one other mortgage. The only subordinated mortgages we currently intend to invest in at this time are second mortgages, although in the future we may invest in wraparound, or all-inclusive, mortgages.

2. *Loan-to-Value Ratio.* We do not anticipate that the amount of our loan combined with the outstanding debt secured by a senior mortgage on a security property will exceed the following percentage of the appraised value of the security property at origination:

| Type of Secured Property | Loan-to-Value Ratio |
|---|---|
| Residential | 75% |
| Unimproved Land | 60% (of the anticipated as-if developed value) |
| Acquisition and Development | 60% (of the anticipated as-if developed value) |
| Commercial Property | 75% (of the anticipated post-development value) |
| Construction | 75% (of the anticipated as-if developed value) |
| Bridge | 75% (of the anticipated as-if developed value) |
| Leasehold Interest | 75% (of value of leasehold interest) |

9

Exhibit A - 000121

We may deviate from these guidelines under certain circumstances. For example, "The Company", in its discretion, may increase any of the above loan-to-value ratios if, in its opinion, a given loan is supported by credit adequate to justify a higher loan-to-value ratio, including personal guarantees. Occasionally, our collateral may include personal property as well as real property. We do not have specific requirements with respect to the projected income or occupancy levels of a property securing our investment in a particular loan. These loan-to-value ratios will not apply to financing offered by us to the purchaser of any real estate acquired through foreclosure, or to refinance an existing loan that is in default when it matures. In those cases, "The Company", in its sole discretion, shall be free to accept any reasonable financing terms it deems to be in our best interest. Nevertheless, in no event will the loan-to-value ratio on any loan exceed 80% of the independently appraised as-if developed value of the property at the time of loan origination. The target loan-to-value ratio for our loan portfolio as a whole is approximately 70%.

"The Company" will receive an appraisal at the time of loan underwriting, which may precede the placement of the loan with us. Copies of these appraisals will not be available for your review at the offices of "The Company". Generally, these appraisals will be completed within twelve months prior to funding of the loan. Also, the appraisal may have been previously performed for the borrower. The appraisal may be for the current estimated "as-if developed" value of the property. We will engage appraisers who are licensed or qualified as independent appraisers and certified by or hold designations from one or more of the following organizations: the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the National Association of Review Appraisers, the Appraisal Institute, the Society of Real Estate Appraisers, M.A.I., Class IV Savings and Loan appraisers or from among appraisers with other qualifications acceptable to "The Company".

However, appraisals are only estimates of value and cannot be relied on as measures of realizable value. The appraisal may be for the current estimated "as-if developed" or "as-if completed" value of the property or, in the case of acquisition and development loans or construction loans, for the estimated value of the property upon completion of the project. As-if completed or as-if developed values on raw land loans or acquisition and development loans often dramatically exceed the immediate sales value and may include anticipated zoning changes, selection by a purchaser against multiple alternatives, and successful development by the purchaser; upon which development is dependent on availability of financing. An employee or agent of "The Company" will review each appraisal report and will conduct a physical inspection for each property. A physical inspection includes an assessment of the subject property, the adjacent properties and the neighborhood but generally does not include entering any structures on the subject property.

We depend upon our real estate security to protect us on the loans that we make. We depend upon the skill of appraisers to value the security underlying our loans. However, notwithstanding the experience of the appraisers, they may make mistakes, or the value of the real estate may decrease due to subsequent events. In addition, most of the appraisals will be prepared on an "as if-developed basis." If the loan goes into default prior to completion of the project, the market value of the property may be substantially less than the appraised value. As a result, there may be less security than anticipated at the time the loan was originally made.

10

Exhibit A - 000122

3. *Terms of Mortgage Loans.* Most of our loans will range from a six-month term to a five-year term. Our original loan agreements, however, will permit extensions to the term of the loan by mutual consent. Such extensions will generally be provided on loans where the original term was 12 months or less and where a borrower requires additional time to complete a construction project or negotiate take out financing. The loans and/or extensions will be subject to the following conditions:

- Borrowers will obtain title insurance coverage for all loans, with the title insurance policy naming us as the insured and providing title insurance in an amount at least equal to the principal amount of the loan. Title insurance insures only the validity and priority of our deed of trust, and does not insure us against loss by other causes, such as diminution in the value of the security property.

- Borrowers will obtain fire and casualty insurance for all loans secured by improved real property, naming us as loss payee in an amount sufficient to cover the replacement cost of improvements.

- All insurance policies, notes, deeds of trust or mortgages, escrow agreements, and any other loan documents for a particular transaction will name us as payee and beneficiary.

4. *Note Hypothecation.* We may also acquire mortgage loans secured by assignments of secured promissory notes. These mortgage loans must satisfy our stated investment standards, including our loan-to-value ratios, and also may not exceed 80% of the principal amount of the assigned note. For example, if the property securing a note we acquire is commercial property, the total amount of outstanding debts secured by the property must not exceed 75% of the appraised as-if developed value of the property, and the mortgage loan will not exceed 80% of the principal amount of the assigned note. For mortgage loans secured by promissory notes, we will rely on the appraised as-if developed value of the underlying property, as determined by a written appraisal which was conducted within the then-preceding twelve months at the time of loan origination. If an appraisal was not conducted within that period, then we will arrange for a new appraisal to be prepared for the property.

5. *Participation.* We may also participate in loans with other lenders, including affiliates as permitted by NASAA Guidelines, by providing funds for or purchasing an undivided interest in a loan meeting our investment guidelines described above. We will directly own any loans purchased jointly with other lenders. We would be more likely to participate in loans if, for example:

- we did not have sufficient funds to invest in an entire loan;
- we are seeking to increase the diversification in our loan portfolio; or
- "The Company" originated a loan that fit within our investment guidelines but it would constitute more than 10% of our anticipated capital contribution or otherwise be disproportionately large given our then existing portfolio.

---

11

Exhibit A - 000123

We will participate in loans with non-affiliates if we acquire a controlling interest, alone or with any of our publicly registered affiliates meeting the requirements below, in such participation. A controlling interest would enable us to direct or cause the direction of the management and policies of such participation, which would include the authority to:

- review all material contracts;
- cause a sale of the mortgage or our interest therein subject in certain cases to limitations imposed by the participation agreement between the parties;
- approve budgets and major capital expenditures, subject to a stated minimum amount;
- veto any sale of a mortgage, or alternatively, to receive a specified preference on sale or proceeds; and
- exercise a right of first refusal on any desired sale by a participant of its interest in a loan except for transfer to its affiliate.

In the event of participation with a publicly registered affiliate, the investment objectives of the participants shall be substantially identical. There shall be no duplicate fees. The compensation to the sponsors must be substantially identical, and the investment of each participant must be on substantially the same terms and conditions. Each participant shall have a right of first refusal to buy the other's interest if the co-participant decides to sell its interest. We will not participate in joint ventures or partnerships with affiliates that are not publicly registered except as permitted by NASAA Guidelines.

In addition to participation agreements, we may enter into intercreditor agreements. Pursuant to intercreditor agreements, a co-lender may participate in certain loans with us. In the event of borrower non-performance, the intercreditor agreement generally provides the Lead Lenders with some or all of the rights to either (i) continue to remit to the co-lender the interest due on the participation amount; (ii) substitute an alternative loan acceptable to the co-lender; or (iii) repurchase the participation from the co-lender for the outstanding balance of the participation plus accrued interest.

Consequently, mortgage loan financing under an intercreditor arrangement is accounted for as a secured borrowing in accordance with SFAS No. 140, Accounting for Transfers and Servicing of Financial Assets and Extinguishments of Liabilities. We believe that it is in our best long term interest to have in place relationships with third parties willing to enter into such arrangements in order to expand our funding sources. We will pursue this strategy, even when we have substantial uninvested funds, in order to maintain relationships with such third party lenders.

6.  *Diversification.* The NASAA Guidelines provide that we neither invest in nor make mortgage loans on any one property which would exceed, in the aggregate, an amount equal to 20% of our capital nor may we invest in or make mortgage loans to or from any one borrower which would exceed, in the aggregate, an amount greater than 20% of our capital. As of March 1, 2007, we had no mortgage loans that accounted for more than 20% of our investors' equity. Our initial investments may exceed the NASAA Guidelines until we have sufficient funds to further diversify. NASAA Guidelines permit the minimum standards to be exceeded if the mortgage loans are made pursuant to sound underwriting criteria.

12

Exhibit A - 000124

7. *Reserve Fund.* Although the NASAA Guidelines require reserves of not less than 1%, we will establish contingency working capital reserves of at least 3% of our net investable funds to cover our unexpected cash needs.

8. *Credit Evaluations.* Before making a loan, "The Company" must first determine that a borrower has sufficient equity in the security property to meet the loan-to-value ratios described above. "The Company" may also consider the income level and creditworthiness of a borrower to determine its ability to repay the mortgage loan.

9. *Sale of Mortgage Investments.* Although "The Company" has no plan to do so, "The Company" may sell our mortgage loans or interests in our loans to either affiliates or non-affiliated parties when "The Company" believes that it is advantageous to us to do so. However, we do not expect that the loans will be marketable or that a secondary market will ever develop for them.

## TYPES OF LOANS WE INVEST IN

We primarily invest in loans which are secured by first or second mortgages on real property. Such loans fall into the following categories: raw and unimproved land, acquisition and development, construction, commercial, residential and bridge loans. We intend to make investments based upon the guidelines set forth below. However, the actual allocation may vary from the guidelines below depending on the amount available for investment in mortgages, and may vary materially.

### Raw and Unimproved Land Loans

Approximately 15% to 25% of our mortgage assets may be invested in loans made for the purchase or development of raw, unimproved land. Generally, we determine whether to invest in these loans based upon the appraised value of the property and the borrower's actual capital investment in the property. Typically, we will invest in loans with a face value of up to 60% of the as-if developed appraised value of the property and we usually require that the borrower has invested in the property actual capital expenditures of at least 25% of the property's value. As-if developed values on raw and unimproved land loans often dramatically exceed the immediate sales value and may include anticipated zoning changes, selection of a purchaser against multiple alternatives, and successful development by the purchaser; upon which development is dependent on availability of financing. These loans are riskier because the property is not capable of generating any income, as compared to a commercial property.

### Acquisition and Development Loans

Approximately 10% to 25% of our mortgage assets may be invested in acquisition and development loans. These loans enable borrowers to acquire and/or complete the basic infrastructure and development of their property prior to the construction of buildings or structures. Such development may include installing utilities, sewers, water pipes, and/or streets. Generally, we will invest in loans with a face value of up to 60% of the as-if developed appraised value of the property. Such appraisals have the same valuation limitations as raw and unimproved land loans, described above.

---

13

Exhibit A - 000125

*Construction Loans*

Approximately 10% to 70% of our mortgage assets may be invested in construction loans. A construction loan provides funds for the construction of one or more structures on developed land. Funds under this type of loan will generally not be forwarded to the borrower until work in the previous phase of the project has been completed and an independent inspector has verified certain aspects of the construction and its costs. We will typically require material and labor lien releases by the borrower per completed phase of the project. We will review the appraised value of the property and proposed improvements, and will arrange loans for up to 75% of the as-if developed appraised value. Such appraisals have the same valuation limitations as raw and unimproved land loans, described above. These loans are riskier than loans secured by income producing properties because during construction the borrower does not receive income from the property to make payments on the loan.

*Commercial Property Loans*

Approximately 20% to 50% of our mortgage assets may be invested in commercial property loans. Commercial property loans provide funds to allow commercial borrowers to acquire income-producing property or to make improvements or renovations to the property in order to increase the value or net operating income of the property so that it may qualify for institutional refinancing. We will review the appraised value of the property and will invest in loans for up to 75% of such appraised value. To the extent such loans include renovations, appraisals may include as-if developed valuations with the limitations described above. These loans are riskier because there is no assurance that the commercial borrower will qualify for the refinancing or that the improvements will yield the anticipated increase in value and income.

*Residential Loans*

Approximately 5% of our mortgage assets may be invested in residential loans. Such loans facilitate the purchase or refinance of one to four family residential property units provided the borrower uses one of the units on the property as such borrower's principal residence. We will review the appraised value of the property and will invest in loans for up to 75% of such appraised value.

*Bridge Loans*

Up to 50% of our mortgage assets may be invested in bridge loans. These loans provide interim financing to enable commercial borrowers to qualify for permanent refinancing. We will review the appraised value of the property and will generally invest in loans of up to 75% of that value. Such appraisals may be based on either an as-is basis or as-if developed basis, depending on the circumstances, and therefore, may not be an accurate indicator of the fair value of the property. These loans are riskier because there is no assurance that the developer will qualify for the refinancing.

---

14

### Collateral

The types of collateral that will secure the loans brokered by us include a first deed of trust, a second deed of trust or a leasehold interest.

### First Deed of Trust

The majority of the loans invested in by us will be secured by a first deed of trust. Thus, we will have rights as a first mortgage lender of the collateralized property.

### Second Deed of Trust

We will not invest in a second deed of trust unless (i) such loan involves the sale of real property owned by us, or (ii) we also act as the first mortgage lender on the loan.

### Leasehold Interest

We may invest in loans where the collateral is an interest in a lease. These loans are riskier because the only rights we will have are to assume the borrower's obligations under the lease and to use the property for the length of time and in the limited manner permitted under the lease.

## PREPAYMENT PENALTIES AND EXIT FEES

We anticipate that a majority of the loans we invest in will not contain prepayment penalties or exit fees. If our loans are at a high rate of interest in a market of falling interest rates, the failure to have a prepayment penalty provision or exit fee in the loan allows the borrower to refinance the loan at a lower rate of interest, thus providing a lower yield to us on the reinvestment of the prepayment proceeds. However, these loans will usually be written with relatively high minimum interest rates, which we would expect to minimize the risk of lower yields.

## EXTENSIONS TO TERM OF LOAN

Our original loan agreements will permit extensions to the term of the loan by mutual consent. Such extensions are generally provided on loans where the original term was 12 months or less and where a borrower requires additional time to complete a construction project or negotiate take out financing. When we initially grant loans we, among other things, review the financial condition of the borrower and any guarantors, perform a title search, and receive an appraisal. Based upon our review of the factors above as well as other considerations, we decide whether and for how long a loan should be granted. Loan extensions are often contemplated at the time of the initial loan, usually for 90 day increments. Generally, loan extensions will only be made for up to one year from the original date of maturity of the loan. We generally provide extensions on loans which are in full compliance with the terms of the loan. We reevaluate loans on a quarterly basis whether or not the loans are made pursuant to an extension.

15

Exhibit A - 000127

## BALLOON PAYMENT

We anticipate that at least 90% of the loans we invest in or purchase will require the borrower to make a "balloon payment" on the principal amount upon maturity of the loan. There are no specific criteria used in evaluating the credit quality of borrowers for mortgage loans requiring balloon payments. Furthermore, a substantial period of time may elapse between the review of the financial statements of the borrower and the date when the balloon payment is due. As a result, there is no assurance that a borrower will have sufficient resources to make a balloon payment when due. To the extent that a borrower has an obligation to pay mortgage loan principal in a large lump sum payment, its ability to repay the loan may be dependent upon its ability to sell the property, obtain suitable refinancing or otherwise raise a substantial amount of cash. As a result, these loans can involve a higher risk of default than loans where the principal is paid at the same time as the interest payments.

## REPAYMENT OF MORTGAGES ON SALES OF PROPERTIES

We may require a borrower to repay a mortgage loan upon the sale of the mortgaged property rather than allow the buyer to assume the existing loan. We will require repayment if we determine that repayment appears to be advantageous to us based upon then-current interest rates, the length of time that the loan has been held by us, the creditworthiness of the buyer and our objectives. We will either invest our net investable funds from any capital transaction in new mortgage loans or hold the net investable funds as cash. These net investable funds will also include the principal of a loan deemed to be repaid for tax purposes as a result of the nature of a loan modification or loan extension. Capital transactions include payments of principal, foreclosures and prepayments of mortgages, to the extent classified as a return of capital under the Internal Revenue Code, and any other disposition of a mortgage or property.

## VARIABLE RATE LOANS

Occasionally we may acquire variable rate loans. Variable rate loans originated by "The Company" may use as indices the one and five year Treasury Constant Maturity Index, the Prime Rate Index and the Monthly Weighted Average Cost of Funds Index for Eleventh District Savings Institutions (Federal Home Loan Bank Board). "The Company" may negotiate spreads over these indices of 2.5% to 5.5%, depending upon market conditions when the loan is made.

It is possible that the interest rate index used in a variable rate loan will rise (or fall) more slowly than the interest rate of other loan investments available to us. "The Company" attempts to minimize this interest rate differential by tying variable rate loans to indices that are sensitive to fluctuations in market rates. Additionally, most variable rate loans originated by "The Company" contain provisions under which the interest rate cannot fall below the initial rate.

16

Exhibit A - 000128

## INTEREST RATE CAPS

Variable rate loans generally have interest rate caps. We anticipate that the interest rate cap will be a ceiling that is 6-7% above the starting rate with a floor rate equal to the starting rate. For these loans there is the risk that the market rate may exceed the interest cap rate.

Variable rate loans of five to ten year maturities are not assumable without the prior consent of "The Company". We do not expect to invest in or purchase a significant amount of other assumable loans. To minimize our risk, any borrower assuming an existing mortgage loan will be subject to the same underwriting criteria as the original borrower.

## BORROWING

We may incur indebtedness:

- to finance our investments in mortgage loans,
- to prevent a default under mortgage loans that are senior to our mortgage loans,
- to discharge senior mortgage loans if this becomes necessary to protect our investment in mortgage loans, or
- to operate or develop a property that we acquired under a defaulted loan.

At no time will our indebtedness exceed 35% of the fair market value of our mortgage loans. This indebtedness may be with recourse to our assets. As of March 1, 2007, "The Company" has not created any indebtedness.

In addition, we may enter into structured arrangements with lenders in order to provide them with a senior position in mortgage loans which we might jointly fund. For example, we might establish a wholly-owned special purpose corporation which would borrow funds from an institutional lender under an arrangement where the resulting mortgage loans would be assigned to a trust, and the trust would issue a senior certificate to the institutional lender and a junior certificate to the special purpose corporation. This would assure the institutional lender of repayment in full prior to our receipt of any repayment on the jointly funded mortgage loans.

## NO TRUST OR INVESTMENT COMPANY ACTIVITIES

We have not qualified as a real estate investment trust under the Internal Revenue Code, and therefore we are not subject to the restrictions on its activities that are imposed on real estate investment trusts. We intend to conduct our business so that we are not an "investment company" within the meaning of the Investment Company Act of 1940. Last, we intend to conduct our business so that we are not to be deemed a "dealer" in mortgage loans for federal income tax purposes.

17

Exhibit A - 000129

## MANAGEMENT'S DISCUSSION AND ANALYSIS OF RISK FACTORS

There are risks associated with investing in the "the Fund," most of which "The Company" does not control, such as trends in the economy, general interest rates, income tax laws, governmental regulations, and the availability of satisfactory investment opportunities. You cannot properly evaluate whether to invest in the Fund without careful analysis of your own investment objectives and risk tolerance level. Accordingly, it is important for you to discuss any intended investment in the Fund with your own professional advisors before making a decision.

This investment may not be suitable for all investors. Unit values and returns will fluctuate. Investors are cautioned that data based on less than five years may not be sufficient to establish a track record on which investment decisions should be made. The Fund is not guaranteed and past performance may not be repeated.

18

Exhibit D Page 43 of 72

Exhibit A - 000130

**CONSOLIDATED BALANCE SHEETS** December 31, 2006 and 2005

| As at December 31, | | 2006 | | 2005 |
|---|---|---|---|---|
| **Assets** | | | | |
| Current | | | | |
| Cash | $ | 121,031,813 | $ | 135,283,738 |
| Marketable securities | | 25,840,504 | | 12,467,785 |
| Accounts receivable | | 13,598,521 | | 15,843,965 |
| Prepaid expenses | | 1,847,695 | | 1,258,478 |
| Current portion of other assets | | 1,425,252 | | 949,300 |
| Current portion of mortgages and loans | | 9,584,575 | | 6,876,011 |
| | | 173,328,360 | | 172,679,277 |
| | | | | |
| Deferred charges | | 592,951 | | 953,614 |
| Other assets | | 83,006,888 | | 71,040,237 |
| Mortgages and loans | | 45,387,928 | | 40,197,408 |
| Investment Properties | | 216,560,003 | | 166,301,653 |
| Intangible assets | | 5,278,550 | | 5,051,213 |
| Goodwill | | 47,525,112 | | 45,019,359 |
| | $ | 571,679,792 | $ | 501,242,761 |
| **Liabilities** | | | | |
| Current | | | | |
| Demand loans | $ | 250,000 | $ | 940,003 |
| Accounts Payable and accrued | | 11,901,312 | | 14,585,695 |
| Income taxes payable | | 31,131,511 | | 16,674,632 |
| Investor deposits | | 100,730,758 | | 94,446,300 |
| Current portion of long-term debt | | 762,204 | | 2,012,600 |
| Current portion of obligation under capital leases | | 16,800 | | 37,893 |
| | | 144,792,585 | | 128,697,123 |
| Investor deposits | | 177,681,901 | | 125,142,060 |
| Long-term debt | | 683,783 | | 1,445,987 |
| Obligation under capital leases | | 23,251 | | 56,848 |
| Future income taxes | | 10,476,694 | | 9,529,169 |
| | | 333,658,214 | | 264,871,187 |
| **Shareholders' Equity** | | | | |
| Common Stock | | 31,568,965 | | 31,568,965 |
| Other paid in capital | | 98,651,563 | | 98,651,563 |
| Contributed surplus | | 0 | | 64,568 |
| Retained earnings | | 107,801,050 | | 106,086,478 |
| | | 238,021,578 | | 236,371,574 |
| | $ | 571,679,792 | $ | 501,242,761 |

19

Exhibit D Page 44 of 72

Exhibit A - 000131

## CONSOLIDATED STATEMENTS OF INCOME AND RETAINED EARNINGS
December 31, 2006 and 2005

| As at December 31, | | 2006 | 2005 |
|---|---|---|---|
| **Revenue** | | | |
| Rental, Commissions and other income | $ | 191,285,270 | $ 158,087,288 |
| Net interest and investment income | | 5,820,514 | 3,698,954 |
| | | 197,105,784 | 161,786,242 |
| **Expenses** | | | |
| Operating expenses | | -51,887,751 | -38,486,062 |
| Amortization of start up and reorganization costs | | -274,403 | -331,736 |
| Operating Income | | 144,943,630 | 122,968,444 |
| Income (loss) from equity investments | | 245,856 | 104,528 |
| (Loss) gain on sale of assets | | 118,884 | 346,720 |
| Interest and financing costs on long-term debt | | -199,523 | -1,106,720 |
| Amortization of intangible assets | | -51,307 | -44,184 |
| Amortization of capital assets | | -542,698 | -703,111 |
| Income before income taxes | | 144,514,842 | 121,565,677 |
| Income taxes | | -27,590,460 | -23,188,200 |
| NET INCOME FOR THE YEAR | | 116,924,382 | 98,377,477 |
| Retained earnings beginning of year | | 106,086,478 | 70,769,561 |
| Pool Distribution | | -30,625,210 | -36,710,000 |
| Accrued Pool Distribution | | -34,584,600 | -26,350,560 |
| Dividends Paid | | -50,000,000 | 0 |
| Retained earnings, end of year | $ | 107,801,050 | $ 106,086,478 |

### INVESTMENT PROPERTIES

| | Cost | Accumulated Amortization | Net book value |
|---|---|---|---|
| | **2006** | | |
| Land | $ 18,569,854 | - | 18,569,854 |
| Office Buildings | 35,258,965 | 627,853 | 34,631,112 |
| Casino/Gaming | 24,984,917 | 603,330 | 24,381,587 |
| Industrial | 24,663,252 | 1,204,380 | 23,458,872 |
| Multi Family | 106,525,847 | 4,329,556 | 102,196,291 |
| Retail | 12,548,966 | 768,901 | 11,780,065 |
| Other | 1,588,987 | 46,765 | 1,542,222 |
| | $ 224,140,788 | 7,580,785 | $ 216,560,003 |
| | **2005** | | |
| Land | 16,740,012 | - | 16,740,012 |
| Office Buildings | 32,704,671 | 582,372 | 32,122,299 |
| Casino/Gaming | 24,984,917 | 583,332 | 24,401,585 |
| Industrial | 18,745,854 | 839,411 | 17,906,443 |
| Multi Family | 67,310,430 | 2,678,871 | 64,631,559 |
| Retail | 9,841,320 | 616,494 | 9,224,826 |
| Other | 1,304,960 | 30,031 | 1,274,929 |
| | $ 171,632,164 | 5,330,511 | $ 166,301,653 |

20

## VARIOUS OTHER POLICIES AND PROCEDURES

We will not invest in other limited partnerships, except as permitted under the NASAA Guidelines.

We will not invest in limited partnership interests of any other limited partnership of which "The Company" serves as a managing or general partner.

We will not engage in the following:

- issue senior securities;
- acquire property for membership interests;
- underwrite securities of other issuers; or
- make loans to its affiliates.

Without approval of a majority of the Board, we will not:

- invest in the securities of other issuers for the purpose of exercising control, except when exercising our rights as a secured lender;
- discontinue providing our investors with the reports described in our circular;
- offer securities in exchange for property; or
- change the nature of our business or our investment policies.

## COMPETITION AND GENERAL ECONOMIC CONDITIONS

There are hundreds of commercial banks, insurance companies, mortgage brokers, pension funds and other institutional lenders competing to make the type of loans in which we invest. No particular competitor dominates the market. For the past few years, the institutional lenders have not been as active in the commercial mortgage market as in prior years. Recently, however, many major institutional lenders have re-entered the commercial mortgage market due to a stronger economy, stabilized or increased property values and leasing rates, and the decrease in demand for residential loans. As a result, we anticipate competition for investments in mortgages secured by commercial properties, which creates pressure on lenders to lower interest rates.

21

Exhibit D Page 46 of 72

Exhibit A - 000133

## REGULATION

Our operations are conducted by "The Company". "The Company's" operations as a mortgage company are subject to extensive regulation by federal, state and local laws and governmental authorities. "The Company" conducts its real estate mortgage business under a license issued by the State of California. As of May 1, 2004, "The Company" is regulated by the Mortgage Lending Division of the State of California, Department of Real Estate. Under applicable California law, the division has broad discretionary authority over "The Company's" activities, including the authority to conduct periodic regulatory audits of all aspects of "The Company's" operations.

We are also subject to the Equal Credit Opportunity Act of 1974, which prohibits creditors from discriminating against loan applicants on the basis of race, color, sex, age or marital status, and the Fair Credit Reporting Act of 1970, which requires lenders to supply applicants with the name and address of the reporting agency if the applicant is denied credit.

Should we or "The Company" not adhere to these regulations, we could face potential disciplinary or other civil action that could have a material adverse effect on our business.

22

Exhibit D Page 47 of 72

Exhibit A - 000134

Exhibit A - 000135



# *Diversified Lending Group, Inc.*

15260 Ventura Boulevard, Suite 1240
Sherman Oaks, CA 91403
www.dlglending.com

## DIVERSIFIED LENDING GROUP, INC.

("the Company" or Diversified Lending Group) agrees to provide benefits to the Contract Owner
subject to the provisions set forth in this Contract and in consideration of any application and
Investment the Company receives.
Thank you for choosing Diversified Lending Group. If you have any questions,
please contact the Company at the Service Center address or
telephone number shown on the Contract Data Page.

## THIS IS A LEGAL CONTRACT BETWEEN YOU AND THE COMPANY.

## READ YOUR CONTRACT CAREFULLY.

## CONTRACT NUMBER:  01-23456

1  YEAR INVESTMENT NOTE
NONPARTICIPATING

**This Contract is signed by the Company**

**President and Chief Executive Officer**

**Secretary**

Exhibit D Page 49 of 72

Exhibit A - 000136

# TABLE OF CONTENTS

|                                  | PAGE |
|----------------------------------|------|
| CONTRACT DATA PAGE               | 3    |
| DEFINITIONS                      | 5    |
| GENERAL PROVISIONS               | 7    |
| ACCUMULATED VALUE PROVISIONS     | 9    |
| WITHDRAWAL PROVISIONS            | 10   |
| DEATH BENEFIT PROVISIONS         | 11   |
| INCOME PROVISIONS                | 12   |
| TABLE OF GUARANTEED VALUES       | 13   |



3

Exhibit A - 000137

## CONTRACT DATA PAGE

Contract Number:    01-23456        Issue Date:

Initial Investment:    $ 50,000.00       End Date:

Investor:

Investor Age:

Joint Investor:

Joint Investor Age:

Owner:

Owner Age:

Joint Owner:

Minimum Guaranteed Rate:    12%

Issue State:        CALIFORNIA

| Guaranteed Period | Investment | Initial Guaranteed Rate |
|---|---|---|
| 1 Year | $ 50,000.00 | 12% |
| 2 Year | N/A | N/A |
| 3 Year | N/A | N/A |
| 4 Year | N/A | N/A |
| 5 Year | N/A | N/A |
| 6 Year | N/A | N/A |
| 7 Year | N/A | N/A |
| 8 Year | N/A | N/A |
| 9 Year | N/A | N/A |
| 10 Year | N/A | N/A |

Beneficiary(ies):    Jane Doe—SSN: 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—Daughter (100%)

4

Exhibit A - 000138

## CONTRACT DATA PAGE (Cont'd)

| Withdrawal Charges: | Complete Years Since Allocation to the Guaranteed Period | Withdrawal Charge Percentage |
|---|---|---|
| | 0 | 25% |
| | 1 | 25% |
| | 2 | N/A |
| | 3 | N/A |
| | 4 | N/A |
| | 5 | N/A |

Please see the Withdrawal Provisions for a complete explanation of charges.

**Diversified Lending Group, Inc.**
**106 West Lime Avenue**
**Suite 206**
**Monrovia, CA 91016**
**(626) 303-5335**



5

## DEFINITIONS

**ACCUMULATED VALUE.** The sum of the Guaranteed Period Values under this Contract.

**BENEFICIARY(IES).** The person(s) designated to receive any Contract benefits upon the death of the Owner.

**CONTRACT.** The Secured Investment Note described herein.

**CONTRACT YEAR.** A 12-month period beginning on the Issue Date, or the anniversary thereof, and ending one day before the anniversary of the Issue Date of the following calendar year.

**GUARANTEED PERIOD.** The period for which either an Initial or Subsequent Guaranteed Rate is credited. Each Guaranteed Period earns the declared rate of interest for a specified number of years.

**GUARANTEED PERIOD MINIMUM VALUE.** The Investment or subsequent amount allocated to the Guaranteed Period, less partial withdrawals and associated Withdrawal Charges, accumulated at the Minimum Guaranteed Rate, less any remaining Withdrawal Charges.

**GUARANTEED PERIOD VALUE.** The Investment or subsequent amount allocated to the Guaranteed Period, plus any interest credited, less partial withdrawals and associated Withdrawal Charges.

**ISSUE DATE.** The date this Contract was issued by the Company, as shown on the Contract Data Page.

**INITIAL GUARANTEED RATE.** The rate of interest established by the Company for a specified Guaranteed Period as shown on the Contract Data Page.

**INVESTOR.** The natural person for whom the Contract is based. The Owner may change the Investor at any time, unless the Owner is not a natural person.

**JOINT OWNER.** If there is more than one Owner, each Owner shall be a Joint Owner of the Contract. Joint Owners have equal ownership rights and both must authorize any exercising of those ownership rights under this Contract.

**LATEST PAYMENT DATE.** The date on which the Owner attains age 90 under a Nonqualified Plan Contract, or such earlier date as required by the applicable Qualified Plan, law or regulation, unless otherwise approved by the Company.

6

Exhibit A - 000140

## DEFINITIONS (Cont'd)

**NONQUALIFIED PLAN.** A retirement plan that does not receive favorable tax treatment under sections 401, 403, 408, or 457 of the Internal Revenue Code, as amended.

**OWNER ("You," "Your").** The person or entity shown on the Contract Data Page who is entitled to exercise all rights and privileges under this Contract. Usually, but not always, the Owner is also the Investor. If Joint Owners are named, all references to Owner shall mean Joint Owner.

**PAYMENT DATE.** The date on which Investment payments are scheduled to begin.

**QUALIFIED PLAN.** A retirement plan that qualifies for favorable tax treatment under sections 401, 403, 408, or 457 of the Internal Revenue Code, as amended.

**SERVICE CENTER.** The Company's address and telephone number as specified on the Contract Data Page or as may be designated by Us from time to time.

**SUBSEQUENT GUARANTEED RATE.** The rate of interest established by the Company for the applicable subsequent Guaranteed Period, but in no event less than the Minimum Guaranteed Rate shown on the Contract Data Page.

**WE, OUR, US, THE COMPANY.** Diversified Lending Group, Inc.

**WITHDRAWAL CHARGE.** The charge assessed against certain withdrawals. (Please see the Contract Data Page and Withdrawal Provisions.

**WITHDRAWAL VALUE.** The amount the Owner is entitled to receive if the Contract is surrendered. The Withdrawal Value is equal to the Accumulated Value less any applicable Withdrawal Charges. The Withdrawal Value will not be less than the sum of the Guaranteed Period Minimum Values. The Withdrawal Value will never be less than that required by the Issue State of this Contract.



7

Exhibit A - 000141

# GENERAL PROVISIONS

**ASSIGNMENT.** The Owner may not use this Contract as collateral or security for a loan. However, the Owner may assign this Contract before the Income Date, but We will not be bound by an assignment unless it is in writing and has been recorded by the Company's Service Center. An assignment will take effect when recorded by the Company. We are not responsible for any payments made before an assignment is recorded. The Owner may exercise these rights subject to the interest of any assignee or irrevocable Beneficiary. We assume no responsibility for the validity or tax consequences of any assignment. If You make an assignment, You may have to pay income tax. You are encouraged to seek legal and/or tax advice.

**BENEFICIARY.** The Owner may designate the Beneficiary(ies) to receive any amount payable under this Contract on the Owner's death or, as applicable, on the Investor's death. The original Beneficiary(ies) will be shown on the Contract Data Page. If two or more persons are named, those surviving the Owner will share equally unless otherwise stated. If there are no surviving Beneficiaries at the death of the Owner, the Death Benefit will be paid to the Owner's estate. Upon the death of a Joint Owner, the surviving Joint Owner, if any, will be treated as the primary Beneficiary and all other Beneficiaries will be treated as contingent Beneficiaries. The Owner may change the Beneficiary(ies) by submitting a written request to the Service Center, unless an irrevocable Beneficiary(ies) designation was previously filed. Any change will take effect when recorded by the Company. The Company is not liable for any payment made or action taken before it records the change.

**CONFORMITY WITH STATE LAWS.** This Contract will be interpreted under the laws of the state in which it is issued. Any provision which is in conflict with the laws of such state is amended to conform to the minimum requirement of such law.

**ENTIRE CONTRACT.** This Contract, any application, and any applicable endorsements make up the Entire Contract.

**INTEREST OF OWNER.** The Owner's interest in the Contract before the Income Date will be nonforfeitable.

**MODIFICATION OF CONTRACT.** Any change or waiver of the provisions of this Contract must be in writing and signed by the President, a Vice President, the Secretary or Assistant Secretary of the Company.

8

Exhibit A - 000142

## GENERAL PROVISIONS (Cont'd)

**NONPARTICIPATING.** This Contract does not share in Our surplus or earnings.

**INVESTMENTS.** Investments are flexible. Subject to the Company declared minimums and maximums, You may change the amounts, frequency or timing of Investments. The initial Investment must be at least $50,000, subsequent investments must be at least $2,000. Total Investments under a Contract may not exceed $2,000,000. The Company may waive the minimums and maximums at any time.

**PROTECTION OF PROCEEDS.** No Beneficiary may commute, encumber, alienate or assign any payment under this Contract before it is due. To the extent permitted by law, no payment will be subject to the debts, contracts or engagements of any Beneficiary. In addition, to the extent permitted by law, no payment will be subject to any judicial process to levy You or attach the same for payment thereof.

**REPORTS.** The Company will send You a statement at least quarterly. We will also send You reports as required by law. They shall be addressed to the last address of the Owner known to the Company.

**WRITTEN NOTICE.** Any notice We send to the Owner will be sent to the Owner's last known address unless the Owner requests otherwise in writing. Any written request or notice must be sent to Our Service Center, unless We advise You otherwise. You must promptly provide the Company with notice of Your address change.



9

Exhibit A - 000143

## ACCUMULATED VALUE PROVISIONS

**INTEREST TO BE CREDITED.** Interest will be credited to the Guaranteed Period at the Initial or Subsequent Guaranteed Rate. The Company guarantees that We will credit interest at not less than the Minimum Guaranteed Rate as shown on the Contract Data Page.

**GUARANTEED PERIOD.** An initial Guaranteed Period is selected by the Owner. The Guaranteed Period selected may not extend beyond the Income Date. At the end of any Guaranteed Period, a subsequent Guaranteed Period of the same duration will begin unless the Owner has:

1. requested, in writing, a withdrawal within 30 days following the end of the current Guaranteed Period; or
2. elected, in writing, a Guaranteed Period of a different duration from among those offered by the Company at the time, within 30 days following the end of the current Guaranteed Period.

If the subsequent Guaranteed Period extends beyond the Income Date then in effect, the Company will automatically substitute a Guaranteed Period that will end nearest, but prior to, the Income Date then in effect, unless the Owner elects, in writing, a Guaranteed Period of a shorter duration of a change in the Income Date.

If less than one year exists between the end of the Guaranteed Period and the Income Date, a one-year Guaranteed Period will be selected for that interim period, ending on the Income Date.

The Guaranteed Period Value at the beginning of any subsequent Guaranteed Period will be equal to the Guaranteed Period Value at the end of the Guaranteed Period just ending.

Transfers of Guaranteed Period Values between Guaranteed Periods will not be available prior to the expiration of a Guaranteed Period.



10

Exhibit A - 000144

# WITHDRAWAL PROVISIONS

Prior to the Income Date, the Owner may withdraw all or part of the Accumulated Value under this Contract by informing Us in writing at Our Service Center.

**TOTAL WITHDRAWAL.** The Company will pay the Owner the Withdrawal Value of the Contract provided:

1.  the Income Date has not passed;
2.  the Owner submits a written request for total withdrawal to Our Service Center; and
3.  this Contract or a lost contract affidavit completed by the Owner is submitted to Our Service Center.

The Withdrawal Value upon total withdrawal will never be less than the sum of the Guaranteed Period Minimum Values.

**PARTIAL WITHDRAWAL.** The Owner may request a partial withdrawal at any time, provided:

1.  the Income Date has not passed;
2.  the Owner submits a written request to Our Service Center; and
3.  the withdrawal does not reduce the remaining Accumulated Value to less than $1,000.

A partial withdrawal request which would reduce the Accumulated Value below $1,000 will be treated by the Company as a total withdrawal.

**WITHDRAWAL CHARGE.** Withdrawal Charges may be imposed upon certain withdrawals. Withdrawal Charge percentages by completed years since allocation of the Guaranteed Period are as shown in the schedule set out on the Contract Data Page.

Withdrawal Charges are reset at the start of each Guaranteed Period except for the five-year Guaranteed Period. Amounts that are placed in the one-year Guaranteed Period will remain subject to the Withdrawal Charge schedule.

**FREE WITHDRAWALS.** Every Contract Year, You may withdraw a total of 10%, as determined at the date of each request, or less of the Accumulated Value free of Withdrawal Charges. If the initial withdrawal in the Contract Year exceeds 10%, the entire withdrawal will be assessed a Withdrawal Charge. In addition, if a subsequent withdrawal creates an aggregate total withdrawal for the Contract Year that exceeds 10%, the entire subsequent withdrawal will be subject to a Withdrawal Charge.

**SPECIAL WITHDRAWALS.** The Owner may withdraw the Guaranteed Period Value of a Guaranteed Period without Withdrawal Charge in the 30 days following the end of the corresponding Guaranteed Period. A written request must be received at Our Service Center before the end of the 30-day period.

11

Exhibit A - 000145

## DEATH BENEFIT PROVISIONS

**DEATH OF OWNER BEFORE THE INCOME DATE.** Upon the Owner's death, or the death of any Joint Owner, before the Income Date, the death benefit will be paid to the Beneficiary(ies) designated by the Owner. Upon the death of a Joint Owner, the surviving Joint Owner, if any, will be the primary Beneficiary. Any other Beneficiary designation on record at the Service Center at the time of death will be treated as a contingent Beneficiary.

**DEATH OF OWNER AFTER THE INCOME DATE.** If the Owner, or any Joint Owner, dies after the Income Date, and the Owner is not the Investor, any remaining payments under the income option elected will continue at least as rapidly as under the method of distribution in effect at the Owner's death. Upon the Owner's death after the Income Date, the Beneficiary becomes the Owner.

**DEATH OF INVESTOR BEFORE INCOME DATE.** Upon the death of an Investor, who is not an Owner or Joint Owner, before the Income Date, the Contract remains in force and the Owner will become the Investor, until the Owner designates a new Investor, subject to Our administrative rules then in effect.

However, if the Owner is not a natural person, the death of the primary Investor will be treated as the death of the Owner and a new Investor may not be designated.

**DEATH OF INVESTOR AFTER INCOME DATE.** Upon the death of the Investor after the income  Date, the contract remains in force and the Owner becomes the Investor. Income will be paid at least as rapidly as under the method of distribution in effect at the Investor's death.



12

Exhibit A - 000146

## INCOME PROVISIONS

**INCOME DATE.** The date on which Investment payments are to begin. If no Income Date is selected, the Income Date will be the Latest Income Date. Once You have elected an Income Date, You may change the Income Date to any later date that does not exceed the Latest Income Date. You must make such change by providing the Service Center with written notice, at least thirty days prior to the Income Date then indicated on Our records.

**INCOME OPTIONS.** Payments may be made in monthly, quarterly, semi-annual or annual installments as selected by the Owner. If no other income option is elected, income will accrue and be added to the Investment.



13

Exhibit A - 000147

**DIVERSIFIED LENDING GROUP, INC.**
15260 Ventura Boulevard, Suite 1240  Sherman Oaks, CA  91403
www.dlglending.com

## TABLE OF GUARANTEED VALUES

**PLAN:** SECURED INVESTMENT NOTE

**CONTRACT NUMBER:** 01-23456

**ISSUE AGE/SEX:**

**INVESTMENT:**  $  50,000.00

The Initial Guaranteed Rate for the  1 -year Guaranteed Period is   12 %. The Guaranteed Period Value is based on the net amount of Investment shown above. The Guaranteed Period Minimum Value reflects the minimum amount available upon withdrawal assuming the automatic renewal of Guaranteed Periods described in the Contract. All values assume no withdrawals have been made.

| END OF CONTRACT YEAR | GUARANTEED PERIOD VALUE | GUARANTEED PERIOD MINIMUM VALUE |
|---|---|---|
| 1 | $ 56,341.00 | $ 56,000.00 |
| 2 | N/A | N/A |
| 3 | N/A | N/A |
| 4 | N/A | N/A |
| 5 | N/A | N/A |

The Withdrawal Charge percentage by completed years since allocation to the Guaranteed Period:

| | | | |
|---|---|---|---|
| Less than 1 year | 25 % | 4 years | N/A |
| 1 year | 25 %* | 5 years | N/A |
| 2 years | N/A | | |
| 3 years | N/A | | |

Guaranteed Period Values are subject to an Excess Interest Adjustment which may increase or decrease values but never to less than the Guaranteed Period Minimum Value.

14

**DIVERSIFIED LENDING GROUP, INC.**
15260 Ventura Boulevard, Suite 1240  Sherman Oaks, CA  91403
www.dlglending.com

## ACCELERATED BENEFIT ENDORSEMENT

If one of these serious illnesses strikes the Owner while the Contract's Withdrawal Charge would normally apply, the Company will waive the Withdrawal Charge on withdrawals of up to 50% of the Contract's Accumulated Value. In the case of Joint Owners, this feature applies to each of them for 25% of the Accumulated Value.

You can withdraw an amount pursuant to this benefit only once, regardless of the subsequent occurrence of the same condition or the occurrence of a different condition. This benefit is not available if the Owner or Joint Owner(s) has one of these serious illnesses on the Issue Date of the Contract.

If Your Contract includes an Excess Interest Adjustment, any withdrawal from the Contract is subject to the applicable "Excess Interest Adjustment," which may mean an increase or decrease in the amount of Your accelerated benefit.

## COVERED CONDITIONS

**Serious illness means any of the following:**

**HEART ATTACK:** The death of a heart muscle (myocardium) resulting from a blockage of one or more coronary arteries.

**STROKE:** Any acute cerebral vascular accident producing neurological impairment and resulting in paralysis or other measurable objective neurological deficit persisting for at least 30 days.

**CORONARY ARTERY SURGERY:** The actual undergoing of bypass surgery using either a saphenous vein or internal mammary artery graft for the treatment of coronary artery disease.

**LIFE-THREATENING CANCER:** Only those types of cancer manifested by the presence of a malignant tumor characterized by the uncontrolled growth and spread of malignant cells and the invasion of tissue. As used herein, leukemia and Hodgkin's disease (except Stage I Hodgkin's disease) shall be considered life-threatening cancer. LIFE-THREATENING CANCER DOES NOT INCLUDE premalignant tumors or polyps, cancer in situ, intraductal noninvasive carcinoma of the breast, carcinoid of the appendix, Stage I transitional carcinoma of the urinary bladder or any skin cancers other than melanomas.

**RENAL FAILURE:** The end stage of chronic, irreversible failure of both kidneys to function, necessitating regular renal dialysis expected to continue for a period of at least 6 months or resulting in renal transplantation. Diagnosis must be furnished by a physician licensed in the United States and documented by clinical and laboratory evidence.

**ALZHEIMER'S DISEASE:** A progressive degenerative disease of the brain characterized by the loss of intellectual capacity involving impairment of memory or judgment or changes in personality which result in a significant reduction in mental and social functioning and which requires continuous supervision. For the purpose of this benefit, Alzheimer's disease shall be evidenced by a diagnosis of Alzheimer's disease from a neurologist licensed in the United States. The term Alzheimer's disease does not include neuroses or psychotic illness.

Exhibit A - 000149

## DEFINITIONS

**Physician** - means an individual who is licensed to practice medicine and treat illness or injury in the state where treatment is received and who is acting within the scope of his or her license. The term Physician only refers to a Physician licensed and currently practicing in the United States of America. Physician does not include:
1) an Investor or Joint Investor;
2) an Owner or Joint Owner;
3) a person who is part of the Investor's or Joint Investor's, Owner's or Joint Owner's Immediate Family.

**Immediate Family** - means the spouse, child, brother, sister, parent or grandparent.

**Physician's Statement** - means a written statement, acceptable to the Company, signed by a Physician which:
1) gives the Physician's diagnosis of the Owner's covered condition, including documentation supported by clinical, radiological, histological or laboratory evidence of the condition; and
2) gives the Physician's diagnosis of life-threatening cancer according to the criteria of malignancy established by The American Board of Pathology after a study of the histocytologic architecture or pattern of the suspect tumor, tissue or specimen; and
3) gives the Physician's diagnosis of a heart attack including each and all the following three criteria:
    a) a clinical picture of a myocardial infarction; and
    b) electrocardiographic findings consistent with a myocardial infarction; and
    c) elevation of cardiac enzymes above standard laboratory levels of normal (in the case of CPK, a CPK-MB measurement must be used).

## CLAIM REQUIREMENTS

Written proof of the Owner's covered condition must be received by the Company at its Service Center before a benefit payment will be considered. Written proof includes a properly completed Company claim form, Your signed medical records release, and a Physician's statement of condition satisfactory to the Company. The Company reserves the right to request additional medical information from any Physician or institution that may have provided treatment for the covered condition. The Company may require, at its expense, an additional examination by a Physician of its choice. If there is a discrepancy between medical opinions, the opinion of the Company's Physician will govern.

Written notice and proof of claim must be submitted to the Company at its Service Center anytime after the date the Owner develops a serious illness. Claim forms are available from the Service Center.

**AN ACCELERATED BENEFIT MAY BE TAXABLE. AS WITH ALL TAX MATTERS, A PERSONAL TAX ADVISOR SHOULD BE CONSULTED.**

Signed for,
Diversified Lending Group, Inc.


Secretary

Exhibit D Page 63 of 72

**DIVERSIFIED LENDING GROUP, INC.**
15260 Ventura Boulevard, Suite 1240  Sherman Oaks, CA  91403
www.dlglending.com

## TERMINAL ILLNESS BENEFIT ENDORSEMENT

If the Owner incurs a Terminal Illness while the Contract's Withdrawal Charge would normally apply, the Company will waive the Withdrawal Charge on any amounts the Owner requests withdrawn from the Contract under this benefit. The Owner is not eligible for this waiver of Withdrawal Charge if the Owner has a Terminal Illness on the Issue Date of the Contract.

You can withdraw an amount without a Withdrawal Charge pursuant to this benefit only once, regardless of the subsequent occurrence of the same condition or the occurrence of a different condition.

The amount withdrawn pursuant to this provision without a Withdrawal Charge shall be as requested by the Owner, up to 100% of the Contract's Accumulated Value. The amount withdrawn is subject to an aggregate of Our Contracts issued to the Owner not to exceed $250,000. If your Contract includes an Excess Interest Rate Adjustment, a withdrawal under this benefit may be subject to an Excess Interest Adjustment, which may result in an increase or decrease in the amount of your Terminal Illness benefit.

**For the purpose of this Terminal Illness benefit, the following definitions apply:**

- **Physician** - means an individual who is licensed to practice medicine and treat illness or injury in the state where treatment is received and who is acting within the scope of his or her license. The term Physician only refers to a Physician licensed and currently practicing in the United States of America.  Physician does not include:
    1. an Investor or Joint Investor;
    2. an Owner of Joint Owner;
    3. Beneficiary(ies); or
    4. a person who is party of the Beneficiary's, Investor's or Joint Investor's, Owner's or Joint Owner's Immediate Family.

- **Immediate Family** - means the individual's spouse, child, brother, sister, parent or grandparent.

- **Physician's Statement** - means a written statement, acceptable to the Company, signed by a Physician which:
    1. gives the Physician's diagnosis of the Owner's irreversible medical condition; and
    2. states with reasonable medical certainty, that the irreversible medical condition will result in the death of the Owner within twelve (12) months or less from the date of the Physician's statement.   This statement will take into consideration the ordinary and reasonable medical care, advice and treatment available in the same or similar communities.

Exhibit D Page 64 of 72

Exhibit A - 000151

- **Terminal Illness** - is an irreversible medical condition, which will result in the death of the Owner within (12) twelve months or less from the date of the Physician's statement.

**CLAIM REQUIREMENTS.** Written proof of the Owner's Terminal Illness must be received in good order at Our Service Center before a Terminal Illness benefit payment will be considered. Written proof includes a properly completed Company claim form, Your signed medical records release, and a Physician's statement of condition satisfactory to the Company. The Company reserves the right to request additional medical information from any Physician or institution which may have provided treatment for the Terminal Illness. The Company may require, at its expense, an additional examination by a Physician of its choice. If there is a discrepancy between medical opinions, the opinion of the Company's Physician will govern.

Written notice and proof of claim must be submitted to Our Service Center any time after the date the Owner develops a Terminal Illness. Contact Our Service Center for details on how to apply for benefits under this Endorsement.

A PAYMENT UNDER THIS PROVISION MAY BE TAXABLE. AS WITH ALL TAX MATTERS, YOU ARE ENCOURAGED TO SEEK LEGAL AND/OR TAX ADVICE.

Signed for
**Diversified Lending Group, Inc.**

Secretary

Exhibit A - 000152

*Diversified Lending Group, Inc.*

---

## ENDORSEMENT

**This Endorsement is made a part of the Contract to which it is attached. The terms of the Contract also apply to the Endorsement except as they are changed by the terms of this Endorsement.**

The following provision is added to the **WITHDRAWAL PROVISIONS** section:

**QUALIFIED PLAN CONTRACT REQUIRED MINIMUM DISTRIBUTIONS.** Qualified Plan Contract Required Minimum Distributions will be based upon amounts in the Contract and federal tax law requirements. You may request a withdrawal necessary to satisfy these minimum distribution requirements by submitting a request to the Service Center in a form acceptable to the Company. If the withdrawal request does not specify from which Guaranteed Period(s) the withdrawal is to be made, the withdrawals will be taken from each Guaranteed Period in proportion to their current value.

Withdrawal Charges will not be assessed by the Company on the Qualified Plan Contract Required Minimum Distribution. However, should You request an amount greater than the required minimum distribution amount, the entire amount requested from the Contract will be subject to any applicable Withdrawal Charge.

Signed for

Diversified Lending Group, Inc.

Secretary

Exhibit D Page 66 of 72

Exhibit A - 000153

# *Diversified Lending Group, Inc.*

## ENDORSEMENT

**This endorsement is made a part of the Contract to which it is attached. The terms of the Contract also apply to this endorsement except as they are changed by the terms of this endorsement. The Contract is endorsed as follows:**

The Company may declare and credit an interest rate bonus of up to 2% on the amount allocated to a subsequent Guaranteed Period(s). Such interest rate bonus will be credited during the first year of the subsequent Guaranteed Period and shall be in addition to any base interest rate declared by the Company as set forth in this Contract. Such interest rate bonus shall be declared in advance and credited in a nondiscriminatory manner and consistent with state law. The interest rate bonus as described in this Endorsement will be excluded from the base interest rates used in the Excess Interest Adjustment calculation.

Signed for the

Diversified Lending Group, Inc.

President and Chief Executive Officer

Exhibit A - 000154

# *Diversified Lending Group, Inc.*

## WAIVER OF WITHDRAWAL CHARGE FOR EXTENDED CARE
### (hereinafter, "Endorsement")

**CONTRACT TERMS APPLY.** This Endorsement is attached to and made a part of the Contract. The terms of the Contract apply to the Endorsement except to the extent they are in conflict with its terms. This Endorsement terminates when the Contract terminates.

The following provisions are hereby added to the Contract:

**WAIVER OF WITHDRAWAL CHARGE.** If You (hereinafter Owner and/or Joint Owner are "Owner," "You" or "Your") are confined to a Nursing Home or Hospital for ninety (90) consecutive days, a period during which the Contract's Withdrawal Charge otherwise would normally apply, the Company will waive the Withdrawal Charge on any amounts You request withdrawn from the Contract under this waiver. You are not eligible for this Waiver of Withdrawal Charge if You are Confined to a Nursing Home or Hospital during the thirty-day (30) period following the Issue Date of the Contract, unless such Confinement is not related to a subsequent Confinement for which you request the waiver contained in this Endorsement.

You may exercise this waiver only once. You are not eligible for this waiver if you are no longer Confined to a Nursing Home or Hospital.

Confinement must be prescribed by a Physician and be Medically Necessary.

Withdrawals made pursuant to this Endorsement shall be up to 100% of the Accumulated Value of the Contract, subject to an aggregate of all withdrawals made from DLG contracts owned by You not to exceed $250,000.

If Your Contract includes an Excess Interest Adjustment, a withdrawal under this Endorsement is subject to the applicable Excess Interest Adjustment, which may mean an increase or decrease in the amount of the benefit received by You.

**DEFINITIONS.** For the purpose of this Endorsement, the following definitions apply:

- **Confinement/Confined** - means necessarily confined as an inpatient.

- **Hospital** - means a facility located within the United States or its territories which:
  a. is operated pursuant to law;
  b. operates primarily for the care and treatment of sick and injured persons as inpatients;
  c. provides continuous 24-hour nursing service by or under the supervision of a registered graduate professional nurse (R. N.);
  d. is supervised by a staff of licensed Physicians; and
  e. has medical, diagnostic and major surgical facilities or has access to such facilities on a prearranged basis.

Exhibit A - 000155

- **Physician** - means an individual who is licensed to practice medicine and treat illness or injury in the state where treatment is received and who is acting within the scope of his or her license. The term Physician only refers to a Physician licensed and currently practicing in the United States or its territories. Physician does not include:
  a. an Investor or Joint Investor;
  b. an Owner or Joint Owner
  c. Beneficiary(ies); or
  d. a person who is part of the Investor's or Joint Investor's, Owner's or Joint Owner's Immediate Family.

- **Immediate Family** - means the spouse, child, brother, sister, parent or grandparent.

- **Medically Necessary** - means appropriate and consistent with the diagnosis in accordance with accepted standards of practice, and which could not have been omitted without adversely affecting the confined Owner's condition.

- **Nursing Home** - is a facility which:
  a. is located in the United States or its territories;
  b. operates pursuant to law in the jurisdiction in which it is located;
  c. provides custodial care under the supervision of a registered nurse (R.N.); and
  d. *does not* include any place owned or operated by a member of the Owner's Immediate Family.

**CLAIM REQUIREMENTS.** Written notice and proof of claim of the Owner's Confinement must be submitted to the Company at Our Service Center within 90 days after the date the Owner becomes Confined to a Nursing Home or Hospital before a waiver will be considered pursuant to this Endorsement. Written proof includes: (1) a properly completed Company claim form; (2) Your signed medical records release; and (3) a Physician's Statement of condition satisfactory to the Company. The Company reserves the right to request additional medical information from any Physician, Hospital, or Nursing Home. The Company may require, at its expense, an additional examination by a Physician of its choice. If there is a discrepancy between medical opinions, the opinion of the Company's Physician will govern.

A PAYMENT UNDER THIS ENDORSEMENT MAY BE TAXABLE. AS WITH ALL TAX MATTERS, YOU ARE ENCOURAGED TO SEEK LEGAL AND/OR TAX ADVICE.

Signed for
**Diversified Lending Group, Inc.**


President and Chief Executive Officer

Exhibit A - 000156

# *Diversified Lending Group, Inc.*

## INTEREST CREDITING ENDORSEMENT

**This endorsement is made a part of the Contract to which it is attached and is effective on the Issue Date. To the extent any provisions contained in this endorsement are contrary to or inconsistent with those of the Contract to which it is attached, the provisions of this endorsement will control. The terms of the Contract also apply to this endorsement except as they are changed by the terms of this endorsement. The Contract is endorsed as follows:**

1. The **INTEREST TO BE CREDITED** provision in the Contract is deleted and replaced with the following language:

    "**INTEREST TO BE CREDITED.** Interest will be credited to the Guaranteed Period at the Initial or Subsequent Guaranteed Rate. The Initial or Subsequent Guaranteed Rate for the Guaranteed Period selected will be as declared in advance by the Company's Board of Directors and will remain in effect for a period of not less than the selected Guaranteed Period (in all cases not less than 12 months) so long as the amount allocated to the Guaranteed Period remains in the Guaranteed Period. The Board reserves the right to declare a higher Initial or Subsequent Guaranteed Interest Rate on certain Guaranteed Periods. The criteria for crediting such higher interest rates will be determined by the Company from time to time, and will be applied in a nondiscriminatory manner to all contracts of the same class. The Company guarantees that We will credit interest at not less than the Minimum Guaranteed Rate as shown on the Contract Data Page."

Signed for
Diversified Lending Group, Inc.

President and Chief Executive
Officer

Exhibit D Page 70 of 72

Exhibit A - 000157

Exhibit A - 000158




*Diversified Lending Group*

For the Month Ended
December 31, 2006

## Current Month [1]

| | |
|---|---|
| Current Month Yield | 1.99 |
| Previous Month Yield | 2.03 |
| Year to Date Gain (%): | 23.65 |
| Assets Under Management: | $551.7 MM |

## 2006 Monthly Returns (%)

| Jan | Feb | Mar | Apr | May | Jun |
|---|---|---|---|---|---|
| 1.67 | 1.92 | 2.07 | 2.02 | 2.10 | 1.91 |

| Jul | Aug | Sep | Oct | Nov | Dec [2] |
|---|---|---|---|---|---|
| 1.96 | 1.97 | 2.01 | 2.00 | 2.03 | 1.99 |

## Commentary

2006 has been a wonderful year for DLG. We've accomplished new heights in our ongoing pursuit of safe and profitable investments. Our real estate portfolio has grown and our profits have enabled us to declare a 2% bonus. We can't begin to tell all of you how much we appreciate your confidence and faith. We will begin the New Year with vigor and the strength of investment strategies. We are expecting a great 2007 and look forward to providing exciting results.

## Fund Summary

| | |
|---|---|
| Inception Date | July 1, 1983 |
| Structure | Open End Investment Notes |
| Management Fee [3] | 1% |
| Performance Fee | 8% |
| High Water Mark | No |
| Fund Codes | REI 9 VAR |
| | NREI STD |
| Currency | US |
| Investment Minimum | $50,000 (Accredited Investors) |
| | $10,000 (Financing Program) |

| | |
|---|---|
| Purchases | Weekly |
| Liquidity | Monthly |
| Valuation | Monthly |
| Distributions | Monthly |
| Portfolio Advisor | Worldwide Financial Corp |
| Trustee/Custodian | Wells Fargo Bank |
| Administrator | Polycomp |
| Legal Counsel | Palmieri et al |
| Auditor | American Accounting Corp. |

## Investment Overview

Diversified Lending Group's investment philosophy is built on the following three pillars:

1. Preservation of our investors' capital
2. Delivering absolute returns
3. Having lower volatility than major traditional indices.

To meet these objectives, Diversified Lending Group uses only investments in Income Stream Real Estate. The Real Estate market has experienced long-term upward valuation. The investment committee is directly responsible for screening and selecting properties that meet the criteria for investment. Income stream properties are designed for long term holds with leverage positions of not greater than 35% LTV.

---

**Diversified Lending Group, Inc.**
15260 Ventura Blvd, Suite 1240
Sherman Oaks, CA 91403

Tel: 818-905-3337
800-914-4441
Fax: 818-905-3390

---

[1] month performance is based on returns net of management and performance fee adjustments. Performance numbers for 1 month are stated as of December 31, 2006. [2] Performance numbers for month to date are stated as of December 31, 2006. [3] Management fee for DLG Fund does not reflect fees charged by underlying manager. Calculations for DLG Fund as based on net asset values after deductions for management fees, performance fees, and operating expenses. Diversified Lending Group Inc. is a private management company and does not provide investment advice or services to the public. Nothing herein should be read to constitute an offer or solicitation to provide investment advisory services to any person or entity. This is not to be construed as a public offering in any jurisdiction. Important information about the Fund, including a statement of the Fund's fundamental investment objective, management fees, charges and other expenses is contained in the Information Circular. Obtain a copy of the Information Circular from the company and read it carefully before making an investment decision. This investment may not be suitable for all investors. Unit values and returns will fluctuate. Investors are cautioned that data based on less than five years may not be sufficient to establish a track record on which investment decisions should be made. The Fund is not guaranteed and past performance may not be repeated.

Exhibit D Page 72 of 72

Exhibit A - 000159

# EXHIBIT E

# EXHIBIT E

# SINCE YOU CARE

A Series of Guides from MetLife in Cooperation with the National Alliance for Caregiving

# Preventing Elder Abuse

## About the Subject

It is often difficult to believe that an older family member or friend may be subject to any form of maltreatment. However, it is estimated that 2.1 million older Americans a year are victims of physical, psychological, and other forms of abuse and neglect.[1] That number may still be underestimated, as it is believed that for every abuse case reported, there may be as many as five more that are not.[2] It is believed that 4-6% of the elderly population suffers from some form of abuse.[3] These are compelling statistics in a society where the older population is growing rapidly. The number of individuals age 65+ is expected to grow from 35 million in 2000 to 71.5 million by 2030 and 86.7 million by 2050. The 85+ population is expected to more than quadruple in this same time period, going from 4.2 million in the year 2000 to 9.6 million by 2030 and 20.9 million by 2050.[4]



**MetLife**

Caregivers face many challenges as they search for information and make decisions about how best to provide care to their loved ones. To help meet their needs, MetLife offers Since You Care — a series of guides which provide practical suggestions and useful tools on a variety of specific care-related products.

Exhibit E Page 1 of 17

Exhibit A - 000161

# SINCE YOU CARE

Federal definitions of elder abuse first appeared in the 1987 Amendments to the Older Americans Act, intended to serve as guides in order to define the problem.[5] Today, all 50 states have laws to prevent elder abuse, but state-to-state definitions and enforcement of abuse violations vary.

Researchers have various theories on what leads to elder abuse, but all believe it is a complex issue encompassing economic, societal, psychological, and physiological issues of both the abuser and the abused. Research shows that individuals over age 80 are more likely than younger age groups to be victims of elder abuse, representing 41% of substantiated (proven) incidences of psychological abuse, 43% of substantiated incidences of physical abuse, and 48% of proven incidences of financial exploitation. Older adults who need more physical assistance and/or who have compromised cognitive function are also more likely to be victims of abuse. About 75% of elder abuse and neglect victims are physically frail and about 60% have some level of confusion.[6]

Both men and women of all races, economic levels, and health status, both physical and mental, can be victims of maltreatment. What may be surprising to many people is that the most frequent perpetrators of abuse are family. The 2004 Survey of State Adult Protective Services reported that abuse by a family member accounts for 65.4% of abuse cases. Spouses or partners account for 16.3%, adult children for 33.6%, and other family members 21.5%.[7] There is no solid evidence as to why abuse is more common within the family structure, but it is thought to be due to a variety of factors.

Families with a history of prior abuse or hostile relationships may have a greater chance of experiencing abuse. Social isolation of the older person or family caregiver can be as much a risk factor, as it can be a sign of abuse. Changes in family dynamics due to an older family member's physical presence in a home may result in increased demands and stresses on the caregiver, as well as additional financial considerations. These are all factors that may increase the possibility of elder maltreatment.

## Things You Need to Know

Any form of mistreatment that results in the harm of or loss to an older person can be defined as abuse.[8] The National Center



- 2 -

Exhibit E Page 2 of 17

Exhibit A - 000162

SINCEYOUCARE

on Elder Abuse (NCEA) broadly defines and places elder abuse into three categories.[9]

### Domestic Abuse

- This is abuse within a person's own home or the home of a caregiver. This applies to several forms of maltreatment of an older adult by someone such as a spouse, adult child, or other relative. Additionally, a paid caregiver providing home care services may also mistreat an older adult.

### Institutional Abuse

- This is defined as maltreatment that occurs to older adults residing in a facility such as a nursing home, assisted living facility, foster home, or group home. In instances of institutional abuse, the perpetrator is usually a staff member or other paid care provider who has a legal or contractual agreement to provide care to the victim. In some instances another resident may be the cause of the abuse.

Contrary to conventional belief, reports indicate that 60.7% of abuse claims occurred in domestic settings, while 8.3% of reports occurred within a facility.[10] However, this does not minimize the incidence of facility abuse. With a rapidly growing elderly population, long-term residential facility use is expected to rise. Studies monitoring abuse in long-term care residential facilities are ongoing.

### Self-Neglect or Self Abuse

- Self neglect or abuse refers to the fact that individuals may threaten their own health or safety by failing to provide for their own basic daily needs. This may result when an individual is cognitively impaired or when an individual has a chronic illness that leads to the person being physically not capable of providing for his or her own needs.

It is important to recognize that individuals who are mentally competent and physically capable may also neglect themselves. Understanding the consequences of their actions, they may make a conscious and voluntary decision to engage in acts that threaten their health or safety. According to the 2004 Adult Protective Services survey, self-neglect was the most common category of reported incidences of maltreatment, accounting for 26.7 % of all investigated reports.[11]

## Types of Elder Abuse[12]

Most often abuse victims are thought of as bruised and battered individuals, but physical maltreatment is only one of several types of abuse. Generally accepted definitions are:

### Physical

- The use of physical force that may cause pain or injury.

### Sexual

- Non-consensual sexual contact of any kind, as well as sexual contact with any older person who is unable to give consent.

### Psychological/Emotional

- The infliction of mental or emotional anguish or pain through either verbal or non-verbal acts.

### Financial/Material Exploitation

- The act or process whereby an individual illegally or improperly uses an older person's resources, including property, funds, and/or other assets.

### Neglect

- The refusal or failure of an individual to fulfill any part of his or her duties or obligations to an older person, including failing to provide an older person with necessities such as food, shelter, personal safety, clothing, medicine, and needed care. Neglect may also include the failure of a person who has financial responsibilities to provide care such as paying for needed home care services or the failure of an in-home paid care provider to deliver needed care.

Exhibit A - 000163

## SINCE YOU CARE

Signs and symptoms of abuse should not be viewed out of context as conclusive evidence of abuse. For example, an older person with issues of balance might fall or bump into obstacles. There might be residual bruising in areas such as the back or thighs. The person may not want to admit that he or she is having problems walking and may be reluctant to say what caused the bruises. An evasive answer, combined with the physical evidence, could lead someone to jump to an incorrect conclusion. Side effects of medications or bruises or injuries as a result of a chronic illness might resemble abuse. Further investigation must be undertaken in order to determine the cause for concern.

### Physical

Physical abuse, in many instances, is the easiest type of maltreatment to spot. In 2004 State Adult Proective Services survey it accounted for 12.9% of abuse allegations.[13] Physical maltreatment may result in obvious injuries such as black eyes, welts over the body from objects used to hit an older person, or from restraints at the wrists, ankles, or waist. There may be indications of burns, acute signs of hair and tooth loss, broken bones, or internal injuries. Bruising, both old and new, particularly those indicating specific objects or fingers, on areas such

as the wrists, upper arms, and neck could be worrisome. The improper use of medication, such as an overdose of a tranquilizer, as a form of restraint can also be considered physical abuse.

### Sexual

Sexual abuse accounts for less than 1% of abuse reports.[14] It involves non-consensual physical contact, as well as lurid photos or exhibition of the older person. Signs of sexual abuse may not be as readily visible to family and friends. Suggestions of such maltreatment may be more apparent during a routine physical exam or when medical or personal care assistance becomes necessary.

Indicators of sexual abuse can be venereal disease, vaginal infections, anal bleeding, bruising around the breasts and genital area, or torn and/or bloodied undergarments.

### Psychological

Psychological abuse may be one of the more difficult forms of maltreatment to recognize. It accounted for 13.6% of abuse allegations in the Adult Protective Services 2004 survey.[15] Emotional abuse belittles elders and robs them of their dignity and self-respect. Abuse may be in the form of threats, insults, intimidation, humiliation, and harassment.

Psychological abuse may occur when an older individual is isolated from others such as friends and family against his or her will. Victims may be made to feel like they are incapable of doing or providing for themselves without the help of the individual who is inflicting the emotional abuse.

Some indications that an individual might be experiencing emotional abuse are:

- hesitation in speaking openly with others, especially when a particular person is around,
- withdrawal and unresponsive communication,
- fear, agitation, anxiety, and help-lessness, and
- changes in sleep patterns, appetite, and behavior.

### Financial/Material Exploitation

Financial exploitation is an area of growing concern. In the 2004 Adult Protective Services survey, it accounted for 20.8% of abuse allegations[16] up from 13% in the 2000 survey.[17] Financial exploitation includes activities such as cashing an older person's check without permission, forging an older person's signature, misusing or stealing money, or deceiving an older individual into signing a document such as a will or contract.

- 4 -

Exhibit E Page 4 of 17

Exhibit A - 000164

# SINCEYOUCARE

Financial exploitation may also be a motivating factor behind other forms of abuse. Physical and/or psychological maltreatment or caregiver neglect may be ways in which another person mistreats an older person hoping to gain access to his or her financial or material assets. Exploitation may be at the hands of a family member who feels that they are "owed" the money, either for caregiving duties or as an inheritance. An unscrupulous legal representative, such as someone who has power of attorney for finances or a guardian/conservator may take advantage of an individual's finances, property, or other assets. There is also the risk that a paid caregiver may financially exploit an older person, especially if that person does not have involved family or friends.

Indications that an older individual may be a victim of financial exploitation are:
- lack of care when the older adult has sufficient funds available,
- changes in banking habits,
- excessive use of ATM and credit cards, especially for non-care related items,
- abrupt changes in a will or other finanical documents,
- unpaid bills and utilities,
- documents signed under duress (forcing an individual to sign a document against their will),



- unexplained disappearance of money or valuables,
- unexplained transfer of money or assets to a family member or someone outside of the family, and
- discovery of an older person's signature forged on checks, financial transaction documents, or titles on his or her possessions.

## Neglect

Caregiver neglect can be either intentional or unintentional. When a caregiver knowingly and purposely fails to provide those items or services needed to keep an older person from physical, mental, and emotional harm, they are committing intentional neglect. In this instance, the caregiver is aware of the needs of the individual but does not provide for him or her.

Unintentional neglect is usually rooted in a lack of knowledge or an inability on the part of the caregiver to provide needed care for the older person. Caregiver neglect accounts for 23.7% of abuse allegations.[18]

Indications that an elder may be suffering from caregiver neglect are:
- poor personal hygiene,
- breakdown of the skin,
- malnourishment or dehydration,
- excuses for the caregiver made by the care recipient,
- unsanitary and unclean living conditions(soiled bedding, fecal/urine smell, soiled and stained clothing), and
- unsafe or hazardous living conditions (lack of heat or running water, improper wiring).

- 5 -

Exhibit E Page 5 of 17

Exhibit A - 000165

### Self-Neglect

As described earlier self-neglect is the most commonly reported from of elder maltreatment. It is more common among individuals 85 years and older (the "oldest-old") who may be confused and are often isolated. Family may be involved to a limited extent, but the older person wishes to remain independent, often at his or her own expense. Frequently, people who neglect themselves have dementia, chronic illness, or a substance abuse problem that interferes with their ability to safely manage their health and affairs.

Indications of self-neglect are similar to those of neglect by a caregiver. Individuals may be unkempt, have poor dental and personal hygiene, or appear malnourished and/or dehydrated. They may not be taking their medications properly or appear listless, confused, and depressed. Their living environment may be dirty, lacking in electricity or water, and unsafe. Frequently there is a need for an assessment to determine the competency of the individual and his or her ability to appropriately manage health and safety issues.

Indicators of all types of abuse may not always be clearly visible. The signs and symptoms listed in the above types of abuse are not all-inclusive. Sometimes individuals do not know they are being abused or they may blame themselves for their circumstances, and are therefore reluctant to talk about their fears.

### Scams and Fraud

Individuals over the age of 50 control 70% of the nation's wealth.[19] As a result, they are frequent targets for telemarketing abuse, internet scams, and investment fraud. Many people of all ages find it difficult to determine the legitimacy of these operations. Older adults should be reminded to speak with family or trusted friends before sending money or providing credit card or Social Security numbers to any solicitors, whether by telephone, mail, the internet, or in person.

Most older Americans are not aware that over $40 billion a year is lost on fraudulent telemarketing. While dishonest telemarketers call adults of all ages and backgrounds, older individuals often represent up to 80% of their calls.[20]

Reassure individuals who are being solicited that they are not being rude by simply hanging up the phone, deleting e-mail messages, or refusing to open the door to a stranger. Suggest that individuals may use an answering machine to screen phone calls if they find telephone solicitors particularly troublesome.

Individuals may add their name and phone number to the "National Do Not Call Registry" by calling 888-382-1222. This will greatly reduce the number of telemarketing and other unwanted calls received. When joining the registry, it is important to understand that it may take some time to activate the request. The phone call and registration are free.

### Reporting Abuse

If an older adult tells you that he or she is being abused or exploited, take the report seriously, and try to get as much detail as possible. The situation will usually worsen if it is allowed to continue. While the definitions of physical, financial, and sexual abuse may vary within the United States, all are considered crimes and are subject to prosecution. In some circumstances, depending on the situation, emotional abuse and neglect can also be criminally prosecuted.

When making a report, the more information you have to supply to the investigating agency the better. Provide the name, address, and phone number of the victim. Also, obtain the name, address, and phone number of the alleged perpetrator (if applicable). Try and gather information on the mental health, disability, or illness of both parties. Be prepared to state your reason for concern.

Exhibit E Page 6 of 17

Exhibit A - 000166

# SiNCEYOUCARE



The information you report is kept confidential and you're protected from liability in the event that the suspicion cannot be substantiated. If, for some reason, you are unable to make a report, consider bringing the older individual to the doctor. If the physician feels there is evidence of abuse, he or she is required to report it.

Unfortunately, prosecution of an abuser is not always followed through, due in part to fears of perpetrator retaliation, especially if the perpetrator is a family member. Additionally, an older individual may be incapacitated and unable to be a witness. If the abuser is also the caregiver, a conviction could mean facility placement for the victim of the abuse. However, it is important to report suspected abuse so that it can be properly investigated and the older person can be protected from further abuse wherever possible.

In an instance when you fear an older person might be in immediate danger, call your local police or sheriff's department or 911. Police will investigate any suspected criminal abuse.

### Social Service Agencies

All states have reporting systems to accept and investigate allegations of abuse. Most frequently abuse is reported to Adult Protective Services (APS). APS provides protective and supportive services to older and vulnerable adults who are abused, neglected, and exploited. The number for APS can usually be found in the area of Department of Human or Social Services in the blue pages of your phone book. Or, you may call the *Eldercare Locator* at 800-677-1116 and they will assist you with locating the appropriate agency. You will need the zip code of the area in which the individual resides.

APS will investigate all reports of suspected abuse or neglect. Once the investigation is completed, APS will work with the older individual and his or her family or support system and other community resources to address any identified problem areas. APS is concerned with protecting the safety and dignity of the older person. In certain situations, the older person may choose not to accept any assistance or intervention. If the person is

mentally competent, it is, under most circumstances, his or her right. In these situations it is often necessary to move slowly and support the individual. Sometimes changes will occur over time. Protecting the individual's right to autonomy is a very important consideration. In other situations, where the individual is not mentally competent, is unable to protect himself or herself, and would be at serious risk if left alone more immediate steps need to be taken to assist the individual. This may at times involve intervention from the police, especially in situations where there is evidence of a crime.

### Long-Term Care Ombudsman

If you suspect abuse of an individual residing in a nursing home or residential care facility, contact your area's long-term care ombudsman. The ombudsman program is a federally funded program that acts on the behalf of nursing home and residential care residents to make sure that their rights are protected. The ombudsman will investigate concerns of abuse and exploitation of an older person in a long-term care facility. The number of your ombudsman is available from the *Area Agency on Aging* in your area or the *Eldercare Locator*. The ombudsman number must also be posted prominently in every facility.

- 7 -

Exhibit E Page 7 of 17

Exhibit A - 000167

# SINCEYOUCARE

If you are considering confronting an abuser, be certain that you are not putting the older person in a more vulnerable position. Make sure you have the victim's consent and that you are able to remove him or her from the situation immediately if necessary.

## Prevention

Elder abuse, like other forms of domestic abuse, has no tried and true cause. It is the result of a multitude of factors. Its cause might be found in the complex social, physical, economic, psychological, and cognitive components of the people in whose lives it appears. And while there are various theories as to its actual cause, there are no definitive factors that explain all elder mistreatment. Without solid indicators, abuse is more difficult to prevent. However, by identifying the risk factors, the likelihood of abuse may by lessened.

### For Older Americans

- Avoid isolation. Isolation can lead to loneliness, sadness, and depression, and increase the possibility of abuse or neglect including self neglect.
- Stay social and stay active. Keep in touch with old friends and make new ones. Consider volunteering in the community or becoming a surrogate grandparent or mentor.
- Don't live with another person who has a history of abusive or violent behavior. Be aware of caregivers, including family, who might have a need for financial assistance or who have substance abuse issues.

### For Caregivers

- Look into respite care to relieve some of the caregiving responsibilities. Being overburdened with caregiving and other responsibilities may make a caregiver more inclined to abuse the care recipient.
- If your family member is being cared for either in a facility or by paid caregivers at home on a full or part-time basis, remain involved and observant to be assured he or she is receiving quality care and that there are no signs of abuse or neglect.
- Consider counseling or a support group if you are feeling stressed or overwhelmed with caregiving responsibilities.

## Helpful Hints

- If you have a loved one in a long-term care facility, visit often and at various times of the day or evening. Note how your loved one is cared for. Watch interaction with caregivers. Do you see conversation and smiles or hesitancy, anxiety, and fearful behavior on your loved one's part? Report any concerns immediately to the nursing supervisor.

- If you are a caregiver, contact the local Area Agency on Aging (AAA). There is a program called the National Family Caregiver Support Program (NFCSP) which supplies support services to family members and friends who are caregivers. Information is available by calling the local Area Agency on Aging (AAA), usually found in the blue pages of your phone book.
- Most older adults value their independence. However, it is important to recognize when a few simple changes can help an older adult remain safe and independent, and when it is in his or her best interest to relocate or obtain caregiving services from another individual. If an older adult is capable, don't make decisions for him or her. Discuss problems. Listen to the older adult's concerns and then offer advice. Don't dictate.
- Victims of financial abuse may be reluctant to tell family members that they were "duped." It is important that older adults understand they are not alone in their victimization. Encourage your family member to speak with you if he or she has concerns.
- If the management of finances is an issue of concern for you and/or your family member, consider looking into a Daily Money Management (DMM) program.

-8-

Exhibit E Page 8 of 17

Exhibit A - 000168

## SINCE YOU CARE



Daily Money Management programs provide an array of formal and informal services related to financial management. Not all DMM programs offer the same services. DMM is a growing field, but unregulated, and care should be exercised when enlisting services. Check with your local Area Agency on Aging for recommendations or with professional organizations such as the American Association of Daily Money Managers (AADMM). AADMM can be accessed at www.aadmm.com.

### Resources to Get You Started

#### Books and Publications

**Elder Abuse and Neglect: In Search of Solutions**
This is an online guide for consumers from the American Psychological Association. It contains information about the types of abuse and neglect, what to look for, and where to go for help. It includes a listing of useful resources. The guide can be accessed at www.apa.org/pi/aging/eldabuse.html.

#### How To Care for Aging Parents
This book is a useful starting point for those finding themselves in a caregiver's role for parents or any other older relative. It provides information on health care issues, caregiver concerns, community and facility based services, as well as an extensive listing of helpful agencies and organizations, with contact information that assists caregivers. It contains a section specific to concerns related to neglect or abuse if a loved one is in a facility. Morris, V. (2004). Workman Publishing Company, $18.95 ISBN: 0761134263

**Is Your Parent in Good Hands?: Protecting Your Aging Parent from Financial Abuse and Neglect**
This book is written by a practicing attorney of over thirty years. As an advocate for the older adult, the author talks about ways of protecting the people from financial exploitation. He discusses legal issues, health care issues, caregivers, estate planning, and physical issues. Useful self-help guides are provided, with information presented in an informative easy to read format. Carnot, E.J. (2004). Capital Books, $18.95 ISBN: 1931868379

### Internet Sites

**AARP – Consumer Protection**
The AARP site offers a comprehensive consumer protection section, which includes articles on home loans and home improvement, articles that discuss various types of fraud, advice on shopping for utilities, tips for being a wise consumer and how to purchase cell phone service, long-distance service, and other types of utilities. Once in the website, type "consumer protection" under search to locate the information. www.aarp.org

**Eldercare Locator**
The Eldercare Locator, funded by the Administration on Aging, is a service that gives information to

- 9 -

Exhibit A - 000169

## SINCE YOU CARE



callers about state and community resources that provide assistance to older persons and their caregivers. The goal is to enable older persons to live independently and safely in their homes and communities for as long as possible and provide support for their caregivers. The service will provide you with local numbers to obtain information on resources that you need. The Eldercare Locator may be accessed at: www.eldercare. gov, or by calling 1-800-677-1116, M-F, 9 a.m.-8 p.m. EST.

### The Administration on Aging (AOA)

The Administration on Aging website contains information related to elder abuse, the long-term care ombudsman program, and preventing fraud. The site also provides links to other helpful resources related to understanding, preventing, and responding to suspicions of elder abuse. It can be accessed at: www.aoa.gov/eldfam/Elder_Rights/ Elder_Abuse/Elder_Abuse.asp.

### The National Center on Elder Abuse (NCEA)

The National Center on Elder Abuse website provides a wealth of information on elder abuse and its causes, ways to recognize and prevent abuse, and programs to assist victims of abuse, including Adult Protective Services. It includes a frequently asked questions section, information for caregivers regarding supports for both themselves and their family members, and links to a variety of important resources. The site allows you to search for resources on a state by state basis. It can be accessed at: www.elderabusecenter.org.

### The National Committee for the Prevention of Elder Abuse

The National Committee for the Prevention of Elder Abuse provides information related to elder abuse and a section specific to help victims and those vulnerable to elder abuse, which includes information on what to do if you feel someone you know is being abused, services available to stop abuse, and resources in the community. The site can be accessed at: www.preventelderabuse.org.

### The National Consumers League (NCL)

Formed in 1899, the NCL is the nation's oldest consumer organization. The NCL works to protect the American consumer and worker in marketplace and work-

place issues. The website provides information on fraud, telemarketing, and computer issues, and offers publications. You can access their site at www.nclnet.org. You may also contact the organization by phone at 202-835-3323.

The NCL created the National Fraud Information Center which can be accessed at: http://fraud.org/. This site allows you to submit an online complaint related to possible fraud. The site provides information on common internet and telemarketing fraud schemes and contains a section specific to elder fraud which can be downloaded and printed.

### The National Long-Term Care Ombudsman Resource Center

The National Long-Term Care Ombudsman Resource Center is a resource to help find a nursing home or assisted living facility if your loved one needs this level of care. An ombudsman can help you with any concerns or complaints you may have related to care in a facility. The site, which can be accessed at: www.ltcombudsman. org/static_pages/ombudsmen. cfm, provides the ability for you to search for the contact information for the ombudsman program in your state.

- 10 -

Exhibit E Page 10 of 17

Exhibit A - 000170

# SinceYouCare

## Preventing Elder Abuse - For Older Americans

Aging members of society need to be aware of behaviors and actions that can make them vulnerable to abusive situations and exploitation. The following are some questions to ask yourself:

Do you maintain a social network of friends?

Do you participate in social or community activities through local senior centers or associations?

Do you have a "good neighbor" or "good buddy system?"

Do you keep in regular contact with family members, if even only by phone? How frequently do you speak?

Do friends and family visit you?

Would you like to be more "in touch" with friends, family, and your community?

Are your legal affairs in order?

Do you have a will? Living will?

Do you have a Durable Power of Attorney?

Do you review checking and savings accounts, credit card statements, and investment accounts on a monthly or more frequent basis?

Have you considered direct deposit for pension checks?

Do you seek advice from family, trusted friends, or an attorney before signing any documents related to your personal or financial affairs?

Regular review of financial affairs will keep you abreast of any discrepancies. Enlisting another pair of eyes to review documents can help spot or prevent fraudulent actions by unscrupulous business people.

*(Perf line - Does not print.)* *(tear here)*

### MetLife

MMI00035(1107)          ©2007 Metropolitan Life Insurance Company, New York, NY          L11077533(exp1010)MLIC-LD

Exhibit E Page 11 of 17

Exhibit A - 000171

(Perf line - Does not print.)

Exhibit E Page 12 of 17

Exhibit A - 000172

# SINCE YOU CARE

## Preventing Elder Abuse - For Caregivers

As a caregiver, you provide a vital role in a dependent older person's life. You face challenges—physical, financial, mental, and emotional—that may push you to and beyond your limits. Your own well-being may suffer. The well-being of the person to whom you are providing care may also suffer. Ask yourself these questions:

Are you being "sandwiched" between your loved one and your own family?

Are you becoming isolated from your community, friends, and even family?

Are you experiencing bursts of anger, increased frustration, or feeling of depression?

Do you feel you're doing everything alone without the support of family and friends?

Are you finding yourself exhausted, not sleeping well, overeating, or drinking alcoholic beverages too often?

Are you questioning your ability as a caregiver?

Answering "yes" to just one of these questions could indicate that you need some assistance in your caregiving role. Consider some of the following avenues.

- Seek out a support group for caregivers.

- Consider hiring support services—a home health aide, chore worker, or homemaker.

- Enlist the help of family and friends; be specific in what help you need (e.g, "Could you come over for two hours on Saturday morning while I run some errands?").

- Look into available respite care in your community.

- Make an honest effort to give yourself needed time to relax, exercise, and eat right.

- Look to community resources for support. Start with the Area Agency on Aging for your area or call the *Eldercare Locator*.

**MetLife**

MM100035(1107)  ©2007 Metropolitan Life Insurance Company, New York, NY  L11077533(exp1010)MLIC-LD

(Perf line - Does not print.)

(tear here)

Exhibit E Page 13 of 17

Exhibit A - 000173

(Perf line - Does not print.)

Exhibit A - 000174

# SINCEYOUCARE

## Useful Tools

- Preventing Elder Abuse - For Older Adults
- Preventing Elder Abuse - For Caregivers

## Endnotes

[1] *Elder Abuse & Neglect: In Search of Solutions,* American Psychological Association, 2003, via the Internet at: www.apa.org/pi/aging/eldabuse.html, accessed 11/07.

[2] Ibid.

[3] *What is Elder Abuse?* National Committee for the Prevention of Elder Abuse, via the Internet at: www.preven-telderabuse.org/elderabuse/elderabuse.html, accessed 11/07.

[4] *Older Americans Update 2006: Key Indicators,* Federal Interagency Forum on Aging Related Statistics, May 2006, via the Internet at: www.agingstats.gov/Agingstatsdotnet/Main_Site/Default.aspx, accessed 11/07.

[5] *Elder Abuse/Mistreatment Defined,* Updated 8/21/07, National Center on Elder Abuse – Administration on Aging, via the Internet at: www.ncea.aoa.gov/NCEAroot/Main_Site/FAQ/Basics/Definition.aspx, accessed 11/07.

[6] *The National Elder Abuse Incidence Study,* prepared by The National Center on Elder Abuse at the American Public Services Association in Collaboration with Westat, Inc. for The Administration for Children and Families and the Administration on Aging in the U.S. Department of Health and Human Services, September 1998, via the internet at: www.aoa.gov/eldfam/Elder_Rights/Elder_Abuse/ABuseReport_Full.pdf, accessed 11/07.

[7] *The 2004 Survey of State Adult Protective Services: Abuse of Adults 60 Years of Age and Older,* The National Committee for the Prevention of Elder Abuse and The National Adult Protective Services Association prepared for The National Center on Elder Abuse, February 2006, via the Internet at: www.ncea.aoa.gov/NCEAroot/Main_Site/pdf/2-14-06%20FINAL%2060+REPORT.pdf, Accessed 11/07.

[8] *What is Elder Abuse?,* The National Committee on the Prevention of Elder Abuse, via the Internet at: www.preven-telderabuse.org/elderabuse/elderabuse.html, accessed 11/07.

[9] *Elder Abuse/Mistreatment Defined,* Updated 8/21/07, National Center on Elder Abuse – Administration on Aging, via the Internet at: www.ncea.aoa.gov/NCEAroot/Main_Site/FAQ/Basics/Definition.aspx, accessed 11/07.

[10] Teaster, P.B., *A Response to the Abuse of Vulnerable Adults: The 2000 Survey of State Adult Protective Services,* The National Center on Elder Abuse, The National Committee for the Prevention of Elder Abuse, The National Adult Protective Services Association, The National Association of State Units on Aging, 2003, via the internet at: www.ncea.aoa.gov/NCEAroot/Main_Site/pdf/research/apsreport030703.pdf, accessed 11/07.

[11] *The 2004 Survey of State Adult Protective Services: Abuse of Adults 60 Years of Age and Older,* The National Committee for the Prevention of Elder Abuse and The National Adult Protective Services Association prepared for The National Center on Elder Abuse, February 2006, via the Internet at: www.ncea.aoa.gov/NCEAroot/Main_Site/pdf/2-14-06%20FINAL%2060+REPORT.pdf, Accessed 11/07.

[12] The information in the section "Types of Abuse" is adapted in part from: *Major Types of Elder Abuse,* The National Center on Elder Abuse, via the Internet at: www.ncea.aoa.gov/NCEAroot/Main_Site/FAQ/Basics/Types_Of_Abuse.aspx, accessed 11/07.

[13] *The 2004 Survey of State Adult Protective Services: Abuse of Adults 60 Years of Age and Older,* The National Committee for the Prevention of Elder Abuse and The National Adult Protective Services Association prepared for The National Center on Elder Abuse, February 2006, via the Internet at: www.ncea.aoa.gov/NCEAroot/Main_Site/pdf/2-14-06%20FINAL%2060+REPORT.pdf, Accessed 11/07.

[14] Ibid.

[15] Ibid.

[16] Ibid.

[17] Teaster, P.B., *A Response to the Abuse of Vulnerable Adults: The 2000 Survey of State Adult Protective Services,* The National Center on Elder Abuse, The National Committee for the Prevention of Elder Abuse, The National Adult Protective Services Association, The National Association of State Units on Aging, 2003, via the internet at: www.ncea.aoa.gov/NCEAroot/Main_Site/pdf/research/apsreport030703.pdf, accessed 11/07.

[18] *The 2004 Survey of State Adult Protective Services: Abuse of Adults 60 Years of Age and Older,* The National Committee for the Prevention of Elder Abuse and The National Adult Protective Services Association prepared for The National Center on Elder Abuse, February 2006, via the Internet at: www.ncea.aoa.gov/NCEAroot/Main_Site/pdf/2-14-06%20FINAL%2060+REPORT.pdf, Accessed 11/07.

[19] *Financial Abuse,* National Committee for the Prevention of Elder Abuse, via the Iinternet at: www.preventelder-abuse.org/elderabuse/fin_abuse.html, accessed 11/07.

[20] *Stop Dishonest Telemarketers,* AARP, via the Internet at: www.aarp.org/money/wise_consumer/scams/a2004-03-08-StopDishonestTelemarketers.html, accessed 11/07.

- 15 -

Exhibit E Page 15 of 17

Exhibit A - 000175

# SINCE YOU CARE

## About the Authors of Since You Care

*Since You Care* guides are prepared by the MetLife Mature Market Institute in cooperation with the National Alliance for Caregiving and MetLife's Care Coordinators.

**MetLife Mature Market Institute**
Staffed by gerontologists, the MetLife Mature Market Institute, part of the company's Retirement Strategies Group, has been providing research, knowledge management, education, and policy support for over ten years to Metropolitan Life Insurance Company, its corporate customers, and business partners. MetLife, a subsidiary of MetLife, Inc. (NYSE: MET), is a leading provider of insurance and other financial services to individual and institutional customers. For more information about the MetLife Mature Market Institute, please visit the Mature Market Institute's website at www.MatureMarketInstitute.com.

**MetLife Care Coordinators**
are available to MetLife's long-term care customers and their caregivers to help identify and resolve caregiving questions and concerns through counseling and referral.

**National Alliance for Caregiving**
Established in 1996, the National Alliance for Caregiving is a nonprofit coalition of national organizations that focuses on issues of family caregiving across the life span. The Alliance was created to conduct research, do policy analysis, develop national programs and increase public awareness of family caregiving issues.

**Mature Market Institute**
MetLife
57 Greens Farms Road
Westport, CT 06880
E-Mail: MatureMarketInstitute@metlife.com
www.maturemarketinstitute.com

**National Alliance for Caregiving**
4720 Montgomery Lane,
Fifth Floor, Bethesda, MD 20814
www.caregiving.org

*This booklet offers general advice, however, it is not a substitute for consultation with an appropriate professional. Please see a health care professional, attorney, or other appropriate professional when determining how the information and recommendations discussed in this booklet apply to your specific situation.*

## MetLife

©2007 Metropolitan Life Insurance Company, New York, NY

MMI00035(1107)

L11077533(exp1010)MLIC-LD

Exhibit A - 000176

# MetLife

Investments



**Deferred Annuities**

Deferred annuities can help you grow and protect your retirement savings and future income

**Immediate Annuities**

Maximize your retirement income and make it last your lifetime

**Mutual Funds & Brokerage**

New England Securities offers thousands of mutual funds as well as brokerage accounts

**Financial Planning**

New England Securities financial planners can help you identify prioritize and achieve your financial goals

**IRAs**

Products and strategies to help you secure your retirement

**Banking**

Savings products and home loans from a trusted name: MetLife Bank.

Exhibit E Page 17 of 17

Exhibit A - 000177

1

## **PROOF OF SERVICE**

2

3   I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 15 West Carrillo Street, Santa Barbara, California 93101. On November 4, 2011, I served the foregoing document described as:

4

### **THIRD AMENDED CONSOLIDATED COMPLAINT**

5

on the interested parties in this action on the dates and in the manner that follow:

6

7   ☐   by placing the document listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

8

9   ☒   by electronic transmission via FTP – by transmitting electronically a true and correct copy of the above-listed document(s) on counsel of record on this date to www.CaseHomePage.com by file transfer protocol (FTP) upload pursuant to the Case Management Order dated April 22, 2011.

10

11

12   ☐   by placing the document listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a FedEx agent for Delivery.

13   ☐   by personally delivering the document listed above to the persons at the address set forth below.

14

15   **SEE ONLINE SERVICE LIST *IN RE DLG RELATED CASES* ON CASEHOMEPAGE**

16

17   Executed on November 4, 2011 at Santa Barbara, California.

18   ☒   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

19

20   ☐   I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

21

22

23   Colleen Connors

24

25

26

27

28

# EXHIBIT C

Counsel Listed on Following Page

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF LOS ANGELES – CENTRAL CIVIL WEST DIVISION

| | |
|---|---|
| ***IN RE DLG RELATED CASES*** | ) Assigned for All purposes to the Hon. Elihu<br>) M. Berle, CCW Dept. 323 – All Related |
| —————————————————— | ) |
| THIS PLEADING RELATES TO: | ) Case Nos: BC446497 Consolidated with<br>) BC456651 |
| LAWRENCE J. CANTOR, et al., | )<br>) ALL RELATED CASE NOS. BC446497, |
| Plaintiffs, | ) BC443270, BC446630, BC450293,<br>) BC452092, BC456412, BC456561, |
| v. | ) SC108930, LC090700, BC454198, |
| METLIFE, INC., et al, | ) BC454632, BC456560, BC460697,<br>) BC456405, BC456651, BC480029, |
| Defendants. | ) BC456425, VC053815 |
| | )<br>) **PLAINTIFF LARRY W. STILLEY'S** |
| SAM GUPTA, et al., | ) **RESPONSES TO REQUESTS FOR**<br>) **ADMISSIONS PROPOUNDED BY** |
| Plaintiffs, | ) **DEFENDANTS METLIFE, INC.; NEW**<br>) **ENGLAND LIFE INSURANCE** |
| v. | ) **COMPANY; NEW ENGLAND**<br>) **SECURITIES CORPORATION; TONY** |
| LARRY BAGBY, et al., | ) **RUSSON; RUSSON FINANCIAL** |
| Defendants. | ) **SERVICES, INC. (SET ONE)**<br>) |
| | )<br>) |
| —————————————————— | ) LEAD CASE NO. BC446497 |

1
Case No.: BC446497 Consolidated
with BC456651

PLAINTIFF LARRY W. STILLEY'S RESPONSES TO REQUESTS FOR ADMISSIONS PROPOUNDED BY
DEFENDANTS METLIFE, INC., ET AL. (SET ONE)

Exhibit B - 000179

1 | Thomas Foley, Esq. (SBN 65812)
2 | Robert A. Curtis, Esq. (SBN 203870)
  | Justin P. Karczag, Esq. (SBN 223764)
3 | **FOLEY, BEZEK, BEHLE & CURTIS, LLP**
  | 15 W. Carrillo Street
4 | Santa Barbara, CA 93101
  | Telephone: (805) 962-9495
5 | Facsimile: (805) 962-0722
  | tfoley@foleybezek.com
6 | rcurtis@foleybezek.com
7 | jkarczag@foleybezek.com

8 | Richard E. Donahoo, Esq. (SBN 186957)
9 | Sarah, Kokonas, Esq. (SBN 262875)
  | **DONAHOO & ASSOCIATES**
10 | 440 West First Street, Suite 101
   | Tustin, CA 92780
11 | Telephone:(714) 953-1010
12 | Facsimile: (714) 953-1777
   | rdonahoo@donahoo.com
13 | skokonas@donahoo.com

14 | John A. Stillman, Esq. (SBN 43731)
   | Heidi Stilb Lewis, Esq. (SBN 98046)
15 | **GOOD, WILDMAN, HEGNESS & WALLEY**
   | 5000 Campus Drive
16 | Newport Beach, California 92660
17 | Telephone: (949) 955-1100
   | Facsimile: (949) 833-0633
18 | jstillman@goodwildman.com
   | hlewis@goodwildman.com
19 |
   | *Attorneys for Plaintiffs and all others similarly situated*
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

2      Case No.: BC446497 Consolidated
with BC456651

PLAINTIFF LARRY W. STILLEY'S RESPONSES TO REQUESTS FOR ADMISSIONS PROPOUNDED BY
DEFENDANTS METLIFE, INC., ET AL. (SET ONE)

Exhibit B - 000180

PROPOUNDING PARTIES:     Defendants METLIFE, INC.; NEW ENGLAND LIFE
                          INSURANCE COMPANY; NEW ENGLAND
                          SECURITIES CORPORATION; TONY RUSSON;
                          RUSSON FINANCIAL SERVICES, INC.

RESPONDING PARTY:        Plaintiff LARRY W. STILLEY

SET NO.:                 ONE (1)

    Plaintiff LARRY W. STILLEY (hereinafter "Plaintiff", "Responding Party" or "Respondent") by and through his attorneys of record, DONAHOO & ASSOCIATES, does herein respond to Requests for Admissions, Set One, propounded by Defendants METLIFE, INC.; NEW ENGLAND LIFE INSURANCE COMPANY; NEW ENGLAND SECURITIES CORPORATION; TONY RUSSON; RUSSON FINANCIAL SERVICES, INC. (hereinafter "Defendant" or "Propounding Party").

## INTRODUCTORY STATEMENT AND GENERAL OBJECTIONS

    1.    Respondent has not completed its investigation and analysis of the facts of this case, discovery, or trial preparation. As discovery proceeds, facts, information, evidence, documents and things may be discovered that are not set forth in these responses but which may have been responsive to this set of Request for Admissions. The following responses are based on Respondent's knowledge, information and belief at this time and are complete as to Respondent's best knowledge at this time. Furthermore, these responses were prepared based on Respondent's good faith, interpretation and understanding of the Request for Admissions and are subject to correction for inadvertent errors or omissions, if any. Respondent reserves the right to refer to, to conduct discovery with reference to or to offer into evidence at the time of trial, any and all facts, evidence, documents and things developed during the course of discovery and trial preparation, notwithstanding the reference to facts, evidence, documents and things in these responses. Accordingly, the following responses are given without prejudice to Respondent's right to produce evidence of any subsequently discovered facts, evidence, documents and things and/or to add to, modify, or otherwise change or amend these responses, although Respondent

3

Case No.: BC446497 Consolidated<br>with BC456651

PLAINTIFF LARRY W. STILLEY'S RESPONSES TO REQUESTS FOR ADMISSIONS PROPOUNDED BY
DEFENDANTS METLIFE, INC., ET AL. (SET ONE)

Exhibit B - 000181

1    assumes no obligation to do so.

2        2.      Respondent objects generally to each and every Request to the extent it calls for

3    information which is within the attorney-client privilege, work product immunity (including, but

4    not limited to, California Code of Civil Procedure Section 2018), or any other recognized

5    privilege or immunity, and Respondent and their counsel hereby asserts such privileges and

6    immunities.

7        3.      Inadvertent production of any information which is privileged or otherwise

8    immune from discovery shall not constitute a waiver of any privilege or any other ground for

9    objection to discovery with respect to such information or any other information, or the right of

10   Respondent to object to the use of any such information during any subsequent proceeding.

11       4.      Respondent further objects generally to each and every Request, to the extent that

12   it seeks information which is protected by constitutional rights or personal or individual privacy

13   and confidentiality.

14       5.      Respondent objects generally to each and every Request to the extent that these

15   requests are overbroad, oppressive and unduly burdensome. Respondent further objects generally

16   to each and every Request, to the extent that these requests are overly broad as to time and scope.

17   Respondent further objects generally to each and every Request to the extent these requests are

18   intended to vex and harass Respondent in that many requests are duplicative of other requests.

19       6.      Respondent objects generally to each and every Request to the extent that they are

20   irrelevant and immaterial to the pending action and are not reasonably calculated to lead to the

21   discovery of admissible evidence. Respondent further objects generally to each and every

22   Request to the extent that they are unintelligible in the context of this matter and are vague and

23   ambiguous.

24       7.      Subject to and without waiving the foregoing objections, all which are

25   incorporated by reference into all of the following Responses as though fully set forth therein,

26   and to the extent Respondent understands each individual Request, Respondent hereby submits

27   their Objections and Responses to Defendant's First Set of Request for Admissions.

28   ///

4

Case No.: BC446497 Consolidated
with BC456651

PLAINTIFF LARRY W. STILLEY'S RESPONSES TO REQUESTS FOR ADMISSIONS PROPOUNDED BY
DEFENDANTS METLIFE, INC., ET AL. (SET ONE)

Exhibit B - 000182

**SPECIFIC OBJECTIONS**

To avoid repetition in setting forth the specific objections to the subject Requests herein, Respondent sets forth herein below the following definitions and specific objections which will be made in response to certain Requests.

A. Attorney-Client Privilege Objection:

To the extent that Defendant's Requests seek information which is or may be invasive of the attorney-client privilege, Respondent objects. Specifically, to the extent that certain Requests are so overbroad as to be potentially invasive of the confidential communications of Respondent and Respondent's outside counsel for the seeking or rendering of legal advice in regard to these or other subject matters, Respondent objects. When Defendant's Requests are objected to on this ground, such objection shall be referred to as the "Attorney-Client Privilege Objection." Further, due to the breadth and volume of documents involved, to the extent that documents, if any, containing privileged materials are produced, it shall not constitute a waiver of the attorney-client privilege.

B. Work-Product Objection:

To the extent that certain of Defendant's Requests seek documents or information which are or may be invasive of the attorney work-product privilege, Respondent objects. Specifically, to the extent that certain Requests are so overbroad as to potentially invade and disclose the actual legal work conducted by, or the impressions and evaluations of Respondent's counsel in connection with the stated matter, Respondent objects. When Defendant's Requests are objected to on this ground, such objection shall be referred to as the "Work-Product Objection."

C. Burden Objection:

To the extent that Defendant's Requests are unreasonably burdensome, oppressive and harassing in that they seek information which places an extreme burden upon Plaintiff while seeking information which is not relevant (or only tangentially relevant) to the present litigation, Respondent objects. When Defendant's Requests are objected to on this ground, such objection shall be referred to as the "Burden Objection."

PLAINTIFF LARRY W. STILLEY'S RESPONSES TO REQUESTS FOR ADMISSIONS PROPOUNDED BY DEFENDANTS METLIFE, INC., ET AL. (SET ONE)

Exhibit B - 000183

D.    <u>Relevance Objection</u>:

     To the extent that Defendant's Requests seek information which is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence, Respondent objects. When Defendant's Requests are objected to on this ground, such objection shall be referred to as the "Relevance Objection."

E.    <u>Ambiguity Objection</u>:

     To the extent that Defendant's Requests are phrased in language that is so vague, ambiguous and uncertain that responses cannot be ascertained without speculation as to the nature and meaning of the language in the context of the request, Respondent objects. When Defendant's Requests are objected to on this ground, such objection shall be referred to as the "Ambiguity Objection."

F.    <u>Time-Frame Objection</u>:

     To the extent that Defendant's Requests fail to specify, or give any indication of the time frame referenced therein, Respondent objects. When Defendant's Requests are objected to on this ground, such objection shall be referred to as the "Time-Frame Objection."

G.    <u>Privacy Objection</u>:

     To the extent that Defendant's Requests, due to their over breadth and ambiguity, are or may be invasive of confidential information of Respondent, as well as the rights of privacy afforded to Respondent under the United States Constitution, California Constitution and related Federal and California case law, Respondent objects. When Defendant's Requests are objected to on this ground, such objection shall be referred to as the "Privacy Objection."

H.    <u>Tax Return Objection</u>:

     To the extent that Defendant's Requests seek the disclosure of either federal or state tax returns or the information contained therein, Respondent objects. When Defendant's Requests are objected to on this ground, such objection shall be referred to as the "Tax Return Objection."

I.    <u>Compound Objection</u>:

     To the extent that Defendant's Requests are compound as phrased, Respondent objects. When Defendant's Requests are objected to on this ground, such objection shall be referred to as

6

Case No.: BC446497 Consolidated
with BC456651

PLAINTIFF LARRY W. STILLEY'S RESPONSES TO REQUESTS FOR ADMISSIONS PROPOUNDED BY
DEFENDANTS METLIFE, INC., ET AL. (SET ONE)

the "Compound Objection."

J.     <u>Legal Opinion Objection:</u>

To the extent that Defendant's Requests seek legal opinions from the layperson responding to these Requests, Respondent objects. When Defendant's Requests are objected to on this ground, such objection shall be referred to as the "Legal Opinion Objection."

K.     <u>Equally Available Objection:</u>

To the extent that Defendant's Requests seek information equally available to the propounding party, or seeks information that Defendant itself is statutorily required to maintain, Respondent objects because the Requests are therefore designed merely to burden, harass, and vex Respondent. When Defendant's Requests are objected to on this ground, such objection shall be referred to as the "Equally Available Objection."

## RESPONSES TO REQUESTS FOR ADMISSIONS

### REQUEST FOR ADMISSION NO. 1:

Admit that YOU (for purposes of this and the following requests for admission the terms "YOU" or "YOUR" shall mean Larry W. Stilley, individually, and as a class representative, and his attorneys, representatives, or agents) have never purchased any product issued by METLIFE (for purposes of this and the following requests for admission the term "METLIFE" shall mean MetLife, Inc., Metropolitan Life Insurance Company, New England Life Insurance Company, and their parents, subsidiaries, affiliates, and related companies, and Tony Russon, and Russon Financial Services, Inc.).

### RESPONSE TO REQUEST FOR ADMISSION NO. 1:

Objection. Responding Party incorporates the General Objections as though fully set forth herein and specifically asserts the Ambiguity Objection as to the term "product issued". Notwithstanding the objections, Responding Party Responds: Admit.

### REQUEST FOR ADMISSION NO. 2:

Admit that YOU never held any account at NES (for purposes of this and the following requests for admission the term "NES" shall mean New England Securities Corporation and its

7

Case No.: BC446497 Consolidated<br>with BC456651

PLAINTIFF LARRY W. STILLEY'S RESPONSES TO REQUESTS FOR ADMISSIONS PROPOUNDED BY
DEFENDANTS METLIFE, INC., ET AL. (SET ONE)

Exhibit B - 000185

parents, subsidiaries, affiliates, and related companies).

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Objection. Responding Party incorporates the General Objections as though fully set forth herein and specifically asserts the Ambiguity as to the term "any account." Notwithstanding the objections, Responding Party Responds: Admit.

**REQUEST FOR ADMISSION NO. 3:**

Admit that the only individuals who told YOU anything about DLG (for purposes of this and the following requests for admission the term ""DLG" shall mean Diversified Lending Group, Inc., any of its subsidiaries and related companies, any of its officers, employees, associates, consultants, attorneys, representatives, agents, or any other person working on its behalf) or investing in DLG prior to YOUR purchase of DLG notes were Scott Brandt and/or Bruce Friedman.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Objection. Responding Party incorporates the General Objections as though fully set forth herein and specifically asserts the Ambiguity, Attorney-Client, Attorney Work-Product, Time Period Objections. Notwithstanding the objections, Responding Party Responds: Admit.

**REQUEST FOR ADMISSION NO. 4:**

Admit that in soliciting YOU to purchase DLG's notes, Scott Brandt did not solicit YOU to purchase any insurance product issued by METLIFE.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Objection. Responding Party incorporates the General Objections as though fully set forth herein and specifically asserts the Ambiguity Objection as to the term "insurance product issued by METLIFE". Notwithstanding the objections, Responding Party Responds: Deny.

**REQUEST FOR ADMISSION NO. 5:**

Admit that YOU did not rely on Scott Brandt's affiliation with METLIFE in deciding to purchase notes issued by DLG.

/ / /

/ / /

Case No.: BC446497 Consolidated with BC456651

PLAINTIFF LARRY W. STILLEY'S RESPONSES TO REQUESTS FOR ADMISSIONS PROPOUNDED BY DEFENDANTS METLIFE, INC., ET AL. (SET ONE)

Exhibit B - 000186

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Objection. Responding Party incorporates the General Objections as though fully set forth herein and specifically asserts the Ambiguity Objection as to the term "Scott Brandt's affiliation with METLIFE". Notwithstanding the objections, Responding Party Responds: Deny.

**REQUEST FOR ADMISSION NO. 6:**

Admit YOU had no business dealings with METLIFE.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Objection. Responding Party incorporates the General Objections as though fully set forth herein and specifically asserts the Ambiguity Objection as to the term "business dealings with METLIFE". Notwithstanding the objections, Responding Party Responds: Deny.

**REQUEST FOR ADMISSION NO. 7:**

Admit YOU had no business dealings with NES.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Objection. Responding Party incorporates the General Objections as though fully set forth herein and specifically asserts the Ambiguity Objection as to the term "business dealings with METLIFE". Notwithstanding the objections, Responding Party Responds: Deny.

**REQUEST FOR ADMISSION NO. 8:**

Admit the number of potential class members exceeds one hundred.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Objection. Responding Party incorporates the General Objections as though fully set forth herein and specifically asserts the Compilation, Time-Period, and Work Product Objection as to the term "business dealings with METLIFE". Notwithstanding the objections, Responding Party Responds: Deny.

**REQUEST FOR ADMISSION NO. 9:**

Admit the amount of alleged damages claimed by all known potential class members exceeds five million dollars.

/ / /

/ / /

Case No.: BC446497 Consolidated
with BC456651

Exhibit B - 000187

1    __RESPONSE TO REQUEST FOR ADMISSION NO. 9:__

2       Objection. Responding Party incorporates the General Objections as though fully set

3   forth herein and specifically asserts the Compilation, Time-Period, and Work Product Objection.

4   Notwithstanding the objections, Responding Party Responds: Admit.

5

6   DATED: December 28, 2012      **GOOD, WILDMAN, HEGNESS & WALLEY**

7                               **DONAHOO AND ASSOCIATES**

8                               **FOLEY, BEZEK, BEHLE, & CURTIS LLP**

9                           By: _____

10                           Thomas G. Foley, Jr.
                           Attorneys for Plaintiffs Larry Cantor, Larry Stilley

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10

Case No.: BC446497 Consolidated
with BC456651

PLAINTIFF LARRY W. STILLEY'S RESPONSES TO REQUESTS FOR ADMISSIONS PROPOUNDED BY
DEFENDANTS METLIFE, INC., ET AL. (SET ONE)

Exhibit B - 000188

**VERIFICATION**

<u>Cantor, et al., v. MetLife, Inc., et al.</u>
Los Angeles County Superior Court, Case No. BC 446497

I, Larry W. Stilley, have read **PLAINTIFF LARRY W. STILLEY'S RESPONSE TO REQUESTS FOR ADMISSION, SET ONE, PROPOUNDED BY METLIFE, INC., NEW ENGLAND LIFE INSURANCE COMPANY, NEW ENGLAND SECURITIES CORPORATION, TONY RUSSON, RUSSON FINANCIAL SERVICES, INC.** and know the content thereof. I am a one of the plaintiffs in the above-referenced matter and make this verification on my own behalf. I am informed and believe that the responses, other than objections, set forth therein are true and correct.

I declare, under penalty of perjury under the laws of the state of California that the foregoing is true and correct. Executed at this 10TH of December, 2012, in the county of Los Angeles, state of California.

Larry W. Stilley
Plaintiff and responding party

1

LASC Case No.: BC446497

PLAINTIFF LARRY W. STILLEY'S RESPONSE TO REQUESTS FOR ADMISSIONS, SET ONE

Exhibit B - 000189

## PROOF OF SERVICE

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 15 West Carrillo Street, Santa Barbara, California 93101. On December 28, 2012, I served the foregoing document described as:

**PLAINTIFF LARRY W. STILLEY'S RESPONSES TO REQUESTS FOR ADMISSIONS PROPOUNDED BY DEFENDANTS METLIFE, INC., NEW ENGLAND LIFE INSURANCE COMPANY, NEW ENGLAND SECURITIES CORPORATION, TONY RUSSON, AND RUSSON FINANCIAL SERVICES (SET ONE)**

on the interested parties in this action on the dates and in the manner that follow:

☒     by placing the document listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below to:

Curtis D. Parvin
Jemma Eriksen
SEDGWICK LLP
3 Park Plaza, 17th Floor
Irvine, CA 92614-8540

Cheryl L. Haas-Goldstein
Bryan M. Ward
SUTHERLAND ASBILL & BRENNAN LLP
999 Peachtree Street, NE
Atlanta, GA 30309-3996

Troy H. Slome
MURPHY ROSEN MEYLAN & DAVITT LLP
100 Wilshire Blvd., Ste. 1300
Santa Monica, CA 90401

☒     by electronic transmission via FTP – by transmitting electronically a true and correct copy of the above-listed document(s) on counsel of record on this date to www.CaseHomePage.com by file transfer protocol (FTP) upload pursuant to the Case Management Order dated April 22, 2011.

**SEE ONLINE SERVICE LIST *IN RE DLG RELATED CASES* ON CASEHOMEPAGE**

☐     by placing the document listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a FedEx agent for Delivery.

☐     by personally delivering the document listed above to the persons at the address set forth below.

Executed on December 28, 2012 at Santa Barbara, California.

☒     I declare under penalty of perjury under the laws of the State of California that the

above is true and correct.

☐ I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

_____
Colleen Connors

-2-

Exhibit B - 000191

# EXHIBIT D

Counsel Listed on Following Page

1
2
3
4
5
6
7

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF LOS ANGELES – CENTRAL CIVIL WEST DIVISION

8
9
10

*IN RE DLG RELATED CASES*

_____

11
12

THIS PLEADING RELATES TO:

13
14

LAWRENCE J. CANTOR, et al.,

Plaintiffs,

15

v.

16

METLIFE, INC., et al,

17

Defendants.

_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Assigned for All purposes to the Hon. Elihu
M. Berle, CCW Dept. 323 – All Related

Case No: BC446497

CASE NOS. BC446497, BC443270,
BC446630, BC450293, BC452092,
BC456412, BC456561, SC108930,
LC090700, BC454198, BC454632,
BC456560, BC460697, BC456405,
BC456651, BC480029, BC456425,
VC053815

**PLAINTIFF LARRY W. STILLEY'S
RESPONSES TO SPECIAL
INTERROGATORIES PROPOUNDED
BY DEFENDANTS METLIFE, INC.;
NEW ENGLAND LIFE INSURANCE
COMPANY; NEW ENGLAND
SECURITIES CORPORATION (SET
THREE)**

LEAD CASE NO. BC446497

18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF LARRY W. STILLEY'S RESPONSES TO SPECIAL INTERROGATORIES
PROPOUNDED BY METLIFE, INC., et al.
LASC Case No.: BC446497

1

1  Thomas Foley, Esq. (SBN 65812)
   Robert A. Curtis, Esq. (SBN 203870)
2  Justin P. Karczag, Esq. (SBN 223764)
   **FOLEY, BEZEK, BEHLE & CURTIS, LLP**
3  15 W. Carrillo Street
   Santa Barbara, CA 93101
4  Telephone: (805) 962-9495
   Facsimile: (805) 962-0722
5  tfoley@foleybezek.com
6  rcurtis@foleybezek.com
   jkarczag@foleybezek.com
7

8  Richard E. Donahoo, Esq. (SBN 186957)
   Sarah, Kokonas, Esq. (SBN 262875)
9  **DONAHOO & ASSOCIATES**
10 440 West First Street, Suite 101
   Tustin, CA 92780
11 Telephone:(714) 953-1010
12 Facsimile: (714) 953-1777
   rdonahoo@donahoo.com
13 skokonas@donahoo.com

14 John A. Stillman, Esq. (SBN 43731)
   Heidi Stilb Lewis, Esq. (SBN 98046)
15 **GOOD, WILDMAN, HEGNESS & WALLEY**
   5000 Campus Drive
16 Newport Beach, California 92660
   Telephone: (949) 955-1100
17 Facsimile: (949) 833-0633
18 jstillman@goodwildman.com
   hlewis@goodwildman.com
19
   *Attorneys for Plaintiffs and all others similarly situated*
20

21

22

23

24

25

26

27

28

PLAINTIFF LARRY W. STILLEY'S RESPONSES TO SPECIAL INTERROGATORIES          2
PROPOUNDED BY METLIFE, INC., et al.
LASC Case No.: BC446497

Exhibit E - 000217

PROPOUNDING PARTIES: Defendants METLIFE, INC.; NEW ENGLAND LIFE

          INSURANCE COMPANY; NEW ENGLAND

          SECURITIES CORPORATION

RESPONDING PARTY: Plaintiff LARRY W. STILLEY

SET NO.:       THREE

   Plaintiff LARRY W. STILLEY (hereinafter "Plaintiff," or "Responding Party") by and through his attorneys of record, FOLEY BEZEK BEHLE & CURTIS, LLP and DONAHOO & ASSOCIATES, does herein respond to Special Interrogatories, Set Three, propounded by Defendants METLIFE, INC.; NEW ENGLAND LIFE INSURANCE COMPANY; NEW ENGLAND SECURITIES CORPORATION; (hereinafter "Defendants" or "Propounding Party").

   Pursuant to Code of Civil Procedure, sections 2030, et seq., Plaintiff LARRY W. STILLEY hereby submits his objections to Propounding Party's Special Interrogatories, Set Three, propounded by Defendants METLIFE, INC., NEW ENGLAND LIFE INSURANCE COMPAY, NEW ENGLAND SECURITIES CORPORATION. Discovery will continue as long as permitted by statute or stipulation of the parties, and the investigation of this Responding Party's attorneys and agents will continue to and through the trial of this action. Responding Party, therefore, specifically reserves the right, at the time of trial, to introduce evidence from any source which may hereinafter be discovered and testimony from any witnesses whose identities may hereafter be discovered.

   Responding Party's objections herein are not intended to be, nor do they in fact constitute, a waiver of any of the following: (1) the right to object on any grounds at any time to any other discovery; (2) the right to object to the admissibility of any response pursuant to these requests on the grounds of foundation, relevance, materiality, privilege or any other applicable objection which may arise in any other subsequent proceeding or action; and (3) the right to amend or supplement these responses with information subsequently discovered, and otherwise to assert factual and legal contentions as additional facts are ascertained, research is completed, and analyses are made.

PLAINTIFF LARRY W. STILLEY'S RESPONSES TO SPECIAL INTERROGATORIES      3
PROPOUNDED BY METLIFE, INC., et al.
LASC Case No.: BC446497

Exhibit E - 000218

These General Objections shall apply to each and every response given herein, and shall be incorporated by this reference as though fully set forth in each and every following response to the requests for production.

## INTRODUCTORY STATEMENT AND GENERAL OBJECTIONS

1.      Respondent has not completed its investigation and analysis of the facts of this case, discovery, or trial preparation. As discovery proceeds, facts, information, evidence, documents and things may be discovered that are not set forth in these responses, but which may have been responsive to this set of Special Interrogatories. The following responses are based on Respondent's knowledge, information and belief at this time and are complete as to Respondent's best knowledge at this time. Furthermore, these responses were prepared based on Respondent's good faith, interpretation and understanding of the Special Interrogatories and are subject to correction for inadvertent errors or omissions, if any. Respondent reserves the right to refer to, to conduct discovery with reference to or to offer into evidence at the time of trial, any and all facts, evidence, documents and things developed during the course of discovery and trial preparation, notwithstanding the reference to facts, evidence, documents and things in these responses. Accordingly, the following responses are given without prejudice to Respondent's right to produce evidence of any subsequently discovered facts, evidence, documents and things and/or to add to, modify, or otherwise change or amend these responses, although Respondent assumes no obligation to do so.

2.      Respondent objects generally to each and every Interrogatory to the extent it calls for information which is within the attorney-client privilege, work product immunity (including, but not limited to, California Code of Civil Procedure Section 2018), or any other recognized privilege or immunity, and Respondent and their counsel hereby asserts such privileges and immunities.

3.      Inadvertent production of any information which is privileged or otherwise immune from discovery shall not constitute a waiver of any privilege or any other ground for objection to discovery with respect to such information or any other information, or the right of Respondent to

PLAINTIFF LARRY W. STILLEY'S RESPONSES TO SPECIAL INTERROGATORIES          4
PROPOUNDED BY METLIFE, INC., et al.
LASC Case No.: BC446497

Exhibit E - 000219

object to the use of any such information during any subsequent proceeding.

4.      Respondent further objects generally to each and every Interrogatory, to the extent that it seeks information which is protected by constitutional rights or personal or individual privacy and confidentiality.

5.      Respondent objects generally to each and every Interrogatory to the extent that these requests are overbroad, oppressive and unduly burdensome. Respondent further objects generally to each and every Interrogatory, to the extent that these requests are overly broad as to time and scope. Respondent further objects generally to each and every Interrogatory to the extent these requests are intended to vex and harass Respondent in that many requests are duplicative of other requests.

6.      Respondent objects generally to each and every Interrogatory to the extent that they are irrelevant and immaterial to the pending action and are not reasonably calculated to lead to the discovery of admissible evidence. Respondent further objects generally to each and every Interrogatory to the extent that they are unintelligible in the context of this matter and are vague and ambiguous.

7.      Subject to and without waiving the foregoing objections, all which are incorporated by reference into all of the following Responses as though fully set forth therein, and to the extent Respondent understands each individual Interrogatory, Respondent hereby submits their Objections and Responses to Defendants' First Set of Special Interrogatories.

8.      The information sought in Special Interrogatory No. 27, specifically, is information that is in the records of the Los Angeles Superior Court and provided on CaseHomePage, which is the Court-appointed docket holder for this matter and for which Plaintiff understands Defendants are members. Plaintiff further objects on the basis that any information not available on CaseHomePage may be protected by the Attorney-Client Privilege or Attorney Work Product Doctrine. For these reasons, this request is burdensome and oppressive to require Plaintiff to provide information which is easily accessible to Defendants

---

Exhibit E - 000220

**SPECIFIC OBJECTIONS**

To avoid repetition in setting forth the specific objections to the subject Interrogatories herein, Respondent sets forth herein below the following definitions and specific objections which will be made in response to certain Interrogatories.

A.  Attorney-Client Privilege Objection:

To the extent that Defendants' Interrogatories seek information which is or may be invasive of the attorney-client privilege, Respondent objects. Specifically, to the extent that certain Interrogatories are so overbroad as to be potentially invasive of the confidential communications of Respondent and Respondent's outside counsel for the seeking or rendering of legal advice in regard to these or other subject matters, Respondent objects. When Defendants' Interrogatories are objected to on this ground, such objection shall be referred to as the "Attorney-Client Privilege Objection." Further, due to the breadth and volume of documents involved, to the extent that documents, if any, containing privileged materials are produced, it shall not constitute a waiver of the attorney-client privilege.

B.  Work-Product Objection:

To the extent that certain of Defendants' Interrogatories seek documents or information which are or may be invasive of the attorney work-product privilege, Respondent objects. Specifically, to the extent that certain Interrogatories are so overbroad as to potentially invade and disclose the actual legal work conducted by, or the impressions and evaluations of Respondent's counsel in connection with the stated matter, Respondent objects. When Defendants' Interrogatories are objected to on this ground, such objection shall be referred to as the "Work-Product Objection."

C.  Burden Objection:

To the extent that Defendants' Interrogatories are unreasonably burdensome, oppressive and harassing in that they seek information which places an extreme burden upon Plaintiff while seeking information which is not relevant (or only tangentially relevant) to the present litigation, Respondent objects. When Defendants' Interrogatories are objected to on this ground, such objection shall be referred to as the "Burden Objection."

PLAINTIFF LARRY W. STILLEY'S RESPONSES TO SPECIAL INTERROGATORIES                    6
PROPOUNDED BY METLIFE, INC., et al.
LASC Case No.: BC446497

D.    <u>Relevance Objection</u>:

      To the extent that Defendants' Interrogatories seek information which is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence, Respondent objects. When Defendants' Interrogatories are objected to on this ground, such objection shall be referred to as the "Relevance Objection."

E.    <u>Ambiguity Objection</u>:

      To the extent that Defendants' Interrogatories are phrased in language that is so vague, ambiguous and uncertain that responses cannot be ascertained without speculation as to the nature and meaning of the language in the context of the request, Respondent objects. When Plaintiff's Interrogatories are objected to on this ground, such objection shall be referred to as the "Ambiguity Objection."

F.    <u>Time-Frame Objection</u>:

      To the extent that Defendants' Interrogatories fail to specify, or give any indication of the time frame referenced therein, Respondent objects. When Defendants' Interrogatories are objected to on this ground, such objection shall be referred to as the "Time-Frame Objection."

G.    <u>Privacy Objection</u>:

      To the extent that Defendants' Interrogatories, due to their over breadth and ambiguity, are or may be invasive of confidential information of Respondent, as well as the rights of privacy afforded to Respondent's employees under the United States Constitution, California Constitution and related Federal and California case law, Respondent objects. When Defendants' Interrogatories are objected to on this ground, such objection shall be referred to as the "Privacy Objection."

H.    <u>Compound Objection</u>:

      To the extent that Defendants' Interrogatories are compound as phrased, Respondent objects. When Defendants' Interrogatories are objected to on this ground, such objection shall be referred to as the "Compound Objection."

I.    <u>Legal Opinion Objection</u>:

      To the extent that Defendants' Interrogatories seek legal opinions from the layperson

---

PLAINTIFF LARRY W. STILLEY'S RESPONSES TO SPECIAL INTERROGATORIES    7
PROPOUNDED BY METLIFE, INC., et al.
LASC Case No.: BC446497

responding to these Interrogatories, Respondent objects. When Defendants' Interrogatories are objected to on this ground, such objection shall be referred to as the "Legal Opinion Objection."

J.      Equally Available Objection:

To the extent that Defendants' Interrogatories seek information equally available to the propounding parry, Respondent objects because the Interrogatories are therefore designed merely to burden, harass, and vex Respondent. When Defendants' Interrogatories are objected to on this ground, such objection shall be referred to as the "Equally Available Objection".

K.      Compilation Objection

To the extent that Defendants' Interrogatories seek to require Responding Party to list documents that evidence the monetary amount, Responding Party objects on the grounds that the request seeks to require Responding Party to compile a list or draft a request for production, which Responding Party is not required to do.

Subject to and without waiving these Objections, or any other objections or claims of privilege, Responding Party hereby responds and objects to Defendants' Special Interrogatories, Set Number One, as follows:

## RESPONSES TO SPECIAL INTERROGATORIES

**Special Interrogatory No. 27:** IDENTIFY (for purposes of this interrogatory the term "IDENTIFY" shall mean state the name, last known address, and telephone number of the person or entity) each and every potential member of the proposed class that you believe invested funds with DLG from an insurance agent affiliated with Defendants NELICO and MetLife or by a registered representative affiliated with Defendant NES.

**Response to Special Interrogatory No. 27:**

Objection. Plaintiffs incorporate the General Objections as though fully stated herein. In addition, Plaintiffs assert the Work-Product Objection, Burden Objection, Equally Available Objection and Compilation Objection. Notwithstanding, Plaintiffs respond as follows:

Plaintiffs are still undertaking both formal and informal factual discovery on the issue of identifying members of the proposed putative class, and therefore cannot provide a definitive,

---

PLAINTIFF LARRY W. STILLEY'S RESPONSES TO SPECIAL INTERROGATORIES          8
PROPOUNDED BY METLIFE, INC., et al.
LASC Case No.: BC446497

Exhibit E - 000223

1   comprehensive, or final list of all potential members of the proposed putative class as of the date

2   of responding to this Third Set of Special Interrogatories propounded by the MetLife Defendants,

3   and, therefore, reserve the right to amend this response when additional factual information

4   becomes available. When additional factual research is completed, Plaintiffs reserve the right to

5   delete some of the individuals named in response to this Special Interrogatory, to add additional

6   individuals in response to this Special Interrogatory, and to change the amount of funds invested

7   in DLG by the individuals named in this response.

8       Further research is being conducted to confirm whether the investments in DLG made by

9   the individuals identified in this response were jointly held by a husband and a wife, or were solely

10  investments made by the husband or solely by the wife. Plaintiffs have listed on the Schedule

11  attached hereto as Exhibit 1 the name of both the husband and the wife when it is believed that the

12  husband and wife jointly owned the investment in DLG referenced on Exhibit 1.

13      Certain of the individuals identified in this response invested in DLG in their own

14  individual names, and also invested additional funds in DLG through their IRA accounts using

15  PolyComp Inc. as the administrator Where possible, based on information obtained to date, the

16  Schedule attached hereto as Exhibit 1 lists investments held by individuals in their own names

17  separately from the investments made by the same individuals through their IRA accounts. In

18  certain instances where Plaintiffs cannot ascertain the amount of investments made in the

19  individuals own name and the amount of investments made through the individuals retirement

20  accounts, the total of all known investments, both individually and through their retirement

21  accounts, is combined and listed under the individuals own name, and not under the name of the

22  IRA account.

23      Telephone numbers of the individuals identified in the response to this Special

24  Interrogatory are not provided because of the individuals' right to privacy, and because the MetLife

25  Defendants are not permitted to directly communicate with members of the putative class

26  represented by Plaintiffs' counsel.

27      Subject to the foregoing clarifications and reservations to amend this response, attached to

28  these responses as Exhibit 1 is a "Schedule" which lists each potential member of the proposed

PLAINTIFF LARRY W. STILLEY'S RESPONSES TO SPECIAL INTERROGATORIES                    9
PROPOUNDED BY METLIFE, INC., et al.
LASC Case No.: BC446497

class known to Plaintiff at the present time who invested funds with DLG as a result of interaction with an insurance agent affiliated with Defendants NELICO and MetLife or by a registered representative affiliated with Defendant NES/NEF. The attached schedule was prepared by counsel for Plaintiffs, and not by the individual Plaintiff who is responding to this Special Interrogatory.

**Special Interrogatory No. 28:** IDENTIFY (for purposes of this interrogatory the term "IDENTIFY" shall mean state the name, last known address, and telephone number of the person or entity) each and every individual that you, or your counsel, have identified as satisfying the definition of the class (for the purpose of this interrogatory the term "class" shall mean, as of the date of the filing of the Third Amended Class complaint, all persons who entered into a Contract with DLG and invested funds with DLG between December 2004 and March 4, of 2009, after being provided with a copy of the DLG Welcome Packet by an insurance agent affiliated with Defendants NELICO and MetLife, or by a registered representative affiliated with Defendant NES, and whose entire principal investment was not repaid by DLG).

**Response to Special Interrogatory No. 28:**

Objection. Plaintiffs incorporate the General Objections as though fully stated herein. In addition, Plaintiffs assert the Work-Product Objection, Burden Objection, Equally Available Objection and Compilation Objection. Notwithstanding, Plaintiffs respond as follows:

Plaintiffs are still undertaking both formal and informal factual discovery on the issue of identifying members of the proposed punitive class, and therefore cannot provide a definitive, comprehensive list of all potential members of the proposed putative class as of the date of responding to this Third Set of Special Interrogatories propounded by the MetLife Defendants, and, therefore, reserve the right to amend this response when additional factual research becomes available. When additional factual research is completed, Plaintiffs reserve the right to delete some of the individuals named in response to this Special Interrogatory, to add additional individuals in response to this Special Interrogatory, and to change the amount of funds invested in DLG by the individuals named in this response.

PLAINTIFF LARRY W. STILLEY'S RESPONSES TO SPECIAL INTERROGATORIES                    10
PROPOUNDED BY METLIFE, INC., et al.
LASC Case No.: BC446497

Telephone numbers of the individuals identified in the response to this Special Interrogatory are not provided because of the individuals' right to privacy, and because the MetLife Defendants are not permitted to directly communicate with members of the putative class represented by Plaintiffs' counsel.

Subject to the foregoing clarifications and reservations to amend this response,, attached to these responses is a Schedule identified as Exhibit 1 which lists each potential member of the proposed class known to Plaintiff at the present time who invested funds with DLG as a result of being solicited by an insurance agent affiliated with Defendants NELICO and MetLife or by a registered representative affiliated with Defendant NES. The attached schedule was prepared by counsel for Plaintiffs, and not by the individual Plaintiff who is responding to this Special Interrogatory.

This responding Plaintiff is informed and believes that individuals who invested in DLG received a Welcome Packet which contained materials prepared by Diane Cano, who was at the time either an appointed agent of MetLife or a registered representative affiliated with NES/NEF, or was acting in both capacities. The Schedule attached as Exhibit 1 to these responses to Special Interrogatories is not limited to and does not seek to identify each individual who received a "Welcome Packet" which contained materials prepared by Diane Cano. Some of the individuals identified on the Schedule attached as Exhibit 1 were provided a Welcome Packet by an agent, and, after receipt of the Welcome Packet, contacted DLG or Applied Equities and spoke with Cano prior to investing. Cano is listed as the "agent" for those individuals on the Schedule attached as Exhibit 1.

**Special Interrogatory No. 29:** For those individuals or entities identified in response to Special Interrogatory No. 25 above:

a.  IDENTIFY (for purposes of this interrogatory the term "IDENTIFY" shall mean state the name, last known address, and telephone number of the person or entity) the representative who sold the individual or entity DLG notes.

PLAINTIFF LARRY W. STILLEY'S RESPONSES TO SPECIAL INTERROGATORIES                    11
PROPOUNDED BY METLIFE, INC., et al.
LASC Case No.: BC446497

b.   IDENTIFY(for purposes of this interrogatory the term "IDENTIFY" shall mean state the name, last known address, and telephone number of the person or entity) each METLIFE representative with whom the individual or entity have had a professional relationship with between December 2004 and March 4, 2009, to the extent that representative was not previously identified in subpart "a."

c.   IDENTIFY (for purposes of this interrogatory the term "IDENTIFY" shall mean provide the initial amount of the investment, the date of the investment, the total amount invested, as well as any amounts received from DLG) all investments made in DLG.

d.   IDENTIFY (for purposes of this interrogatory the term "IDENTIFY" shall mean provide the name of the product, the policy or contract number or other identifying criteria, when the product was purchased, from whom the product was purchased or issued, and, if such product is an insurance product, when such insurance expired or was redeemed, if ever) any METLIFE (for purposes of this and the following interrogatories the term "METLIFE" shall mean Metropolitan Life Insurance Company, New England Life Insurance Company, New England Securities, and their affiliates, related companies, and employees, and Tony Russon, and Russon Financial Services, Inc.) product purchased at any time by the identified individuals and entities.

**Response to Special Interrogatory No. 29:**

Objection.  Plaintiffs incorporate the General Objections as though fully stated herein.  In addition, Plaintiffs assert the Work-Product Objection, Burden Objection, Equally Available Objection and Compilation Objection.  Notwithstanding, Plaintiffs respond as follows:

See Exhibit 1.

a.   The name of the individual who sold the DLG note to the putative class member is identified on Exhibit 1 attached hereto and is based on information and belief, and internal DLG financial records. Plaintiffs are not aware of the last known address of each of the MetLife agents identified on Exhibit 1 attached hereto. The last known

PLAINTIFF LARRY W. STILLEY'S RESPONSES TO SPECIAL INTERROGATORIES
PROPOUNDED BY METLIFE, INC., et al.
LASC Case No.: BC446497

12

Exhibit E - 000227

address of Scott Brandt was c/o Mark Anchor Albert, Esq., 601 South Figueroa, Ste. 2370, Los Angeles, CA 90017; the last known address of Diane Cano is currently unknown; the last known address of Tony Russon, James Davidson and Larry Bagby is c/o Theodore C. Peters, Esq. EDGERTON & WEAVER, LLP, 2615 Pacific Coast Highway, Suite 300, Hermosa Beach, CA 90254.

b. Each of the individuals identified in response to Subpart a. to Special Interrogatory No. 26 also had a professional relationship with Diane Cano acting in her capacity both as president of Applied Equities, Inc. ("AEI"), and as a MetLife appointed agent acting in the course of scope of her MetLife agency, or as a registered representative affiliated with NES, acting in the course and scope of her agency as a NES registered representative. The individuals identified on Exhibit 1 attached hereto also had a professional relationship with AEI, while AEI was acting in the course and scope of its agency as an appointed MetLife agent or a registered representative affiliated with NES/NEF. Diane Cano's last known address is currently unknown.

c. Based on information and belief, the total amount invested by each putative class member, to the extent that Plaintiffs are in possession of that information is listed on Exhibit 1 attached hereto. Certain of the individuals listed on Exhibit 1 had multiple investments in DLG, but the amount of each separate investment, and the amount that each individual received in purported interest payments or return of principal is currently unknown to Plaintiffs.

d. Based on information and belief, the following individuals made a DLG investment in connection with the purchase of a MetLife insurance product:

Lauren Sanda invested in DLG and purchased a long term care policy from MetLife. Policy number currently unknown.

Michael Hanson – had a DLG investment and a MetLife policy, policy number currently unknown.

Alan Shapiro – had a DLG investment and a MetLife policy. Policy number currently unknown.

PLAINTIFF LARRY W. STILLEY'S RESPONSES TO SPECIAL INTERROGATORIES
PROPOUNDED BY METLIFE, INC., et al.
LASC Case No.: BC446497

13

Exhibit E - 000228

Patricia McKeon – had a DLG investment and a MetLife policy. Policy number currently unknown.

Howard "Buck" McKeon – had a DLG investment and a MetLife policy. Policy number currently unknown.

Joel and Denise Pomonik – policy numbers currently unknown.

Diane Dubois Kovats –she had a DLG investment and a MetLife policy. The Receiver lists a life insurance policy in her name as one of the remaining assets in the receivership.

Johanna Lieberman and/or Francesco Ferrario (husband and wife) – They were DLG investors and one of them also purchased a MetLife policy through Scott Brandt.

Attached hereto as Exhibit 2 is a list of potential class members who invested in DLG after being solicited by a MetLife agent, and who used the purported "interest" generated by the DLG investment to make premium payments on a MetLife insurance product.

**Special Interrogatory No. 30**: IDENTIFY (for purposes of this interrogatory the term "IDENTIFY" shall mean state the name, last known address, and telephone number of the person or entity) each and every individual that you, or your counsel, have identified as having settled a claim, either individually or in a representative capacity, with Jackson National Life Insurance Company, related to DLG, who may be members of the proposed class.

**Response to Special Interrogatory No. 30**:

Objection. Plaintiffs incorporate the General Objections as though fully stated herein. In addition, Plaintiffs assert the Work-Product Objection, Burden Objection, Equally Available Objection and Compilation Objection. Notwithstanding, Plaintiffs respond as follows:

Propounding Party is directed to the Case Home Page website in this matter where this information is located. The website contains all pleadings and motions, including each of the settlements with Jackson National for individuals represented by Plaintiffs' counsel. The names of the individuals and the amounts they were paid by Jackson National are listed in the pleadings

PLAINTIFF LARRY W. STILLEY'S RESPONSES TO SPECIAL INTERROGATORIES
PROPOUNDED BY METLIFE, INC., et al.
LASC Case No.: BC446497

14

Exhibit E - 000229

requesting the court to approve the settlements. Each settlement was submitted to the court for good faith settlement approval and each was approved. Therefore this information is equally available.

DATED: July 29, 2013

**GOOD, WILDMAN, HEGNESS & WALLEY**

**DONAHOO AND ASSOCIATES**

**FOLEY, BEZEK, BEHLE, & CURTIS LLP**

By: _____
Thomas G. Foley, Jr.
Attorneys for Plaintiffs Larry Cantor, Larry Stilley

PLAINTIFF LARRY W. STILLEY'S RESPONSES TO SPECIAL INTERROGATORIES
PROPOUNDED BY METLIFE, INC., et al.
LASC Case No.: BC446497

15

**VERIFICATION**

<u>Cantor, et al., v. MetLife, Inc., et al.</u>
Los Angeles County Superior Court, Case No. BC 446497

I, Larry W. Stilley, have read **PLAINTIFF LARRY W. STILLEY'S RESPONSE TO SPECIAL INTERROGATORIES, SET THREE, PROPOUNDED BY METLIFE, INC., NEW ENGLAND LIFE INSURANCE COMPANY, NEW ENGLAND SECURITIES CORPORATION** and know the content thereof. I am a one of the plaintiffs in the above-referenced matter and make this verification on my own behalf. Based on my personal knowledge and discussions with my attorneys, I am informed and believe that the responses, other than objections, set forth therein are true and correct.

I declare, under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at this ___ day of _____, 2013, in the County of Los Angeles, State of California.

*(Mr. Stilley is currently on vacation in Europe, but he has reviewed a draft of these responses, and he will sign a Verification page upon his return, which will be forwarded to counsel)*

_____
Larry W. Stilley
Plaintiff and responding party

LASC Case No.: BC446497
PLAINTIFF LARRY W. STILLEY'S RESPONSE TO SPECIAL INTERROGATORIES, SET THREE

Exhibit E - 000231

# EXHIBIT 1

# EXHIBIT 1

Exhibit E - 000232

| DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Yield |
|---|---|---|---|---|---|---|---|---|---|
| Mary Albee | Albee | Mary | Brandt | $75,000.00 | 4850 Moorpark Road | Santa Rosa Valley | CA | 93012 | 12 |
| Scott L. Armstrong | Armstrong | Scott | Brandt | $112,500.00 | P. O. Box 3362 | Thousand Oaks | CA | 91359 | 9 |
| Scott L. Armstrong | Armstrong | Phillis | Brandt | | P. O. Box 3362 | Thousand Oaks | CA | 91359 | 9 |
| First Commerce Bank Cust. FBO - Joseph J. Barbagiovanni | Barbagiovanni | Joseph | Lawton | $100,000.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| Jaime Bejarano | Bejarano | Jaime | Belfer/Kroner | $300,000.00 | 4347 Landerus Ave | La Verne | CA | 91750 | 9 |
| Jaime Bejarano | Bejarano | Rosalba | Belfer/Kroner | | 4347 Landerus Ave | La Verne | CA | 91750 | 9 |
| Dean Blagg | Blagg | Dean | Lawton | $210,000.00 | 6829 Altamor Dr. | Los Angeles | CA | 90045 | 12 |
| Dean Blagg | Blagg | Cynthia | Lawton | | 6829 Altamor Dr. | Los Angeles | CA | 90045 | 12 |
| Robert H. Borden | Borden | Robert | Brandt | $50,000.00 | 13615 Lemay St. | Valley Glen | CA | 91401 | 9 |
| Robert H. Borden | Borden | Chalene | Brandt | | 13615 Lemay St. | Valley Glen | CA | 91401 | 9 |
| Julianne Brandt AKA Julianne Wilson Living Trust dated November 3, 2008 | Brandt | Julianne | Brandt | $93,260.00 | 1 Corte Rossa | Lake Elsinore | CA | 92532 | 12 |
| Chelsea Brandt | Brandt | Chelsea | Brandt | $175,000.00 | 244 Lake Sherwood Drive | Thousand Oaks | CA | 91361 | 12 |
| Jason Brandt | Brandt | Jason | Brandt | $100,000.00 | 244 Lake Sherwood Drive | Thousand Oaks | CA | 91361 | 12 |
| Rory Brandt | Brandt | Rory | Brandt | $175,000.00 | 244 Lake Sherwood Drive | Thousand Oaks | CA | 91361 | 12 |
| First Commerce Bank Cust. FBO - Timothy Brandt | Brandt | Timothy | Brandt | $27,690.00 | 8195 Melrose Way | El Dorado Hills | CA | 95762 | 12 |
| First Commerce Bank Cust. FBO - Julianne Brandt-Wilson | Brandt-Wilson | Julianne | Brandt | $93,260.00 | 1 Corte Rossa | Lake Elsinore | CA | 92532 | 9 |
| Blue Coyote Pictures, Inc. aka Roy Brewington Trust | Brewington | Roy | Brandt | $18,084.00 | Address unknown | | | | |
| First Commerce Bank Cust. FBO - Robert G. Brotherton | Brotherton | Robert | Lawton | $98,458.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| Jerome L. Brown | Brown | Jerome | Lawton | $100,000.00 | 3023 Sunset Hill Drive | West Covina | CA | 91791-224 | 9 |
| Jerome L. Brown | Brown | Gregory | Lawton | | 3023 Sunset Hill Drive | West Covina | CA | 91791-224 | 9 |
| Richard W. Caldarone | Caldarone | Richard | Corzan | $600,000.00 | 73-4522 Hane Street | Kailua-Kona | HI | 96740 | 9 |
| Richard W. Caldarone | Caldarone | Robelita | Corzan | | 73-4522 Hane Street | Kailua-Kona | HI | 96740 | 9 |
| Marlene E. Calvert | Calvert | Marlene | Lawton | $50,000.00 | 20733 E. Rancho Los Cerritos Road | Covina | CA | 91724-353 | 12 |
| Bruno Campos Revocable Trust | Campos | Bruno | Lawton | $2,003,838.50 | 9401 Cherokee lane | Beverly Hills | CA | 90210 | 12 |
| Bruno Campos Revocable Trust | Campos | Bruno | Lawton | $78,957.28 | 9401 Cherokee Ln | Beverly Hills | CA | 90210 | 12 |
| Marina Campos | Campos | Mariana | Lawton | $243,000.00 | 9401 Cherokee Ln | Beverly Hills | CA | 90210 | 12 |
| Lawrence J. Cantor | Cantor | Lawrence | Brandt | $1,413,000.00 | P.O. Box 1679 | Venice | CA | 90294 | 12 |
| Lawrence Cantor | Cantor | Patti | Brandt | | P. O. Box 1679 | Venice | CA | 90294 | 12 |
| Adelandra Capparuccia | Capparuccia | Adelandra | Brandt | $50,000.00 | Address unknown | | | | |
| Olga Chapa | Chapa | Olga | Cano | $75,000.00 | 827 W. Hillcrest Blvd. | Monrovia | CA | 91016 | 12 |
| Youngmin Choi | Choi | Youngmin | Brandt | $100,000.00 | 5410 Isabella Ct. | Agoura Hills | CA | 91301 | 12 |
| First Commerce Bank Cust. FBO - Charles R. Cobb | Cobb | Charles | Lawton | $122,034.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |

| DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Yield |
|---|---|---|---|---|---|---|---|---|---|
| Brenda Coble | Coble | Brenda | Cano/AEI | $50,000.00 | 74-075 Petunia Place | Palm Desert | CA | 92260 | 9 |
| Cohen Family Trust | Cohen | Robert | Brandt | $74,000.00 | 16550 Bosque Dr. | Encino | CA | 91436 | 12 |
| Robert Cohen | Cohen | Robert | Brandt | $605,000.00 | 16550 Bosque Dr. | Encino | CA | 91436 | 12 |
| Fred Cohen | Cohen | Fred | Brandt | $300,000.00 | P.O Box 550181 | South Lake Tahoe | CA | 96155 | 12 |
| Stephen M. Cole | Cole | Stephen | Lawton | $500,000.00 | 850 Virginia St | El Segundo | CA | 90245 | 9 |
| Tigris Insurance Company LMTD. | Cole | Stephen | Lawton | | 850 Virginia Street | El Segundo | CA | 90845 | 12 |
| First Commerce Bank Cust. FBO - Robert J. Comer | Comer | Robert | Lawton | $55,275.00 | 1531 Curson Ave | Los Angeles | CA | 90046 | 12 |
| Gerald D. Coulter | Coulter | Gerald | Brandt | $250,000.00 | 11161 Sumac Lane | Santa Rosa Valley' | CA | 93012 | 12 |
| Gerald D. Coulter | Coulter | Bobbie | Brandt | | 11161 Sumac Lane | Santa Rosa Valley' | CA | 93012 | 12 |
| First Commerce Bank Cust. FBO - Michael Dilger | Dilger | Michael | Brandt | $66,765.48 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| First Commerce Bank Cust. FBO - Philip Dipaola | Dipaola | Philip | Lawton | $99,142.00 | 22232 Craft Ct. | Calabasas | CA | 91302 | 9 |
| Michael Dixon | Dixon | Michael | Brandt | $800,000.00 | 260 Princeton Dr | Costa Mesa | CA | 92626 | 9 |
| Michael Dixon | Dixon | Linda | Brandt | | 260 Princeton Dr | Costa Mesa | CA | 92626 | 9 |
| Arlene Dodson-Franssen | Dodson-Franssen | Arlene | Brandt | $124,000.00 | 132 Driftwood Dr. | Florence | OR | 97439 | NULL |
| Duarte Family Trust 7-7-06 | Duarte | Alberto | Brandt | $100,000.00 | 635 Covington Ave. | Simi Valley | CA | 93065 | 9 |
| Revocable Living Trust of John T. Duff III and Janet Duff | Duff | Janet | Brandt | $140,000.00 | 10700 Bloomfield St | Toluca Lake | CA | 91602-278 | 12 |
| Revocable Living Trust of John T. Duff III and Janet Duff | Duff | John | Brandt | $350,000.00 | 10700 Bloomfield St | Toluca Lake | CA | 91602-278 | 12 |
| First Commerce Bank Cust. FBO - James R. Dugue | Dugue | James | Brandt | $12,850.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| Jack C. Dunn | Dunn | Jack | Brandt | $100,000.00 | 1540 Paul Street | Simi Valley | CA | 93065 | 12 |
| Durose Family Trust Dated November 16, 2006 | Durose | Kelly | Brandt | $217,881.48 | 2212 Raintree Ct | Rucklin | CA | 95765 | 12 |
| First Commerce Bank Cust. FBO - Michele Durose | Durose | Michele | Brandt | $115,612.00 | 17550 Sunburst St. | Northridge | CA | 91325 | 12 |
| First Commerce Bank Cust. FBO - Wayne Durose | Durose | Wayne | Brandt | $21,538.00 | 17550 Sunburst St. | Northridge | CA | 91325 | 12 |
| Tracy Anne Durose | Durose | Tracy Anne | Brandt | $17,469.00 | 2212 Raintree Ct | Rucklin | CA | 95765 | |
| Christophe Eme | Eme | Christophe | Lawton | $337,694.76 | 11845 W. Olympic Blvd | Los Angeles | CA | 90064 | 9 |
| Jerry M. Engelhardt & Lynda T. Engelhardt Living Trust dated October 29, 1997 | Engelhardt | Jerry | Belfer/Kroner | $500,000.00 | 1349 S. Empire St. | Anaheim | CA | 92804 | 12 |
| Jerry M. Engelhardt and Lynda T. Engelhardt Living Trust dated October 29, 1997 | Engelhardt | Lynda | Belfer/Kroner | | 1349 S. Empire Street | Anaheim | CA | 92804 | 9 |
| David M. Engert | Engert | David | Corzan | $1,275,000.00 | 5702 Palo Cristi Rd. | Paradise Valley | AZ | 85253 | 9 |
| David M. Engert | Engert | Kimberly | Corzan | $250,000.00 | 5702 Palo Cristi Rd. | Paradise Valley | AZ | 85253 | 9 |
| First Commerce Bank Cust. FBO - Edward English, III | English, III | Edward | Lawton | $258,477.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| Steven Eric Feir | Feir | Steven | Brandt/AEI | $653,992.25 | P. O. Box 7848 | Mammoth Lakes | CA | 93546 | 9 |

Exhibit E - 000234

| DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Yield |
|---|---|---|---|---|---|---|---|---|---|
| Pilar Feir | Feir | Pilar | Brandt | $480,000.00 | 119 Eastwind Street | Marina Del Rey | CA | 90292 | 12 |
| Jules Feir | Feir | Jules | Cano/AEI | $147,997.35 | 13523 Cheltenham Dr. | Sherman Oaks | CA | 91423-481 | 12 |
| Jules Feir | Feir | Francine | Cano/AEI | | 13523 Cheltenham Dr. | Sherman Oaks | CA | 91423-481 | 12 |
| First Commerce Bank Cust. FBO -Jules Feir | Feir | Jules | Cano/AEI | $437,958.00 | c/o Polycomp | Woodland Hills | CA | 91423-481 | |
| Francesco Ferrario | Ferrario | Francesco | Brandt | $50,000.00 | 2626 Armacost Ave. | Los Angeles | CA | 90064 | 12 |
| Ira Fine | Fine | Ira | Belfer/Kroner | $612,312.30 | 3915 Hayvenhurst Ave | Encino | CA | 91436 | 9 |
| The WDF Living Trust of 1995 dated April 21, 1995 | Forsyth | Seth | Lawton | $70,835.49 | 2128 Tapia Dr. | Malibu | CA | 90265 | 9 |
| WDF Living Trust 1995 | Forsyth | William | Lawton | $782,000.00 | 6128 Tapia Dr | Malibu | CA | 90265 | 12 |
| Shaina Forsyth | Forsyth | Shaina | Lawton | $65,000.00 | 6128 Tapia Dr. | Malibu | CA | 90265 | 9 |
| Wesley Forsyth | Forsyth | Wesley | Lawton | $75,000.00 | 4087 N. Paua Way | Lahaina | HI | 96761 | 12 |
| Karen Forsyth | Forsyth | Karen | Lawton | $250,000.00 | 4087 N. Paua Way | Lahaina | HI | 96761 | 9 |
| William D. Forsyth II | Forsyth II | William | Lawton | $250,000.00 | 6128 Tapia Dr | Malibu | CA | 90265 | 9 |
| William D. Forsyth II | Forsyth III | William | Lawton | | 6128 Tapia Dr. | Malibu | CA | 90265 | 9 |
| William Frankenstein | Frankenstein | William | Russon | $150,000.00 | 22750 Sparrow Dell | Calabasas | CA | 91302 | 9 |
| Fraser Communications Defined Benefit Pension Plan | Fraser | Renee | Belfer/Kroner | $91,000.00 | 2811 Wilshire Blvd. | Santa Monica | CA | 90403 | 12 |
| First Commerce Bank Cust. FBO - Harvin Galper | Galper | Harvin | Lawton | $1,000,000.00 | 11815 Dorothy Street | Los Angeles | CA | 90049 | 9 |
| First Commerce Bank Cust. FBO - Harvin Galper | Galper | Merle | Lawton | $300,000.00 | 11815 Dorothy Street | Los Angeles | CA | 90049 | 12 |
| First Commerce Bank Cust. FBO - Burton Galper | Galper | Burton | Lawton | $228,355.00 | 9594 Castillana Court | Las Vegas | NV | 89147 | 9 |
| First Commerce Bank Cust. FBO - Sheila Galper | Galper | Sheila | Lawton | $174,565.00 | 9594 Castillana Court | Las Vegas | NV | 89147 | 9 |
| Elizabeth Gibbons | Gibbons | Elizabeth | Ianerelli | $135,000.00 | 7105 Geyser | Reseda | CA | 91335 | 12 |
| Ilisa C. Gilmer | Gilmer | Ilisa | Corzan | $61,000.00 | 12731 Pacific Ave | Los Angeles | CA | 90066 | 9 |
| First Commerce Bank Cust. FBO - Chad Gledhill | Gledhill | Chad | Cano | $50,000.00 | 4121 Witherow Road | Winston-Salem | NC | 27106 | 12 |
| First Commerce Bank Cust. FBO - Mary Gledhill | Gledhill | Mary | Cano | $125,000.00 | 4121 Witherow Road | Winston-Salem | NC | 27106 | 12 |
| Jill Glyman | Glyman | Jill | Lawton | $315,000.00 | 1905 Spyglass Dr. | Henderson | NV | 89014-104 | 9 |
| Ron Gonzalez | Gonzalez | Ron | Brandt | $132,500.00 | 21510 Chirping Sparrow Road | Diamond Bar | CA | 91765 | 12 |
| Ron Gonzalez | Gonzalez | Maria | Brandt | | 21510 Chirping Sparrow Road | Diamond Bar | CA | 91765 | 12 |
| John F. Gregory | Gregory | John | Lawton | $50,000.00 | 4536 Skye Dr. | Bakersfield | CA | 93308 | 12 |
| Samuel Gupta | Gupta | Samuel | Brandt | $42,500.00 | 2736 Armour Ln | Redondo Beach | CA | 90278 | 12 |
| Samuel Gupta | Gupta | Janet | Brandt | | 2736 Armour Ln | Redondo Beach | CA | 90278 | 12 |
| First Commerce Bank Cust. FBO - Patricia Hank | Hank | Patricia | Brandt | $275,384.00 | 4261-3 Las Virgines Rd. | Calabasas | CA | 91302 | 12 |
| John Hank | Hank | John | Brandt | $45,000.00 | 4261-3 Las Virgines Rd. | Calabasas | CA | 91302 | 12 |
| Michael J. Hansen | Hansen | Michael | Brandt | $250,000.00 | 1221 Ocean Ave #1006 | Santa Monica | CA | 90401 | 12 |

| DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Yield |
|---|---|---|---|---|---|---|---|---|---|
| The Hartshorne Family Trust dated September 12, 2002 | Hartshorne | Robert | Brandt | $200,000.00 | 7790 Highway 126 | Florence | OR | 97439 | 12 |
| The Hartshorne Family Trust dated September 12, 2002 | Hartshorne | MaryAnn | Brandt | | 7790 Highway 126 | Florence | OR | 97439 | 12 |
| First Regional Bank Cust. FBO - John Haynes | Haynes | John | Brandt | $50,000.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| California National Bank Cust. FBO - Harold Henson | Henson | Harold | Lawton | $100,000.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 9 |
| James Heyward | Heyward | James | Ianerelli | $15,050.00 | 3645 W. Chapman Lane | Inglewood | CA | 90305 | 12 |
| First Commerce Bank Cust. FBO- Robert E. Hiett | Hiett | Robert | Lawton | $136,050.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| Horwitz Living Trust dated April 19, 1995 | Horwitz | Hermine | Lawton | | 5320 Orrville Ave | Woodland Hills | CA | 91367 | 9 |
| Horwitz Living Trust dated April 19, 1995 | Horwitz | Lewis | Lawton | $700,000.00 | 5320 Orrville Ave. | Woodland Hills | CA | 91367 | 12 |
| First Commerce Bank Cust. FBO - Iannarelli | Iannarelli | Toni | Russon | | 3739 Calle Jasmin | Calabasas | CA | 91302 | 12 |
| First Commerce Bank Cust. FBO - Michael Iannarelli | Iannarelli | Michael | Russon | $102,000.00 | 3739 Calle Jasmin | Calabasas | CA | 91302 | 12 |
| Kevin Troy Idukas | Idukas | Kevin | Brandt | $50,000.00 | 19 McAfee Court | Thousand Oaks | CA | 91360 | 12 |
| Karla D. Ives | Ives | Karla | Giovanni Pizzoferra | $50,000.00 | 3570 Cortner Ave | Long Beach | CA | 90808 | 9 |
| Izen Family Trust 5-24-90 | Izen | Ted | Cano | $50,000.00 | 23280 Bluebird Dr. | Calabasas | CA | 91302 | 12 |
| Steve Jacobs Defined Benefit Plan | Jacobs | Steve | AEI | $723,300.00 | Box 13926 | South Lake Tahoe | CA | 96151 | 12 |
| Gayle G. Johnson | Johnson | Gayle | Lawton | $100,000.00 | 176 Reservoir | Stanardsville | VA | 22973 | |
| Donald K. Jong | Jong | Donald | Brandt | $250,000.00 | 4699 Via Canada | Newbury Park | CA | 91320 | 12 |
| Donald K. Jong | Jong | Janet | Brandt | | 4699 Via Canada | Newbury Park | CA | 91320 | 12 |
| Carol Jonsson | Jonsson | Carol | Brandt | $50,000.00 | P.O. Box 270454 | San Diego | CA | 92198 | 9 |
| Lace Jordan | Jordan | Lace | Iannarelli | $530,000.00 | 1501 Ironbank Dr. | Henderson | NV | 89014 | 12 |
| Kassap Family Trust 05/01/92 | Kassap | Stanley | Brandt | $300,000.00 | 196355 Mandalay Dr. | Encino | CA | 91436 | 12 |
| First Commerce Bank Cust. FBO - Ralph A. Khan | Khan | Ralph | Lawton | $202,762.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| First Commerce Bank Cust. FBO - Tara Kahn | Khan | Tara | Lawton | $58,923.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| Law Offices of George Knopfler Defined Benefit Pension Plan | Knopfler | Deborah | Brandt | | 31194 La Baya | Westlake Village | CA | 91361 | 12 |
| Law Offices of George Knopfler 401 (K) Profit Sharing Plan | Knopfler | George | Brandt | $318,094.39 | 31194 La Baya Drive | Westlake Village | CA | 91362 | 12 |
| Sharlene E. Kreiner Trust Dated November 10, 2000 | Kreiner | Sharlene | Brandt | $70,000.00 | 434 S. Walter | Newbury Park | CA | 91320 | 12 |
| First Commerce Bank Cust. FBO - Cletus Kuhla | Kuhla | Cletus | Lawton | $39,729.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 9 |
| Linda Lessing | Lessing | Linda | Lawton | $144,463.00 | 10345 Almayo Ave. | Los Angeles | CA | 90064 | 9 |

| DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Yield |
|---|---|---|---|---|---|---|---|---|---|
| Soltman, Levitt & Flaherty, LLP 401K Profit Sharing Plan | Levitt | John | Kroner/Belfer | $79,901.62 | 1445 Pleasant Oaks Pl | Thousand Oaks | CA | 91362 | 9 |
| John Levitt | Levitt | John | Kroner/Belfer | $52,319.53 | 2535 Townsgate Road | Westlake Village | CA | 91361 | 9 |
| Baldassare Licata Revocable Trust Dated March 25, 1991 | Licata | Baldassare | Lawton | $51,600.00 | 2104 NE 44th St. | Fort Lauderdale | FL | 33308 | 9 |
| Maddalena Licata Revocable Trust Dated March 25, 1991 | Licata | Maddalena | Lawton | $51,600.00 | 2104 NE 44th St. | Fort Lauderdale | FL | 33308 | 9 |
| Johanna Lieberman | Lieberman | Johanna | Brandt | $25,000.00 | Address unknown | | | | |
| Francisco Ferrario Lieberman | Lieberman | Francisco | Brandt | | Address unknown | | | | |
| Charles F. Logan | Logan | Charles | Brandt | $180,000.00 | 1342 Caren Ct. | Lancaster | CA | 93534 | 12 |
| The Marilyn D. Long Revocable Trust | Long | Marilyn | Belfer | $100,000.00 | 3117 East Cortez St. | Pheonix | AZ | 85028 | 9 |
| First Commerce Bank Cust. FBO - Tracy Anne Lopez | Lopez | Tracy | Brandt | $21,326.00 | 6400 Canoga Ave. | Woodland Hills | CA | 93105 | 12 |
| First Commerce Bank Cust. FBO - Charles T. Mahew | Mahew | Charles | Lawton | $400,000.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| First Commerce Bank Cust. FBO - Leonard R. Mains | Mains | Leonard | Lawton | $48,500.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| First Commerce Bank Cust. FBO- Marlyn M. Malloy | Malloy | Marlyn | Lawton | $73,198.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| Alan Mandel | Mandel | Alan | Brandt | $125,000.00 | 7425 NW 79th St | Miami | FL | 33166 | 12 |
| Alan Mandel | Mandel | Janine | Brandt | | 7425 NW 79th St | Miami | FL | 33166 | 12 |
| Mann Family Trust dated November 15, 2007 | Mann | Michael | Brandt | $320,000.00 | 14380 E. Loyola St. | Moorpark | CA | 93021 | 12 |
| Mann Family Trust dated November 15, 2007 | Mann | Janet | Brandt | | 14380 E. Loyola St. | Moorpark | CA | 93021 | 12 |
| David Mann | Mann | David | Brandt | $88,905.87 | 191 Welsh St | Simi Valley | CA | 93065 | 12 |
| David Mann | Mann | Linda | Brandt | | 191 Welsh Ct | Simi Valley | CA | 93065 | 12 |
| Noel McCord | McCord | Noel | Belfer | $200,000.00 | 444 Summer Ave | Aptos | CA | 95003 | 12 |
| Noel McCord | McCord | Jessica | Belfer | | 444 Summer Ave | Aptos | CA | 95003 | 12 |
| First Commerce Bank Cust. FBO- Lawrence McCorkle | McCorkle | Lawrence | Brandt | $25,593.42 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| California National Bank Cust. FBO - Howard P. McKeon | McKeon | Howard | Brandt | $110,826.75 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| California National Bank Cust. FBO - Patricia McKeon | McKeon | Patricia | Brandt | $59,069.31 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| Mendes Family Trust | Mendes | Pari | Brandt | $56,000.00 | 1004 Poplar Ct. | Simi Valley | CA | 93065 | 12 |
| Sally Mendoza | Mendoza | Sally | Belfer/ Kroner | $150,000.00 | 87 Rivo Alto Canal | Long Beach | CA | 90803 | 9 |
| First Commerce Bank Cust. FBO - Robert Mishkin | Mishkin | Robert | Brandt | $24,567.75 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| Edward George Mitchell | Mitchell | Edward | Lawton | $50,000.00 | 33872 Pequito Dr | Dana Point | CA | 92629 | 9 |
| Edward George Mitchell | Mitchell | Eileen | Lawton | | 33872 Pequito Dr | Dana Point | CA | 92629 | 9 |
| First Commerce Bank Cust. FBO- Donald A. Moffat | Moffat | Donald | Lawton | $46,367.55 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |

Exhibit E - 000237

Exhibit 1, p. 6 of 9

Exhibit E - 000238

| DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Yield |
|---|---|---|---|---|---|---|---|---|---|
| First Commerce Bank Cust. FBO - Robert E. Moran | Moran | Robert | Lawton | $24,203.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| Caryn Mower | Mower | Caryn | Brandt | $50,000.00 | 388 Jenny Dr | Newbury Park | CA | 91320 | 12 |
| First Commerce Bank Cust. FBO - Joseph J. Munroe | Munroe | Joseph | Brandt | $50,000.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| First Commerce Bank Cust. FBO - Michael C. Murphy | Murphy | Michael | Brandt | $250,000.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| First Commerce Bank Cust. FBO - Laura Murphy | Murphy | Laura | Brandt | $500,000.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| Joyce Newlin | Newlin | Joyce | Lawton | $500,000.00 | 4735 Pine Hurst | Pasadena | CA | 77505 | 12 |
| Stanley Nisenson | Nisenson | Stanley | Belfer | $500,000.00 | 12431 Henzie Place | Granada Hills | CA | 91344 | 9 |
| First Commerce Bank Cust. FBO - Dianne R. Ophelia | Ophelia | Dianne | Corzan | $183,182.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 9 |
| Candie Ortiz | Ortiz | Candie | Cano | $53,197.00 | 28901 Cecil Ave. | Delano | CA | 93215 | 12 |
| Candie Ortiz | Ortiz | Gabino | Cano | | 28901 Cecil Ave. | Delano | CA | 93215 | 12 |
| Candi Ortiz | Ortiz | Candi | Cano | | 30554 Orange Street | Shafter | CA | 93263 | 12 |
| First Commerce Bank Cust. FBO - Margaret Owen | Owen | Margaret | Corzan | $224,464.53 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| First Commerce Bank Cust. FBO - Timothy Owens | Owens, Sr. | Timothy | Brandt | $18,980.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| First Commerce Bank Cust. FBO - Laura Partridge | Partridge | Laura | Corzan | | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| Laura Partridge | Partridge | Laura | Corzan | $880,000.00 | 10400 Pine Cone Drive | Truckee | CA | 96161 | 12 |
| Laura Patridge | Patridge | Jeff | Corzan | | 10400 Pine Cone Drive | Truckee | CA | 96161 | 12 |
| Gloria Paulsen | Paulsen | Gloria | Lawton | $60,000.00 | 60 Livingston Ct | Novato | CA | 94949 | 9 |
| Expert Building Maintenance, L | Pedder | Robert | Brandt | $50,000.00 | 1871 Tapo St. | Simi Valley | CA | 93063 | 12 |
| Pereida Family Trust | Pereida | Sandra | Brandt | $45,000.00 | 4917 El Dorado Drive | Laverne | CA | 91750 | 9 |
| Pereida Family Trust | Pereida | Robert | Brandt | | 4917 El Dorado Drive | Laverne | CA | 91750 | 9 |
| Frank Perna | Perna | Frank | Belfer/ Kroner | $8,800,000.00 | 26802 Malibu Cove Colony Dr | Malibu | CA | 90265 | 12 |
| James Pero | Pero | James | Brandt | | 2750 Edgeview | Newbury Park | CA | 91320 | 12 |
| Pomonik Family Trust dated August 1, 2006 | Pomonik | George | Brandt | $353,978.74 | 4144 Meadow Lark Dr | Calabasas | CA | 91302 | 12 |
| Pomonik Family Trust dated August 1, 2006 | Pomonik | Roslyn | Brandt | | 4144 Meadow Lark Dr | Calabasas | CA | 91302 | 12 |
| Joel Pomonik and Denise Pomoni | Pomonik | Denise | Brandt | $322,000.00 | 4491 Poe Ave | Woodland Hills | CA | 91364 | 12 |
| Joel Pomonik | Pomonik | Joel | Brandt | | 4491 Poe Ave | Woodland Hills | CA | 91364 | 12 |
| Ronald Popper, M.D. | Popper, M.D. | Ronald | Belfer/ Kroner | $50,000.00 | 921 Ellesmere Way | Oak Park | CA | 91377 | 12 |
| John Ports | Ports | John | Brandt | $100,000.00 | 13131 Knotty Pine | Moorpark | CA | 93021 | 12 |
| John Ports | Ports | Roneale | Brandt | | 13131 Knotty Pine | Moorpark | CA | 93021 | 12 |
| Dale Pritchard | Pritchard | Dale | Brandt | $402,819.00 | 811 Fowler Avenue | Newbury Park | CA | 91320 | 12 |
| C.L. Quin, III Family Trust '00 | Quin, III | Carroll | Brandt | $110,000.00 | 12723 Park St. | Cerritos | CA | 90703-114 | 12 |
| Christine Ramirez | Ramirez | Christine | Brandt | $284,000.00 | 855 Links View Dr. | Simi Valley | CA | 93065 | 12 |

| DUG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Yield |
|---|---|---|---|---|---|---|---|---|---|
| First Commerce Bank Cust. FBO - Pamela Richardson | Richardson | Pamela | Brandt | $29,530.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| Linda Robinson | Robinson | Linda | Lawton | $44,115.00 | Address unknown | | | | |
| Kabir Sabherwal | Sabherwal | Kabir | Brandt | $192,750.00 | 12145 Holly Glen Place | Studio City | CA | 91604 | 12 |
| Inderjit & Janak Sabherwal Family Trust of June 1, 1981 | Sabherwal | Janak | Brandt | $35,500.00 | 12145 Holly Glen Place | Studio City | CA | 91604 | 12 |
| Candi Ortiz | Salazar | Angelina | Cano | | 30554 Orange Street | Shafter | CA | 93263 | 12 |
| Wayne & Lauren Sanda Revocable Trust dated July 11, 1998 | Sanda | Wayne | Brandt | $65,000.00 | 22488 Domingo Rd | Woodland Hills | CA | 91364 | 12 |
| George Savatgy | Savatgy | George | Brandt | $23,750.00 | 1233 Ruberta | Glendale | CA | 91201 | 9 |
| Douglas Schoen | Schoen | Douglas | Lawton | $25,000.00 | P.O. Box 1727 | Pacific Palisades | CA | 90272 | 9 |
| Douglas Schoen | Schoen | Susan | Lawton | $100,000.00 | P.O. Box 1727 | Pacific Palisades | CA | 90272 | 9 |
| Charles Scholer | Scholer | Charles | Lawton | $40,700.00 | 23909 Lakeside Road | Valencia | CA | 91355 | 9 |
| California National Bank Cust. FBO - Donald J. Scotti | Scotti | Donald | Brandt | $48,980.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| Vivian Hsin Yin Seng | Seng | Vivian | Keng | $50,000.00 | 529 S. Everett Ave. | Monterey Park | CA | 91755 | 9 |
| Shanna Hsin Kuang Seng | Seng | Shanna | Keng | $100,000.00 | 529 S. Everett Ave. | Monterey Park | CA | 91755 | 9 |
| Alan Shapiro | Shapiro | Alan | Brandt | $38,725.73 | 455 La Loma Rd. | Pasadena | CA | 91105 | 12 |
| Dorothy Sheperd | Sheperd | Dorothy | Belfer/Kroner/Can | $510,382.14 | 9518 La Canada Way | Sunland | CA | 91040 | 9 |
| California National Bank Cust. FBO- Gary Shiger | Shiger | Gary | Brandt | $300,000.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| Charlene Shinn | Shinn | Charlene | lawton | $100,000.00 | PO Box 6771 | Big Bear Lake | CA | 92315 | 12 |
| Kristopher Smith | Smith | Kristopher | Lawton | $150,000.00 | 119 So. Monte Vista | Covina | CA | 91723 | 12 |
| First Regional Bank Cust. FBO - Jerome Smith | Smith | Jerome | Lawton | $87,300.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| Scott Snyder | Snyder | Scott | Brandt | $236,363.61 | 1049 Calle Ruiz | Thousand Oaks | CA | 91360 | 12 |
| Scott Snyder | Snyder | Dawna | Brandt | | 1049 Calle Ruiz | Thousand Oaks | CA | 91360 | 12 |
| Gary D. Snyder & Lynette E. Snyder Trust, dated July 18, 1985 | Snyder | Gary | Brandt | $772,246.73 | 3034 Rollings Ave. | Thousand Oaks | CA | 91360 | 12 |
| Gary D. Snyder and Lynnette E. Snyder Trust dated July 18, 1985 | Snyder | Lynnette | Brandt | | 3034 Rollings Ave. | Thousand Oaks | CA | 91360 | 12 |
| Steven Soltman | Soltman | Steven | Belfer/Kroner/Cant | $1,690,000.00 | 7057 Heron Circle | Carlsbad | CA | 92011 | 9 |
| Marvin Spira | Spira | Marvin | Lawton | $70,000.00 | 7611 SouthHampton | Tamarac | FL | 33321 | 9 |
| First Commerce Bank Cust. FBO - Charlotte B. St. John | St. John | Charlotte | Lawton | $41,424.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 9 |
| First Commerce Bank Cust. FBO - Douglas C. Stevens, Sr. | Stevens, Sr. | Douglas | Lawton | $79,050.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 9 |
| California National Bank Cust. FBO - Larry W. Stilley | Stilley | Larry | Brandt | $600,000.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| Capriccio Trading Inc. A Delaware Corporation & Seabourne Partners, LP | Straatsma | Cynthia | Brandt | $1,300,000.00 | 200 Spalding Dr. # A | Beverly Hills | CA | 90212 | 12 |
| First Commerce Bank Cust. FBO - Brenden S. Suter | Suter | Brenden | Lawton | $65,604.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 9 |

| DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Yield |
|---|---|---|---|---|---|---|---|---|---|
| First Commerce Bank Cust. FBO - John Sykes | Sykes | John | Brandt | $9,387.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| Tentser Family Trust | Tentser | Yakov | AEI | $40,000.00 | 1120 22nd St. | Santa Monica | CA | 90403 | 9 |
| Jerome H. Tepperman, PH.D., Inc. 401(k) Profit Sharing Trust | Tepperman | Jerome | Belfer/Kroner/Cano | $50,000.00 | 171 N. Church Lane | Los Angeles | CA | 90049 | 12 |
| The Robert and Carole Thornton Family Trust dated July 25, 2000 | Thornton | Robert | Belfer | $900,000.00 | 1503 Seabright Ave | Santa Cruz | CA | 95062 | 12 |
| The Robert and Carole Thornton Family Trust dated July 25, 2000 | Thornton | Carole | Belfer | | 1503 Seabright Ave | Santa Cruz | CA | 95062 | 12 |
| First Commerce Bank Cust. FBO - Rebecca Tuell | Tuell | Rebecca | Lawton | $180,930.00 | 2493 NW 118th Terrace | Coral Springs | FL | 33065 | 9 |
| Turina Family Trust | Turina | Boris | Carlson | $50,000.00 | 5117 La Crescenta Ave. | La Crescenta | CA | 91214-211 | 9 |
| Karen L. Van Sant | Van Sant | Karen | Cano | | 1339 N. Columbus Ave | Glendale | CA | 91202-164 | 12 |
| William W. & Eleanor C. Waddell Revoc Inter-Vivos U/T/D Trust dated July 29, 1993 | Waddell, Trust | William | Lawton | $200,000.00 | 2552 Kelvin Ave. | Irvine | CA | 92614 | 12 |
| William & Eleanor Waddell Revoc Inter-Vivos Trust dated U/D/T July 29, 1993 | Waddell, Trustee | Eleanor | Lawton | | 3241 San Amadeo | Laguna Woods | CA | 92637-307 | 12 |
| Richard Wade | Wade | Richard | Brandt | $408,774.00 | 32440 Saddle Mountain Dr. | Westlake Village | CA | 91361 | 12 |
| California National Bank Cust. FBO - Hilary C. Wade | Wade | Hilary | Brandt | $332,304.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| Mark A. Wagner | Wagner | Mark | Brandt | $100,000.00 | 2801 Ocean Park Blvd. # 177 | Santa Monica | CA | 90405 | 12 |
| Paul Walker | Walker | Paul | Brandt | $460,000.00 | 3196 Deer Valley Ave | Newbury Park | CA | 91320 | 12 |
| First Commerce Bank Cust. FBO - Ricky Harold Walters | Walters | Ricky | Lawton | $51,000.00 | 14021 Marquesas Way | Marina Del Rey | CA | 90292 | 12 |
| Sheila Warner Trust | Warner | Sheila | Lawton | $700,000.00 | 1138 20th St | Santa Monica | CA | 90403 | 12 |
| Bernard Warner | Warner | Bernard | Lawton | $1,469,750.52 | 150 Ocean Park Blvd | Santa Monica | CA | 90405 | 12 |
| The Wynne Warner Trust, Dated August 24, 1990 | Warner | Wynne | Lawton | $400,000.00 | 150 Ocean Park Blvd. # 324 | Santa Monica | CA | 90405 | 12 |
| The Dona Rothman Family Trust dated February 11, 1994 | Warner | Dona | Lawton | $395,468.18 | 3902 Davana Rd | Sherman Oaks | CA | 91423 | 12 |
| L.J.Warner Trust 03-95 | Warner | Lawrence | Lawton | $300,000.00 | 3902 Davana Rd | Sherman Oaks | CA | 91423 | 12 |
| Lawrence Warner | Warner | Lawrence | Lawton | $600,000.00 | 3902 Davana Rd | Sherman Oaks | CA | 91423 | 12 |
| First Commerce Bank Cust. FBO - Dona Warner | Warner | Dona | Lawton | $125,040.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| First Commerce Bank Cust. FBO - Bernard L. Warner | Warner | Bernard | Lawton | | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| First Commerce Bank Cust. FBO - Wynne N. Warner | Warner | Wynne | Lawton | $280,175.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| Frank Weisz | Weisz | Frank | Belfer/kroner | $1,100,000.00 | 5 East Germantown Pike | Plymouth Meeting | PA | 19462 | 9 |

Exhibit I, p. 9 of 9

Exhibit E - 000241

| DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Yield |
|---|---|---|---|---|---|---|---|---|---|
| First Commerce Bank Cust. FBO - Jeffrey White | White | Jeffrey | Belfer/Kroner | | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| William Wilson | Wilson | William | Brandt | $704,500.00 | 3016 Silver Lea Ter. | Los Angeles | CA | 90039-303 | 12 |
| First Commerce Bank Cust. FBO - William L. Wilson | Wilson | William | Brandt | $400,000.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| Revon Wolf | Wolf | Revon | Lawton | $200,000.00 | 7306 Raintree Circle | Culver City | CA | 90232 | 12 |
| Juliet Wong | Wong | Juliet | Kroner | | 3428 Cool Heights Drive | Rancho Palos Verdes | CA | 90275 | 9 |
| First Commerce Bank Cust. FBO - Stephen K. Worrell | Worrell | Stephen | Lawton | $175,000.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 9 |
| First Commerce Bank Cust. FBO - Curtis M. Worrell | Worrell | Curtis | Lawton | $49,000.00 | 4429 Rosecrest Road | Roanoke | VA | 24018 | 9 |
| 5525 Trust | Zimmerman | Sharon | Lawton | $4,777,855.00 | P.O. Box 260098 | Encino | CA | 91426 | |
| Road West Retirement Plan | Campos | Bruno | Lawton | $39,476.37 | Address unknown | | | | |
| Stephen Flaherty | Flaherty | Stephen | Belfer | | 209 Rimrock Road | Thousand Oaks | CA | 91361 | |
| | | | total | $61,472,238.63 | | | | | |

# EXHIBIT 2

.

# EXHIBIT 2

Exhibit E - 000242

**Premium Financing DLG Clients**

| Last Name | First Name | Carrier | Policy No. | Policy Type | Premium Amount | Premium Due Date | |
|-----------|-----------|---------|-----------|-------------|----------------|------------------|---|
| Bowen | Bob | MetLife | REDACTED 8746 | LTC | $6,518.00 | Oct. 9 | |
| Bowen | Elizabeth | MetLife | REDACTED 8749 | LTC | $6,127.49 | Oct. 9 | |
| Cohen | Cammie | MetLife | REDACTED 1085 | LTC | $12,856.38 | Apr. 24 | |
| Cohen | Cammie | MetLife | REDACTED 2988 | WL | $36,495.32 | Jul. 23 | |
| Duffs | Janet | MetLife | REDACTED 3915USU | UL | $11,000.00 | Sept. 28 | |
| Duffs | John | MetLife | REDACTED 3902USU | UL | $9,000.00 | Sept. 28 | |
| Kovats | Diane | MetLife | REDACTED 9047USU | UL | $66,000.00 | May 27 | |
| Meriwether | Lee | MetLife | REDACTED 3 183US | UL | $22,832.79 | Sept. 25 | |
| Pero | James | MetLife | REDACTED 3620 | WL | $26,448.00 | Jun. 10 | |
| Pero | James | MetLife | REDACTED 2078 | LTC | $3,957.54 | Sept. 19 | |
| Pero | Stephanie | MetLife | REDACTED 2080 | LTC | $4,815.18 | Sept. 19 | |
| Pomonik | Denise | MetLife | REDACTED 8335 | LTC | $3,676.49 | Sept. 1 | |
| Pomonik | Joel | MetLife | REDACTED -8333 | LTC | $3,705.52 | Sept. 1 | |
| Quin | Carroll | MetLife | REDACTED 6699 | LTC | $6,490.97 | May 3 | |
| Quin | Cynthia | MetLife | REDACTED 6700 | LTC | $5,317.57 | May 3 | |
| Sabherwal | Janek | MetLife | REDACTED 6735 | LTC | $9,185.88 | Feb.10 | Past Due |
| Sabherwal | Kabir | MetLife | REDACTED 7220 | GAUL | $24,408.00 | Sept. 19 | |
| Sabherwal | Kabir | MetLife | REDACTED 7190 | GAUL | $12,204.00 | Sept. 19 | |
| Sanda | Lauren | MetLife | REDACTED 07420 | LTC | $13,911.57 | Jun. 27 | |
| Snyder | Lynnette | MetLife | REDACTED 8107 | WL | $24,670.96 | Aug. 13 | |
| Stambler | Evelyn | MetLife | REDACTED 11497 | LTC | $12,513.39 | Jun. 13 | |
| Stark | Robert | MetLife | REDACTED 0434 | LTC | $16,050.18 | Feb. 14 | Past Due |
| Stark | Julie | MetLife | REDACTED 0435 | LTC | $14,361.38 | Feb. 14 | Past Due |
| Wade | Richard | MetLife | REDACTED 10094 | LTC | $9,794.61 | Feb. 4 | |
| Wade | Hilary | MetLife | REDACTED 10093 | LTC | $8,210.94 | Feb. 4 | |
| Wade | Richard | MetLife | REDACTED 4492 | WL | $88,057.20 | Jan. 8 | |
| Wade | Hilary | MetLife | REDACTED 4430 | WL | $67,707.95 | Jan. 8 | |

*Due Dates In Red Font Are Past Due*

Exhibit 2

1

## PROOF OF SERVICE

2
3

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 15 West Carrillo Street, Santa Barbara, California 93101. On July 29, 2013, I served the foregoing document described as:

4
5
6

**PLAINTIFF LARRY W. STILLEY'S RESPONSES TO SPECIAL INTERROGATORIES PROPOUNDED BY DEFENDANTS METLIFE, INC.; NEW ENGLAND LIFE INSURANCE COMPANY; NEW ENGLAND SECURITIES CORPORATION (SET THREE)**

7

on the interested parties in this action on the dates and in the manner that follow:

8
9
10

☐    by placing the document listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below:

11
12

☐    BY E-MAIL: I submitted an electronic version of the above-referenced document(s) to the persons whose e-mail addresses are known to me as provided in the attached Service List.

13
14
15

☒    by electronic transmission via FTP – by transmitting electronically a true and correct copy of the above-listed document(s) on counsel of record on this date to www.CaseHomePage.com by file transfer protocol (FTP) upload pursuant to the Case Management Order dated April 22, 2011.

16

☐    by placing the document listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a FedEx agent for Delivery.

17
18

☐    by personally delivering the document listed above to the persons at the address set forth below.

19
20

**SEE ONLINE SERVICE LIST *IN RE DLG RELATED CASES* ON CASEHOMEPAGE**

21

Executed on July 29, 2013 at Santa Barbara, California.

22
23

☒    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

24
25

☐    I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

26
27

_____
Colleen Connors

28

Counsel Listed on Following Page

1

2

3

4

5

6

7

SUPERIOR COURT OF THE STATE OF CALIFORNIA

8

COUNTY OF LOS ANGELES – CENTRAL CIVIL WEST DIVISION

9

10

***IN RE DLG RELATED CASES***

11

_____

12

THIS PLEADING RELATES TO:

13

LAWRENCE J. CANTOR, et al.,

14

          Plaintiffs,

15

v.

16

METLIFE, INC., et al,

17

          Defendants.

18

19

20

21

22

23

24

25

26

27

28

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Assigned for All purposes to the Hon. Elihu M. Berle, CCW Dept. 323 – All Related

Case No: BC446497

CASE NOS. BC446497, BC443270, BC446630, BC450293, BC452092, BC456412, BC456561, SC108930, LC090700, BC454198, BC454632, BC456560, BC460697, BC456405, BC456651, BC480029, BC456425, VC053815

**SIGNED VERIFICATION PAGE OF PLAINTIFF LARRY W. STILLEY AS TO HIS RESPONSES TO SPECIAL INTERROGATORIES PROPOUNDED BY DEFENDANTS METLIFE, INC.; NEW ENGLAND LIFE INSURANCE COMPANY; NEW ENGLAND SECURITIES CORPORATION (SET THREE)**

LEAD CASE NO. BC446497

SIGNED VERIFICATION PAGE OF PLAINTIFF LARRY W. STILLEY AS TO HIS
RESPONSES TO SPECIAL INTERROGATORIES PROPOUNDED BY METLIFE, INC., et
al.
LASC Case No.: BC446497

1

1   Thomas Foley, Esq. (SBN 65812)
  Robert A. Curtis, Esq. (SBN 203870)
2   Justin P. Karczag, Esq. (SBN 223764)
  **FOLEY, BEZEK, BEHLE & CURTIS, LLP**
3   15 W. Carrillo Street
  Santa Barbara, CA 93101
4   Telephone: (805) 962-9495
5   Facsimile: (805) 962-0722
  tfoley@foleybezek.com
6   rcurtis@foleybezek.com
7   jkarczag@foleybezek.com

8   Richard E. Donahoo, Esq. (SBN 186957)
9   Sarah, Kokonas, Esq. (SBN 262875)
  **DONAHOO & ASSOCIATES**
10   440 West First Street, Suite 101
  Tustin, CA 92780
11   Telephone:(714) 953-1010
12   Facsimile: (714) 953-1777
  rdonahoo@donahoo.com
13   skokonas@donahoo.com

14   John A. Stillman, Esq. (SBN 43731)
  Heidi Stilb Lewis, Esq. (SBN 98046)
15   **GOOD, WILDMAN, HEGNESS & WALLEY**
  5000 Campus Drive
16   Newport Beach, California 92660
17   Telephone: (949) 955-1100
  Facsimile: (949) 833-0633
18   jstillman@goodwildman.com
  hlewis@goodwildman.com
19
20   *Attorneys for Plaintiffs and all others similarly situated*
21
22
23
24
25
26
27
28

SIGNED VERIFICATION PAGE OF PLAINTIFF LARRY W. STILLEY AS TO HIS     2
RESPONSES TO SPECIAL INTERROGATORIES PROPOUNDED BY METLIFE, INC., et
al.
LASC Case No.: BC446497

Exhibit E - 000246

**VERIFICATION**

<u>Cantor, et al., v. MetLife, Inc., et al.</u>
Los Angeles County Superior Court, Case No. BC 446497

I, Larry W. Stilley, have read **PLAINTIFF LARRY W. STILLEY'S RESPONSE TO SPECIAL INTERROGATORIES, SET THREE, PROPOUNDED BY METLIFE, INC., NEW ENGLAND LIFE INSURANCE COMPANY, NEW ENGLAND SECURITIES CORPORATION** and know the content thereof. I am a one of the plaintiffs in the above-referenced matter and make this verification on my own behalf. Based on my personal knowledge and discussions with my attorneys, I am informed and believe that the responses, other than objections, set forth therein are true and correct.

I declare, under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at this **5**$^{TH}$ day of August, 2013, in the County of Los Angeles, State of California.

_Larry W. Stilley_
Larry W. Stilley
Plaintiff and responding party

1

LASC Case No.: BC446497

PLAINTIFF LARRY W. STILLEY'S RESPONSE TO SPECIAL INTERROGATORIES, SET THREE

**PROOF OF SERVICE**

    I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 15 West Carrillo Street, Santa Barbara, California 93101. On August 6, 2013, I served the foregoing document described as:

**SIGNED VERIFICATION PAGE OF PLAINTIFF LAWRENCE J. CANTOR AS TO HIS RESPONSES TO SPECIAL INTERROGATORIES PROPOUNDED BY DEFENDANTS METLIFE, INC.; NEW ENGLAND LIFE INSURANCE COMPANY; NEW ENGLAND SECURITIES CORPORATION (SET THREE)**

on the interested parties in this action on the dates and in the manner that follow:

☐    by placing the document listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below:

☐    BY E-MAIL: I submitted an electronic version of the above-referenced document(s) to the persons whose e-mail addresses are known to me as set forth below:

☒    by electronic transmission via FTP – by transmitting electronically a true and correct copy of the above-listed document(s) on counsel of record on this date to www.CaseHomePage.com by file transfer protocol (FTP) upload pursuant to the Case Management Order dated April 22, 2011.

☐    by placing the document listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a FedEx agent for Delivery.

☐    by personally delivering the document listed above to the persons at the address set forth below.

**SEE ONLINE SERVICE LIST *IN RE DLG RELATED CASES* ON CASEHOMEPAGE**

Executed on August 6, 2013 at Santa Barbara, California.

☒    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☐    I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Colleen Connors

# EXHIBIT E

Thomas Foley, Esq. (SBN 65812)
Robert A. Curtis, Esq. (SBN 203870)
Justin P. Karczag, Esq. (SBN 223764)
**FOLEY, BEZEK, BEHLE & CURTIS, LLP**
15 W. Carrillo Street
Santa Barbara, CA 93101
Telephone: (805) 962-9495
Facsimile: (805) 962-0722
tfoley@foleybezek.com
rcurtis@foleybezek.com
jkarczag@foleybezek.com

John A. Stillman, Esq. (SBN 43731)
Heidi Stilb Lewis, Esq. (SBN 98046)
**GOOD, WILDMAN, HEGNESS & WALLEY**
5000 Campus Drive
Newport Beach, California 92660
Telephone: (949) 955-1100
Facsimile: (949) 833-0633
jstillman@goodwildman.com
hlewis@goodwildman.com

Richard E. Donahoo, Esq. (SBN 186957)
Sarah L. Kokonas, Esq. (SBN 262875)
**DONAHOO & ASSOCIATES**
440 West First Street, Suite 101
Tustin, CA 92780
Telephone:(714) 953-1010
Facsimile: (714) 953-1777
rdonahoo@donahoo.com
skokonas@donahoo.com

*Attorneys for Cantor Plaintiffs and all others similarly situated*

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *IN RE DLG RELATED CASES*<br>——————————————————<br><br>THIS PLEADING RELATES TO THE CONSOLIDATED CASES OF:<br><br>LAWRENCE J. CANTOR, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>METLIFE, INC., et al.,<br><br>Defendants.<br>——————————————————<br><br>AND CONSOLIDATED CASE | **CASE NO. 2:13-cv-07139-R-RZ**<br><br>(Removed from Superior Court of California, County of Los Angeles, Lead Case No. BC446497; BC456651 Consolidated with BC446497)<br><br>**DECLARATION OF THOMAS G. FOLEY, JR.**<br><br>**Date:** **December 2, 2013**<br>**Time:** **10:00 a.m.**<br>**Courtroom:** **8** |

## DECLARATION OF THOMAS G. FOLEY, JR.

I, Thomas G. Foley, Jr., state and declare that:

1.     I am an attorney licensed to practice law in the State of California, and one of the attorneys representing the Plaintiffs in the above-entitled action. I have personal knowledge of the facts set forth in this declaration.  If called to testify I could and would competently testify as follows:

**Limited Rule 26(f) Conference on Removal and Remand**

2.     I have met and conferred with opposing counsel in an attempt to conduct an Early Meeting of Counsel as required by FRCP 26(f) and Local Rule 26-1.  Attorney Cheryl Haas is lead counsel for Defendants MetLife, Inc., New England Securities ("NES") and New England Life Insurance Company ("NELICO"), (hereinafter collectively "MetLife Defendants").   Ms. Haas maintains her professional office in Atlanta, Georgia.   Attorney Theodore C. Peters represents Defendants Tony Russon, Russon Financial Services, Inc. and James Davidson (hereinafter "Russon Defendants"). Mr. Peters maintains his professional office in the City of Redondo Beach, County of Los Angeles, California. I maintain my professional office in the City of Santa Barbara, County of Santa Barbara, California. Because Ms. Haas maintains her professional office in Atlanta, Georgia, it was not possible to conduct an in-person Early Meeting of Counsel.

3.     My co-counsel are John Stillman, who maintains his professional office with Good Wildman Hegness & Walley in Newport Beach, California, and Richard E. Donahoo, who maintains his professional office with Donahoo & Associates in Tustin, California.

4.     On October 10, 2013 I sent a letter to Ms. Haas with a copy to Mr. Peters, informing them that I was requesting an Early Meeting of Counsel pursuant to FRCP 26(f) and Local Rule 26-1; a true and correct copy of my October 10, 2013 letter is attached hereto as **Exhibit X**. In my October 10, 2013 letter, I proposed a

telephonic Early Meeting of Counsel because Ms. Haas has her professional office in Atlanta, Georgia, Mr. Peters maintains his professional office in Los Angeles County, and I maintain my professional office in Santa Barbara County.

5.     In my October 10, 2013 letter, I expressly informed counsel that I wanted to limit the issues to be discussed during the FRCP 26(f) conference call to the discovery either side wanted to conduct related to the MetLife Defendants' Notice of Removal of this putative class action from the Los Angeles Superior Court ("LASC") and Plaintiffs' anticipated motion to remand this case to the LASC.   I expressly limited the subject of any Rule 26(f) conference to issues related to the removal and remand to avoid any future claims by the MetLife Defendants and the Russon Defendants that the Plaintiffs had waived their right to remand.

6.     Ms. Haas sent an email dated October 14, 2013 in response to my October 10, 2013 letter in which she professed to not understand what I was requesting in my October 10, 2013 letter. (**Exhibit Y.**)  I responded to Ms. Haas by email on October 15, 2013, clarifying that the *Cantor* Plaintiffs wanted to initiate an Early Meeting of Counsel pursuant to FRCP 26(f), but wanted to limit the issues of discussion to discovery that the MetLife Defendants and the *Cantor* Plaintiffs would propound related solely to the MetLife Defendants' Notice of Removal, and the Cantor Plaintiffs' forthcoming motion to remand this case to LASC.

7.     On October 16, 2013, I participated in a limited Rule 26(f) telephonic conference with Ms. Haas and Mr. Peters. I informed both Ms. Haas and Mr. Peters at the commencement that the Early Meeting of Counsel would be limited to issues related to the MetLife Defendants' Notice of Removal, and Plaintiffs' forthcoming motion to remand the *Cantor* case to state court.

8.     During the telephonic Early Meeting of Counsel, Ms. Haas inquired what specific discovery the *Cantor* Plaintiffs intended to pursue prior to the hearing on the remand motion. I responded that the only discovery that the *Cantor* Plaintiffs intended to undertake was to serve a subpoena on David A. Gill, the Permanent

Receiver appointed in *Securities and Exchange Commission v. Diversified Lending Group, Inc.*, ("DLG") Case No. CV09-01533-R-SS, herein after referred to as "the SEC Case." I further informed Ms. Haas and Mr. Peters during the telephonic Early Meeting of Counsel that the subpoena would require Mr. Gill to appear at the hearing on the remand motion, and to bring with him a copy of the DLG Receivership Estate's most current Schedule of Creditors, which schedule would list the most current names and addresses of all creditors of the DLG Receivership Estate. I further explained during the conference call that the Receiver had filed an initial Schedule of Creditors in the SEC Case, and, thereafter, as part of the administration of the DLG Receivership Estate, pursuant to a Court Order, had established a "claims" process whereby creditors were required to submit a claim form under penalty of perjury setting forth their name and address at which they wanted their payment sent. I informed Ms. Haas and Mr. Peters that I wanted to obtain the Receivership's Estate's most-current Schedule of Creditors to confirm the names and addresses of investors in DLG who were included in the definition of the putative class in the *Cantor* case. Ms. Haas informed me that she would only agree to have the telephonic conference call be deemed a Rule 26(f) Early Meeting of Counsel if I agreed to discuss each issue referenced to be discussed in Rule 26(f). I then inquired of Ms. Haas whether, if I agreed to participate in an Early Meeting of Counsel on all issues in Rule 26(f), would the MetLife Defendants then take the position that the *Cantor* Plaintiffs had waived the right to file a remand motion. Ms. Haas replied in the affirmative. I then stated that counsel for the *Cantor* Plaintiffs would not agree to discuss all issues in Rule 26(f) because we were concerned that the MetLife Defendants would later take the position that the *Cantor* Plaintiffs had waived the right to remand. Neither Ms. Haas nor Mr. Peters objected to the fact that the Rule 26(f) conference was conducted by conference call rather than in person.

9.     Later that day I received emails from Ms. Haas and Mr. Peters. Both indicated that Defendants would not agree to any limited discovery to the Court-

appointed Receiver. (**Exhibit Z.**) On October 18, 2013, I responded to both emails in a single email reiterating and memorializing the Rule 26(f) conference and again indicating that Plaintiffs intended to serve a subpoena on David A. Gill, the Receiver as it was my position that we had conducted an Early Meeting of Counsel limited to discovery each side wanted to undertake related to the removal and remand of the Cantor case from state court. (**Exhibit AA.**)

10. David Gill, in his capacity as Receiver of the DLG Receivership Estate, pursuant to Local Rule 66-5 caused to be prepared a Schedule of Creditors containing the names and addresses of all creditors of DLG and AEI based on the books and records of DLG and AEI, which was filed in *SEC v. DLG*, Case No. 2:09-cv-01533-R (JTLx) as Document 24 on March 20, 2009; a true and correct copy of that Schedule of Creditors is attached hereto as Exhibit B to the Declaration of David A. Gill filed contemporaneously with Plaintiff's remand motion.

11. David Gill, in his capacity as Receiver of the DLG Receivership Estate, submitted an *Ex Parte* application with the Court to establish a claims administration procedure; a true and correct copy of the Declaration of David A. Gill dated January 11, 2010, with a proposed "claim form" attached was filed as Document No. 164 in the SEC Case; a true and correct copy of David Gill's Declaration in support of the Ex Parte application with a copy of the proposed claim form attached is attached hereto as **Exhibit BB**. The Receiver's proposed claim form requests the creditor to insert the name and address where payment should be sent. On the reverse side of the claim form, in the section entitled "Creditor's Name and Address," it states: "The creditor has a continuing obligation to keep the court informed of its current address. *See* Federal Rules of Bankruptcy Procedure (FRBP) 2002(g)." A copy of an Order signed by Judge Manuel L. Real approving the claim form submitted by the Receiver in *SEC v. DLG* is attached hereto as **Exhibit CC,** is a copy of that Order was filed as Document 170 on 02/11/2010 in *SEC v. DLG*.

12.     On October 18, 2013 I caused to be served a subpoena on the Receiver, David Gill, seeking his attendance at a hearing and production of the Receiver's Schedule of Creditors. (**Exhibit DD**.)

13.     On October 21, 2013, in lieu of the subpoena, David Gill, in his capacity as court-appointed Receiver, provided a sworn declaration, which is concurrently filed with the instant motion. The David Gill Declaration has attached as Exhibit "C" the updated Schedule of Creditors for the DLG Receivership Estate. After receiving the signed declaration from Mr. Gill, I withdrew the subpoena.

14.     The original Schedule of Creditors and the updated Schedule of Creditors prepared by David Gill acting in his capacity as the Permanent Receiver of the DLG Receivership Estate corroborate the names and addresses of the potential class members identified on Plaintiffs Preliminary Schedule served by Plaintiffs on the MetLife Defendants on July 29, 2013 (Exhibits "L" and "M" attached to the NOR, and Updated Schedule of potential class members, and also corroborate the certified copies of the Assessors' Assessment Rolls which are being submitted by Plaintiffs as evidence of the California citizenship of the individuals identified on Plaintiffs Preliminary Schedule and Updated Schedules attached to this declaration.

15.     On October 21, 2013, Mr. Haas responded to my October 18, 2013 email stating, "the call we had last week did not comply with requirements of Rule 26(f), and thus did not constitute a Rule 26(f) conference." (**Exhibit EE**.)

16.     True and correct copies of my emails to and from Ms. Haas and Mr. Peters dated October 16, 2013 regarding the limited 26(f) conference are attached hereto collectively as **Exhibit Z,** *supra*.

17.     On October 23, 2013, I received a letter from Ms. Haas, demanding for the first time that the subpoena to David Gill be withdrawn, or NES would file a motion to quash. In response my co-counsel Richard E. Donahoo emailed Ms. Haas and Mr. Peters the same day stating:

/ / /

---

**DECLARATION OF THOMAS G. FOLEY, JR.**
Case No.: 2:13-cv-07139-R-RZ

*Cheryl and Ted,*

*This will respond to Cheryl's letter. The Rule 26(f) conference commenced, but solely as to the remand issue, as this was detailed in Tom's communications on this issue.*

*Notwithstanding, the subpoena has been withdrawn.*

18. True and correct copies of Ms. Haas' October 23, 2013 letter and Mr. Donahoo's email response is attached hereto collectively as **Exhibit FF**.

**Local Rule 7-3 Conference**

19. On Monday, October 21, 2013, I participated in a telephonic conference pursuant to FRCP 7-3 and Local Rule 7-3 with opposing counsel Cheryl Haas, for the MetLife Defendants, and Theodore C. Peters, for the Russon Defendants. John Stillman, my co-counsel, also participated. The reason the Rule 7-3 conference was held by phone is that Ms. Haas maintains her professional office in Atlanta, Georgia, Mr. Peter's maintains his professional office in Los Angeles County, California, Mr. Stillman maintains his professional office in Orange County, California, and I maintain my professional office in Santa Barbara County, California. Neither Ms. Haas nor Mr. Peters objected to the fact that the Rule 7-3 conference was conducted by conference call rather than in person.

20. At the request of Ms. Haas at the inception of the conference, I summarized the evidence that Plaintiffs intended to submit in support of Plaintiffs' claims that removal was improper and that the Local Controversy Exception to the Class Action Fairness Act ("CAFA"), and the Interest of Justice exceptions to CAFA require remand.

21. During the meet and confer conference call, I informed Ms. Haas and Mr. Peters of my search to determine whether any other class actions had been filed.

22. Prior to the Rule 7-3 conference, an associate attorney under my direction checked all available databases to determine if there were any other class action filed in the preceding three years against either the MetLife Enterprise

Defendants or the Russon Defendants arising out of, or in any way related to DLG. No other class action cases were found.

23. I then inquired of both Ms. Haas and Mr. Peters during the Rule 7-3 telephonic conference whether they were aware of any class actions filed in the preceding three years against their respective clients related to DLG, and both Ms. Haas and Mr. Peters informed Mr. Stillman and myself that they were not aware of any class actions against their clients related to DLG, but that did not mean that were not any. After further discussion of Plaintiffs' anticipated motion for remand, the Rule 7-3 conference concluded without a resolution of Plaintiffs' motion for remand.

**Class Definition in Operative Complaint (TACC)**

24. The definition of the putative class in the *Cantor* TACC is as follows:

> The Class is defined, as of the date of the filing of this TACC, as follows: All Persons who entered into a Contract with DLG and invested funds with DLG between December 2004 and March 4, of 2009, after being provided with a copy of the DLG Welcome Packet by an insurance agent affiliated with Defendants NELICO and MetLife, or by a registered representative affiliated with Defendant NES, and whose entire principal investment was not repaid by DLG (the "Class").

(Third Amended Consolidated Complaint, filed with the LASC 11/08/11, Paragraph 61.) A copy of the TACC is attached as Exhibit A to the Defendants Notice of Removal ("NOR").

25. At paragraph 64 of the TACC, it states that individuals who had settled all their DLG-related claims against MetLife are <u>excluded</u> from the putative class.

**Initial Identification of Potential Class Members**

26. I participated in the drafting of the initial state court complaint and in the drafting the amended complaints. At the time of the filing of the initial complaint in Los Angeles Superior Court ("LASC"), and at the time of filing the amended complaints, the named Plaintiffs and Plaintiffs' counsel were unaware of the number of individuals who would meet the class definition, in part because of information

received from communications with DLG investors was that MetLife was engaged in a program to settle with some, but not all, DLG investors who had invested in DLG after being solicited to do so by an insurance agent or registered representative affiliated with MetLife. I learned from speaking with some potential class members for whom I had contact information that they had signed releases or were still in the process of discussing settling and signing releases with MetLife.

27.     In December 2012, I drafted discovery responses for the Plaintiffs in response to MetLife Defendants' Requests for Admissions. In the MetLife Defendants' Request Number 8, Plaintiffs were requested to admit that the number of potential class members exceeded one hundred.  Plaintiffs' objected and stated "Denied under information and belief."

28.     That response to the MetLife Defendants' Request No. 8 was true. At the time I prepared the response, which was served December 28, 2012, we did not know the number of individuals who met the class definition sufficient to have the named Plaintiffs verify a written response, including the identification and contact information for the universe of DLG investors, or who received a Welcome Packet or who had entered into a settlement with the MetLife Defendants.

29.     On June 28, 2013, the MetLife Defendants propounded a third set of special interrogatories requesting the named Plaintiffs provide a verified response to a special interrogatory requesting a list of, among other things, all potential members of the putative class.   In response to the special interrogatory, on July 29, 2013, Plaintiffs served a written schedule of investors ("Plaintiffs Preliminary Schedule"), which identified by name, address, the MetLife agent who Plaintiffs are informed and believe solicited the investor to invest in DLG, the amount invested by each identified person, and whether their investment was in a 9% or 12% DLG Note; a copy of that Plaintiffs' Preliminary Schedule is attached as Exhibits "L" and "M" to MetLife Defendants NOR, and a copy is attached  hereto as **Exhibit GG**. The

Preliminary Schedule includes the names of 247 individuals or entities who were DLG investors, and their addresses.

30.     I was the Plaintiffs' attorney responsible for preparing the Plaintiffs' Preliminary Schedule.  Because there is no definitive list of which investors in DLG were actually provided with a copy of the "Welcome Packet," or a list identifying each of those persons who entered into a settlement or release with MetLife Defendants, I was unable to affirm that the Plaintiffs' Preliminary Schedule contained only non-settling investors who received a Welcome Packet, or that it contained all investors who had received a Welcome Packet, or that it contained only non-settling investors. I reviewed the Permanent Receiver David A. Gill's initial Schedule of Creditors filed in *SEC v. DLG* to obtain names and address of investors in DLG promissory notes who were listed on the Receiver's schedule. The Receiver's Schedule of Investors does not reference the name of the person or persons who encouraged or solicited the creditor to invest in DLG, or whether the creditor received a Welcome Packet.

31.     I am familiar with the court-appointed Receiver in the SEC case.  As Plaintiffs' counsel, I have spoken with George Shulman, counsel for the DLG Receiver. Based on reviewing Receiver Gill's Status Reports filed with the Court in *SEC v. DLG*, I am informed and believe that in March 2009 DLG Receiver Gill took possession of all books and records of DLG.  Prior to removal, the *Cantor* Plaintiffs served several subpoenas on Mr. Gill to obtain copies of DLG records in his possession and control.  In response to those subpoenas, thousands of pages of DLG records were produced in both hard copy and electronic format.  Either myself or other members of the *Cantor* Plaintiffs' litigation team reviewed the thousands of pages of records produced by Receiver Gill to attempt to ascertain which investors were solicited or encouraged to invest in DLG by an insurance agent or registered representative affiliated with the MetLife Defendants.

---

**DECLARATION OF THOMAS G. FOLEY, JR.**                                          10
Case No.: 2:13-cv-07139-R-RZ

32.     In addition, my office or other Plaintiffs' counsel in *Cantor* also served requests for production of documents on the MetLife Defendants and the Russon Defendants to obtain documents, which, *inter alia*, would identify investors who were included within the definition of the putative class as defined in the TACC.

33.     None of the records reviewed as of the date that I prepared the Plaintiffs' Preliminary Schedule are definitive as to which individuals identified on the Preliminary Schedule actually were provided a Welcome Packet at the time they were solicited to invest in DLG.  I identified 247 individuals or entities of the 247 on the Plaintiffs' Preliminary Schedule who invested in DLG based on being solicited to do so by an insurance agent or registered representative affiliated with the MetLife Defendants. Plaintiffs' Preliminary Schedule has some duplicate names because several potential class members had several different investments in DLG, one of which was in their name as an individual, another of which was in a retirement account administered by either PolyComp or First Commerce Bank as custodian, and other potential class members had DLG investments both in their individual capacity and also different in family trusts. Each DLG investment was listed separately on Plaintiffs' Preliminary Schedule.  Of the number of potential class members on the Preliminary Schedule, I identified 109 who I was informed and believe invested in DLG through a solicitation from Scott Brandt ("Brandt").

**Further Investigation and Revised Scheduled of Potential Class Members**

34.     Since receipt of the MetLife Defendants' Notice of Removal, I have, with the assistance of other attorneys and paralegals under my direction, attempted to determine for each individual or entity on Plaintiffs' Preliminary Schedule, whether the individual or entity settled the claims with the MetLife Defendants prior to removal, and if not, whether the individual and/or entities were citizens of the State of California as of September 30, 2010, the date the original complaint was

filed in the *Cantor, et al., v. MetLife, et al.,* case with the Los Angeles Superior Court.

35.     This further investigation under my direction included a search of public records, communications with putative class members and a review of documents previously obtained in discovery.   Specifically, our investigation included: (1) obtaining sworn declarations from potential putative class members evidencing citizenship in the State of California on September 30, 2010, (2) obtaining <u>certified</u> Assessor's Real Property Records of potential putative class members from the County Assessors in the Counties of Los Angeles, Ventura, Orange, Kern, Placer, El Dorado, Riverside and Santa Cruz evidencing property ownership, and (3) obtaining a declaration from the court-appointed Receiver David Gill in the *SEC v. DLG* litigation identifying addresses from the court-appointed Receiver's original and updated Schedule of Creditors.

36.     Concurrently filed with this declaration is a Compendium of Declarations containing declarations we obtained regarding citizenship of putative class members.   Also concurrently filed is the declaration of Aaron Arndt, my associate attorney, who was tasked with obtaining public records from various County Assessors.   Also concurrently filed is a declaration from court-appointed Receiver David Gill in *SEC v. DLG*.

37.     From this further investigation and the above-identified evidence, I caused to be prepared a Revised Schedule of Potential Class Members ("the Revised Schedule").   A true and correct copy of the Revised Schedule is attached to this declaration as **Exhibit HH**.   I also caused to be prepared under my direction and control a subset of the Revised Schedule, solely depicting investors listed as DLG investors thru Scott Brandt.   This subset is entitled Revised Brandt Schedule of Potential Class Members ("Revised Brandt Subset") and is attached hereto as **Exhibit II**.

---

**DECLARATION OF THOMAS G. FOLEY, JR.**                                                   12
Case No.: 2:13-cv-07139-R-RZ

38. The Revised Schedule and Brandt Subset were prepared by using the Preliminary Schedule and adding a new column entitled "Evidence" referencing one or more of the above described three categories of Evidence.

39. Definitions in the Evidence Column are as follows:

1) "Decl. (CA)" means a declaration attesting to the potential class members' citizenship has been submitted and is found in the Compendium of Declarations.

2) "APR" means a record of California real property ownership is found in the certified property records from an Assessor's Office attached as exhibits to the declaration of Attorney Aaron Arndt.

3) "Gill Decl." means a California address is found in the exhibits attached to the declaration of court-appointed Receiver David Gill from the Receiver's original and updated Schedule of Creditors.

4) "SETTLED" means that there exists a settlement evidenced by a signed release between the individual or entity and the MetLife Defendants.

5) "DUPLICATE" means that the investor was inadvertently duplicated on Plaintiffs' Preliminary Schedule.

40. In the further investigation, which included a review of documents and direct communications with individuals on Plaintiffs' Preliminary Schedule, I discovered the individuals/entities listed in the Revised Schedule and Revised Brandt Subset as SETTLED as those who should not have been listed on the 7/29/13 Preliminary Schedule, because they had previously settled their claims with the MetLife Defendants.

41. Some of the individuals/entities that have been identified based on our investigation as having entered into a settlement/release with MetLife Defendants are as follows:

| | | |
|---|---|---|
| 1 | 1) | Aletter, Lesley, |
| 2 | 2) | Coulter, Gerald, |
| 3 | 3) | Duff, Janet |
| 4 | 4) | Duff, John, |
| 5 | 5) | Gonzalez, Maria, |
| 6 | 6) | Gonzalez, Ronald, |
| 7 | 7) | Gould, Bobbie |
| 8 | 8) | Hank, John R. |
| 9 | 9) | Hank, Patricia, |
| 10 | 10) | Idukas, Kevin, |
| 11 | 11) | Jong, Donald |
| 12 | 12) | Jong, Janet, |
| 13 | 13) | Kreiner, Sharlene, |
| 14 | 14) | McKeon, Howard, |
| 15 | 15) | Meriwether, Lee, |
| 16 | 16) | Oldham, Kyle, |
| 17 | 17) | Pero, James |
| 18 | 18) | Pero, Stephanie, |
| 19 | 19) | Quin, Carroll |
| 20 | 20) | Quin, Cynthia, |
| 21 | 21) | Saberwal, Inderjit, |
| 22 | 22) | Saberwal, Janak, |
| 23 | 23) | Saberwal, Kabir, |
| 24 | 24) | Sanda, Lauren, |
| 25 | 25) | Shapiro, Alan |
| 26 | 26) | Wade, Richard, |
| 27 | 27) | Wade, Hilary, |
| 28 | 28) | Wagner, Mark |

42. In addition to the SETTLED claims, Plaintiffs identified four individuals or entities that were duplicative entries in the list of 247 in Plaintiffs' Preliminary Schedule. These are identified as "DUPLICATES" in the Revised Schedule and the Brandt Subset.

43. Reducing for the SETTLED and DUPLICATE entries, the total number of potential putative class members in the Revised Schedule is 220 ("Revised Total"). Reducing for the SETTLED and DUPLICATE entries in the Brandt Subset, the total number of potential putative class members in the Revised Brandt Subset is 84 ("Revised Brandt Subtotal").

44. Of the 84 Revised Brandt Subtotal, Plaintiffs have obtained declarations, certified Assessors Property Records and/or a declaration from court-appointed Receiver David Gill evidencing California citizenship for 69 individuals or entities, or 82.1 % of the Revised Brandt Total.

45. Of the 220 Revised Total for the entire group of potential class members, after revising it to delete the names of certain individuals who signed releases and duplicates, Plaintiffs have obtained declarations, certified Assessors Property Records or a declaration from court-appointed Receiver David Gill evidencing California citizenship for 161 individuals or entities, or 73.2% of the Revised Total.

46. Excluding any reliance on the original Schedule of Creditors filed by Receiver David A. Gill on Pacer as Document No. 24 in *SEC v. DLG*, or the updated Schedule of Creditors attached as Exhibit "C" to the Declaration of David A. Gill filed contemporaneously with Plaintiffs' remand motion, and relying solely upon sworn declaration from potential class members and certified Assessment Roles from County Assessors' Offices, of the 84 Revised Brandt Subtotal, Plaintiffs have still obtained declarations, certified Assessors Property Records evidencing California citizenship for 69 individuals or entities, or 82.1% of the Revised Brandt Total.

47.     Excluding any reliance on the original Schedule of Creditors filed by Receiver David A. Gill on Pacer as Document No. 24 in *SEC v. DLG*, or the updated Schedule of Creditors attached as Exhibit "C" to the Declaration of David A. Gill filed contemporaneously with Plaintiffs' remand motion, and relying solely upon sworn declaration from potential class members and certified Assessment Roles from County Assessors' Offices, of the 220 Revised Total for the entire group of potential class members, after revising it to delete the names of certain individuals who signed releases and duplicates, Plaintiffs have obtained declarations, certified Assessors Property Records evidencing California citizenship for 156 individuals or entities, or 70.9% of the Revised Total.

48.     On July 11, 2013, Judge Berle conducted a Status Conference in the 20 DLG related cases.  At the July 11, 2013 Status Conference, Judge Berle asked all counsel if they would agree in concept for purposes of efficient and economic judicial management, and to avoid potential inconsistent verdicts, to allow one consolidated proceeding on "common issues," to be tried either by the court sitting without a jury, or with the same jury for all related cases which had the same common issue. A copy of the court reporter's transcript of the July 11, 2013 Status Conference is attached as Exhibit "J" to the Declaration of Richard Donahoo dated October 28, 2013 filed contemporaneously with Plaintiffs' remand motion.

49.     The following is the portion of the July 11, 2013 transcript, beginning at page 12, line 12, where Judge Berle discussed the issue of a single trial in all the related cases on the common issue of the "duty" owed by the MetLife Defendants to investors in DLG:

> Judge Berle:  And the purpose of today's hearing was to discuss how some of the matters may be combined and possibly tried together, in some situations it may be appropriate and other situations it may not be appropriate. It may be under consideration that you're trying several cases together, but on the other hand, there may be claims from different cases that could be tried together; so we ought to consider how these issues can be sliced and diced. And I would like to hear from

counsel. There are different possibilities of addressing the issues. One would be to handle customer cases and the customers' theories of recovery separate from the indemnity claims. Perhaps separating and severing any cross-complaints for indemnity from the operative causes of action on behalf of customers. On the other hand, there's been a suggestion about separating liability from damages, but one of the predominating issues of course would be conserving resources and providing for the administration of these cases in the most efficient expeditious manner to save expenses both for the counsel and for the court, try to avoid multiple juries when not necessary. So it's one thing to have juries come and try cases for separate claims. It's something else having separate juries on liability and damages, which is probably if we're just multiplying use of public resources, which are precious resources.

So I did want to hear from counsel about different concepts of what claims can be tried together, what issues can be tried together, what issues can be severed, tried separately. I'd also like to hear from counsel as to whether any of the issues could be tried before the court instead of a jury trial. Obviously, it's much more flexible trying a case in front of court and not looking for separate business from the jury business, but nevertheless, it's more efficient in terms of avoiding imposition on the public. As I said, important resource, but in addition, it's more flexibility in terms of scheduling days when it could be broken up and bifurcated in different fashion as if you have a jury, obviously you want to try consecutive days as quickly as possible. Any thoughts?

. . . .

THE COURT: Well, that doesn't help, but thank you for your comments.

Any other thoughts from anyone?

MR. FOLEY: Good morning, Your Honor. Thomas Foley for the Cantor Plaintiffs. There are a number of cases against Metlife –

THE COURT: Yes, I see that. I mean, the biggest collective on the cases involving Brandt and – the issues involving Brandt and Russon and Russon financial, NELICO, NES, and Metlife, and NEF -- that's the biggest conglomeration of parties tracing the relationship between all those.

---

**DECLARATION OF THOMAS G. FOLEY, JR.**
Case No.: 2:13-cv-07139-R-RZ

17

MR. FOLEY: And what we endeavored to do there was a supplement filed. I don't know whether the Court's seen it.

THE COURT: I have an amended joint --

MR. FOLEY: Yes, that's it. And from the Plaintiffs' perspective, and I'm speaking now for the Cantor Plaintiffs, the Gupta Plaintiffs, and we're going to talk to some of the other plaintiffs to see if we can't come to consensus on having certain issues related to Metlife tried either to the court or to one jury. Primarily issues of whose responsibility to supervise, to monitor conduct, who's liable for whose conduct between Metlife, the Russon agency, which would include Scott Brandt; and so we haven't come to consensus yet on all of the issues that would be tried, but we're making progress on that, and I think by the next status conference -- discovery's been ongoing now. People are getting deposed so the parties are getting more comfortable with the facts. We might be, if not the next status conference, the next status conference after that, we'd be in a position to say here's the issues could be tried either to the court or to one jury.

THE COURT: I think that's what I was looking for in terms of suggestions or alternatives rather than to have five separate trials and five separate cases. If we could carve out -- even if it doesn't dispose of all the entire issues in any particular case, some defendants may have separate issues, but at least if there's a grouping of a number of plaintiffs with a number of the defendants in which all those issues can be resolved, it would certainly be helpful. That's the focus. It may be that some of the cases will be able to be disposed through that methodology in the entirety.

50. On October 17, 2013, subsequent to the MetLife Defendants' Notice of Removal being filed, Judge Elihu Berle sitting in Department 332 of the Complex Litigation Department of the Los Angeles County Superior Court conducted a Status Conference in the 20 DLG-related cases that he is managing. There was no court reporter at the 10/17/13 Status Conference because of budgetary cutbacks experienced by the Los Angeles County Superior Court.

51. My counsel Richard Donahoo and I participated in the October 17, 2013 Status Conference with Judge Berle because we are counsel in two other case involving DLG, which have been "related" for purposes of judicial management,

*5225 Trust v. Warner Corbett & Gutentag, et al.*, Case No. BC 108930, and *Kramer, et al. v. American National Life Insurance Company*, Case No. BC 480029. Cheryl Haas, lead counsel for the MetLife Defendants in all the DLG related cases pending before Judge Berle, participated telephonically at the October 17, 2013 Status Conference. The local California counsel for the MetLife Defendants, Curtis D. Parvin of Irvine, California office of Sedgwick LLP did not participate at the October 17, 2013 Status Conference.

52.     At the October 17, 2013 Status Conference, Judge Berle asked counsel for an update on the discussions on the court's suggestion of trying common issues related to the MetLife Defendants. In response, Cheryl Haas, lead counsel for MetLife replied to Judge Berle's request by stating, words to the effect that the MetLife Defendants and Cross-Defendants would in concept agree to one consolidated trial on the issue of what duty, if any, the MetLife Defendants owed to individuals who invested in DLG after being solicited by an insurance agent or registered representative affiliated with MetLife. Ms. Haas further stated to Judge Berle that she would recommend to her clients that they waive jury and allow Judge Berle to conduct a bench trial on what duty the MetLife Defendants owed to the investors in DLG.

53.     On behalf of the plaintiff in the *5225 Trust v. Gutentag* case, which I believe is a MetLife-related case because Dennis Lawton was a MetLife appointed insurance agent when he solicited the trustee of the plaintiff Trust to invest in DLG, I informed Judge Berle that my client would agree to a bifurcated trial on the common issues related to the duties owed by the MetLife Defendants to the plaintiffs who invested in DLG after being solicited to invest by an agent or registered representative affiliated with the MetLife Defendants.

/ / /

/ / /

/ / /

---

**DECLARATION OF THOMAS G. FOLEY, JR.**
Case No.: 2:13-cv-07139-R-RZ

19

I declare the foregoing under the laws of the United States of America this 28th day of October, 2013. Executed this 28th day of October, 2013, at Santa Barbara, California.

_____/s/Thomas G. Foley, Jr._____
Thomas G. Foley, Jr

# EXHIBIT F

REVISED SCHEDULE OF POTENTIAL CLASS MEMBER (BRANDT INVESTORS ONLY)

| No. | EVIDENCE | DIG Account Name | Last Name | First Name | Name of Agent | Address | City | State |
|-----|----------|------------------|-----------|------------|---------------|---------|------|-------|
| 1 | DECL. (CA) GILL DECL. | Mary Albee | Albee | Mary | Brandt | 4850 Moorpark Road | Santa Rosa Valley | CA |
| 2 | APR GILL DECL. | Scott L. Armstrong | Armstrong | Scott | Brandt | P. O. Box 3362 | Thousand Oaks | CA |
| 3 | APR GILL DECL. DECL. (CA) | Scott L. Armstrong | Armstrong | Phillis | Brandt | P. O. Box 3362 | Thousand Oaks | CA |
| 4 | APR GILL DECL. DECL. (CA) | Robert H. Borden | Borden | Robert | Brandt | 13615 Lemay St. | Valley Glen | CA |
| 5 | APR GILL DECL. DECL. (CA) | Robert H. Borden | Borden | Chalene | Brandt | 13615 Lemay St. | Valley Glen | CA |
| 6 | DECL. (CA) GILL DECL. | Julanne Brandt AKA Julanne Wilson Living Trust dated November 3, 2008 | Brandt | Julanne | Brandt | 1 Corte Rossa | Lake Elsinore | CA |
| 7 | DECL. (CA) GILL DECL. | Chelsea Brandt | Brandt | Chelsea | Brandt | 244 Lake Sherwood Drive | Thousand Oaks | CA |
| 8 | DECL. (CA) GILL DECL. | Jason Brandt | Brandt | Jason | Brandt | 244 Lake Sherwood Drive | Thousand Oaks | CA |
| 9 | DECL. (CA) GILL DECL. | Rory Brandt | Brandt | Rory | Brandt | 244 Lake Sherwood Drive | Thousand Oaks | CA |
| 10 | DECL. (CA) GILL DECL. | First Commerce Bank Cust. FBO – Timothy Brandt | Brandt | Timothy | Brandt | 8195 Melrose Way | El Dorado Hills | CA |
| 11 | DECL. (CA) GILL DECL. | First Commerce Bank Cust. FBO – Julanne Brandt-Wilson | Brandt-Wilson | Julanne | Brandt | 1 Corte Rossa | Lake Elsinore | CA |
| 12 | | Blue Coyote Pictures, Inc. aka Roy Brewington Trust | Brewington | Roy | Brandt | Address unknown | | |
| 13 | DECL. (CA) APR GILL DECL. | Lawrence J. Cantor | Cantor | Lawrence | Brandt | P.O. Box 1679 | Venice | CA |
| 14 | DECL. (CA) APR GILL DECL. | Lawrence Cantor | Cantor | Patti | Brandt | P.O. Box 1679 | Venice | CA |

Exhibit II Page 1 of 8

REVISED SCHEDULE OF POTENTIAL CLASS MEMBER (BRANDT INVESTORS ONLY)

| No. | EVIDENCE | DLG Account Name | Last Name | First Name | Name of Agent | Address | City | State |
|---|---|---|---|---|---|---|---|---|
| 15 | DECL. (CA) APR GILL DECL. | Adelandra Capparuccia | Capparuccia | Adelandra | Brandt | Address unknown | | |
| 16 | DECL. (CA) APR | Youngmin Choi | Choi | Youngmin | Brandt | 5410 Isabella Ct. | Agoura Hills | CA |
| 17 | SETTLED | Cohen Family Trust | Cohen | Robert | Brandt | 16550 Bosque Dr. | Encino | CA |
| 18 | SETTLED | Robert Cohen | Cohen | Robert | Brandt | 16550 Bosque Dr. | Encino | CA |
| 19 | DECL. (CA) APR GILL DECL. | Fred Cohen | Cohen | Fred | Brandt | P.O Box 550181 | South Lake Tahoe | CA |
| 20 | SETTLED | Gerald D. Coulter | Coulter | Gerald | Brandt | 11161 Sunset Lane | Santa Rosa Valley, | CA |
| 21 | SETTLED | Gerald D. Coulter | Coulter | Bobbie | Brandt | 11161 Sunset Lane | Santa Rosa Valley, | CA |
| 22 | APR GILL DECL. | First Commerce Bank Cust. FBO - Michael Dilger | Dilger | Michael | Brandt | c/o Polycomp | Woodland Hills | CA |
| 23 | DECL. (CA) APR GILL DECL. | Michael Dixon | Dixon | Michael | Brandt | 260 Princeton Dr | Costa Mesa | CA |
| 24 | DECL. (CA) APR GILL DECL. | Michael Dixon | Dixon | Linda | Brandt | 260 Princeton Dr | Costa Mesa | CA |
| 25 | | Arlene Dodson-Franssen | Dodson-Franssen | Arlene | Brandt | 132 Driftwood Dr. | Florence | OR |
| 26 | APR GILL DECL. | Duarte Family Trust 7-7-06 | Duarte | Alberto | Brandt | 635 Covington Ave. | Simi Valley | CA |
| 27 | SETTLED | Reveocable Living Trust of John T. Duff III and Janet Duff | Duff | Janet | Brandt | 10700 Bloomfield St | Toluca Lake | CA |
| 28 | SETTLED | John T. Duff III and Janet Duff | Duff | John | Brandt | 10700 Bloomfield St | Toluca Lake | CA |
| 29 | DECL. (CA) APR | First Commerce Bank Cust. FBO - James R. Dugue | Dugue | James | Brandt | c/o Polycomp | Woodland Hills | CA |
| 30 | GILL DECL. | Jack E. Dunn | Dunn | Jack | Brandt | 1540 Paul Street | Simi Valley | CA |
| 31 | APR DECL. (CA) GILL DECL. | Durose Family Trust Dated November 16, 2006 | Durose | Kelly | Brandt | 2212 Raintree Ct | Rucklin | CA |

Exhibit II Page 2 of 8

# REVISED SCHEDULE OF POTENTIAL CLASS MEMBER (BRANDT INVESTORS ONLY)

| No. | EVIDENCE | DLG Account Name | Last Name | First Name | Name of Agent | Address | City | State |
|---|---|---|---|---|---|---|---|---|
| 32 | DECL. (CA) APR GILL DECL. | First Commerce Bank Cust. FBO - Michele Durose | Durose | Michele | Brandt | 17550 Sunburst St. | Northridge | CA |
| 33 | DECL. (CA) APR GILL DECL. | First Commerce Bank Cust. FBO - Wayne Durose | Durose | Wayne | Brandt | 17550 Sunburst St. | Northridge | CA |
| 34 | DUPLICATE (see no. 130) | Tracy-Anne Durose | Durose | Tracy-Anne | Brandt | 2212 Raintree Ct | Rocklin | CA |
| 35 | DECL. (CA) APR GILL DECL. | Steven Eric Feir | Feir | Steven | Brandt/AEI | P.O. Box 7848 | Mammoth Lakes | CA |
| 36 | DECL. (CA) APR GILL DECL. | Pilar Feir | Feir | Pilar | Brandt | 119 Eastwind Street | Marina Del Rey | CA |
| 37 | DECL. (CA) GILL DECL. | Francesco Ferrario | Ferrario | Francesco | Brandt | 2626 Armacost Ave. | Los Angeles | CA |
| 38 | SETTLED | Ron Gonzalez | Gonzalez | Ron | Brandt | 21510 Chirping Sparrow Road | Diamond Bar | CA |
| 39 | SETTLED | Ron Gonzalez | Gonzalez | Maria | Brandt | 21510 Chirping Sparrow Road | Diamond Bar | CA |
| 40 | DECL. (CA) APR GILL DECL. | Samuel Gupta | Gupta | Samuel | Brandt | 2736 Armour Ln | Redondo Beach | CA |
| 41 | DECL. (CA) APR GILL DECL. | Samuel Gupta | Gupta | Janet | Brandt | 2736 Armour Ln | Redondo Beach | CA |
| 42 | SETTLED | First Commerce Bank Cust. FBO - Patricia Hank | Hank | Patricia | Brandt | 4261-3 Las Virgines Rd. | Calabasas | CA |
| 43 | SETTLED | John Hank | Hank | John | Brandt | 4261-3 Las Virgines Rd. | Calabasas | CA |
| 44 | DECL. (CA) | Michael J. Hansen | Hansen | Michael | Brandt | 1221 Ocean Ave #1006 | Santa Monica | CA |
| 45 | DECL. (CA) | The Hartshorne Family Trust dated September 12, 2002 | Hartshorne | Robert | Brandt | 7790 Highway 126 | Florence | OR |

Exhibit II Page 3 of 8

**REVISED SCHEDULE OF POTENTIAL CLASS MEMBER (BRANDT INVESTORS ONLY)**

| No. | EVIDENCE | DLG Account Name | Last Name | First Name | Name of Agent | Address | City | State |
|---|---|---|---|---|---|---|---|---|
| 46 | | The Hartshorne Family Trust dated September 12, 2002 | Hartshorne | MaryAnn | Brandt | c/o Polycomp | Woodland Hills | CA |
| 47 | | First Regional Bank Cust. FBO - John Haynes | Haynes | John | Brandt | 7790 Highway 126 | Florence | OR |
| 48 | SETTLED | ~~Kevin Troy Hukas~~ | ~~Hukas~~ | ~~Kevin~~ | ~~Brandt~~ | ~~19 McAfee Court~~ | ~~Thousand Oaks~~ | ~~CA~~ |
| 49 | SETTLED | ~~Donald K. Jong~~ | ~~Jong~~ | ~~Donald~~ | ~~Brandt~~ | ~~4699 Via Canada~~ | ~~Newbury Park~~ | ~~CA~~ |
| 50 | SETTLED | Donald K. Jong | Jong | Janet | Brandt | 4699 Via Canada | Newbury Park | CA |
| 51 | APR | Carol Jonsson | Jonsson | Carol | Brandt | P.O. Box 270454 | San Diego | CA |
| 52 | DECL. (CA) APR GILL DECL. | Kassap Family Trust 05/01/92 | Kassap | Stanley | Brandt | 196355 Mandalay Dr. | Encino | CA |
| 53 | APR | Law Offices of George Knopfler Defined Benefit Pension Plan | Knopfler | Deborah | Brandt | 31194 La Baya | Westlake Village | CA |
| 54 | APR | Law Offices of George Knopfler 401 (K) Profit Sharing Plan | Knopfler | George | Brandt | 31194 La Baya Drive | Westlake Village | CA |
| 55 | SETTLED | ~~Sharlene E. Kreiner Trust dated November 10, 2000~~ | ~~Kreiner~~ | ~~Sharlene~~ | ~~Brandt~~ | ~~434 S. Walter~~ | ~~Newbury Park~~ | ~~CA~~ |
| 56 | DECL. (CA) | Johanna Lieberman | Lieberman | Johanna | Brandt | Address unknown | | |
| 57 | DUPLICATE (see no. 67) | ~~Francisco Ferrante Lieberman~~ | ~~Lieberman~~ | ~~Francisco~~ | ~~Brandt~~ | ~~Address unknown~~ | | |
| 58 | DECL. (CA) GILL DECL. | Charles F. Logan | Logan | Charles | Brandt | 1342 Caren Ct. | Lancaster | CA |
| 59 | DECL. (CA) GILL DECL. | First Commerce Bank Cust. FBO - Tracy Anne Lopez | Lopez | Tracy | Brandt | 6400 Canoga Ave. | Woodland Hills | CA |
| 60 | | Alan Mandel | Mandel | Alan | Brandt | 7425 NW 79th St | Miami | FL |
| 61 | | Alan Mandel | Mandel | Janine | Brandt | 7425 NW 79th St | Miami | FL |
| 62 | DECL. (CA) APR GILL DECL. | Mann Family Trust dated November 15, 2007 | Mann | Michael | Brandt | 14380 E. Loyola St. | Moorpark | CA |

Exhibit II Page 4 of 8

REVISED SCHEDULE OF POTENTIAL CLASS MEMBER (BRANDT INVESTORS ONLY)

| No. | EVIDENCE | DLG Account Name | Last Name | First Name | Name of Agent | Address | City | State |
|-----|----------|------------------|-----------|------------|---------------|---------|------|-------|
| 63 | DECL. (CA) APR GILL DECL. | Mann Family Trust dated November 15, 2007 | Mann | Janet | Brandt | 14380 E. Loyola St. | Moorpark | CA |
| 64 | APR GILL DECL. | David Mann | Mann | David | Brandt | 191 Welsh Ct | Simi Valley | CA |
| 65 | APR GILL DECL. | David Mann | Mann | Linda | Brandt | 191 Welsh Ct | Simi Valley | CA |
| 66 | APR | First Commerce Bank Cust. FBO-Lawrence McCorkle | McCorkle | Lawrence | Brandt | c/o Polycomp | Woodland Hills | CA |
| 67 | SETTLED | ~~California National Bank Cust. FBO- Howard P. McKeon~~ | ~~McKeon~~ | ~~Howard~~ | ~~Brandt~~ | ~~c/o Polycomp~~ | ~~Woodland Hills~~ | ~~CA~~ |
| 68 | | California National Bank Cust. FBO - Patricia McKeon | McKeon | Patricia | Brandt | c/o Polycomp | Woodland Hills | CA |
| 69 | APR GILL DECL. | Mendes Family Trust | Mendes | Pari | Brandt | 1004 Poplar Ct. | Simi Valley | CA |
| 70 | DECL. (CA) | First Commerce Bank Cust. FBO - Robert Miskin | Miskin | Robert | Brandt | 6400 Canoga Ave. | Woodland Hills | CA |
| 71 | DECL. (CA) GILL DECL. | Caryn Mower | Mower | Caryn | Brandt | 388 Jenny Dr | Newbury Park | CA |
| 72 | DECL. (CA) GILL DECL. | First Commerce Bank Cust. FBO - Joseph J. Munroe | Munroe | Joseph | Brandt | 6400 Canoga Ave. | Woodland Hills | CA |
| 73 | | First Commerce Bank Cust. FBO - Michael C. Murphy | Murphy | Michael | Brandt | 6400 Canoga Ave. | Woodland Hills | CA |
| 74 | | First Commerce Bank Cust. FBO - Laura Murphy | Murphy | Laura | Brandt | 6400 Canoga Ave. | Woodland Hills | CA |
| 75 | DECL. (CA) | First Commerce Bank Cust. FBO - Timothy Owens | Owens, Sr. | Timothy | Brandt | c/o Polycomp | Woodland Hills | CA |
| 76 | DECL. (CA) APR | Expert Building Maintenance, L | Pedder | Robert | Brandt | 1871 Tapo St. | Simi Valley | CA |

Page 5 of 8

Exhibit II Page 5 of 8

REVISED SCHEDULE OF POTENTIAL CLASS MEMBER (BRANDT INVESTORS ONLY)

| No. | EVIDENCE | DLG Account Name | Last Name | First Name | Name of Agent | Address | City | State |
|---|---|---|---|---|---|---|---|---|
| 77 | DECL. (CA) GILL DECL. | Pereida Family Trust | Pereida | Sandra | Brandt | 4917 El Dorado Drive | Laverne | CA |
| 78 | DECL. (CA) GILL DECL. | Pereida Family Trust | Pereida | Robert | Brandt | 4917 El Dorado Drive | Laverne | CA |
| 79 | SETTLED | ~~James Pete~~ | ~~Pete~~ | ~~James~~ | ~~Brandt~~ | ~~2750 Edgeview~~ | ~~Newbury Park~~ | ~~CA~~ |
| 80 | DECL. (CA) APR GILL DECL. | Pomonik Family Trust dated August 1, 2006 | Pomonik | George | Brandt | 4144 Meadow Lark Dr | Calabasas | CA |
| 81 | DECL. (CA) GILL DECL. | Pomonik Family Trust dated August 1, 2006 | Pomonik | Roslyn | Brandt | 4144 Meadow Lark Dr | Calabasas | CA |
| 82 | DECL. (CA) APR GILL DECL. | Joel Pomonik and Denise Pomoni | Pomonik | Denise | Brandt | 4491 Poe Ave | Woodland Hills | CA |
| 83 | DECL. (CA) APR GILL DECL. | Joel Pomonik | Pomonik | Joel | Brandt | 4491 Poe Ave | Woodland Hills | CA |
| 84 | DECL. (CA) GILL DECL. | John Ports | Ports | John | Brandt | 13131 Knotty Pine | Moorpark | CA |
| 85 | DECL. (CA) GILL DECL. | John Ports | Ports | Roneale | Brandt | 13131 Knotty Pine | Moorpark | CA |
| 86 | DECL. (CA) GILL DECL. | Dale Pritchard | Pritchard | Dale | Brandt | 811 Fowler Avenue | Newbury Park | CA |
| 87 | SETTLED | ~~G.L. Quin, III Family Trust 100~~ | ~~Quin, III~~ | ~~Garrell~~ | ~~Brandt~~ | ~~13723 Park St.~~ | ~~Cerritos~~ | ~~CA~~ |
| 88 | DECL. (CA) GILL DECL. | Christine Ramirez | Ramirez | Christine | Brandt | 855 Links View Dr. | Simi Valley | CA |
| 89 | | First Commerce Bank Cust. FBO - Pamela Richardson | Richardson | Pamela | Brandt | 6400 Canoga Ave. | Woodland Hills | CA |
| 90 | SETTLED | ~~Kabir Sabherwal~~ | ~~Sabherwal~~ | ~~Kabir~~ | ~~Brandt~~ | ~~12145 Holly Glen Place~~ | ~~Studio City~~ | ~~CA~~ |

Exhibit II Page 6 of 8

**REVISED SCHEDULE OF POTENTIAL CLASS MEMBER (BRANDT INVESTORS ONLY)**

| No. | EVIDENCE | DLG Account Name | Last Name | First Name | Name of Agent | Address | City | State |
|---|---|---|---|---|---|---|---|---|
| 91 | SETTLED | Jadeett & Janak Sabherwal Family Trust of June 1, 1984 | Sabherwal | Janak | Brandt | 12145 Holly Glen Place | Studio City | CA |
| 92 | APR GILL DECL. | Wayne & Lauren Sanda Revocable Trust dated July 11, 1998 | Sanda | Wayne | Brandt | 22488 Domingo Rd | Woodland Hills | CA |
| 93 | DECL. (CA) APR GILL DECL. | George Savatgy | Savatgy | George | Brandt | 1233 Ruberta | Glendale | CA |
| 94 | DECL. (CA) APR | California National Bank Cust. FBO - Donald J. Scotti | Scotti | Donald | Brandt | 6400 Canoga Ave. | Woodland Hills | CA |
| 95 | SETTLED | Alan Shapiro | Shapiro | Alan | Brandt | 455 La Loma Rd. | Pasadena | CA |
| 96 | | California National Bank Cust. FBO - Gary Shiger | Shiger | Gary | Brandt | 6400 Canoga Ave. | Woodland Hills | CA |
| 97 | APR | Scott Snyder | Snyder | Scott | Brandt | 1049 Calle Ruiz | Thousand Oaks | CA |
| 98 | APR | Scott Snyder | Snyder | Dawna | Brandt | 1049 Calle Ruiz | Thousand Oaks | CA |
| 99 | APR GILL DECL. | Gary D. Snyder & Lynette E. Snyder Trust, dated July 18, 1985 | Snyder | Gary | Brandt | 3034 Rollings Ave. | Thousand Oaks | CA |
| 100 | APR GILL DECL. | Gary D. Snyder and Lynette E. Snyder Trust dated July 18, 1985 | Snyder | Lynette | Brandt | 3034 Rollings Ave. | Thousand Oaks | CA |
| 101 | DECL. (CA) | California National Bank Cust. FBO - Larry W. Stilley | Stilley | Larry | Brandt | 6400 Canoga Ave. | Woodland Hills | CA |
| 102 | | Capriccio Trading Inc. A Delaware Corporation & Seabourne Partners, LP | Straatsma | Cynthia | Brandt | 200 Spalding Dr. # A | Beverly Hills | CA |
| 103 | APR GILL DECL. | First Commerce Bank Cust. FBO - John Sykes | Sykes | John | Brandt | 6400 Canoga Ave. | Woodland Hills | CA |
| 104 | SETTLED | Richard Wade | Wade | Richard | Brandt | 32440 Saddle Mountain Dr. | Westlake Village | CA |
| 105 | SETTLED | California National Bank Cust. FBO - Hilary C. Wade | Wade | Hilary | Brandt | 6400 Canoga Ave. | Woodland Hills | CA |

Exhibit II Page 7 of 8

**REVISED SCHEDULE OF POTENTIAL CLASS MEMBER (BRANDT INVESTORS ONLY)**

| No. | EVIDENCE | DLG Account Name | Last Name | First Name | Name of Agent | Address | City | State |
|-----|----------|------------------|-----------|------------|---------------|---------|------|-------|
| 106 | SETTLED | ~~Mark A. Wagner~~ | ~~Wagner~~ | ~~Mark~~ | ~~Brandt~~ | ~~2801 Ocean Park Blvd. # 477~~ | ~~Santa Monica~~ | ~~CA~~ |
| 107 | DECL. (CA) APR GILL DECL. | Paul Walker | Walker | Paul | Brandt | 3196 Deer Valley Ave | Newbury Park | CA |
| 108 | DECL. (CA) GILL DECL. | William Wilson | Wilson | William | Brandt | 3016 Silver Lea Ter. | Los Angeles | CA |
| 109 | APR GILL DECL. | First Commerce Bank Cust. FBO - William L. Wilson | Wilson | William | Brandt | 6400 Canoga Ave. | Woodland Hills | CA |

Page 8 of 8

Exhibit II Page 8 of 8

# EXHIBIT G

1  Thomas Foley, Esq. (SBN 65812)
2  Robert A. Curtis, Esq. (SBN 203870)
   Justin P. Karczag, Esq. (SBN 223764)
3  **FOLEY, BEZEK, BEHLE &**
   **CURTIS, LLP**
4  15 W. Carrillo Street
5  Santa Barbara, CA 93101
   Telephone: (805) 962-9495
6  Facsimile: (805) 962-0722
7  tfoley@foleybezek.com
   rcurtis@foleybezek.com
8  jkarczag@foleybezek.com

9  John A. Stillman, Esq. (SBN 43731)
10 Heidi Stilb Lewis, Esq. (SBN 98046)
   **GOOD, WILDMAN, HEGNESS &**
11 **WALLEY**
12 5000 Campus Drive
   Newport Beach, California 92660
13 Telephone: (949) 955-1100
14 Facsimile: (949) 833-0633
   jstillman@goodwildman.com
15 hlewis@goodwildman.com
16 *Attorneys for Plaintiffs*

Richard E. Donahoo, Esq. (SBN 186957)
Sarah L. Kokonas, Esq. (SBN 262875)
**DONAHOO & ASSOCIATES**
440 West First Street, Suite 101
Tustin, CA 92780
Telephone:(714) 953-1010
Facsimile: (714) 953-1777
rdonahoo@donahoo.com
skokonas@donahoo.com

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

17

| | |
|---|---|
| *IN RE DLG RELATED CASES* | **CASE NO. 2:13-cv-07139-R-RZ** |
| THIS PLEADING RELATES TO THE CONSOLIDATED CASES OF: | (Removed from Superior Court of California, County of Los Angeles, Lead Case No. BC446497; BC456651 Consolidated with BC446497) |
| LAWRENCE J. CANTOR, et al., | |
| Plaintiffs, | |
| vs. | |
| METLIFE, INC., et al., | **SUPPLEMENTAL DECLARATION OF THOMAS G. FOLEY, JR. IN SUPPORT OF REPLY ON PLAINTIFFS' MOTION TO REMAND** |
| Defendants. | |
| AND CONSOLIDATED CASE. | **Date: December 2, 2012** |
| | **Time: 10:00 a.m.; Dept. 8** |

# DECLARATION OF THOMAS G. FOLEY, JR.

I, Thomas G. Foley, Jr., state and declare that:

1. I am an attorney licensed to practice law in the State of California, and one of the attorneys representing the Plaintiffs in the above-entitled action. I have personal knowledge of the facts set forth in this declaration.  If called to testify I could and would competently testify as follows.

2. The Plaintiffs' Schedule attached as Exhibit 1 to Plaintiffs July 29, 2013 Response to the MetLife Defendants Special Interrogatory 29 lists the MetLife "agents" who solicited the 247 individuals identified on the original Plaintiffs' Schedule as "potential" class members.

3. From my participation as counsel for Plaintiffs, I am familiar with the sworn discovery responses in the In Re DLG cases.  I have taken depositions, reviewed documents and prepared and participated in all forms of discovery.  I was involved in the drafting of the Third Amended Consolidated Complaint ("TACC") that was filed on November 8, 2011.  When the TACC was filed, Plaintiffs' counsel was not aware of how many potential class members received a "welcome packet" when they were solicited by a MetLife agent to invest in DLG.  From participating in discovery I am familiar with the relationship between Tony Russon and other MetLife agents who solicited the potential class members identified on the original Plaintiffs' Schedule. In or around July 2013, I prepared the original Plaintiffs' Schedule that listed approximately 247 potential class members. Each of the MetLife "agents" identified on the original Plaintiffs Schedule, with the exception of Giovanni Pizzoferre, Applied Equities, Inc. ("AEI"), Keng, and Carlson, either worked for Tony Russon or received a recommendation from Defendant Tony Russon that they should have their clients invest in DLG as a form of premium financing, and Russon further told them that MetLife had approved his agents to sell DLG products to their clients as a form of premium financing. Tony Russon testified at his deposition that Scott Brandt, Steve Corzan and Toni Iannerelli all worked for

SUPPLEMENTAL DECLARATION OF THOMAS G. FOLEY, JR., IN SUPPORT
OF PLAINTIFFS' MOTION TO REMAND
Case No.: 2:13-cv-07139-R-RZ

2

him at the Defendant Russon Agency; the portion of Tony Russon's deposition where he testified that Brandt, Corzan and Iannerelli worked for the Defendant Russon Agency are attached hereto as Exhibit "A."

4. Ms. Cano and AEI are listed as the "agent" for 15 potential class members on the original Plaintiffs' Schedule; Mr. Pizzoferre is listed as the "agent" for one potential class member on the original Plaintiffs' Schedule; Keng is listed as the "agent" for two potential class members on the original Plaintiffs' Schedule. Carlson is listed as the "agent" for one of the potential class members on the original Plaintiffs' Schedule. The other 228 potential class members identified on the original Plaintiffs' Schedule that did not have Cano, Pizzoferre, Carlson or Keng all had as their "agent" either Russon himself, Brandt, Corzan, Iannarelli, Milt Belfer, and Robert Kroner or Dennis Lawton. (247-19 = 228). Thus, out of 247 individuals on the original Plaintiffs' Schedule, 228 (92.3%) had as their "agent" either Russon himself, Brandt, Corzan, Iannarelli, Milt Belfer and Robert Kroner or Dennis Lawton.

5. On Tuesday, October 29, 2013, the day after Plaintiffs filed their remand motion, the deposition of Milt Belfer was taken in *Cole v. NFP Securities et al.*, one of the other DLG-related cases pending before Judge Berle in the Los Angeles Superior Court ("LASC"). The Belfer deposition testimony was not cited in Plaintiffs' remand motion because it had not taken place as of the date of the remand motion. Both counsel for the MetLife Defendants, the Russon Defendants and myself appeared and participated at the Belfer deposition on behalf of our respective clients. Milt Belfer, who is identified on the original Plaintiffs' Schedule as a MetLife agent, together with another MetLife agent, Robert Kroner, sold DLG to the following 22 individuals listed on the original Plaintiffs' Schedule: Jaime Bejarano, Rosalba Bejarano, Jerry Engelhardt, Lynda Engelhardt, Ira Fine, Stephen Flaherty, Renee Fraser, John Levitt, Soltman, Levitt & Flaherty LLP 401K Profit Sharing Plan, Jessica McCord, Noel McCord, Sally Mendoza, Stanley Nisenson,

**SUPPLEMENTAL DECLARATION OF THOMAS G. FOLEY, JR., IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND**
Case No.: 2:13-cv-07139-R-RZ

3

Frank Perna, Ronald Popper M.D., Dorothy Sheperd, Steven Soltman, Jerome Tepperman, Robert Thornton, Carole Thornton, Frank Weisz and Jeffery White.

6.     At his deposition on October 28, 2013, Mr. Belfer testified that he and another MetLife agent, Robert Kroner, met with Tony Russon at Russon's MetLife Agency sometime in 2006, and Russon told both Kroner and Belfer that MetLife had approved Russon and his affiliated MetLife agents selling DLG investments as a form of premium financing:

. . .

Q   Okay.  And what were you told?

A   We were told that his agency, MetLife, had approved the program, that they had been doing business with Mr. Friedman for, I believe, several years, eight years, something like that, and that his agents were proactive in selling premium financing and selling MetLife insurance because of that.

He also said that he had made personal investments with Bruce Friedman, that his family made personal investments with Bruce Friedman for many years and that he had never failed to receive a payment on his investments.

(Deposition of Milt Belfer dated October 29, 2013, p. 102, ll. 20-25, p. 103, ll. 1-7; a true and correct copy of the entire excerpt is attached as Exhibit "B," Belfer Depo., p. 101, ll. 1-25, p. 102, ll. 1-25, p. 103, ll. 1-7.)

7.     On November 11, 2013, subsequent to the date that Plaintiffs filed their remand motion on October 28, 2013, the deposition of MetLife agent Dennis Lawton was taken in the *Mahew v. Jackson National Life Insurance Company* case, one of the DLG related cases pending before Judge Berle in the LASC. Mr. Lawton's deposition testimony was not cited by the *Cantor* Plaintiffs in their remand motion because it had not taken place until after the remand motion was filed. Both counsel for the MetLife Defendants and myself appeared and participated at the deposition

SUPPLEMENTAL DECLARATION OF THOMAS G. FOLEY, JR., IN SUPPORT
OF PLAINTIFFS' MOTION TO REMAND
Case No.: 2:13-cv-07139-R-RZ

4

of Mr. Lawton on November 11, 2013. On the original Plaintiffs' Schedule the following 70 potential class members are identified as having Mr. Lawton as their "agent":  Joseph Barbagiovanni, Cynthia Blagg, Dean Blagg, Robert Brotherton, Gregory Brown, Jerome Brown, Marlene Calvert, Bruno Campos, Mariana Campos, Charles Cobb, Stephen Cole, Robert Comer, Philip Dipaola, Christophe Eme, Edward English III, Seth Forsyth, Shaina Forsyth, William Forsyth, Karen Forsyth, Wesley Forsyth, William Forsyth II, William Forsyth III, Harvin Galper, Merle Galper, Burton Galper, Shelia Galper, Jil Glyman, John Gregory, Robert Hiett, Hermine Horwitz, Lewis Horwitz, Gayle Johnson, Ralph Khan, Tara Khan, Cletus Kuhla, Linda Lessing, Baldassare Licata, Maddalena Licata, Charles Mahew, Leonard Mains, Marlyn Malloy, Edward Mitchell, Eileen Mitchell, Donald Moffat, Robert Mower, Joyce Newlin, Gloria Paulsen, Linda Robinson, Douglas Schoen, Susan Schoen, Charles Scholer, Jerome Smith, Kristopher Smith, Marvin Spira, Charlotte St. John, Douglas Stevens, Sr., Brenden Suter, Rebecca Tuell, William Waddell, Eleanor Waddell, Ricky Walters, Bernard Warner, Dona Warner, Lawrence Warner, Shelia Warner, Wynne Warner, Revon Wolf, Stephen Worrell, Curtis Worrell, and Sharon Zimmerman, trustee of the 5255 Trust.

8.     Dennis Lawton testified at his November 11, 2013 deposition that Bruce Friedman had provided Tony Russon's name as a reference, and the he, Lawton, then called Tony Russon and asked Russon about his experience with Friedman and DLG:

> Q All right. Now, can you tell me, then, what it is you asked Mr. Russon in your phone call -- well, first let me ask you this. Was your phone call to Tony Russon to do some due diligence yourself on Bruce Friedman and DLG before you got involved recommending to people making investments in DLG?
>
> A Yeah, he's --
>
> Q All right.

**SUPPLEMENTAL DECLARATION OF THOMAS G. FOLEY, JR., IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND**
Case No.: 2:13-cv-07139-R-RZ

5

A He's a fellow life insurance guy. I knew the name. I knew the reputation and I just wanted to see, as far as Mr. Russon knew, if DLG was kosher, acceptable, reliable.

Q And what did you ask Mr. Russon on that subject and what, if anything, did he tell you?

A Well, I asked him how long he had been working with -- with Bruce Friedman, and I recall a little bit different than the testimony Mark gave you. I recall him saying he had been working with Bruce for five or six years, they had -- everything had worked like clock work, there had been no problems, that he had done some research and everything worked. And they were -- and I asked him about the premium finance and they had sold several policies with the life insurance premium finance arrangement. I mean, it wasn't –

Q Mr. Russon told you that his agency had sold several policies of life insurance using DLG as the form of premium financing?

A Yes.

Q All right. And did he tell you anything else in that phone call?

A I don't know if I heard it from him or heard it later on, that either he and/or his father had made some investments of their own personal money into DLG. I can't tell you -- I know that, but I didn't know that maybe based on that conversation.

(Lawton Deposition, taken November 11, 2013, p. 17, ll. 14-25, p. 18, ll. 1-25, p. 19, ll. 1-25, p. 20, ll. 1-15.; true and correct portions of Mr. Lawton's deposition testimony are attached hereto as Exhibit "C.")

9.   I have spoken with Steve Corzan, and Toni Iannerelli, and was informed by them that they were residents of the State of California during the time frame when they were affiliated with the Russon Agency and sold DLG products. I attended the depositions of Scott Brandt, Milt Belfer and Dennis Lawton, and heard their testimony that they were residents of the State of California when they sold DLG products.

10.   In paragraph 31 of the declaration of Cheryl Haas filed in support of the MetLife Defendants opposition to the remand motion, she states that I told her that

SUPPLEMENTAL DECLARATION OF THOMAS G. FOLEY, JR., IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND
Case No.: 2:13-cv-07139-R-RZ

6

settlements entered into between MetLife and investors who purchased DLG did not preclude those individuals from pursuing claims against the MetLife Defendants. I made a similar statement to Ms. Haas only one time during the current litigation, at a formal mediation conducted by Robert J. Kaplan at the Judicate West Office in Orange County, California. That statement is and was covered by the mediation/settlement privilege established by California Evidence Code §§ 1119 and 1152. For that reason, I will not comment further on that discussion, other than to state that the written releases produced by the MetLife Defendants do not contain a waiver of California Civil Code §1542. I was present at a joint session with the mediator and all participants, and I personally observed while Ms. Haas signed a Judicate West form at the inception of the mediation conducted by Mr. Kaplan, which form expressly stated that any statements or negotiations made at the mediation were privileged by California Evidence Code §§ 1119 and 1152.

11. My August 16, 2013, letter, a copy of which is attached to the Declaration of Cheryl Haas filed in support of the opposition as Exhibit H, informed the MetLife Defendants that there were 247 potential members of the putative class. The MetLife Defendants waited until September 26, 2013 to file their Notice of Removal. September 26, 2013 is more than 30 days after their receipt of the responses to special interrogatories 28 and 29 on July 29, 2013, which had as Exhibit 1 attached thereto the original Plaintiffs' Schedule identifying by name and address 247 potential members of the putative class. The MetLife Defendants also waited more than 30 days after receipt of my August 16, 2013 letter, which letter confirmed that more than two-thirds of the 247 potential members of the putative class were California residents, to file their Notice of Removal on September 26, 2013.

12. The *Cantor* Plaintiffs have never claimed that Receiver David Gill's Schedule of Creditors in the *SEC v. DLG* case, or his updated Schedule of Creditors was a list of potential members of the putative class. Receiver Gill's initial Schedule

SUPPLEMENTAL DECLARATION OF THOMAS G. FOLEY, JR., IN SUPPORT
OF PLAINTIFFS' MOTION TO REMAND
Case No.: 2:13-cv-07139-R-RZ

7

of Creditors and his updated Schedule of Creditors do not identify which creditors were solicited by an agent of the MetLife Defendants to invest in DLG.

13.     In paragraph 30 of Ms. Haas' declaration dated 11/12/13, she states that several individuals who signed releases with MetLife are still included on the "Revised Plaintiffs Schedule," including Lace Jordan, Joel and Denise Pomonik, Wayne Sanda, on behalf of the Wayne & Lauren Snyder Revocable Trust dated July 11, 1998, Gary Snyder and Lynette Snyder, as trustees of the Gary Snyder and Lynette E. Snyder Trust, and Scott and Dawna Snyder. Attached hereto as Exhibit "D" is a corrected version of Plaintiffs' Revised Schedule, herein after referred to as "Corrected Revised Plaintiffs' Schedule," which deletes Lace Jordan, Wayne Sanda, on behalf of the Wayne & Lauren Snyder Revocable Trust dated July 11, 1998, Gary Snyder and Lynette Snyder, as trustees of the Gary Snyder and Lynette E. Snyder Trust, and Scott and Dawna Snyder as potential members of the putative class. With those additional deletions, there are now 212 individuals identified on the Corrected Revised Plaintiffs Schedule (Exhibit "D" attached hereto) as potential members of the putative class.

14.     Subsequent to October 28, 2013, the date that Plaintiffs filed their remand motion, five additional declarations, encompassing six individuals, were received from the following individuals identified on the original Plaintiffs' Schedule as potential members of the putative class: Brenda Coble, Sally Mendoza, Ronald Popper, M.D., Douglas and Susan Schoen, and Mark Wagner. Copies of the five additional declarations were filed on Pacer and served by my office by email on the MetLife Defendants and Russon Defendants on November 8, 2013, four days prior to November 12, 2013, the date the MetLife Defendants and Russon Defendants field their opposition to the remand motion.

15.     On the Corrected Revised Plaintiffs' Schedule attached hereto as Exhibit "D," after removing the potential class members who have settled with the MetLife Defendants, with the exception of Joel and Denise Pomonik, and

**SUPPLEMENTAL DECLARATION OF THOMAS G. FOLEY, JR., IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND**
Case No.: 2:13-cv-07139-R-RZ

8

"duplicate" investors, of the remaining 212 potential class members, 149 (70.3%) are California citizens as established by their sworn declarations or by certified copies of Tax Assessor's records, and 63 (29.7%) are non-California citizens. Plaintiffs filed with their original motion to remand sworn declarations from 118 potential class members that they were citizens of the State of California as of the date the original *Cantor, et al*., complaint was filed with the LASC: Mary Albee, Jaime & Rosalba Bejarano, Dean & Cynthia Blagg, Robert & Charene Borden, Chelsea Brandt, Julanne Brandt, also invested as Julanne Wilson Living Trust dated November 3, 2008, Rory Brandt, Timothy Brandt, invested as First Commerce Bank Customer FBO Timothy Brandt, Jerome & Gregory Brown, Marlene E. Calvert, Bruno Campos, invested as Bruno Campos Revocable Trust and Road West Retirement Plan, Lawrence & Patti Cantor, Olga Chapa, Youngmin Choi, Fred Cohen, Robert Comer, invested as First Commerce Bank Customer FBO Robert Comer, Philip Dipaola, invested as First Commerce Bank Customer FBO Philip Dipaola, Michael & Linda Dixon, James Dugue, invested as First Commerce Bank Customer FBO James Dugue, Kelly Durose invested as the Durose Family Trust Dated November 16, 2006, Michele Durose, invested as First Commerce Bank Customer FBO Michele Durose, Wayne Durose, invested as First Commerce Bank Customer FBO Wayne Durose, Christophe Eme, Jerry & Lynda Engelhardt, invested as Jerry M. Engelhardt & Lynda T. Engelhardt Living Trust dated October 29, 1997, Jules & Francine Feir, also invested as invested as First Commerce Bank Customer FBO Jules Feir, Pilar Feir, Steven Feir, Francesco Ferrario, Stephen Flaherty, Seth Forsyth, invested as the WDF Living Trust of 1995 dated April 21, 1995, Shaina Forsyth, William D. II & Karen Forsyth, also invested the WDF Living Trust of 1995 dated April 21, 1995, William D. Forsyth III, Wesley Forsyth, William Frankenstein, Renee Fraser, also invested as Fraser Communications Defined Benefit Pension Plan, Harvin & Merle Galper, invested as First Commerce Bank Customer FBO Harvin Galper and Merle Galper, Elizabeth Gibbons, Ilsa Gilmer,

SUPPLEMENTAL DECLARATION OF THOMAS G. FOLEY, JR., IN SUPPORT
OF PLAINTIFFS' MOTION TO REMAND
Case No.: 2:13-cv-07139-R-RZ

9

John Gregory, Sam & Janet Gupta, Michael Hansen, Lewis & Hermine Horwitz, invested as the Horwitz Living Trust dated April 19, 1995, Michael Iannarelli, invested as First Commerce Bank Customer FBO Michael Iannarelli, Toni Iannarelli, invested as First Commerce Bank Customer FBO Toni Iannarelli, Karla Ives, Ted & Marsha Izen, invested as the Izen Family Trust 5-24-90, Steven Jacobs, invested as Steve Jacobs Defined Benefit Plan, Stanley & Susan Kassup, invested as Kassap Family Trust 05/01/92, Linda Lessing, John Levitt, also invested as Soltman, Levitt & Flaherty LLP 401K Profit Sharing Plan, Johanna Lieberman, Charles Logan, Tracy Anne Lopez, invested as First Commerce Bank Customer FBO Tracy Anne Lopez, also invested as Tracy Anne Durose, Michael & Janet Mann, invested as Mann Family Trust dated November 15, 2007, Robert Mishkin, invested as First Commerce Bank Customer, FBO Robert Mishkin, Edward & Eileen Mitchell, Caryn Mower, Joseph Munroe, invested as First Commerce Bank Customer FBO Joseph Munroe, Stanley Nisenson, Candie & Gabino Ortiz, Margaret Owen, invested as First Commerce Bank Customer FBO Margaret Owen, Timothy Owen, invested as First Commerce Bank Customer FBO Timothy Owens, Laura Partridge, also invested as invested as First Commerce Bank Customer FBO Laura Partridge, Gloria Paulsen, Robert Pedder, also invested as Expert Building Maintenance, Robert and Sandra Pereida, invested as Pereida Family Trust, Frank Perna, George & Roslyn Pomonik, invested as Pomonik Family Trust dated August 1, 2006, Joel & Denise Pomonik, John & Roneale Ports, Dale Pritchard, Christine Ramirez, Dona Rothman, invested as The Dona Rothman Family Trust dated February 11, 1994, George Savatgy, Donald Scotti, invested as California National Bank Customer FBO Donald J. Scotti, Dorothy Sheperd, Charlene Shinn, Steven Soltman, Larry Stilley, invested as California National Bank Customer FBO Larry Stilley, Yakov Tentser, invested as Tentser Family Trust, Jerome H. Tepperman, PH.D, Inc., 401(k) Profit Sharing Trust, by Roberta Tepperman, surviving spouse and successor trustee, Robert & Carole Thornton, invested as The Robert and Carole Thornton Family Trust dated

SUPPLEMENTAL DECLARATION OF THOMAS G. FOLEY, JR., IN SUPPORT
OF PLAINTIFFS' MOTION TO REMAND
Case No.: 2:13-cv-07139-R-RZ

10

July 25, 2000, Karen Van Sant, William & Eleanor Waddell, invested as the William W. & Eleanor C. Waddell Revoc Inter-Vivos U/T/D Trust dated July 29, 1993, Paul Walker, Bernard Warner, invested as First Commerce Bank Customer FBO Bernard Warner, Lawrence & Dona Warner, also invested as First Commerce Bank Customer FBO Lawrence Warner and Dona Warner, and L.J. Warner Trust 03-95, Sheila Warner, invested as Sheila Warner Trust, Wynne Warner, invested as the Wynne Warner Trust, Dated August 24, 1990 and as First Commerce Bank Customer FBO Wynne N. Warner, William Wilson, also invested as First Commerce Bank Customer FBO William Wilson, Revon Wolf, Juliet Wong and Sharon Zimmermann, invested as Trustee of the 5255 Trust.

16.    The total damages suffered by all the potential class members identified on the Corrected Revised Plaintiffs' Schedule is $56,172,863.81; See Exhibit "D" attached hereto. The potential class members identified on the Corrected Plaintiffs' Revised Schedule (Exhibit "D" attached hereto) who are citizens of California based on either their sworn declarations or certified Tax Assessor's records, suffered damages of $50,565,614.81, which is approximately 90% of the total damages suffered by potential class members, and the non-California potential class members suffered damages of $5,607,249.00, which is approximately 10% of the total damages suffered by potential class members.

17.    I categorically deny the statement by Ms. Haas in paragraph 22 of her Declaration that on July 30, 2013 Judge Berle "ordered" Plaintiffs to turn over to the MetLife Defendants documents. On April 7, 2011, Judge Berle held the first Status Conference in the DLG related cases, and he ordered me, as one of the Plaintiffs Liaison Counsel for all plaintiffs in the 20 DLG related cases, to prepare a Notice of the Court's rulings and file it with the Court, serve it on counsel for all parties, and post in on the internet Case Home Page website established by Judge Berle to administer the 20 DLG related cases; a true and correct copy of the Notice of Ruling and Notice of Continued Status Conference ("Notice") filed on April 20, 2011, is

SUPPLEMENTAL DECLARATION OF THOMAS G. FOLEY, JR., IN SUPPORT
OF PLAINTIFFS' MOTION TO REMAND
Case No.: 2:13-cv-07139-R-RZ

11

attached hereto as Exhibit "I." At paragraph 9 of that Notice it provides that prior to any party filing a motion to compel discovery, the parties must contact the Court and schedule an "informal conference" with the Court, and five days prior to the informal conference the parties are to file a "joint statement" with the Court. Judge Berle does not permit court reporters at the informal conferences with the Court to attempt to resolve discovery disputes.

18.    Attached hereto as Exhibit "E" is a true and correct copy a Joint Report by Plaintiffs and the MetLife Defendants provided to Judge Berle prior to the July 30, 2013 informal conference with Judge Berle that is referenced in paragraph 22 of Ms. Haas' declaration dated 11/12/13. In that Joint Report, at page 4, Ms. Haas requests the Court to order the *Cantor* Plaintiffs to produce all documents which Plaintiffs had obtained by serving several separate subpoenas on David Gill, the Receiver in *SEC v. DLG*. Both I and my co-counsel John A. Stillman and Ms. Haas participated in a telephonic informal session with Judge Berle on July 30, 2013. Judge Berle at the July 30, 2013 informal conference, informed counsel that he had reviewed the Joint Statement, and listened to the argument of counsel, and then stated that the MetLife Defendants' request to produce documents served on the *Cantor* Plaintiffs was too broad, and that the MetLife Defendants should serve a new request for production of documents specifying in detail which documents the MetLife Defendants requested Plaintiffs to produce. No order was entered by Judge Berle during or after the July 30, 2013 conference directing Plaintiffs to produce any additional documents, and Judge Berle did not give permission to the MetLife Defendants to file a motion to compel the *Cantor* Plaintiffs to produce any additional documents. At no time subsequent to the July 30, 2013 informal conference with Judge Berle did the MetLife Defendants schedule a motion to compel the *Cantor* Plaintiffs to produce any additional documents. (Exhibit "E" is being submitted without Exhibit 1, which is the Defendants' privilege log, because Exhibit 1 does not relate to the issues in the Plaintiffs' Motion for Remand.)

SUPPLEMENTAL DECLARATION OF THOMAS G. FOLEY, JR., IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND
Case No.: 2:13-cv-07139-R-RZ

12

19.     On August 19, 2013, subsequent to being told by Judge Berle to serve a new Request for Production of Documents at the July 30, 2013 informal meet and confer conference, the MetLife Defendants propounded a second Request for Production of Documents to Plaintiffs Cantor, Stilley and Sam Gupta; a true and correct copy of the MetLife Defendants 2nd RPD served on Plaintiff Stilley is attached hereto as Exhibit "F."

20.     In Ms. Haas' Declaration dated November 12, 2013, at paragraphs 7, 8, 9, 10, and 11, she references her request that the *Cantor* Plaintiffs amend their December 28, 2012 response to MetLife Defendants' Request for Admission No. 8, which request asked Plaintiffs to admit that there were more than 100 members of the putative class. What Ms. Haas failed to inform this Court in her declaration is that the MetLife Defendants requested an informal conference with Judge Berle on September 9, 2013 to request permission to file a motion to compel the *Cantor* Plaintiffs to "amend" their response to RFA No. 8, that at an informal conference took place on September 9, 2013, that Judge Berle told Ms. Haas at the September 9, 2013 informal conference that the *Cantor* Plaintiffs were not required to amend or supplement their response to RFA No. 8, and he did not give the MetLife Defendants' permission to file a motion to compel the *Cantor* Plaintiffs to amend or supplement their response to the MetLife Defendants RFA No. 8.

21.     Attached hereto as Exhibit "G" is a true and correct copy of the "Joint Report" filed by the MetLife Defendants and the *Cantor* Plaintiffs on September 3, 2013 with the LASC for the September 9, 2013 informal conference with Judge Berle. At page 5 of that Joint Report, at lines 1-8, Ms. Haas requests the Court to "order Plaintiffs to: (1) provide an amended response to Request No. 8, indicating Plaintiff's current response to the Request, and, if Plaintiffs deny based on lack of information and belief, require Plaintiffs to comply with Code of Civil Procedure Section 2033.220(c); and (2) amend the Complaint to accurately reflect Plaintiff's current position on the size of the potential class."

---

**SUPPLEMENTAL DECLARATION OF THOMAS G. FOLEY, JR., IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND**
Case No.: 2:13-cv-07139-R-RZ

13

22.     In the *Cantor* Plaintiffs' portion of the Joint Statement filed for the September 9, 2013 informal conference, Exhibit "G" attached hereto, the *Cantor* Plaintiffs stated at pages 5-6: "As to the discovery issue, Plaintiffs are not required to amend their response to Request for Admission No. 8 given over eight months ago on Dec. 28, 2012. California law does not impose upon parties the duty to supplement or amend discovery responses, once they are made. (*Burch v. Gambos* 82 Cal. App.4th 352,359 (2000).)  A responding party is only obligated to provide responses that are accurate at the time the response is provided, but need not supplement or amend any responses based on subsequently discovered evidence. (Ibid.) . . . Based on formal and informal discovery since responding to RFA No. 8, continue to obtain new information regarding potential class members, which was disclosed in their response to Special Interrogatory No, 24." Plaintiffs, as of December 28, 2012, could not verify that more than 100 had received the Welcome Packet. Plaintiffs' December 28, 2012 discovery responses were truthful.  The *Cantor* Plaintiffs' response to Special Interrogatory No. 24 references as Exhibit 1 the original "Plaintiffs' Schedule," which listed the names and addresses of 247 individuals who the *Cantor* Plaintiffs believed were potential class members as of July 29, 2013.

23.     At the informal conference with Judge Berle on September 9, 2013, the Court agreed with the *Cantor* Plaintiffs' position, and told Ms. Haas that the Plaintiffs had provided a verified response to Special Interrogatory 24, with the identification by name and address of numerous individuals who they now believed were potential class members. Judge Berle did not give the MetLife Defendants permission to file a motion to compel the *Cantor* Plaintiffs to amend or supplement their response to RFA No. 8. At the conclusion of the September 9, 2013 informal conference, Judge Berle ordered me, as one of the Liaison Counsel for all Plaintiffs in the 20 DLG related cases, to prepare a file a Notice of Rulings made at the informal conference, which was to be filed with the Court and posted on Case Home

Page. Attached hereto as Exhibit "H" is a true and correct copy of the Notice of Status Conference Re Class Action and Notice of Rulings prepared and filed as ordered by Judge Berle.

24.    In paragraph 18 of Ms. Haas' declaration filed in opposition to the remand motion, she acknowledges that on October 18, 2013, at my request, she and Theodore C. Peters, the attorney for the Russon Defendants and Defendant James Davidson, participated in a conference with me regarding my request for a limited Rule 26(f) conference. In paragraph 18, Ms. Haas states that neither she nor Mr. Peters agreed that the conference on October 16, 2013 constituted a Rule 26(f) conference. In paragraph 19 of her declaration, she references an email she received dated October 16, 2013 from Mr. Peters in which he stated that he, Mr. Peters, would not consent to any discovery in the Cantor or Gupta cases without a full Rule 26(f) conference.  However, on October 29, 2013, subsequent to the October 18, 2013 telephone conference to discuss my request for a "limited" Rule 26(f) conference, Mr. Peters appeared telephonically at the deposition of Milt Belfer in *Cole v. NFP Securities at al.*, and stated that he was appearing on behalf of Defendants Tony Russon, Russon Financial Services Agency and James Davidson in the *Cantor* and *Gupta* cases. Included in the pages of the deposition of Milton Belfer attached hereto as Exhibit "B" are the pages that contain Mr. Peters' statement that he was appearing for the Russon Defendants at Belfer deposition. (Belfer Depo., p. 15, ll. 19-22, true and correct copies of which are attached hereto as Exhibit "B.") On November 7, 2013, I participated in the deposition of Mark Gutentag in *Cole v. NFP Securities et al.* one of the DLG related cases pending before Judge Berle in the LASC. At the commencement of the Gutentag deposition, attorney Sabryne Coleman, as associate in Mr. Peters' law firm, announced her appearance on behalf of the Russon Defendants in the Cantor and Gupta cases.

/ / /

/ / /

I declare the foregoing under the laws of the United States of America that the facts set forth in this Declaration are true and correct.  Executed this 18th day of November, 2013, at Santa Barbara, California.

___/s/Thomas G. Foley, Jr._____
Thomas G. Foley, Jr.

**SUPPLEMENTAL DECLARATION OF THOMAS G. FOLEY, JR., IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND**
Case No.: 2:13-cv-07139-R-RZ

16

# EXHIBIT H

| No. | DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Status | Yield |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Mary Albee | Albee | Mary | Brandt | $75,000.00 | 4850 Moorpark Road | Santa Rosa Valley | CA | 93012 | | 12 |
| 2 | Scott L. Armstrong | Armstrong | Phillis | Brandt | | P. O. Box 3362 | Thousand Oaks | CA | 91359 | | 9 |
| 3 | Scott L. Armstrong | Armstrong | Scott | Brandt | $112,500.00 | P. O. Box 3362 | Thousand Oaks | CA | 91359 | | 9 |
| 4 | First Commerce Bank Cust. FBO - Joseph J. Barbagiovanni | Barbagiovanni | Joseph | Lawton | $100,000.00 | c/o Polycomp | Woodland Hills | CA | 91367 | | 12 |
| 5 | Jaime Bejarano | Bejarano | Jaime | Belfer/Kroner | $300,000.00 | 4347 Landerus Ave | La Verne | CA | 91750 | | 9 |
| 6 | Jaime Bejarano | Bejarano | Rosalba | Belfer/Kroner | | 4347 Landerus Ave | La Verne | CA | 91750 | | 9 |
| 7 | Dean Blagg | Blagg | Cynthia | Lawton | | 6829 Altamor Dr. | Los Angeles | CA | 90045 | | 12 |
| 8 | Dean Blagg | Blagg | Dean | Lawton | $210,000.00 | 6829 Altamor Dr. | Los Angeles | CA | 90045 | | 12 |
| 9 | Robert H. Borden | Borden | Chalene | Brandt | | 13615 Lemay St. | Valley Glen | CA | 91401 | | 9 |
| 10 | Robert H. Borden | Borden | Robert | Brandt | $50,000.00 | 13615 Lemay St. | Valley Glen | CA | 91401 | | 9 |
| 11 | Chelsea Brandt | Brandt | Chelsea | Brandt | $175,000.00 | 244 Lake Sherwood Drive | Thousand Oaks | CA | 91361 | | 12 |
| 12 | Jason Brandt | Brandt | Jason | Brandt | $100,000.00 | 244 Lake Sherwood Drive | Thousand Oaks | CA | 91361 | | 12 |
| 13 | Julanne Brandt AKA Julanne Wilson Living Trust dated November 3, 2008 | Brandt | Julanne | Brandt | $93,260.00 | 1 Corte Rossa | Lake Elsinore | CA | 92532 | | 12 |
| 14 | Rory Brandt | Brandt | Rory | Brandt | $175,000.00 | 244 Lake Sherwood Drive | Thousand Oaks | CA | 91361 | | 12 |
| 15 | First Commerce Bank Cust. FBO - Timothy Brandt | Brandt | Timothy | Brandt | $27,690.00 | 8195 Melrose Way | El Dorado Hills | CA | 95762 | | 12 |
| 16 | First Commerce Bank Cust. FBO - Julanne Brandt-Wilson | Brandt-Wilson | Julanne | Brandt | $93,260.00 | 1 Corte Rossa | Lake Elsinore | CA | 92532 | | 9 |
| 17 | Blue Coyote Pictures, Inc. aka Roy Brewington Trust | Brewington | Roy | Brandt | $18,084.00 | Address unknown | | | | | |
| 18 | First Commerce Bank Cust. FBO - Robert G. Brotherton | Brotherton | Robert | Lawton | $98,458.00 | c/o Polycomp | Woodland Hills | CA | 91367 | | 12 |
| 19 | Jerome L. Brown | Brown | Gregory | Lawton | | 3023 Sunset Hill Drive | West Covina | CA | 91791-2240 | | 9 |
| 20 | Jerome L. Brown | Brown | Jerome | Lawton | $100,000.00 | 3023 Sunset Hill Drive | West Covina | CA | 91791-2240 | | 9 |
| 21 | Richard W. Caldarone | Caldarone | Richard | Corzan | $600,000.00 | 73-4522 Hane Street | Kailua-Kona | HI | 96740 | | 9 |
| 22 | Richard W. Caldarone | Caldarone | Robelita | Corzan | | 73-4522 Hane Street | Kailua-Kona | HI | 96740 | | 9 |
| 23 | Marlene E. Calvert | Calvert | Marlene | Lawton | $50,000.00 | 20733 E. Rancho Los Cerritos Road | Covina | CA | 91724-3534 | | 12 |
| 24 | Bruno Campos Revocable Trust | Campos | Bruno | Lawton | $2,003,838.50 | 9401 Cherokee lane | Beverly Hills | CA | 90210 | | 12 |
| 25 | ~~Bruno Campos Revocable Trust~~ | ~~Campos~~ | ~~Bruno~~ | ~~Lawton~~ | ~~$78,957.28~~ | ~~9401 Cherokee Ln~~ | ~~Beverly Hills~~ | ~~CA~~ | ~~90210~~ | Duplicate (See 25) | ~~12~~ |
| 26 | Road West Retirement Plan | Campos | Bruno | Lawton | $39,476.37 | Address unknown | | CA | | | |
| 27 | Marina Campos | Campos | Mariana | Lawton | $243,000.00 | 9401 Cherokee Ln | Beverly Hills | CA | 90210 | | |
| 28 | Lawrence J. Cantor | Cantor | Lawrence | Brandt | $1,413,000.00 | P.O. Box 1679 | Venice | CA | 90294 | | 12 |
| 29 | Lawrence Cantor | Cantor | Patti | Brandt | | P.O. Box 1679 | Venice | CA | 90294 | | 12 |
| 30 | Adelandra Capparuccia | Capparuccia | Adelandra | Brandt | $50,000.00 | Address unknown | | | | | |
| 31 | Olga Chapa | Chapa | Olga | Cano | $75,000.00 | 827 W. Hillcrest Blvd. | Monrovia | CA | 91016 | | 12 |
| 32 | Youngmin Choi | Choi | Youngmin | Brandt | $100,000.00 | 5410 Isabella Ct. | Agoura Hills | CA | 91301 | | 12 |
| 33 | First Commerce Bank Cust. FBO - Charles R. Cobb | Cobb | Charles | Lawton | $122,034.00 | c/o Polycomp | Woodland Hills | CA | 91367 | | 12 |
| 34 | Brenda Coble | Coble | Brenda | Cano/AEI | $50,000.00 | 74-075 Petunia Place | Palm Desert | CA | 92260 | | 9 |

Exhibit D
Page 1 of 24

| No. | DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Status | Yield |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 35 | Fred Cohen | Cohen | Fred | Brandt | $300,000.00 | P.O Box 550181 | South Lake Tahoe | CA | 96155 | | 12 |
| 36 | ~~Cohen Family Trust~~ | ~~Cohen~~ | ~~Robert~~ | ~~Brandt~~ | ~~$74,000.00~~ | ~~16550 Bosque Dr.~~ | ~~Encino~~ | ~~CA~~ | ~~91436~~ | Settled | ~~12~~ |
| 37 | ~~Robert Cohen~~ | ~~Cohen~~ | ~~Robert~~ | ~~Brandt~~ | ~~$605,000.00~~ | ~~16550 Bosque Dr.~~ | ~~Encino~~ | ~~CA~~ | ~~91436~~ | Settled | ~~12~~ |
| 38 | Stephen M. Cole | Cole | Stephen | Lawton | $500,000.00 | 850 Virginia St | El Segundo | CA | 90245 | | 9 |
| 39 | Tigris Insurance Company LMTD. | Cole | Stephen | Lawton | | 850 Virginia Street | El Segundo | CA | 90845 | | 12 |
| 40 | First Commerce Bank Cust. FBO - Robert J. Comer | Comer | Robert | Lawton | $55,275.00 | 1531 Curson Ave | Los Angeles | CA | 90046 | | 12 |
| 41 | ~~Gerald D. Coulter~~ | ~~Coulter~~ | ~~Bobbie~~ | ~~Brandt~~ | | ~~11161 Sumac Lane~~ | ~~Santa Rosa Valley`~~ | ~~CA~~ | ~~93012~~ | Settled | ~~12~~ |
| 42 | ~~Gerald D. Coulter~~ | ~~Coulter~~ | ~~Gerald~~ | ~~Brandt~~ | ~~$250,000.00~~ | ~~11161 Sumac Lane~~ | ~~Santa Rosa Valley`~~ | ~~CA~~ | ~~93012~~ | Settled | ~~12~~ |
| 43 | First Commerce Bank Cust. FBO - Michael Dilger | Dilger | Michael | Brandt | $66,765.48 | c/o Polycomp | Woodland Hills | CA | 91367 | | 12 |
| 44 | First Commerce Bank Cust. FBO - Philip Dipaola | Dipaola | Philip | Lawton | $99,142.00 | 22232 Craft Ct. | Calabasas | CA | 91302 | | 9 |
| 45 | Michael Dixon | Dixon | Linda | Brandt | | 260 Princeton Dr | Costa Mesa | CA | 92626 | | 9 |
| 46 | Michael Dixon | Dixon | Michael | Brandt | $800,000.00 | 260 Princeton Dr | Costa Mesa | CA | 92626 | | 9 |
| 47 | Arlene Dodson-Franssen | Dodson-Franssen | Arlene | Brandt | $124,000.00 | 132 Driftwood Dr. | Florence | OR | 97439 | | NULL |
| 48 | Duarte Family Trust 7-7-06 | Duarte | Alberto | Brandt | $100,000.00 | 635 Covington Ave. | Simi Valley | CA | 93065 | | 9 |
| 49 | ~~Revocable Living Trust of John T. Duff III and Janet Duff~~ | ~~Duff~~ | ~~Janet~~ | ~~Brandt~~ | ~~$140,000.00~~ | ~~10700 Bloomfield St~~ | ~~Toluca Lake~~ | ~~CA~~ | ~~91602-278~~ | Settled | ~~12~~ |
| 50 | ~~Revocable Living Trust of John T. Duff III and Janet Duff~~ | ~~Duff~~ | ~~John~~ | ~~Brandt~~ | ~~$350,000~~ | ~~10700 Bloomfield St~~ | ~~Toluca Lake~~ | ~~CA~~ | ~~91602-278~~ | Settled | ~~12~~ |
| 51 | First Commerce Bank Cust. FBO - James R. Dugue | Dugue | James | Brandt | $12,850.00 | c/o Polycomp | Woodland Hills | CA | 91367 | | 12 |
| 52 | Jack E. Dunn | Dunn | Jack | Brandt | $100,000.00 | 1540 Paul Street | Simi Valley | CA | 93065 | | 12 |
| 53 | Durose Family Trust Dated November 16, 2006 | Durose | Kelly | Brandt | $217,881.48 | 2212 Raintree Ct | Rucklin | CA | 95765 | | 12 |
| 54 | First Commerce Bank Cust. FBO - Michele Durose | Durose | Michele | Brandt | $115,612.00 | 17550 Sunburst St. | Northridge | CA | 91325 | | 12 |
| 55 | ~~Tracy Anne Durose~~ | ~~Durose~~ | ~~Tracy Anne~~ | ~~Brandt~~ | ~~$17,469.00~~ | ~~2212 Raintree Ct~~ | ~~Rucklin~~ | ~~CA~~ | ~~95765~~ | Duplicate (See 130) | |
| 56 | First Commerce Bank Cust. FBO - Wayne Durose | Durose | Wayne | Brandt | $21,538.00 | 17550 Sunburst St. | Northridge | CA | 91325 | | 12 |
| 57 | Christophe Eme | Eme | Christophe | Lawton | $337,694.76 | 11845 W. Olympic Blvd | Los Angeles | CA | 90064 | | 9 |
| 58 | Jerry M. Engelhardt & Lynda T. Engelhardt Living Trust dated October 29, 1997 | Engelhardt | Jerry | Belfer/Kroner | $500,000.00 | 1349 S. Empire St. | Anaheim | CA | 92804 | | 12 |
| 59 | Jerry M. Engelhardt and Lynda T. Engelhardt Living Trust dated October 29, 1997 | Engelhardt | Lynda | Belfer/Kroner | | 1349 S. Empire Street | Anaheim | CA | 92804 | | 9 |
| 60 | David M. Engert | Engert | David | Corzan | $1,275,000.00 | 5702 Palo Cristi Rd. | Paradise Valley | AZ | 85253 | | 9 |
| 61 | David M. Engert | Engert | Kimberly | Corzan | $250,000.00 | 5702 Palo Cristi Rd. | Paradise Valley | AZ | 85253 | | 9 |
| 62 | First Commerce Bank Cust. FBO - Edward English III | English, III | Edward | Lawton | $258,477.00 | c/o Polycomp | Woodland Hills | CA | 91367 | | 12 |
| 63 | Jules Feir | Feir | Francine | Cano/AEI | | 13523 Cheltenham Dr. | Sherman Oaks | CA | 91423-4817 | | 12 |
| 64 | Jules Feir | Feir | Jules | Cano/AEI | $147,997.35 | 13523 Cheltenham Dr. | Sherman Oaks | CA | 91423-4817 | | 12 |

Exhibit D
Page 2 of 24

| No. | DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Status | Yield |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 65 | First Commerce Bank Cust. FBO -Jules Feir | Feir | Jules | Cano/AEI | $437,958.00 | c/o Polycomp | Woodland Hills | CA | 91423-481 | | |
| 66 | Pilar Feir | Feir | Pilar | Brandt | $480,000.00 | 119 Eastwind Street | Marina Del Rey | CA | 90292 | | 12 |
| 67 | Steven Eric Feir | Feir | Steven | Brandt/AEI | $653,992.25 | P.O. Box 7848 | Mammoth Lakes | CA | 93546 | | 9 |
| 68 | Francesco Ferrario | Ferrario | Francesco | Brandt | $50,000.00 | 2626 Armacost Ave. | Los Angeles | CA | 90064 | | 12 |
| 69 | Ira Fine | Fine | Ira | Belfer/Kroner | $612,312.30 | 3915 Hayvenhurst Ave | Encino | CA | 91436 | | 9 |
| 70 | Stephen Flaherty | Flaherty | Stephen | Belfer | | 209 Rimrock Road | Thousand Oaks | CA | 91361 | | |
| 71 | The WDF Living Trust of 1995 dated April 21, 1995 | Forsyth | Seth | Lawton | $70,835.49 | 2128 Tapia Dr. | Malibu | CA | 90265 | | 9 |
| 72 | Shaina Forsyth | Forsyth | Shaina | Lawton | $65,000.00 | 6128 Tapia Dr. | Malibu | CA | 90265 | | 9 |
| 73 | WDF Living Trust 1995 | Forsyth | William | Lawton | $782,000.00 | 6128 Tapia Dr | Malibu | CA | 90265 | | 12 |
| 74 | Karen Forsyth | Forsyth | Karen | Lawton | $250,000.00 | 4087 N. Paua Way | Lahaina | HI | 96761 | | |
| 75 | Wesley Forsyth | Forsyth | Wesley | Lawton | $75,000.00 | 4087 N. Paua Way | Lahaina | HI | 96761 | | |
| 76 | William D. Forsyth II | Forsyth II | William | Lawton | $250,000.00 | 6128 Tapia Dr. | Malibu | CA | 90265 | | 9 |
| 77 | William D. Forsyth II | Forsyth III | William | Lawton | | 6128 Tapia Dr. | Malibu | CA | 90265 | | 9 |
| 78 | William Frankenstein | Frankenstein | William | Russon | $150,000.00 | 22750 Sparrow Dell Drive | Calabasas | CA | 91302 | | 9 |
| 79 | Fraser Communications Defined Benefit Pension Plan | Fraser | Renee | Belfer/Kroner | $91,000.00 | 2811 Wilshire Blvd. | Santa Monica | CA | 90403 | | 12 |
| 80 | First Commerce Bank Cust. FBO - Harvin Galper | Galper | Harvin | Lawton | $1,000,000.00 | 11815 Dorothy Street | Los Angeles | CA | 90049 | | 9 |
| 81 | First Commerce Bank Cust. FBO - Harvin Galper | Galper | Merle | Lawton | $300,000.00 | 11815 Dorothy Street | Los Angeles | CA | 90049 | | 12 |
| 82 | First Commerce Bank Cust. FBO - Burton Galper | Galper | Burton | Lawton | $228,355.00 | 9594 Castillana Court | Las Vegas | NV | 89147 | | 9 |
| 83 | First Commerce Bank Cust. FBO - Sheila Galper | Galper | Sheila | Lawton | $174,565.00 | 9594 Castillana Court | Las Vegas | NV | 89147 | | 9 |
| 84 | Elizabeth Gibbons | Gibbons | Elizabeth | Ianerelli | $135,000.00 | 7105 Geyser | Reseda | CA | 91335 | | 12 |
| 85 | Ilisa C. Gilmer | Gilmer | Ilisa | Corzan | $61,000.00 | 12731 Pacific Ave | Los Angeles | CA | 90066 | | 9 |
| 86 | First Commerce Bank Cust. FBO - Chad Gledhill | Gledhill | Chad | Cano | $50,000.00 | 4121 Witherow Road | Winston-Salem | NC | 27106 | | 12 |
| 87 | First Commerce Bank Cust. FBO - Mary Gledhill | Gledhill | Mary | Cano | $125,000.00 | 4121 Witherow Road | Winston-Salem | NC | 27106 | | 12 |
| 88 | Jil Glyman | Glyman | Jil | Lawton | $315,000.00 | 1905 Spyglass Dr. | Henderson | NV | 89014-1044 | | 9 |
| 89 | ~~Ron Gonzalez~~ | ~~Gonzalez~~ | ~~Maria~~ | ~~Brandt~~ | | ~~21510 Chirping Sparrow Road~~ | ~~Diamond Bar~~ | ~~CA~~ | ~~91765~~ | Settled | ~~12~~ |
| 90 | ~~Ron Gonzalez~~ | ~~Gonzalez~~ | ~~Ron~~ | ~~Brandt~~ | ~~$132,500.00~~ | ~~21510 Chirping Sparrow Road~~ | ~~Diamond Bar~~ | ~~CA~~ | ~~91765~~ | Settled | ~~12~~ |
| 91 | John F. Gregory | Gregory | John | Lawton | $50,000.00 | 4536 Skye Dr. | Bakersfield | CA | 93308 | | 12 |
| 92 | Samuel Gupta | Gupta | Janet | Brandt | | 2736 Armour Ln | Redondo Beach | CA | 90278 | | 12 |
| 93 | Samuel Gupta | Gupta | Samuel | Brandt | $42,500.00 | 2736 Armour Ln | Redondo Beach | CA | 90278 | | 12 |
| 94 | ~~John Hank~~ | ~~Hank~~ | ~~John~~ | ~~Brandt~~ | ~~$45,000.00~~ | ~~4261-3 Las Virgines Rd.~~ | ~~Calabasas~~ | ~~CA~~ | ~~91302~~ | Settled | ~~12~~ |
| 95 | ~~First Commerce Bank Cust. FBO - Patricia Hank~~ | ~~Hank~~ | ~~Patricia~~ | ~~Brandt~~ | ~~$275,384.00~~ | ~~4261-3 Las Virgines Rd.~~ | ~~Calabasas~~ | ~~CA~~ | ~~91302~~ | Settled | ~~12~~ |
| 96 | Michael J. Hansen | Hansen | Michael | Brandt | $250,000.00 | 1221 Ocean Ave #1006 | Santa Monica | CA | 90401 | | 12 |

Exhibit D
Page 3 of 24

| No. | DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Status | Yield |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 97 | The Hartshorne Family Trust dated September 12, 2002 | Hartshorne | MaryAnn | Brandt | | 7790 Highway 126 | Florence | OR | 97439 | | 12 |
| 98 | The Hartshorne Family Trust dated September 12, 2002 | Hartshorne | Robert | Brandt | $200,000.00 | 7790 Highway 126 | Florence | OR | 97439 | | 12 |
| 99 | First Regional Bank Cust. FBO - John Haynes | Haynes | John | Brandt | $50,000.00 | c/o Polycomp | Woodland Hills | CA | 91367 | | 12 |
| 100 | California National Bank Cust. FBO - Harold Henson | Henson | Harold | Lawton | $100,000.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | Deceased | 9 |
| 101 | James Heyward | Heyward | James | Ianerelli | $15,050.00 | 3645 W. Chapman Lane | Inglewood | CA | 90305 | | 12 |
| 102 | First Commerce Bank FBO- Robert E. Hiett | Hiett | Robert | Lawton | $136,050.00 | c/o Polycomp | Woodland Hills | CA | 91367 | | 12 |
| 103 | Horwitz Living Trust dated April 19, 1995 | Horwitz | Hermine | Lawton | | 5320 Orrville Ave | Woodland Hills | CA | 91367 | | 9 |
| 104 | Horwitz Living Trust dated April 19, 1995 | Horwitz | Lewis | Lawton | $700,000.00 | 5320 Orrville Ave. | Woodland Hills | CA | 91367 | | 12 |
| 105 | First Commerce Bank Cust. FBO - Michael Iannarelli | Iannarelli | Michael | Russon | $102,000.00 | 3739 Calle Jasmin | Calabasas | CA | 91302 | | 12 |
| 106 | First Commerce Bank Cust. FBO - Toni Iannarelli | Iannarelli | Toni | Russon | | 3739 Calle Jasmin | Calabasas | CA | 91302 | | 12 |
| 107 | Kevin Troy Idukas | Idukas | Kevin | Brandt | $50,000.00 | 19 McAfee Court | Thousand Oaks | CA | 91360 | Settled | 12 |
| 108 | Karla D. Ives | Ives | Karla | Giovanni Pizzoferra | $50,000.00 | 3570 Cortner Ave | Long Beach | CA | 90808 | | 9 |
| 109 | Izen Family Trust 5-24-90 | Izen | Ted | Cano | $50,000.00 | 23280 Bluebird Dr. | Calabasas | CA | 91302 | | 12 |
| 110 | Steve Jacobs Defined Benefit Plan | Jacobs | Steve | AEI | $723,300.00 | Box 13926 | South Lake Tahoe | CA | 96151 | | 12 |
| 111 | Gayle G. Johnson | Johnson | Gayle | Lawton | $100,000.00 | 176 Reservoir | Stanardsville | VA | 22973 | | |
| 112 | Donald K. Jong | Jong | Donald | Brandt | $250000 | 4699 Via Canada | Newbury Park | CA | 91320 | Settled | 12 |
| 113 | Donald K. Jong | Jong | Janet | Brandt | | 4699 Via Canada | Newbury Park | CA | 91320 | Settled | 12 |
| 114 | Carol Jonsson | Jonsson | Carol | Brandt | $50,000.00 | P.O. Box 270454 | San Diego | CA | 92198 | | 9 |
| 115 | Lace Jordan | Jordan | Lace | Iannarelli | $530,000.00 | 1501 Ironbank Dr. | Henderson | NV | 89014 | Settled | 12 |
| 116 | Kassap Family Trust 05/01/92 | Kassap | Stanley | Brandt | $300,000.00 | 196355 Mandalay Dr. | Encino | CA | 91436 | | 12 |
| 117 | First Commerce Bank Cust. FBO - Ralph A. Khan | Khan | Ralph | Lawton | $202,762.00 | c/o Polycomp | Woodland Hills | CA | 91367 | | 12 |
| 118 | First Commerce Bank Cust. FBO - Tara Kahn | Khan | Tara | Lawton | $58,923.00 | c/o Polycomp | Woodland Hills | CA | 91367 | | 12 |
| 119 | Law Offices of George Knopfler Defined Benefit Pension Plan | Knopfler | Deborah | Brandt | | 31194 La Baya | Westlake Village | CA | 91361 | | 12 |
| 120 | Law Offices of George Knopfler 401 (K) Profit Sharing Plan | Knopfler | George | Brandt | $318,094.39 | 31194 La Baya Drive | Westlake Village | CA | 91362 | | 12 |
| 121 | Sharlene E. Kreiner Trust Dated November 10, 2000 | Kreiner | Sharlene | Brandt | $70,000.00 | 434 S. Walter | Newbury Park | CA | 91320 | Settled | 12 |
| 122 | First Commerce Bank Cust. FBO - Cletus Kuhla | Kuhla | Cletus | Lawton | $39,729.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | | 9 |
| 123 | Linda Lessing | Lessing | Linda | Lawton | $144,463.00 | 10345 Almayo Ave. | Los Angeles | CA | 90064 | | 9 |
| 124 | Soltman, Levitt & Flaherty, LLP 401K Profit Sharing Plan | Levitt | John | Kroner/Belfer | $79,901.62 | 1445 Pleasant Oaks Pl | Thousand Oaks | CA | 91362 | | 9 |
| 125 | John Levitt | Levitt | John | Kroner/Belfer | $52,319.53 | 2535 Townsgate Road | Westlake Village | CA | 91361 | | 9 |

Exhibit D
Page 4 of 24

| No. | DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Status | Yield |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 126 | Baldassare Licata Revocable Trust Dated March 25, 1991 | Licata | Baldassare | Lawton | $51,600.00 | 2104 NE 44th St. | Fort Lauderdale | FL | 33308 | | 9 |
| 127 | Maddalena Licata Revocable Trust Dated March 25, 1991 | Licata | Maddalena | Lawton | $51,600.00 | 2104 NE 44th St. | Fort Lauderdale | FL | 33308 | | 9 |
| 128 | ~~Francisco Ferrario Lieberman~~ | ~~Lieberman~~ | ~~Francisco~~ | ~~Brandt~~ | | ~~Address unknown~~ | | | | Duplicate | |
| 129 | ~~Johanna Lieberman~~ | ~~Lieberman~~ | ~~Johanna~~ | ~~Brandt~~ | ~~$25,000.00~~ | ~~Address unknown~~ | | | | Duplicate | |
| 130 | Charles F. Logan | Logan | Charles | Brandt | $180,000.00 | 1342 Caren Ct. | Lancaster | CA | 93534 | | 12 |
| 131 | The Marilyn D. Long Revocable Trust | Long | Marilyn | Belfer | $100,000.00 | 3117 East Cortez St. | Pheonix | AZ | 85028 | | 9 |
| 132 | First Commerce Bank Cust. FBO - Tracy Anne Lopez | Lopez | Tracy | Brandt | $21,326.00 | 6400 Canoga Ave. | Woodland Hills | CA | 93105 | | 12 |
| 133 | First Commerce Bank Cust. FBO - Charles T. Mahew | Mahew | Charles | Lawton | $400,000.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | | 12 |
| 134 | First Commerce Bank Cust. FBO - Leonard R. Mains | Mains | Leonard | Lawton | $48,500.00 | c/o Polycomp | Woodland Hills | CA | 91367 | | 12 |
| 135 | First Commerce Bank Cust. FBO- Marlyn M. Malloy | Malloy | Marlyn | Lawton | $73,198.00 | c/o Polycomp | Woodland Hills | CA | 91367 | | 12 |
| 136 | Alan Mandel | Mandel | Alan | Brandt | $125,000.00 | 7425 NW 79th St | Miami | FL | 33166 | | 12 |
| 137 | Alan Mandel | Mandel | Janine | Brandt | | 7425 NW 79th St | Miami | FL | 33166 | | 12 |
| 138 | David Mann | Mann | David | Brandt | $88,905.87 | 191 Welsh Ct | Simi Valley | CA | 93065 | | 12 |
| 139 | Mann Family Trust dated November 15, 2007 | Mann | Janet | Brandt | | 14380 E. Loyola St. | Moorpark | CA | 93021 | | 12 |
| 140 | David Mann | Mann | Linda | Brandt | | 191 Welsh Ct | Simi Valley | CA | 93065 | | 12 |
| 141 | Mann Family Trust dated November 15, 2007 | Mann | Michael | Brandt | $320,000.00 | 14380 E. Loyola St. | Moorpark | CA | 93021 | | 12 |
| 142 | Noel McCord | McCord | Jessica | Belfer | | 444 Sumner Ave | Aptos | CA | 95003 | | 12 |
| 143 | Noel McCord | McCord | Noel | Belfer | $200,000.00 | 444 Sumner Ave | Aptos | CA | 95003 | | 12 |
| 144 | First Commerce Bank Cust FBO- Lawrence McCorkle | McCorkle | Lawrence | Brandt | $25,593.42 | c/o Polycomp | Woodland Hills | CA | 91367 | | 12 |
| 145 | ~~California National Bank Cust. FBO - Howard P. McKeon~~ | ~~McKeon~~ | ~~Howard~~ | ~~Brandt~~ | ~~$110,826.75~~ | ~~c/o Polycomp~~ | ~~Woodland Hills~~ | ~~CA~~ | ~~91367~~ | Settled | ~~12~~ |
| 146 | California National Bank Cust. FBO - Patricia McKeon | McKeon | Patricia | Brandt | $59,069.31 | c/o Polycomp | Woodland Hills | CA | 91367 | | 12 |
| 147 | Mendes Family Trust | Mendes | Pari | Brandt | $56,000.00 | 1004 Poplar Ct. | Simi Valley | CA | 93065 | | 12 |
| 148 | Sally Mendoza | Mendoza | Sally | Belfer/ Kroner | $150,000.00 | 87 Rivo Alto Canal | Long Beach | CA | 90803 | | 9 |
| 149 | First Commerce Bank Cust. FBO - Robert Mishkin | Mishkin | Robert | Brandt | $24,567.75 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | | 12 |
| 150 | Edward George Mitchell | Mitchell | Edward | Lawton | $50,000.00 | 33872 Pequito Dr | Dana Point | CA | 92629 | | 9 |
| 151 | Edward George Mitchell | Mitchell | Eileen | Lawton | | 33872 Pequito Dr | Dana Point | CA | 92629 | | 9 |
| 152 | First Commerce Bank Cust. FBO - Donald A. Moffat | Moffat | Donald | Lawton | $46,367.55 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | | 12 |
| 153 | First Commerce Bank Cust. FBO - Robert E. Moran | Moran | Robert | Lawton | $24,203.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | | 12 |
| 154 | Caryn Mower | Mower | Caryn | Brandt | $50,000.00 | 388 Jenny Dr | Newbury Park | CA | 91320 | | 12 |
| 155 | First Commerce Bank Cust. FBO - Joseph J. Munroe | Munroe | Joseph | Brandt | $50,000.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | | 12 |

Exhibit D
Page 5 of 24

| No. | DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Status | Yield |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 156 | First Commerce Bank Cust. FBO - Laura Murphy | Murphy | Laura | Brandt | $500,000.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | | 12 |
| 157 | First Commerce Bank Cust. FBO - Michael C. Murphy | Murphy | Michael | Brandt | $250,000.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | | 12 |
| 158 | Joyce Newlin | Newlin | Joyce | Lawton | | 4735 Pine Hurst | Pasadena | CA | 77505 | | 12 |
| 159 | Stanley Nisenson | Nisenson | Stanley | Belfer | $500,000.00 | 12431 Henzie Place | Granada Hills | CA | 91344 | | 9 |
| 160 | First Commerce Bank Cust. FBO - Dianne R. Ophelia | Ophelia | Dianne | Corzan | $183,182.00 | c/o Polycomp | Woodland Hills | CA | 91367 | | 9 |
| 161 | ~~Candi Ortiz~~ | ~~Ortiz~~ | ~~Candi~~ | ~~Cano~~ | | ~~30554 Orange Street~~ | ~~Shafter~~ | ~~CA~~ | ~~93263~~ | Settled | ~~12~~ |
| 162 | Candie Ortiz | Ortiz | Candie | Cano | $53,197.00 | 28901 Cecil Ave. | Delano | CA | 93215 | | 12 |
| 163 | Candie Ortiz | Ortiz | Gabino | Cano | | 28901 Cecil Ave. | Delano | CA | 93215 | | 12 |
| 164 | First Commerce Bank Cust. FBO - Margaret Owen | Owen | Margaret | Corzan | $224,464.53 | c/o Polycomp | Woodland Hills | CA | 91367 | | 12 |
| 165 | First Commerce Bank Cust. FBO - Timothy Owens | Owens, Sr. | Timothy | Brandt | $18,980.00 | c/o Polycomp | Woodland Hills | CA | 91367 | | 12 |
| 166 | First Commerce Bank Cust. FBO - Laura Partridge | Partridge | Laura | Corzan | | c/o Polycomp | Woodland Hills | CA | 91367 | | 12 |
| 167 | Laura Patridge | Patridge | Jeff | Corzan | | 10400 Pine Cone Drive | Truckee | CA | 96161 | | 12 |
| 168 | Laura Patridge | Patridge | Laura | Corzan | $880,000.00 | 10400 Pine Cone Drive | Truckee | CA | 96161 | | 12 |
| 169 | Gloria Paulsen | Paulsen | Gloria | Lawton | $60,000.00 | 60 Livingston Ct | Novato | CA | 94949 | | 9 |
| 170 | Expert Building Maintenance, L | Pedder | Robert | Brandt | $50,000.00 | 1871 Tapo St. | Simi Valley | CA | 93063 | | 12 |
| 171 | Pereida Family Trust | Pereida | Robert | Brandt | | 4917 El Dorado Drive | Laverne | CA | 91750 | | 9 |
| 172 | Pereida Family Trust | Pereida | Sandra | Brandt | $45,000.00 | 4917 El Dorado Drive | Laverne | CA | 91750 | | 9 |
| 173 | Frank Perna | Perna | Frank | Belfer/ Kroner | $8,800,000.00 | 26802 Malibu Cove Colony Dr | Malibu | CA | 90265 | | 12 |
| 174 | ~~James Pero~~ | ~~Pero~~ | ~~James~~ | ~~Brandt~~ | | ~~2750 Edgeview~~ | ~~Newbury Park~~ | ~~CA~~ | ~~91320~~ | Settled | ~~12~~ |
| 175 | Joel Pomonik and Denise Pomoni | Pomonik | Denise | Brandt | $322,000.00 | 4491 Poe Ave | Woodland Hills | CA | 91364 | | 12 |
| 176 | Pomonik Family Trust dated August 1, 2006 | Pomonik | George | Brandt | $353,978.74 | 4144 Meadow Lark Dr | Calabasas | CA | 91302 | | 12 |
| 177 | Joel Pomonik | Pomonik | Joel | Brandt | | 4491 Poe Ave | Woodland Hills | CA | 91364 | | 12 |
| 178 | Pomonik Family Trust dated August 1, 2006 | Pomonik | Roslyn | Brandt | | 4144 Meadow Lark Dr | Calabasas | CA | 91302 | | 12 |
| 179 | Ronald Popper, M.D. | Popper, M.D. | Ronald | Belfer/ Kroner | $50,000.00 | 921 Ellesmere Way | Oak Park | CA | 91377 | | 12 |
| 180 | John Ports | Ports | John | Brandt | $100,000.00 | 13131 Knotty Pine | Moorpark | CA | 93021 | | 12 |
| 181 | John Ports | Ports | Roneale | Brandt | | 13131 Knotty Pine | Moorpark | CA | 93021 | | 12 |
| 182 | Dale Pritchard | Pritchard | Dale | Brandt | $402,819.00 | 811 Fowler Avenue | Newbury Park | CA | 91320 | | 12 |
| 183 | ~~C.L. Quin,III Family Trust '00~~ | ~~Quin, III~~ | ~~Carroll~~ | ~~Brandt~~ | ~~$110,000.00~~ | ~~12723 Park St.~~ | ~~Cerritos~~ | ~~CA~~ | ~~90703-114~~ | Settled | ~~12~~ |
| 184 | Christine Ramirez | Ramirez | Christine | Brandt | $284,000.00 | 855 Links View Dr. | Simi Valley | CA | 93065 | | 12 |
| 185 | First Commerce Bank Cust. FBO - Pamela Richardson | Richardson | Pamela | Brandt | $29,530.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | | 12 |
| 186 | Linda Robinson | Robinson | Linda | Lawton | $44,115.00 | Address unknown | | | | | |
| 187 | ~~Inderjit & Janak Sabherwal Family Trust of June 1, 1981~~ | ~~Sabherwal~~ | ~~Janak~~ | ~~Brandt~~ | ~~$35,500.00~~ | ~~12145 Holly Glen Place~~ | ~~Studio City~~ | ~~CA~~ | ~~91604~~ | Settled | ~~12~~ |
| 188 | ~~Kabir Sabherwal~~ | ~~Sabherwal~~ | ~~Kabir~~ | ~~Brandt~~ | ~~$192,750.00~~ | ~~12145 Holly Glen Place~~ | ~~Studio City~~ | ~~CA~~ | ~~91604~~ | Settled | ~~12~~ |
| 189 | Candi Ortiz | Salazar | Angelina | Cano | | 30554 Orange Street | Shafter | CA | 93263 | | 12 |

Exhibit D
Page 6 of 24

| No. | DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Status | Yield |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 190 | ~~Wayne & Lauren Sanda Revocable Trust dated July 11, 1998~~ | ~~Sanda~~ | ~~Wayne~~ | ~~Brandt~~ | ~~$65,000.00~~ | ~~22488 Domingo Rd~~ | ~~Woodland Hills~~ | ~~CA~~ | ~~91364~~ | | ~~12~~ |
| 191 | George Savatgy | Savatgy | George | Brandt | $23,750.00 | 1233 Ruberta | Glendale | CA | 91201 | | 9 |
| 192 | Douglas Schoen | Schoen | Douglas | Lawton | $25,000.00 | P.O. Box 1727 | Pacific Palisades | CA | 90272 | | 9 |
| 193 | Douglas Schoen | Schoen | Susan | Lawton | | P.O. Box 1727 | Pacific Palisades | CA | 90272 | | 9 |
| 194 | Charles Scholer | Scholer | Charles | Lawton | $40,700.00 | 23909 Lakeside Road | Valencia | CA | 91355 | | 9 |
| 195 | California National Bank Cust. FBO - Donald J. Scotti | Scotti | Donald | Brandt | $48,980.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | | 12 |
| 196 | Shanna Hsin Kuang Seng | Seng | Shanna | Keng | $100,000.00 | 529 S. Everett Ave. | Monterey Park | CA | 91755 | | 9 |
| 197 | Vivian Hsin Yin Seng | Seng | Vivian | Keng | $50,000.00 | 529 S. Everett Ave. | Monterey Park | CA | 91755 | | 9 |
| 198 | ~~Alan Shapiro~~ | ~~Shapiro~~ | ~~Alan~~ | ~~Brandt~~ | ~~$38,725.73~~ | ~~455 La Loma Rd.~~ | ~~Pasadena~~ | ~~CA~~ | ~~91105~~ | Settled | ~~12~~ |
| 199 | Dorothy Sheperd | Sheperd | Dorothy | Belfer/ Kroner/Can | $510,382.14 | 9518 La Canada Way | Sunland | CA | 91040 | | 9 |
| 200 | California National Bank Cust. FBO- Gary Shiger | Shiger | Gary | Brandt | $300,000.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | | 12 |
| 201 | Charlene Shinn | Shinn | Charlene | lawton | $100,000.00 | PO Box 6771 | Big Bear Lake | CA | 92315 | | 12 |
| 202 | First Regional Bank Cust. FBO - Jerome Smith | Smith | Jerome | Lawton | $87,300.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | | 12 |
| 203 | Kristopher Smith | Smith | Kristopher | Lawton | $150,000.00 | 119 So. Monte Vista | Covina | CA | 91723 | | 12 |
| 204 | ~~Scott Snyder~~ | ~~Snyder~~ | ~~Dawna~~ | ~~Brandt~~ | | ~~1049 Calle Ruiz~~ | ~~Thousand Oaks~~ | ~~CA~~ | ~~91360~~ | Settled | ~~12~~ |
| 205 | ~~Gary D. Snyder & Lynette E. Snyder Trust, dated July 18, 1985~~ | ~~Snyder~~ | ~~Gary~~ | ~~Brandt~~ | ~~$772,246.73~~ | ~~3034 Rollings Ave.~~ | ~~Thousand Oaks~~ | ~~CA~~ | ~~91360~~ | Settled | ~~12~~ |
| 206 | ~~Gary D. Snyder and Lynette E. Snyder Trust dated July 18, 1985~~ | ~~Snyder~~ | ~~Lynette~~ | ~~Brandt~~ | | ~~3034 Rollings Ave.~~ | ~~Thousand Oaks~~ | ~~CA~~ | ~~91360~~ | Settled | ~~12~~ |
| 207 | ~~Scott Snyder~~ | ~~Snyder~~ | ~~Scott~~ | ~~Brandt~~ | ~~$236,363.61~~ | ~~1049 Calle Ruiz~~ | ~~Thousand Oaks~~ | ~~CA~~ | ~~91360~~ | Settled | ~~12~~ |
| 208 | Steven Soltman | Soltman | Steven | Belfer/Kroner/Can | $1,690,000.00 | 7057 Heron Circle | Carlsbad | CA | 92011 | | 9 |
| 209 | Marvin Spira | Spira | Marvin | Lawton | $70,000.00 | 7611 SouthHampton Terr | Tamarac | FL | 33321 | | 9 |
| 210 | First Commerce Bank Cust. FBO - Charlotte B. St. John | St. John | Charlotte | Lawton | $41,424.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | | 9 |
| 211 | First Commerce Bank Cust. FBO  - Douglas C. Stevens, Sr. | Stevens, Sr. | Douglas | Lawton | $79,050.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | | 9 |
| 212 | California National Bank Cust. FBO - Larry W. Stilley | Stilley | Larry | Brandt | $600,000.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | | 12 |
| 213 | Capriccio Trading Inc. A Delaware Corporation & Seabourne Partners, LP | Straatsma | Cynthia | Brandt | $1,300,000.00 | 200 Spalding Dr. # A | Beverly Hills | CA | 90212 | | 12 |
| 214 | First Commerce Bank Cust. FBO - Brenden S. Suter | Suter | Brenden | Lawton | $65,604.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | | 9 |
| 215 | First Commerce Bank Cust. FBO - John Sykes | Sykes | John | Brandt | $9,387.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | | 12 |
| 216 | Tentser Family Trust | Tentser | Yakov | AEI | $40,000.00 | 1120 22nd St. | Santa Monica | CA | 90403 | | 9 |
| 217 | Jerome H. Tepperman, PH.D., Inc. 401(k) Profit Sharing Trust | Tepperman | Jerome | Belfer/Kroner/Can | $50,000.00 | 171 N. Church Lane | Los Angeles | CA | 90049 | | 12 |
| 218 | The Robert and Carole Thornton Family Trust dated July 25, 2000 | Thornton | Carole | Belfer | | 1503 Seabright Ave | Santa Cruz | CA | 95062 | | 12 |
| 219 | The Robert and Carole Thornton Family Trust dated July 25, 2000 | Thornton | Robert | Belfer | $900,000.00 | 1503 Seabright Ave | Santa Cruz | CA | 95062 | | 12 |

Exhibit D
Page 7 of 24

| No. | DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Status | Yield |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 220 | First Commerce Bank Cust. FBO - Rebecca Tuell | Tuell | Rebecca | Lawton | $180,930.00 | 2493 NW 118th Terrace | Coral Springs | FL | 33065 | | 9 |
| 221 | Turina Family Trust | Turina | Boris | Carlson | $50,000.00 | 5117 La Crescenta Ave. | La Crescenta | CA | 91214-2118 | | 9 |
| 222 | Karen L. Van Sant | Van Sant | Karen | Cano | | 1339 N. Columbus Ave | Glendale | CA | 91202-1647 | | 12 |
| 223 | WIlliam W. & Eleanor C. Waddell Revoc Inter-Vivos U/T/D Trust dated July 29, 1993 | Waddell, Trust | William | Lawton | $200,000.00 | 2552 Kelvin Ave. | Irvine | CA | 92614 | | 12 |
| 224 | William & Eleanor Waddell Revoc Inter-Vivos Trust dated U/D/T July 29, 1993 | Waddell, Trustee | Eleanor | Lawton | | 3241 San Amadeo | Laguna Woods | CA | 92637-3075 | | 12 |
| 225 | California National Bank Cust. FBO - Hilary C. Wade | Wade | Hilary | Brandt | $332,304.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | Settled | 12 |
| 226 | Richard Wade | Wade | Richard | Brandt | $408,774.00 | 32440 Saddle Mountain Dr. | Westlake Village | CA | 91361 | Settled | 12 |
| 227 | Mark A. Wagner | Wagner | Mark | Brandt | $100,000.00 | 2801 Ocean Park Blvd. # 177 | Santa Monica | CA | 90405 | Settled | 12 |
| 228 | Paul Walker | Walker | Paul | Brandt | $460,000.00 | 3196 Deer Valley Ave | Newbury Park | CA | 91320 | | 12 |
| 229 | First Commerce Bank Cust. FBO - Ricky Harold Walters | Walters | Ricky | Lawton | $51,000.00 | 14021 Marquesas Way | Marina Del Rey | CA | 90292 | | 12 |
| 230 | Bernard Warner | Warner | Bernard | Lawton | $1,469,750.52 | 150 Ocean Park Blvd | Santa Monica | CA | 90405 | | 12 |
| 231 | First Commerce Bank Cust. FBO - Bernard L. Warner | Warner | Bernard | Lawton | | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | | 12 |
| 232 | The Dona Rothman Family Trust dated February 11, 1994 | Warner | Dona | Lawton | $395,468.18 | 3902 Davana Rd | Sherman Oaks | CA | 91423 | | 12 |
| 233 | First Commerce Bank Cust. FBO - Dona Warner | Warner | Dona | Lawton | $125,040.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | | 12 |
| 234 | L.J.Warner Trust 03-95 | Warner | Lawrence | Lawton | $300,000.00 | 3902 Davana Rd | Sherman Oaks | CA | 91423 | | 12 |
| 235 | Lawrence Warner | Warner | Lawrence | Lawton | $600,000.00 | 3902 Davana Rd | Sherman Oaks | CA | 91423 | | 12 |
| 236 | Sheila Warner Trust | Warner | Sheila | Lawton | $700,000.00 | 1138 20th St | Santa Monica | CA | 90403 | | 12 |
| 237 | The Wynne Warner Trust, Dated August 24, 1990 | Warner | Wynne | Lawton | $400,000.00 | 150 Ocean Park Blvd. # 324 | Santa Monica | CA | 90405 | | 12 |
| 238 | First Commerce Bank Cust. FBO - Wynne N. Warner | Warner | Wynne | Lawton | $280,175.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | | 12 |
| 239 | Frank Weisz | Weisz | Frank | Belfer/kroner | $1,100,000.00 | 5 East Germantown Pike | Plymouth Meeting | PA | 19462 | | 9 |
| 240 | First Commerce Bank Cust. FBO - Jeffrey White | White | Jeffrey | Belfer/Kroner | | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | | 12 |
| 241 | William Wilson | Wilson | William | Brandt | $704,500.00 | 3016 Silver Lea Ter. | Los Angeles | CA | 90039-3034 | | 12 |
| 242 | First Commerce Bank Cust. FBO - William L. Wilson | Wilson | William | Brandt | $400,000.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | | 12 |
| 243 | Revon Wolf | Wolf | Revon | Lawton | $200,000.00 | 7306 Raintree Circle | Culver City | CA | 90232 | | 12 |
| 244 | Juliet Wong | Wong | Juliet | Kroner | | 3428 Cool Heights Drive | Rancho Palos Verdes | CA | 90275 | | 9 |
| 245 | First Commerce Bank Cust. FBO - Stephen K. Worrell | Worrell | Stephen | Lawton | $175,000.00 | c/o Polycomp | Woodland Hills | CA | 91367 | | 9 |

Exhibit D
Page 8 of 24

| No. | DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Status | Yield |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 246 | First Commerce Bank Cust. FBO - Curtis M. Worrell | Worrell | Curtis | Lawton | $49,000.00 | 4429 Rosecrest Road | Roanoke | VA | 24018 | | 9 |
| 247 | 5525 Trust | Zimmerman | Sharon | Lawton | $4,777,855.00 | P.O. Box 260098 | Encino | CA | 91426 | | |
| | | | | California total | $50,565,614.81 | Non-California Total | $5,607,249.00 | | | | |
| | | | | *See Ex. 1a hereto | 90.02% | *See Ex.1b hereto | 9.98% | | | | |

Exhibit D
Page 9 of 24

Corrected Revised Schedule of Potential Class Members in California

| DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Yield | Status |
|---|---|---|---|---|---|---|---|---|---|---|
| Mary Albee | Albee | Mary | Brandt | $75,000.00 | 4850 Moorpark Road | Santa Rosa Valley | CA | 93012 | 12 | |
| Scott L. Armstrong | Armstrong | Scott | Brandt | $112,500.00 | P. O. Box 3362 | Thousand Oaks | CA | 91359 | 9 | |
| Scott L. Armstrong | Armstrong | Phillis | Brandt | | P. O. Box 3362 | Thousand Oaks | CA | 91359 | 9 | |
| First Commerce Bank Cust. FBO - Joseph J. Barbagiovanni | Barbagiovanni | Joseph | Lawton | $100,000.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 | |
| Jaime Bejarano | Bejarano | Jaime | Belfer/Kroner | $300,000.00 | 4347 Landerus Ave | La Verne | CA | 91750 | 9 | |
| Jaime Bejarano | Bejarano | Rosalba | Belfer/Kroner | | 4347 Landerus Ave | La Verne | CA | 91750 | 9 | |
| Dean Blagg | Blagg | Dean | Lawton | $210,000.00 | 6829 Altamor Dr. | Los Angeles | CA | 90045 | 12 | |
| Dean Blagg | Blagg | Cynthia | Lawton | | 6829 Altamor Dr. | Los Angeles | CA | 90045 | 12 | |
| Robert H. Borden | Borden | Robert | Brandt | $50,000.00 | 13615 Lemay St. | Valley Glen | CA | 91401 | 9 | |
| Robert H. Borden | Borden | Chalene | Brandt | | 13615 Lemay St. | Valley Glen | CA | 91401 | 9 | |
| Julanne Brandt AKA Julanne Wilson Living Trust dated November 3, 2008 | Brandt | Julanne | Brandt | $93,260.00 | 1 Corte Rossa | Lake Elsinore | CA | 92532 | 12 | |
| Chelsea Brandt | Brandt | Chelsea | Brandt | $175,000.00 | 244 Lake Sherwood Drive | Thousand Oaks | CA | 91361 | 12 | |
| Jason Brandt | Brandt | Jason | Brandt | $100,000.00 | 244 Lake Sherwood Drive | Thousand Oaks | CA | 91361 | 12 | |
| Rory Brandt | Brandt | Rory | Brandt | $175,000.00 | 244 Lake Sherwood Drive | Thousand Oaks | CA | 91361 | 12 | |
| First Commerce Bank Cust. FBO - Timothy Brandt | Brandt | Timothy | Brandt | $27,690.00 | 8195 Melrose Way | El Dorado Hills | CA | 95762 | 12 | |

Exhibit D
Page 10 of 24

Corrected Revised Schedule of Potential Class Members in California

| DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Yield | Status |
|---|---|---|---|---|---|---|---|---|---|---|
| First Commerce Bank Cust. FBO - Julanne Brandt-Wilson | Brandt-Wilson | Julanne | Brandt | $93,260.00 | 1 Corte Rossa | Lake Elsinore | CA | 92532 | 9 | |
| First Commerce Bank Cust. FBO - Robert G. Brotherton | Brotherton | Robert | Lawton | $98,458.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 | |
| Jerome L. Brown | Brown | Jerome | Lawton | $100,000.00 | 3023 Sunset Hill Drive | West Covina | CA | 91791-224 | 9 | |
| Jerome L. Brown | Brown | Gregory | Lawton | | 3023 Sunset Hill Drive | West Covina | CA | 91791-224 | 9 | |
| Marlene E. Calvert | Calvert | Marlene | Lawton | $50,000.00 | 20733 E. Rancho Los Cerritos Road | Covina | CA | 91724-353 | 12 | |
| Bruno Campos Revocable Trust | Campos | Bruno | Lawton | $2,003,838.50 | 9401 Cherokee lane | Beverly Hills | CA | 90210 | 12 | |
| ~~Bruno Campos Revocable Trust~~ | ~~Campos~~ | ~~Bruno~~ | ~~Lawton~~ | ~~$78,957.28~~ | ~~9401 Cherokee Ln~~ | ~~Beverly Hills~~ | ~~CA~~ | ~~90210~~ | ~~12~~ | Duplicate (See 22) |
| Marina Campos | Campos | Mariana | Lawton | $243,000.00 | 9401 Cherokee Ln | Beverly Hills | CA | 90210 | | |
| Lawrence J. Cantor | Cantor | Lawrence | Brandt | $1,413,000.00 | P.O. Box 1679 | Venice | CA | 90294 | 12 | |
| Lawrence Cantor | Cantor | Patti | Brandt | | P.O. Box 1679 | Venice | CA | 90294 | 12 | |
| Olga Chapa | Chapa | Olga | Cano | $75,000.00 | 827 W. Hillcrest Blvd. | Monrovia | CA | 91016 | 12 | |
| Youngmin Choi | Choi | Youngmin | Brandt | $100,000.00 | 5410 Isabella Ct. | Agoura Hills | CA | 91301 | 12 | |
| First Commerce Bank Cust. FBO - Charles R. Cobb | Cobb | Charles | Lawton | $122,034.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 | |
| Brenda Coble | Coble | Brenda | Cano/AEI | $50,000.00 | 74-075 Petunia Place | Palm Desert | CA | 92260 | 9 | |
| ~~Cohen Family Trust~~ | ~~Cohen~~ | ~~Robert~~ | ~~Brandt~~ | ~~-$74,000.00~~ | ~~16550 Bosque Dr.~~ | ~~Encino~~ | ~~CA~~ | ~~91436~~ | ~~12~~ | Settled |
| ~~Robert Cohen~~ | ~~Cohen~~ | ~~Robert~~ | ~~Brandt~~ | ~~-$605,000.00~~ | ~~16550 Bosque Dr.~~ | ~~Encino~~ | ~~CA~~ | ~~91436~~ | ~~12~~ | Settled |
| Fred Cohen | Cohen | Fred | Brandt | $300,000.00 | P.O Box 550181 | South Lake Tahoe | CA | 96155 | 12 | |
| Stephen M. Cole | Cole | Stephen | Lawton | $500,000.00 | 850 Virginia St | El Segundo | CA | 90245 | 9 | |
| Tigris Insurance Company LMTD. | Cole | Stephen | Lawton | | 850 Virginia Street | El Segundo | CA | 90845 | 12 | |
| First Commerce Bank Cust. FBO - Robert J. Comer | Comer | Robert | Lawton | $55,275.00 | 1531 Curson Ave | Los Angeles | CA | 90046 | 12 | |
| ~~Gerald D. Coulter~~ | ~~Coulter~~ | ~~Gerald~~ | ~~Brandt~~ | ~~-$250,000.00~~ | ~~11161 Sumac Lane~~ | ~~Santa Rosa Valley`~~ | ~~CA~~ | ~~93012~~ | ~~12~~ | Settled |
| ~~Gerald D. Coulter~~ | ~~Coulter~~ | ~~Bobbie~~ | ~~Brandt~~ | | ~~11161 Sumac Lane~~ | ~~Santa Rosa Valley`~~ | ~~CA~~ | ~~93012~~ | ~~12~~ | Settled |

Exhibit D
Page 11 of 24

Corrected Revised Schedule of Potential Class Members in California

| DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Yield | Status |
|---|---|---|---|---|---|---|---|---|---|---|
| First Commerce Bank Cust. FBO - Michael Dilger | Dilger | Michael | Brandt | $66,765.48 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 | |
| First Commerce Bank Cust. FBO - Philip Dipaola | Dipaola | Philip | Lawton | $99,142.00 | 22232 Craft Ct. | Calabasas | CA | 91302 | 9 | |
| Michael Dixon | Dixon | Michael | Brandt | $800,000.00 | 260 Princeton Dr | Costa Mesa | CA | 92626 | 9 | |
| Michael Dixon | Dixon | Linda | Brandt | | 260 Princeton Dr | Costa Mesa | CA | 92626 | 9 | |
| Duarte Family Trust 7-7-06 | Duarte | Alberto | Brandt | $100,000.00 | 635 Covington Ave. | Simi Valley | CA | 93065 | 9 | |
| ~~Revocable Living Trust of John T. Duff III and Janet Duff~~ | ~~Duff~~ | ~~Janet~~ | ~~Brandt~~ | ~~-$140,000.00~~ | ~~10700 Bloomfield St~~ | ~~Toluca Lake~~ | ~~CA~~ | ~~91602-278~~ | ~~12~~ | Settled |
| ~~Revocable Living Trust of John T. Duff III and Janet Duff~~ | ~~Duff~~ | ~~John~~ | ~~Brandt~~ | ~~-$350,000.00~~ | ~~10700 Bloomfield St~~ | ~~Toluca Lake~~ | ~~CA~~ | ~~91602-278~~ | ~~12~~ | Settled |
| First Commerce Bank Cust. FBO - James R. Dugue | Dugue | James | Brandt | $12,850.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 | |
| Jack E. Dunn | Dunn | Jack | Brandt | $100,000.00 | 1540 Paul Street | Simi Valley | CA | 93065 | 12 | |
| Durose Family Trust Dated November 16, 2006 | Durose | Kelly | Brandt | $217,881.48 | 2212 Raintree Ct | Rucklin | CA | 95765 | 12 | |
| First Commerce Bank Cust. FBO - Michele Durose | Durose | Michele | Brandt | $115,612.00 | 17550 Sunburst St. | Northridge | CA | 91325 | 12 | |
| First Commerce Bank Cust. FBO - Wayne Durose | Durose | Wayne | Brandt | $21,538.00 | 17550 Sunburst St. | Northridge | CA | 91325 | 12 | |
| ~~Tracy Anne Durose~~ | ~~Durose~~ | ~~Tracy Anne~~ | ~~Brandt~~ | ~~$17,469.00~~ | ~~2212 Raintree Ct~~ | ~~Rucklin~~ | ~~CA~~ | ~~95765~~ | | Duplicate (See 108) |
| Christophe Eme | Eme | Christophe | Lawton | $337,694.76 | 11845 W. Olympic Blvd | Los Angeles | CA | 90064 | 9 | |
| Jerry M. Engelhardt & Lynda T. Engelhardt Living Trust dated October 29, 1997 | Engelhardt | Jerry | Belfer/Kroner | $500,000.00 | 1349 S. Empire St. | Anaheim | CA | 92804 | 12 | |

Exhibit D
Page 12 of 24

Corrected Revised Schedule of Potential Class Members in California

| DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Yield | Status |
|---|---|---|---|---|---|---|---|---|---|---|
| Jerry M. Engelhardt and Lynda T. Engelhardt Living Trust dated October 29, 1997 | Engelhardt | Lynda | Belfer/Kroner | | 1349 S. Empire Street | Anaheim | CA | 92804 | 9 | |
| First Commerce Bank Cust. FBO - Edward English III | English, III | Edward | Lawton | $258,477.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 | |
| Steven Eric Feir | Feir | Steven | Brandt/AEI | $653,992.25 | P.O. Box 7848 | Mammoth Lakes | CA | 93546 | 9 | |
| Pilar Feir | Feir | Pilar | Brandt | $480,000.00 | 119 Eastwind Street | Marina Del Rey | CA | 90292 | 12 | |
| Jules Feir | Feir | Jules | Cano/AEI | $147,997.35 | 13523 Cheltenham Dr. | Sherman Oaks | CA | 91423-481 | 12 | |
| Jules Feir | Feir | Francine | Cano/AEI | | 13523 Cheltenham Dr. | Sherman Oaks | CA | 91423-481 | 12 | |
| First Commerce Bank Cust. FBO -Jules Feir | Feir | Jules | Cano/AEI | $437,958.00 | c/o Polycomp | Woodland Hills | CA | 91423-481 | | |
| Francesco Ferrario | Ferrario | Francesco | Brandt | $50,000.00 | 2626 Armacost Ave. | Los Angeles | CA | 90064 | 12 | |
| Ira Fine | Fine | Ira | Belfer/Kroner | $612,312.30 | 3915 Hayvenhurst Ave | Encino | CA | 91436 | 9 | |
| The WDF Living Trust of 1995 dated April 21, 1995 | Forsyth | Seth | Lawton | $70,835.49 | 2128 Tapia Dr. | Malibu | CA | 90265 | 9 | |
| WDF Living Trust 1995 | Forsyth | William | Lawton | $782,000.00 | 6128 Tapia Dr | Malibu | CA | 90265 | 12 | |
| Shaina Forsyth | Forsyth | Shaina | Lawton | $65,000.00 | 6128 Tapia Dr. | Malibu | CA | 90265 | 9 | |
| William D. Forsyth II | Forsyth II | William | Lawton | $250,000.00 | 6128 Tapia Dr | Malibu | CA | 90265 | 9 | |
| William D. Forsyth II | Forsyth III | William | Lawton | | 6128 Tapia Dr. | Malibu | CA | 90265 | 9 | |
| William Frankenstein | Frankenstein | William | Russon | $150,000.00 | 22750 Sparrow Dell Drive | Calabasas | CA | 91302 | 9 | |
| Fraser Communications Defined Benefit Pension Plan | Fraser | Renee | Belfer/Kroner | $91,000.00 | 2811 Wilshire Blvd. | Santa Monica | CA | 90403 | 12 | |
| First Commerce Bank Cust. FBO - Harvin Galper | Galper | Harvin | Lawton | $1,000,000.00 | 11815 Dorothy Street | Los Angeles | CA | 90049 | 9 | |
| First Commerce Bank Cust. FBO - Harvin Galper | Galper | Merle | Lawton | $300,000.00 | 11815 Dorothy Street | Los Angeles | CA | 90049 | 12 | |
| Elizabeth Gibbons | Gibbons | Elizabeth | Ianerelli | $135,000.00 | 7105 Geyser | Reseda | CA | 91335 | 12 | |
| Ilisa C. Gilmer | Gilmer | Ilisa | Corzan | $61,000.00 | 12731 Pacific Ave | Los Angeles | CA | 90066 | 9 | |
| ~~Ron Gonzalez~~ | ~~Gonzalez~~ | ~~Ron~~ | ~~Brandt~~ | ~~-$132,500.00~~ | ~~21510 Chirping Sparrow Road~~ | ~~Diamond Bar~~ | ~~CA~~ | ~~91765~~ | ~~12~~ | Settled |

Exhibit D
Page 13 of 24

Corrected Revised Schedule of Potential Class Members in California

| DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Yield | Status |
|---|---|---|---|---|---|---|---|---|---|---|
| ~~Ron Gonzalez~~ | ~~Gonzalez~~ | ~~Maria~~ | ~~Brandt~~ | | ~~21510 Chirping Sparrow Road~~ | ~~Diamond Bar~~ | ~~CA~~ | ~~91765~~ | ~~12~~ | Settled |
| John F. Gregory | Gregory | John | Lawton | $50,000.00 | 4536 Skye Dr. | Bakersfield | CA | 93308 | 12 | |
| Samuel Gupta | Gupta | Samuel | Brandt | $42,500.00 | 2736 Armour Ln | Redondo Beach | CA | 90278 | 12 | |
| Samuel Gupta | Gupta | Janet | Brandt | | 2736 Armour Ln | Redondo Beach | CA | 90278 | 12 | |
| ~~First Commerce Bank Cust. FBO - Patricia Hank~~ | ~~Hank~~ | ~~Patricia~~ | ~~Brandt~~ | ~~-$275,384.00~~ | ~~4261-3 Las Virgines Rd.~~ | ~~Calabasas~~ | ~~CA~~ | ~~91302~~ | ~~12~~ | Settled |
| ~~John Hank~~ | ~~Hank~~ | ~~John~~ | ~~Brandt~~ | ~~-$45,000.00~~ | ~~4261-3 Las Virgines Rd.~~ | ~~Calabasas~~ | ~~CA~~ | ~~91302~~ | ~~12~~ | Settled |
| Michael J. Hansen | Hansen | Michael | Brandt | $250,000.00 | 1221 Ocean Ave #1006 | Santa Monica | CA | 90401 | 12 | |
| First Regional Bank Cust. FBO - John Haynes | Haynes | John | Brandt | $50,000.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 | |
| ~~California National Bank Cust. FBO - Harold Henson~~ | ~~Henson~~ | ~~Harold~~ | ~~Lawton~~ | ~~-$100,000.00~~ | ~~6400 Canoga Ave.~~ | ~~Woodland Hills~~ | ~~CA~~ | ~~91367~~ | ~~9~~ | Deceased |
| James Heyward | Heyward | James | Ianerelli | $15,050.00 | 3645 W. Chapman Lane | Inglewood | CA | 90305 | 12 | |
| First Commerce Bank Cust FBO- Robert E. Hiett | Hiett | Robert | Lawton | $136,050.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 | |
| Horwitz Living Trust dated April 19, 1995 | Horwitz | Hermine | Lawton | | 5320 Orrville Ave | Woodland Hills | CA | 91367 | 9 | |
| Horwitz Living Trust dated April 19, 1995 | Horwitz | Lewis | Lawton | $700,000.00 | 5320 Orrville Ave. | Woodland Hills | CA | 91367 | 12 | |
| First Commerce Bank Cust. FBO - Toni Iannarelli | Iannarelli | Toni | Russon | | 3739 Calle Jasmin | Calabasas | CA | 91302 | 12 | |
| First Commerce Bank Cust. FBO - Michael Iannarelli | Iannarelli | Michael | Russon | $102,000.00 | 3739 Calle Jasmin | Calabasas | CA | 91302 | 12 | |
| ~~Kevin Troy Idukas~~ | ~~Idukas~~ | ~~Kevin~~ | ~~Brandt~~ | ~~-$50,000.00~~ | ~~19 McAfee Court~~ | ~~Thousand Oaks~~ | ~~CA~~ | ~~91360~~ | ~~12~~ | Settled |
| Karla D. Ives | Ives | Karla | Giovanni Pizz | $50,000.00 | 3570 Cortner Ave | Long Beach | CA | 90808 | 9 | |
| Izen Family Trust 5-24-90 | Izen | Ted | Cano | $50,000.00 | 23280 Bluebird Dr. | Calabasas | CA | 91302 | 12 | |
| Steve Jacobs Defined Benefit Plan | Jacobs | Steve | AEI | $723,300.00 | Box 13926 | South Lake Tahoe | CA | 96151 | 12 | |
| ~~Donald K. Jong~~ | ~~Jong~~ | ~~Donald~~ | ~~Brandt~~ | ~~-$250,000.00~~ | ~~4699 Via Canada~~ | ~~Newbury Park~~ | ~~CA~~ | ~~91320~~ | ~~12~~ | Settled |
| ~~Donald K. Jong~~ | ~~Jong~~ | ~~Janet~~ | ~~Brandt~~ | | ~~4699 Via Canada~~ | ~~Newbury Park~~ | ~~CA~~ | ~~91320~~ | ~~12~~ | Settled |

Exhibit D
Page 14 of 24

Corrected Revised Schedule of Potential Class Members in California

| DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Yield | Status |
|---|---|---|---|---|---|---|---|---|---|---|
| Carol Jonsson | Jonsson | Carol | Brandt | $50,000.00 | P.O. Box 270454 | San Diego | CA | 92198 | 9 | |
| Kassap Family Trust 05/01/92 | Kassap | Stanley | Brandt | $300,000.00 | 196355 Mandalay Dr. | Encino | CA | 91436 | 12 | |
| First Commerce Bank Cust. FBO - Ralph A. Khan | Khan | Ralph | Lawton | $202,762.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 | |
| First Commerce Bank Cust. FBO - Tara Kahn | Khan | Tara | Lawton | $58,923.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 | |
| Law Offices of George Knopfler Defined Benefit Pension Plan | Knopfler | Deborah | Brandt | | 31194 La Baya | Westlake Village | CA | 91361 | 12 | |
| Law Offices of George Knopfler 401 (K) Profit Sharing Plan | Knopfler | George | Brandt | $318,094.39 | 31194 La Baya Drive | Westlake Village | CA | 91362 | 12 | |
| ~~Sharlene E. Kreiner Trust Dated November 10, 2000~~ | ~~Kreiner~~ | ~~Sharlene~~ | ~~Brandt~~ | ~~$70,000.00~~ | ~~434 S. Walter~~ | ~~Newbury Park~~ | ~~CA~~ | ~~91320~~ | ~~12~~ | Settled |
| First Commerce Bank Cust. FBO - Cletus Kuhla | Kuhla | Cletus | Lawton | $39,729.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 9 | |
| Linda Lessing | Lessing | Linda | Lawton | $144,463.00 | 10345 Almayo Ave. | Los Angeles | CA | 90064 | 9 | |
| Soltman, Levitt & Flaherty, LLP 401K Profit Sharing Plan | Levitt | John | Kroner/Belfer | $79,901.62 | 1445 Pleasant Oaks Pl | Thousand Oaks | CA | 91362 | 9 | |
| John Levitt | Levitt | John | Kroner/Belfer | $52,319.53 | 2535 Townsgate Road | Westlake Village | CA | 91361 | 9 | |
| Charles F. Logan | Logan | Charles | Brandt | $180,000.00 | 1342 Caren Ct. | Lancaster | CA | 93534 | 12 | |
| First Commerce Bank Cust. FBO - Tracy Anne Lopez | Lopez | Tracy | Brandt | $21,326.00 | 6400 Canoga Ave. | Woodland Hills | CA | 93105 | 12 | |
| First Commerce Bank Cust. FBO - Charles T. Mahew | Mahew | Charles | Lawton | $400,000.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 | |
| First Commerce Bank Cust. FBO - Leonard R. Mains | Mains | Leonard | Lawton | $48,500.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 | |
| First Commerce Bank Cust. FBO- Marlyn M. Malloy | Malloy | Marlyn | Lawton | $73,198.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 | |

Exhibit D
Page 15 of 24

Corrected Revised Schedule of Potential Class Members in California

| DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Yield | Status |
|---|---|---|---|---|---|---|---|---|---|---|
| Mann Family Trust dated November 15, 2007 | Mann | Michael | Brandt | $320,000.00 | 14380 E. Loyola St. | Moorpark | CA | 93021 | 12 | |
| Mann Family Trust dated November 15, 2007 | Mann | Janet | Brandt | | 14380 E. Loyola St. | Moorpark | CA | 93021 | 12 | |
| David Mann | Mann | David | Brandt | $88,905.87 | 191 Welsh Ct | Simi Valley | CA | 93065 | 12 | |
| David Mann | Mann | Linda | Brandt | | 191 Welsh Ct | Simi Valley | CA | 93065 | 12 | |
| Noel McCord | McCord | Noel | Belfer | $200,000.00 | 444 Sumner Ave | Aptos | CA | 95003 | 12 | |
| Noel McCord | McCord | Jessica | Belfer | | 444 Sumner Ave | Aptos | CA | 95003 | 12 | |
| First Commerce Bank Cust FBO-Lawrence McCorkle | McCorkle | Lawrence | Brandt | $25,593.42 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 | |
| ~~California National Bank Cust. FBO - Howard P. McKeon~~ | ~~McKeon~~ | ~~Howard~~ | ~~Brandt~~ | ~~-$110,826.75~~ | ~~c/o Polycomp~~ | ~~Woodland Hills~~ | ~~CA~~ | ~~91367~~ | ~~12~~ | Settled |
| California National Bank Cust. FBO - Patricia McKeon | McKeon | Patricia | Brandt | $59,069.31 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 | |
| Mendes Family Trust | Mendes | Pari | Brandt | $56,000.00 | 1004 Poplar Ct. | Simi Valley | CA | 93065 | 12 | |
| Sally Mendoza | Mendoza | Sally | Belfer/ Krone | $150,000.00 | 87 Rivo Alto Canal | Long Beach | CA | 90803 | 9 | |
| First Commerce Bank Cust. FBO - Robert Mishkin | Mishkin | Robert | Brandt | $24,567.75 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 | |
| Edward George Mitchell | Mitchell | Edward | Lawton | $50,000.00 | 33872 Pequito Dr | Dana Point | CA | 92629 | 9 | |
| Edward George Mitchell | Mitchell | Eileen | Lawton | | 33872 Pequito Dr | Dana Point | CA | 92629 | 9 | |
| First Commerce Bank Cust. FBO - Donald A. Moffat | Moffat | Donald | Lawton | $46,367.55 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 | |
| First Commerce Bank Cust. FBO - Robert E. Moran | Moran | Robert | Lawton | $24,203.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 | |
| Caryn Mower | Mower | Caryn | Brandt | $50,000.00 | 388 Jenny Dr | Newbury Park | CA | 91320 | 12 | |
| First Commerce Bank Cust. FBO - Joseph J. Munroe | Munroe | Joseph | Brandt | $50,000.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 | |
| First Commerce Bank Cust. FBO - Michael C. Murphy | Murphy | Michael | Brandt | $250,000.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 | |

Exhibit D
Page 16 of 24

Corrected Revised Schedule of Potential Class Members in California

| DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Yield | Status |
|---|---|---|---|---|---|---|---|---|---|---|
| First Commerce Bank Cust. FBO - Laura Murphy | Murphy | Laura | Brandt | $500,000.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 | |
| Joyce Newlin | Newlin | Joyce | Lawton | | 4735 Pine Hurst | Pasadena | CA | 77505 | 12 | |
| Stanley Nisenson | Nisenson | Stanley | Belfer | $500,000.00 | 12431 Henzie Place | Granada Hills | CA | 91344 | 9 | |
| First Commerce Bank Cust. FBO - Dianne R. Ophelia | Ophelia | Dianne | Corzan | $183,182.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 9 | |
| Candie Ortiz | Ortiz | Candie | Cano | $53,197.00 | 28901 Cecil Ave. | Delano | CA | 93215 | 12 | |
| Candie Ortiz | Ortiz | Gabino | Cano | | 28901 Cecil Ave. | Delano | CA | 93215 | 12 | |
| ~~Candi Ortiz~~ | ~~Ortiz~~ | ~~Candi~~ | ~~Cano~~ | | ~~30554 Orange Street~~ | ~~Shafter~~ | ~~CA~~ | ~~93263~~ | ~~12~~ | Settled |
| First Commerce Bank Cust. FBO - Margaret Owen | Owen | Margaret | Corzan | $224,464.53 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 | |
| First Commerce Bank Cust. FBO - Timothy Owens | Owens, Sr. | Timothy | Brandt | $18,980.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 | |
| First Commerce Bank Cust. FBO - Laura Partridge | Partridge | Laura | Corzan | | c/o Polycomp | Woodland Hills | CA | 91367 | 12 | |
| Laura Patridge | Patridge | Laura | Corzan | $880,000.00 | 10400 Pine Cone Drive | Truckee | CA | 96161 | 12 | |
| Laura Patridge | Patridge | Jeff | Corzan | | 10400 Pine Cone Drive | Truckee | CA | 96161 | 12 | |
| Gloria Paulsen | Paulsen | Gloria | Lawton | $60,000.00 | 60 Livingston Ct | Novato | CA | 94949 | 9 | |
| Expert Building Maintenance, L | Pedder | Robert | Brandt | $50,000.00 | 1871 Tapo St. | Simi Valley | CA | 93063 | 12 | |
| Pereida Family Trust | Pereida | Sandra | Brandt | $45,000.00 | 4917 El Dorado Drive | Laverne | CA | 91750 | 9 | |
| Pereida Family Trust | Pereida | Robert | Brandt | | 4917 El Dorado Drive | Laverne | CA | 91750 | 9 | |
| Frank Perna | Perna | Frank | Belfer/ Krone | $8,800,000.00 | 26802 Malibu Cove Colony Dr | Malibu | CA | 90265 | 12 | |
| ~~James Pero~~ | ~~Pero~~ | ~~James~~ | ~~Brandt~~ | | ~~2750 Edgeview~~ | ~~Newbury Park~~ | ~~CA~~ | ~~91320~~ | ~~12~~ | Settled |
| Pomonik Family Trust dated August 1, 2006 | Pomonik | George | Brandt | $353,978.74 | 4144 Meadow Lark Dr | Calabasas | CA | 91302 | 12 | |
| Pomonik Family Trust dated August 1, 2006 | Pomonik | Roslyn | Brandt | | 4144 Meadow Lark Dr | Calabasas | CA | 91302 | 12 | |
| Joel Pomonik and Denise Pomoni | Pomonik | Denise | Brandt | $322,000.00 | 4491 Poe Ave | Woodland Hills | CA | 91364 | 12 | |

Exhibit D
Page 17 of 24

Corrected Revised Schedule of Potential Class Members in California

| DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Yield | Status |
|---|---|---|---|---|---|---|---|---|---|---|
| Joel Pomonik | Pomonik | Joel | Brandt | | 4491 Poe Ave | Woodland Hills | CA | 91364 | 12 | |
| Ronald Popper, M.D. | Popper, M.D. | Ronald | Belfer/ Krone | $50,000.00 | 921 Ellesmere Way | Oak Park | CA | 91377 | 12 | |
| John Ports | Ports | John | Brandt | $100,000.00 | 13131 Knotty Pine | Moorpark | CA | 93021 | 12 | |
| John Ports | Ports | Roneale | Brandt | | 13131 Knotty Pine | Moorpark | CA | 93021 | 12 | |
| Dale Pritchard | Pritchard | Dale | Brandt | $402,819.00 | 811 Fowler Avenue | Newbury Park | CA | 91320 | 12 | |
| ~~C.L. Quin,III Family Trust '00~~ | ~~Quin, III~~ | ~~Carroll~~ | ~~Brandt~~ | ~~-$110,000.00~~ | ~~12723 Park St.~~ | ~~Cerritos~~ | ~~CA~~ | ~~90703-114~~ | ~~12~~ | Settled |
| Christine Ramirez | Ramirez | Christine | Brandt | $284,000.00 | 855 Links View Dr. | Simi Valley | CA | 93065 | 12 | |
| First Commerce Bank Cust. FBO - Pamela Richardson | Richardson | Pamela | Brandt | $29,530.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 | |
| ~~Kabir Sabherwal~~ | ~~Sabherwal~~ | ~~Kabir~~ | ~~Brandt~~ | ~~-$192,750.00~~ | ~~12145 Holly Glen Place~~ | ~~Studio City~~ | ~~CA~~ | ~~91604~~ | ~~12~~ | Settled |
| ~~Inderjit & Janak Sabherwal Family Trust of June 1, 1981~~ | ~~Sabherwal~~ | ~~Janak~~ | ~~Brandt~~ | ~~-$35,500.00~~ | ~~12145 Holly Glen Place~~ | ~~Studio City~~ | ~~CA~~ | ~~91604~~ | ~~12~~ | Settled |
| Candi Ortiz | Salazar | Angelina | Cano | | 30554 Orange Street | Shafter | CA | 93263 | 12 | |
| ~~Wayne & Lauren Sanda Revocable Trust dated July 11, 1998~~ | ~~Sanda~~ | ~~Wayne~~ | ~~Brandt~~ | ~~-$65,000.00~~ | ~~22488 Domingo Rd~~ | ~~Woodland Hills~~ | ~~CA~~ | ~~91364~~ | ~~12~~ | ~~Settled~~ |
| George Savatgy | Savatgy | George | Brandt | $23,750.00 | 1233 Ruberta | Glendale | CA | 91201 | 9 | |
| Douglas Schoen | Schoen | Douglas | Lawton | $25,000.00 | P.O. Box 1727 | Pacific Palisades | CA | 90272 | 9 | |
| Douglas Schoen | Schoen | Susan | Lawton | | P.O. Box 1727 | Pacific Palisades | CA | 90272 | 9 | |
| Charles Scholer | Scholer | Charles | Lawton | $40,700.00 | 23909 Lakeside Road | Valencia | CA | 91355 | 9 | |
| California National Bank Cust. FBO - Donald J. Scotti | Scotti | Donald | Brandt | $48,980.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 | |
| Vivian Hsin Yin Seng | Seng | Vivian | Keng | $50,000.00 | 529 S. Everett Ave. | Monterey Park | CA | 91755 | 9 | |
| Shanna Hsin Kuang Seng | Seng | Shanna | Keng | $100,000.00 | 529 S. Everett Ave. | Monterey Park | CA | 91755 | 9 | |
| ~~Alan Shapiro~~ | ~~Shapiro~~ | ~~Alan~~ | ~~Brandt~~ | ~~-$38,725.73~~ | ~~455 La Loma Rd.~~ | ~~Pasadena~~ | ~~CA~~ | ~~91105~~ | ~~12~~ | Settled |
| Dorothy Sheperd | Sheperd | Dorothy | Belfer/ Krone | $510,382.14 | 9518 La Canada Way | Sunland | CA | 91040 | 9 | |
| California National Bank Cust. FBO- Gary Shiger | Shiger | Gary | Brandt | $300,000.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 | |
| Charlene Shinn | Shinn | Charlene | lawton | $100,000.00 | PO Box 6771 | Big Bear Lake | CA | 92315 | 12 | |
| Kristopher Smith | Smith | Kristopher | Lawton | $150,000.00 | 119 So. Monte Vista | Covina | CA | 91723 | 12 | |
| First Regional Bank Cust. FBO - Jerome Smith | Smith | Jerome | Lawton | $87,300.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 | |

Exhibit D
Page 18 of 24

Corrected Revised Schedule of Potential Class Members in California

| DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Yield | Status |
|---|---|---|---|---|---|---|---|---|---|---|
| ~~Scott Snyder~~ | ~~Snyder~~ | ~~Scott~~ | ~~Brandt~~ | ~~-$236,363.61~~ | ~~1049 Calle Ruiz~~ | ~~Thousand Oaks~~ | ~~CA~~ | ~~91360~~ | ~~12~~ | ~~Settled~~ |
| ~~Scott Snyder~~ | ~~Snyder~~ | ~~Dawna~~ | ~~Brandt~~ | | ~~1049 Calle Ruiz~~ | ~~Thousand Oaks~~ | ~~CA~~ | ~~91360~~ | ~~12~~ | ~~Settled~~ |
| ~~Gary D. Snyder & Lynette E. Snyder Trust, dated July 18, 1985~~ | ~~Snyder~~ | ~~Gary~~ | ~~Brandt~~ | ~~-$772,246.73~~ | ~~3034 Rollings Ave.~~ | ~~Thousand Oaks~~ | ~~CA~~ | ~~91360~~ | ~~12~~ | ~~Settled~~ |
| ~~Gary D. Snyder and Lynnette E. Snyder Trust dated July 18, 1985~~ | ~~Snyder~~ | ~~Lynette~~ | ~~Brandt~~ | | ~~3034 Rollings Ave.~~ | ~~Thousand Oaks~~ | ~~CA~~ | ~~91360~~ | ~~12~~ | ~~Settled~~ |
| Steven Soltman | Soltman | Steven | Belfer/Kroner | $1,690,000.00 | 7057 Heron Circle | Carlsbad | CA | 92011 | 9 | |
| First Commerce Bank Cust. FBO - Charlotte B. St. John | St. John | Charlotte | Lawton | $41,424.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 9 | |
| First Commerce Bank Cust. FBO  - Douglas C. Stevens, Sr. | Stevens, Sr. | Douglas | Lawton | $79,050.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 9 | |
| California National Bank Cust. FBO - Larry W. Stilley | Stilley | Larry | Brandt | $600,000.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 | |
| Capriccio Trading Inc. A Delaware Corporation & Seabourne Partners, LP | Straatsma | Cynthia | Brandt | $1,300,000.00 | 200 Spalding Dr. # A | Beverly Hills | CA | 90212 | 12 | |
| First Commerce Bank Cust. FBO - Brenden S. Suter | Suter | Brenden | Lawton | $65,604.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 9 | |
| First Commerce Bank Cust. FBO - John Sykes | Sykes | John | Brandt | $9,387.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 | |
| Tentser Family Trust | Tentser | Yakov | AEI | $40,000.00 | 1120 22nd St. | Santa Monica | CA | 90403 | 9 | |
| Jerome H. Tepperman, PH.D., Inc. 401(k) Profit Sharing Trust | Tepperman | Jerome | Belfer/Kroner | $50,000.00 | 171 N. Church Lane | Los Angeles | CA | 90049 | 12 | |
| The Robert and Carole Thornton Family Trust dated July 25, 2000 | Thornton | Robert | Belfer | $900,000.00 | 1503 Seabright Ave | Santa Cruz | CA | 95062 | 12 | |
| The Robert and Carole Thornton Family Trust dated July 25, 2000 | Thornton | Carole | Belfer | | 1503 Seabright Ave | Santa Cruz | CA | 95062 | 12 | |

Exhibit D
Page 19 of 24

Corrected Revised Schedule of Potential Class Members in California

| DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Yield | Status |
|---|---|---|---|---|---|---|---|---|---|---|
| Turina Family Trust | Turina | Boris | Carlson | $50,000.00 | 5117 La Crescenta Ave. | La Crescenta | CA | 91214-211 | 9 | |
| Karen L. Van Sant | Van Sant | Karen | Cano | | 1339 N. Columbus Ave | Glendale | CA | 91202-164 | 12 | |
| William W. & Eleanor C. Waddell Revoc Inter-Vivos U/T/D Trust dated July 29, 1993 | Waddell, Trust | William | Lawton | $200,000.00 | 2552 Kelvin Ave. | Irvine | CA | 92614 | 12 | |
| William & Eleanor Waddell Revoc Inter-Vivos Trust dated U/D/T July 29, 1993 | Waddell, Truste | Eleanor | Lawton | | 3241 San Amadeo | Laguna Woods | CA | 92637-307 | 12 | |
| ~~Richard Wade~~ | ~~Wade~~ | ~~Richard~~ | ~~Brandt~~ | ~~$408,774.00~~ | ~~32440 Saddle Mountain Dr.~~ | ~~Westlake Village~~ | ~~CA~~ | ~~91361~~ | ~~12~~ | Settled |
| ~~California National Bank Cust. FBO - Hilary C. Wade~~ | ~~Wade~~ | ~~Hilary~~ | ~~Brandt~~ | ~~$332,304.00~~ | ~~6400 Canoga Ave.~~ | ~~Woodland Hills~~ | ~~CA~~ | ~~91367~~ | ~~12~~ | Settled |
| ~~Mark A. Wagner~~ | ~~Wagner~~ | ~~Mark~~ | ~~Brandt~~ | ~~$100,000.00~~ | ~~2801 Ocean Park Blvd. # 177~~ | ~~Santa Monica~~ | ~~CA~~ | ~~90405~~ | ~~12~~ | Settled |
| Paul Walker | Walker | Paul | Brandt | $460,000.00 | 3196 Deer Valley Ave | Newbury Park | CA | 91320 | 12 | |
| First Commerce Bank Cust. FBO - Ricky Harold Walters | Walters | Ricky | Lawton | $51,000.00 | 14021 Marquesas Way | Marina Del Rey | CA | 90292 | 12 | |
| Sheila Warner Trust | Warner | Sheila | Lawton | $700,000.00 | 1138 20th St | Santa Monica | CA | 90403 | 12 | |
| Bernard Warner | Warner | Bernard | Lawton | $1,469,750.52 | 150 Ocean Park Blvd | Santa Monica | CA | 90405 | 12 | |
| The Wynne Warner Trust, Dated August 24, 1990 | Warner | Wynne | Lawton | $400,000.00 | 150 Ocean Park Blvd. # 324 | Santa Monica | CA | 90405 | 12 | |
| The Dona Rothman Family Trust dated February 11, 1994 | Warner | Dona | Lawton | $395,468.18 | 3902 Davana Rd | Sherman Oaks | CA | 91423 | 12 | |
| L.J.Warner Trust 03-95 | Warner | Lawrence | Lawton | $300,000.00 | 3902 Davana Rd | Sherman Oaks | CA | 91423 | 12 | |
| Lawrence Warner | Warner | Lawrence | Lawton | $600,000.00 | 3902 Davana Rd | Sherman Oaks | CA | 91423 | 12 | |
| First Commerce Bank Cust. FBO - Dona Warner | Warner | Dona | Lawton | $125,040.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 | |

Exhibit D
Page 20 of 24

Corrected Revised Schedule of Potential Class Members in California

| DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Yield | Status |
|---|---|---|---|---|---|---|---|---|---|---|
| First Commerce Bank Cust. FBO - Bernard L. Warner | Warner | Bernard | Lawton | | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 | |
| First Commerce Bank Cust. FBO - Wynne N. Warner | Warner | Wynne | Lawton | $280,175.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 | |
| First Commerce Bank Cust. FBO - Jeffrey White | White | Jeffrey | Belfer/Kroner | | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 | |
| William Wilson | Wilson | William | Brandt | $704,500.00 | 3016 Silver Lea Ter. | Los Angeles | CA | 90039-303 | 12 | |
| First Commerce Bank Cust. FBO - William L. Wilson | Wilson | William | Brandt | $400,000.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 | |
| Revon Wolf | Wolf | Revon | Lawton | $200,000.00 | 7306 Raintree Circle | Culver City | CA | 90232 | 12 | |
| Juliet Wong | Wong | Juliet | Kroner | | 3428 Cool Heights Drive | Rancho Palos Verdes | CA | 90275 | 9 | |
| First Commerce Bank Cust. FBO - Stephen K. Worrell | Worrell | Stephen | Lawton | $175,000.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 9 | |
| 5525 Trust | Zimmerman | Sharon | Lawton | $4,777,855.00 | P.O. Box 260098 | Encino | CA | 91426 | | |
| Stephen Flaherty | Flaherty | Stephen | Belfer | | 209 Rimrock Road | Thousand Oaks | CA | 91361 | | |
| Road West Retirement Plan | Campos | Bruno | Lawton | $39,476.37 | Address unknown | | | | | |
| | | | California total | $45,821,239.99 | $50,419,188.53 | | | | | |

Exhibit D
Page 21 of 24

Corrected Revised Schedule of Potential Class Members Outside California

| DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Status | Yield |
|---|---|---|---|---|---|---|---|---|---|---|
| Blue Coyote Pictures, Inc. aka Roy Brewington Trust | Brewington | Roy | Brandt | $18,084.00 | Address unknown | | | | | |
| Richard W. Caldarone | Caldarone | Richard | Corzan | $600,000.00 | 73-4522 Hane Street | Kailua-Kona | HI | 96740 | | 9 |
| Richard W. Caldarone | Caldarone | Robelita | Corzan | | 73-4522 Hane Street | Kailua-Kona | HI | 96740 | | 9 |
| Adelandra Capparuccia | Capparuccia | Adelandra | Brandt | $50,000.00 | Address unknown | | | | | |
| Arlene Dodson-Franssen | Dodson-Franssen | Arlene | Brandt | $124,000.00 | 132 Driftwood Dr. | Florence | OR | 97439 | | NULL |
| David M. Engert | Engert | David | Corzan | $1,275,000.00 | 5702 Palo Cristi Rd. | Paradise Valley | AZ | 85253 | | 9 |
| David M. Engert | Engert | Kimberly | Corzan | $250,000.00 | 5702 Palo Cristi Rd. | Paradise Valley | AZ | 85253 | | 9 |
| Wesley Forsyth | Forsyth | Wesley | Lawton | $75,000.00 | 4087 N. Paua Way | Lahaina | HI | 96761 | | |
| Karen Forsyth | Forsyth | Karen | Lawton | $250,000.00 | 4087 N. Paua Way | Lahaina | HI | 96761 | | |
| First Commerce Bank Cust. FBO - Burton Galper | Galper | Burton | Lawton | $228,355.00 | 9594 Castillana Court | Las Vegas | NV | 89147 | | 9 |
| First Commerce Bank Cust. FBO - Sheila Galper | Galper | Sheila | Lawton | $174,565.00 | 9594 Castillana Court | Las Vegas | NV | 89147 | | 9 |
| First Commerce Bank Cust. FBO - Chad Gledhill | Gledhill | Chad | Cano | $50,000.00 | 4121 Witherow Road | Winston-Salem | NC | 27106 | | 12 |
| First Commerce Bank Cust. FBO - Mary Gledhill | Gledhill | Mary | Cano | $125,000.00 | 4121 Witherow Road | Winston-Salem | NC | 27106 | | 12 |
| Jil Glyman | Glyman | Jil | Lawton | $315,000.00 | 1905 Spyglass Dr. | Henderson | NV | 89014-1044 | | 9 |

Exhibit D
Page 22 of 24

Corrected Revised Schedule of Potential Class Members Outside California

| DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Status | Yield |
|---|---|---|---|---|---|---|---|---|---|---|
| The Hartshorne Family Trust dated September 12, 2002 | Hartshorne | Robert | Brandt | $200,000.00 | 7790 Highway 126 | Florence | OR | 97439 | | 12 |
| The Hartshorne Family Trust dated September 12, 2002 | Hartshorne | MaryAnn | Brandt | | 7790 Highway 126 | Florence | OR | 97439 | | 12 |
| Gayle G. Johnson | Johnson | Gayle | Lawton | $100,000.00 | 176 Reservoir | Stanardsville | VA | 22973 | | |
| ~~Lace Jordan~~ | ~~Jordan~~ | ~~Lace~~ | ~~Iannarelli~~ | ~~-$530,000.00~~ | ~~1501 Ironbank Dr.~~ | ~~Henderson~~ | ~~NV~~ | ~~89014~~ | Settled | 12 |
| Baldassare Licata Revocable Trust Dated | Licata | Baldassare | Lawton | $51,600.00 | 2104 NE 44th St. | Fort Lauderdale | FL | 33308 | | 9 |
| Maddalena Licata Revocable Trust Dated | Licata | Maddalena | Lawton | $51,600.00 | 2104 NE 44th St. | Fort Lauderdale | FL | 33308 | | 9 |
| ~~Johanna Lieberman~~ | ~~Lieberman~~ | ~~Johanna~~ | ~~Brandt~~ | ~~-$25,000.00~~ | ~~Address unknown~~ | | | | Duplicate | |
| ~~Francisco Ferrario Lieberman~~ | ~~Lieberman~~ | ~~Francisco~~ | ~~Brandt~~ | | ~~Address unknown~~ | | | | Duplicate | |
| The Marilyn D. Long Revocable Trust | Long | Marilyn | Belfer | $100,000.00 | 3117 East Cortez St. | Pheonix | AZ | 85028 | | 9 |
| Alan Mandel | Mandel | Alan | Brandt | $125,000.00 | 7425 NW 79th St | Miami | FL | 33166 | | 12 |
| Alan Mandel | Mandel | Janine | Brandt | | 7425 NW 79th St | Miami | FL | 33166 | | 12 |
| Linda Robinson | Robinson | Linda | Lawton | $44,115.00 | Address unknown | | | | | |
| Marvin Spira | Spira | Marvin | Lawton | $70,000.00 | 7611 SouthHampton | Tamarac | FL | 33321 | | 9 |
| First Commerce Bank Cust. FBO - Rebecca Tuell | Tuell | Rebecca | Lawton | $180,930.00 | 2493 NW 118th Terrace | Coral Springs | FL | 33065 | | 9 |
| Frank Weisz | Weisz | Frank | Belfer/kroner | $1,100,000.00 | 5 East Germantown Pike | Plymouth Meeting | PA | 19462 | | 9 |
| First Commerce Bank Cust. FBO - Curtis M. Worrell | Worrell | Curtis | Lawton | $49,000.00 | 4429 Rosecrest Road | Roanoke | VA | 24018 | | 9 |

Exhibit D
Page 23 of 24

| DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Status | Yield |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Non-California Total | $5,607,249.00 | | | | |
| | | | | | | | | | | |

# EXHIBIT I



CHERYL L. HAAS
DIRECT LINE: 404.853.8521
E-mail: cheryl.haas@sutherland.com

SUTHERLAND ASBILL & BRENNAN LLP
999 Peachtree Street, NE
Atlanta, GA 30309-3996
404.853.8000  Fax 404.853.8806
www.sutherland.com

August 8, 2013

<u>VIA EMAIL & U.S. MAIL</u>

Thomas Foley, Esq.
FOLEY, BEZEK, BEHLE & CURTIS, LLP
15 W. Carrillo Street
Santa Barbara, CA 93101
tfoley@foleybezek.com

Richard E. Donahoo, Esq.
Donahoo & Associates
440 West First Street
Suite 101
Tustin, CA  92780
rdonahoo@donahoo.com

John A. Stillman, Esq.
Good, Wildman, Hegness & Wally
5000 Campus Drive
Newport Beach, CA  92660
jstillman@goodwildman.com

      Re:    DLG Cases

Dear Tom, Richard and John:

      Please consider this Defendants MetLife, Inc., New England Life Insurance Company, New England Securities Corporation (collectively "NEF Defendants") good faith attempt to address deficiencies in Plaintiffs' Responses to NEF Defendants' Requests for Admissions (Set One) in the above-referenced matter.

      In Defendants' Request for Admissions No. 8, Defendants specifically requested that Plaintiffs:

      Admit the number of potential class members exceeds one hundred.

ATLANTA      AUSTIN      HOUSTON      NEW YORK      SACRAMENTO      WASHINGTON DC

August 8, 2013
Page 2

In Plaintiffs' Response, Plaintiffs denied Request for Admission No. 8, "based on lack of information and belief." Subsequently, Plaintiffs submitted Responses to NEF Defendants Special Interrogatories (Set Three) in which the NEF Defendants, in Special Interrogatory No. 24, requested that Plaintiffs identify the potential members of the proposed class. In response, Plaintiffs attached Exhibit 1 to their Responses and stated in Response to Special Interrogatory No. 24 that:

> Exhibit 1 is a "Schedule" which lists each potential member of the proposed class known to Plaintiff at the present time who invested funds with DLG as a result of interaction with an insurance agent affiliated with Defendants NELICO and MetLife or by a registered representative affiliated with Defendant NES/NEF.

Exhibit 1 contains over 240 potential class members, which directly contradicts Plaintiffs' Response to Request No. 8 that the number of potential class members exceeds one hundred "based on information and belief."

Consequently, I ask that you amend Plaintiffs' Response to Request for Admissions No. 8 to admit that the number of potential class members exceeds one hundred by August 15, 2013. If I have not received a response by August 15, I will have no option but to bring this matter to Judge Berle's attention pursuant to his procedures. Additionally, please be advised that the NEF Defendants will seek cost-of-proof sanctions in the event that it is forced to prove that the number of potential class members exceeds one hundred.

Very truly yours,

*Cheryl Haas/hg*

Cheryl Haas

CLH/asf



Thomas G. Foley, Jr.

tfoley@foleybezek.com

Reply to: Santa Barbara office

August 16, 2013

File No. 1301-02

*Via email: Cheryl.Haas@sutherland.com*
*and U.S. Mail*
Cheryl L. Hass
**SUTHERLAND, ASBILL & BRENNAN LLP**
999 Peppertree Street, NE
Atlanta GA 30309-3996

    **IN RE:** *Cantor et al. v. MetLife, Inc. et al.*, Los Angeles
          Superior Court, Case No. BC446497.

Dear Ms. Haas,

    This letter is in response to your request of August 8, 2013 that
Plaintiffs Lawrence J. Cantor and Larry Stilley ("Plaintiffs") supplement
certain of their prior discovery responses in the above-referenced
litigation. In particular, Defendants MetLife, Inc., *et al.* ("Defendants")
demand that Plaintiffs amend their response to Request for Admission No.
8 ("RFA No. 8"), propounded on Plaintiffs as part of Defendants' first set
of Requests for Admission on August 13, 2012. For the reasons set forth
below, Plaintiffs will abide by the Code of Civil Procedure and will not
supplement or amend their discovery responses as a response to
Defendants' artificially imposed deadline.

**OVERVIEW**

    Defendants have imposed a unilateral deadline of August 15, 2013
by which Defendants demand that Plaintiffs amend their response to RFA
No. 8 — a demand that is not based on either statutory authority or Court
order. However, California law does not require a responding party to
supplement its answers to previously propounded discovery, and only
allows the amendment of responses to requests for admission when

Foley Bezek Behle & Curtis

www.FoleyBezek.com

575 Anton Blvd., Suite 710
Costa Mesa, CA 92626
T: (714) 556-1700  F: (714) 546-5005

15 W. Carrillo St.
Santa Barbara, CA 93101
T: (805) 962-9495  F: (805) 962-0722
Main Office

11201 S Eastern Ave., Suite 100
Henderson, Nevada 89052
T: (702) 637-7110  F: (702) 637-7119

Cheryl Haas
Page 2
August 16, 2013

responding party has first obtained leave of court. Plaintiffs, therefore, are not obligated to abide by Defendants' demand for amendment.

Moreover, Plaintiffs are well aware that Defendants' request is directed at determining whether there is federal subject matter jurisdiction, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), in order to support removal of Plaintiffs' lawsuit to federal court. As a "local controversy," Plaintiffs' action falls within an express exception to CAFA and a federal court would have no choice but to remand the current case back to state court in the event that Defendants seek removal.

## THERE IS NO DUTY TO AMEND
## DISCOVERY RESPONSES

First, California law does not impose upon Plaintiffs the duty to supplement or amend their discovery responses, including Defendants' requests for admission, once they are made. (See *Burch v. Gambos* (2000) 82 Cal.App.4th 352, 359.) A responding party is obligated to provide responses that are accurate at the time the response is provided to the propounding party, but need not supplement or amend those responses based on subsequently discovered evidence. (*Ibid.*) In addition, the Code of Civil Procedure specifically states that a party may only "amend an admission made in response to a request for admission **only on leave of court** granted after notice to all parties." (Code Civ. Proc., § 2033.300, emphasis added.) Therefore, it would be improper for Plaintiffs to amend any of their previous responses to Defendants' requests for admission without first obtaining leave to do so.

In addition, Defendants' assertion that there are "deficiencies" in Plaintiffs' response to RFA No. 8 is wrong. Plaintiffs' response was accurate and based on the information available to Plaintiffs at the time the response was made. Plaintiffs denied RFA No. 8 on the basis that Plaintiffs lacked sufficient information, at that time, to admit that "... the number of potential class members exceeds one hundred." A responding party's answer to discovery is not deemed deficient because it contradicts subsequently obtained information. (See *Burch*, *supra*, 82 Cal.App.4th at 359.)

Cheryl Haas
Page 3
August 16, 2013

## CAFA DOES NOT APPLY TO PLAINTIFFS' CLASS

Plaintiffs are fully aware that the intention behind Defendants' recent request for a list of class members, and the subsequent letter requesting amendment of Plaintiffs' discovery responses, is directed at Defendants' likely strategy to remove Plaintiffs' class to federal court under CAFA. However, Plaintiffs' class clearly falls within an exception to CAFA that does not allow a federal court to adjudicate "local controversies," and would require the federal court to remand the case back to state court. Accordingly, Plaintiffs will oppose any effort by Defendants to remove the current action to federal court.

Plaintiffs' class falls within the local controversy exception to CAFA found at 28 U.S.C. § 1332(d)(4). The exception provides that:

> A district court **shall** decline to exercise jurisdiction under paragraph (2) over a class action in which: **(1)** greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed; **(2)** at least 1 [principle] defendant is a defendant ... who is a citizen of the State in which the action was originally filed; and **(3)** principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed. (Emphasis added.)

All of the requirements set forth above are met in the present case.

First, as established by the list of potential class members that was included with Plaintiffs' responses to MetLife's Third Set of Special interrogatories, more than ninety percent of the proposed Plaintiffs' class are citizens of the state of California, where this action was brought.

Second, Defendant Tony Russon, and his related entities, were and are citizens of California. Whether a defendant is found to be a principle defendant within the meaning of the local controversy exception depends on whether the defendant is a defendant (1) "from whom significant relief is sought by" the class; (2) "whose alleged conduct forms a significant basis for the claims asserted by" the class; and (3) "who is a citizen of the State in which the action was originally filed." (12 U.S.C. §

Cheryl Haas
Page 4
August 16, 2013

1332(d)(4)(A)(i).) In determining whether these factors apply, the Court will only look to Plaintiffs' pleadings, and will not engage in a factual investigation. (See *Coleman v. Estes Express Lines, Inc.* (2011) 631 F.3d 1010, 1016.) Based on Mr. Russon's deposition testimony, it is clear that he and Russon Financial were closely involved with Bruce Friedman in the fraudulent DLG Ponzi scheme.

And third, the principle injuries suffered by Plaintiffs were incurred in California.

Should the MetLife Defendants attempt to remove the case to federal court, Plaintiffs will successfully move to remand the case back to state court. In addition, if Defendants move for removal, Plaintiffs will seek sanctions when the action is inevitably remanded back to state court on the fact that this action clearly falls with the "local controversy exception."

Very truly yours,

Thomas G. Foley, Jr.

TGF:cc

cc: Richard Donahoo; John Stillman; Ted Peters

Exhibit H - 000283



SUTHERLAND ASBILL & BRENNAN LLP
999 Peachtree Street, NE
Atlanta, GA 30309-3996
404.853.8000 Fax 404.853.8806
www.sutherland.com

**CHERYL L. HAAS**
DIRECT LINE: 404.853.8521
E-mail: cheryl.haas@sutherland.com

August 20, 2013

<u>VIA EMAIL & U.S. MAIL</u>

Thomas Foley, Esq.
FOLEY, BEZEK, BEHLE & CURTIS, LLP
15 W. Carrillo Street
Santa Barbara, CA 93101

      Re:   DLG Cases

Dear Mr. Foley:

     I write in response to your August 16, 2013 letter.

     You are correct that part of Defendants MetLife, Inc., New England Life Insurance Company, and New England Securities Corporation's (collectively "NEF Defendants") interest in the size of the putative class in this case is the potential that this case is subject to removal pursuant to the Class Action Fairness Act of 2005 ("CAFA"). The NEF Defendants also desire to participate in the mandatory settlement conference in good faith. However, Plaintiffs' Third Amended Consolidated Complaint (the "Complaint" at ¶¶ 61-65), Response to Request for Admissions No. 8, and Response to Special Interrogatory No. 24 not only contradict each other, they also prevent the NEF Defendants from obtaining information that will enable them to reasonably participate in mandatory settlement discussions and prevent the NEF Defendants from properly evaluating whether this case is subject to CAFA removal.[1] The NEF Defendants cannot prepare for a settlement conference in which the size of the class is believed by Plaintiffs to be under 100 potential members, but where Plaintiffs' own discovery responses demonstrate that the number of potential members exceeds 240.

     Your arguments against amendment are baseless. First, Code of Civil Procedure Section 2033.300 does not support your refusal to amend your denial in response to Request No. 8

———————————————

[1] Because the NEF Defendants have not received documents sufficient to establish that the class exceeds 100 members, any discussion of whether this case is removable is premature, much less a discussion of the existence (or lack thereof) of a basis to remand or the alleged basis for sanctions for a hypothetical removal after a hypothetical remand. I note, however, that the list of potential class members produced by Plaintiffs falls far short of establishing the citizenship of the class members or the other elements of 28 U.S.C. § 1332(d)(4), as you assert.

22140753.3

ATLANTA      AUSTIN      HOUSTON      NEW YORK      SACRAMENTO      WASHINGTON DC

Exhibit I - 000284

August 20, 2013
Page 2

because (as you quote) Section 2033.300 only applies to an amendment of "an **admission** made in response to a request for admission" and not a **denial**. Request No. 8 and Plaintiffs' response to the Request states as follows:

> Admit the number of potential class members exceeds one hundred.

> RESPONSE TO REQUEST FOR ADMISSION NO. 8:

> Objection. Responding Party incorporates the General Objections as though fully set forth herein and specifically asserts the Compilation, Time-Period, and Work Product Objection as to the term "business dealings with MetLife." Notwithstanding the objections, Responding Party Responds: Deny, based on lack of information and belief.

Accordingly, §2033.300 does not support your refusal to amend Response No. 8.

Additionally, your citation to dicta from *Burch v. Gambos* to support your refusal to amend your responses is misplaced, as *Burch* does not stand for the proposition that parties may refuse to amend facially deficient responses to request for admission. Code of Civil Procedure § 2033.220(c) states that:

> If a responding party gives lack of information or knowledge as a reason for a failure to admit all or part of a request for admission, that party shall state in the answer that a reasonable inquiry concerning the matter in the particular request has been made, and that the information known or readily obtainable is insufficient to enable that party to admit the matter.

In Plaintiffs' Response to Request for Admissions No. 8, Plaintiffs responded that they "[d]en[ied], based on lack of information and belief." Plaintiffs did not, however, comply with § 2033.220(c) by confirming that "a reasonable inquiry concerning the matter in the particular request has been made, and that the information known or readily obtainable is insufficient to enable that party to admit the matter." Given the fact that Plaintiffs now believe that there are over 140 class members more than 100, the NEF Defendants question Plaintiffs' denial, less than eight months ago, that the class exceeded 100.

I request, therefore, that you amend Plaintiffs' Response to Request for Admissions No. 8 (to comply with §2033.220(c) and confirm that currently, after "a reasonable inquiry" Plaintiffs' admit that the number of potential class members exceeds 100) as well as the Complaint (pursuant to Code of Civil Procedure § 473, to provide a good faith representation of the size of the class). I will agree, on behalf of the NEF Defendants, not to oppose such amendments. Given your certainty that this case is subject to CAFA's local controversy exception—a certainty that the NEF Defendants do not share—I trust that you would have no issues correcting the discrepancy between Plaintiffs' Response to Special Interrogatory No. 24 and Plaintiffs' representations regarding the size of the purported class in the Complaint and Response to

22140753.3

Exhibit I - 000285

August 20, 2013
Page 3


Request for Admissions No. 8. Your refusal to do so will be considered as a bad-faith effort to prejudice the NEF Defendant's abilities to defend themselves in this case.  Again, if you do not clarify the size of the class as well as its membership, the NEF Defendants cannot meaningfully participate in the mandatory settlement conference and can only operate under the assumption that the Complaint's representation regarding the size of the class is correct.

       Very truly yours,

       Cheryl L. Haas


CLH/asf

cc:
      John A. Stillman
      Richard E. Donahoo
      Ted Peters

22140753.3

Exhibit I - 000286

# EXHIBIT J

1 Curtis D. Parvin (Bar No.116079)
  Jemma Eriksen (Bar No. 258454)
2 **SEDGWICK LLP**
  Telephone: (949) 852-8200
3 Facsimile: (949) 852-8282
  3 Park Plaza, 17th Floor
4 Irvine, CA  92614-8540
  curtis.parvin@sedgwicklaw.com
5 jemma.eriksen@sedgwicklaw.com

6 Cheryl L. Haas-Goldstein (*Pro Hac Vice*)
  Bryan M. Ward (California Bar No. 218649)
7 **SUTHERLAND ASBILL & BRENNAN LLP**
  999 Peachtree Street, NE
8 Atlanta, GA  30309-3996
  Telephone: (404) 853-8000
9 Facsimile: (404) 853-8806
  cheryl.haas-goldstein@sutherland.com
10 bryan.ward@sutherland.com

11 *Attorneys for Defendants MetLife, Inc., New England*
  *Life Insurance Company, New England Securities*
12 *Corporation, and New England Financial*

13

14   **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
   **COUNTY OF LOS ANGELES—CENTRAL CIVIL WEST DIVISION**

15

| | |
|---|---|
| ***IN RE DLG RELATED CASES*** | Assigned for All purposes to the Hon. Elihu M. Berle, CCW Dept. 323 – All Related |
| THIS PLEADING RELATES TO: | |
| LAWRENCE J. CANTOR, *etc., et al.*, | All Related Case Nos. BC446497, BC443270, BC446630, BC450293, BC452092, BC456412, BC456561, SC108930, LC090770, BC454198, BC454632, BC456560, BC460697, BC456405, BC456651 |
|     Plaintiffs, | |
|     vs. | |
| METLIFE, INC., *etc., et al.*, | Case No.: LEAD CASE NO. BC446497 (BC456651 Consolidated With BC446497) |
|     Defendants. | |
| SAM GUPTA, *etc., et al.*, | DEFENDANTS METLIFE, INC., NEW ENGLAND LIFE INSURANCE COMPANY, AND NEW ENGLAND SECURITIES CORPORATION'S AMENDED FOURTH SET OF INTERROGATORIES TO PLAINTIFF LAWRENCE J. CANTOR |
|     Plaintiffs, | |
| vs. | |
| LARRY BAGBY, *etc., et al.*, | |
|     Defendants. | |

27

28

Case BC446497

Exhibit J - 000287

PROPOUNDING PARTY:    Defendants METLIFE, INC., NEW ENGLAND LIFE
INSURANCE COMPANY, NEW ENGLAND SECURITIES
CORPORATION

RESPONDING PARTY:    Plaintiff, LAWRENCE J. CANTOR.

SET NUMBER:          FOUR (4)_____

Defendants MetLife, Inc., New England Life Insurance Company, and New England

Securities Corporation, Tony Russon, and Russon Financial Services, Inc. (collectively,

"Defendants") request that Plaintiff Lawrence J. Cantor within thirty (30) days after service of these

interrogatories, respond to the below interrogatories under oath pursuant to Code of Civil Procedure

section 2030.210. Defendants expressly reserve their right to propound additional interrogatories if

the case progresses.

## SPECIAL INTERROGATORY REQUESTS

**Special Interrogatory No. 28:**    With respect to any of the individuals included in the

Schedule attached hereto as Exhibit 1, IDENTIFY each and every identified person included in

Exhibit 1 who has indicated to YOU that they did receive a "Welcome Packet" as referenced in

Paragraph 33 of the Plaintiffs' Third Amended Complaint, which states, in part, as follows: "All

Persons who entered into a Contract with DLG and invested funds with DLG between December

2004 and March 4, of 2009, after being provided with a copy of the DLG Welcome Packet by an

insurance agent affiliated with Defendants NELICO and MetLife, or by a registered

representative affiliated with Defendant NES, and whose entire principal investment was not

repaid by DLG (the "Class")."

**Special Interrogatory No. 29:**    IDENTIFY the bates numbers of the pages that constitute

the "Welcome Packet" as referenced in Special Interrogatory No. 31 and/or any documents

included in the "Welcome Packet."

**Special Interrogatory No. 30:**    With respect to any of the individuals included in the

Schedule attached hereto as Exhibit 1, IDENTIFY each and every identified person included in

Exhibit 1 who has received compensation, remuneration, or reimbursement for his or her entire

principal investment into DLG.

Case BC446497

2

DEFENDANTS METLIFE, INC., NEW ENGLAND LIFE INSURANCE COMPANY, NEW ENGLAND SECURITIES CORPORATION'S
AMENDED FOURTH SET OF INTERROGATORIES TO LAWRENCE J. CANTOR

Exhibit J - 000288

**Special Interrogatory No. 31:**      With respect to any of the individuals included in the Schedule attached hereto as Exhibit 1, IDENTIFY each and every identified person included in Exhibit 1 who is related to any of the Doe Defendants, which include "individuals who acted as Agents of the MetLife Defendants."

**Special Interrogatory No. 32:**      With respect to any of the individuals included in the Schedule attached as Exhibit 1 attached hereto, IDENTIFY each individual who is a member of the Elder Abuse Subclass, as that term is defined in Plaintiffs Third Amended Complaint, Paragraph 62, which states as follows: "A subclass of the Class is comprised of all persons who had attained age sixty-five (65) at the time that they were provided with a copy of the DLG Welcome Packet by an insurance agent affiliated with Defendants NELICO and/or MetLife, or a registered representative affiliated with Defendant NES, and in reliance upon the representations contained in the Welcome Packet, entered into a Contract with DLG between December 2004 and March 2009, based on the representations contained in the Welcome Packet, and whose entire investment was not repaid by DLG (the "Elder Abuse Subclass")."

**Special Interrogatory No. 33:**      IDENTIFY (for purposes of this interrogatory the term "IDENTIFY" shall mean state the name, last known address, and telephone number of the person or entity) each and every potential member of the proposed class that is excluded from the class for the reasons set forth in Paragraph 64 of the Complaint, which states as follows: "Excluded from the definition of the Class and Elder Abuse Subclass are the Defendants and any person, corporation, or other entity related to, controlled by, or affiliated with, any Defendant. Also excluded from the Class are the Court, the Court's spouse, all persons within the third degree of relationship to the Court, and the spouses of such persons. Included in the term 'Persons' in the definitions of the Class and Subclass are entities and representatives of these entities. Also excluded from the Class and Subclass are individuals who have previously settled their claims with Defendants."

**Special Interrogatory No. 34:**      With respect to any of the individuals included in the Schedule attached hereto as Exhibit 1, IDENTIFY the State in which the individual is a citizen.

Case BC446497

3

DEFENDANTS METLIFE, INC., NEW ENGLAND LIFE INSURANCE COMPANY, NEW ENGLAND SECURITIES CORPORATION'S
AMENDED FOURTH SET OF INTERROGATORIES TO LAWRENCE J. CANTOR

Exhibit J - 000289

**Special Interrogatory No. 35:** With respect to any of the individuals included in the Schedule attached hereto as Exhibit 1, IDENTIFY each specific individual who provided a copy of a DLG Welcome Packet to each individual listed in Exhibit 1.

**Special Interrogatory No. 36:** IDENTIFY any of the individuals responsive to Special Interrogatory No. 38 who you allege are affiliated with any MetLife Defendant as an insurance agent and/or a registered representative or a relative of same.

**Special Interrogatory No. 37:** With respect to any of the individuals included in the Schedule attached hereto as Exhibit 1, IDENTIFY the date each of the individuals made their investment in DLG.

**Special Interrogatory No. 38:** With respect to any of the individuals included in the Schedule attached hereto as Exhibit 1, IDENTIFY whether each of the individuals invested in the 9% or 12% DLG notes.

**Special Interrogatory No. 39:** With respect to any of the individuals included in the Schedule attached hereto as Exhibit 1, IDENTIFY which of the individuals engaged in premium financing of a MetLife Defendant product with their DLG investment.

**Special Interrogatory No. 40:** IDENTIFY all facts that support your statement in Plaintiffs' Third Amended Complaint, Paragraph 65, that the class does not exceed 100 members.

**Special Interrogatory No. 41:** IDENTIFY all facts that support your response to Request for Admission 8 denying that the number of class members exceeds 100 members.

Case BC446497

4

DEFENDANTS METLIFE, INC., NEW ENGLAND LIFE INSURANCE COMPANY, NEW ENGLAND SECURITIES CORPORATION'S
AMENDED FOURTH SET OF INTERROGATORIES TO LAWRENCE J. CANTOR

Exhibit J - 000290

1  **Special Interrogatory No. 42:**    IDENTIFY all facts that support your response to Request

2  for Admission No. 9 admitting that the amount of alleged damages claimed by all known

3  potential class members exceeds $5 million.

4

5

6  DATED: August 19, 2013                    SUTHERLAND ASBILL & BRENNAN LLP

7                                            By: _____

8                                            Cheryl L. Haas-Goldstein (*Pro Hac Vice*)
                                             Bryan M. Ward (California Bar No. 218649)

9
                                             *Attorneys for Defendants MetLife, Inc., New*
10                                           *England Life Insurance Company, New England*
                                             *Securities Corporation, and New England*
11                                           *Financial*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case BC446497

Exhibit J - 000291

**PROOF OF SERVICE**

1

2    I am employed in the County of Fulton, State of Georgia, over the age of eighteen years
and not a party to the within action. My business address is Sutherland Asbill & Brennan LLP,

3    999 Peachtree Street, NE, Atlanta, Georgia 30309-3996.

4
     On August 19, 2013, I served a true and correct copy of the within document(s) described

5    as:

6
     **DEFENDANTS METLIFE, INC., NEW ENGLAND LIFE INSURANCE**

7    **COMPANY, NEW ENGLAND SECURITIES CORPORATION'S AMENDED FOURTH**
     **SET OF INTERROGATORIES TO PLAINTIFF LAWRENCE J. CANTOR**

8

9    on the interested parties in this action as follows:

10   **SEE ONLINE SERVICE LIST *IN RE DLG RELATED CASES* ON CASEHOMEPAGE**

11

12   ☒    ELECTRONIC SUBMISSION VIA FTP – by transmitting electronically a true and
     correct copy of the above listed document on counsel of record on this date to

13   www.CaseHomePage.com by file transfer protocol (FTP) upload pursuant to the Case
     Management Order dated April 22, 2011.

14

15   I declare under penalty of perjury under the laws of the State of Georgia that the above is
     true and correct. Executed on August 19, 2013, at Atlanta, Georgia.

16

17   *Holly Gartrell*

18   Holly Gartrell

19

20

21

22

23

24

25

26

27

28

Case No. BC446497

PROOF OF SERVICE
P-1

Exhibit J - 000292

# EXHIBIT 1

# EXHIBIT 1

| DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Yield |
|---|---|---|---|---|---|---|---|---|---|
| Mary Albee | Albee | Mary | Brandt | $75,000.00 | 4850 Moorpark Road | Santa Rosa Valley | CA | 93012 | 12 |
| Scott L. Armstrong | Armstrong | Scott | Brandt | $112,500.00 | P. O. Box 3362 | Thousand Oaks | CA | 91359 | 9 |
| Scott L. Armstrong | Armstrong | Phillis | Brandt | | P. O. Box 3362 | Thousand Oaks | CA | 91359 | 9 |
| First Commerce Bank Cust. FBO - Joseph J. Barbagiovanni | Barbagiovanni | Joseph | Lawton | $100,000.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| Jaime Bejarano | Bejarano | Jaime | Belfer/Kroner | $300,000.00 | 4347 Landerus Ave | La Verne | CA | 91750 | 9 |
| Jaime Bejarano | Bejarano | Rosalba | Belfer/Kroner | | 4347 Landerus Ave | La Verne | CA | 91750 | 9 |
| Dean Blagg | Blagg | Dean | Lawton | $210,000.00 | 6829 Altamor Dr. | Los Angeles | CA | 90045 | 12 |
| Dean Blagg | Blagg | Cynthia | Lawton | | 6829 Altamor Dr. | Los Angeles | CA | 90045 | 12 |
| Robert H. Borden | Borden | Robert | Brandt | $50,000.00 | 13615 Lemay St. | Valley Glen | CA | 91401 | 9 |
| Robert H. Borden | Borden | Chalene | Brandt | | 13615 Lemay St. | Valley Glen | CA | 91401 | 9 |
| Julianne Brandt AKA Julanne Wilson Living Trust dated November 3, 2008 | Brandt | Julianne | Brandt | $93,260.00 | 1 Corte Rossa | Lake Elsinore | CA | 92532 | 12 |
| Chelsea Brandt | Brandt | Chelsea | Brandt | $175,000.00 | 244 Lake Sherwood Drive | Thousand Oaks | CA | 91361 | 12 |
| Jason Brandt | Brandt | Jason | Brandt | $100,000.00 | 244 Lake Sherwood Drive | Thousand Oaks | CA | 91361 | 12 |
| Rory Brandt | Brandt | Rory | Brandt | $175,000.00 | 244 Lake Sherwood Drive | Thousand Oaks | CA | 91361 | 12 |
| First Commerce Bank Cust. FBO - Timothy Brandt | Brandt | Timothy | Brandt | $27,690.00 | 8195 Melrose Way | El Dorado Hills | CA | 95762 | 12 |
| First Commerce Bank Cust. FBO - Julanne Brandt-Wilson | Brandt-Wilson | Julanne | Brandt | $93,260.00 | 1 Corte Rossa | Lake Elsinore | CA | 92532 | 9 |
| Blue Coyote Pictures, Inc. aka Roy Brewington Trust | Brewington | Roy | Brandt | $18,084.00 | Address unknown | | | | |
| First Commerce Bank Cust. FBO - Robert G. Brotherton | Brotherton | Robert | Lawton | $98,458.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| Jerome L. Brown | Brown | Jerome | Lawton | $100,000.00 | 3023 Sunset Hill Drive | West Covina | CA | 91791-224 | 9 |
| Jerome L. Brown | Brown | Gregory | Lawton | | 3023 Sunset Hill Drive | West Covina | CA | 91791-224 | 9 |
| Richard W. Caldarone | Caldarone | Richard | Corzan | $600,000.00 | 73-4522 Hane Street | Kailua-Kona | HI | 96740 | 9 |
| Richard W. Caldarone | Caldarone | Robelita | Corzan | | 73-4522 Hane Street | Kailua-Kona | HI | 96740 | 9 |
| Marlene E. Calvert | Calvert | Marlene | Lawton | $50,000.00 | 20733 E. Rancho Los Cerritos Road | Covina | CA | 91724-353 | 12 |
| Bruno Campos Revocable Trust | Campos | Bruno | Lawton | $2,003,838.50 | 9401 Cherokee lane | Beverly Hills | CA | 90210 | 12 |
| Bruno Campos Revocable Trust | Campos | Bruno | Lawton | $78,957.28 | 9401 Cherokee Ln | Beverly Hills | CA | 90210 | 12 |
| Marina Campos | Campos | Mariana | Lawton | $243,000.00 | 9401 Cherokee Ln | Beverly Hills | CA | 90210 | |
| Lawrence J. Cantor | Cantor | Lawrence | Brandt | $1,413,000.00 | P.O. Box 1679 | Venice | CA | 90294 | 12 |
| Lawrence Cantor | Cantor | Patti | Brandt | | P.O. Box 1679 | Venice | CA | 90294 | 12 |
| Adelandra Capparuccia | Capparuccia | Adelandra | Brandt | $50,000.00 | Address unknown | | | | |
| Olga Chapa | Chapa | Olga | Cano | $75,000.00 | 827 W. Hillcrest Blvd. | Monrovia | CA | 91016 | 12 |
| Youngmin Choi | Choi | Youngmin | Brandt | $100,000.00 | 5410 Isabella Ct. | Agoura Hills | CA | 91301 | 12 |
| First Commerce Bank Cust. FBO - Charles R. Cobb | Cobb | Charles | Lawton | $122,034.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |

| DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Yield |
|---|---|---|---|---|---|---|---|---|---|
| Brenda Coble | Coble | Brenda | Cano/AEI | $50,000.00 | 74-075 Petunia Place | Palm Desert | CA | 92260 | 9 |
| Cohen Family Trust | Cohen | Robert | Brandt | $74,000.00 | 16550 Bosque Dr. | Encino | CA | 91436 | 12 |
| Robert Cohen | Cohen | Robert | Brandt | $605,000.00 | 16550 Bosque Dr. | Encino | CA | 91436 | 12 |
| Fred Cohen | Cohen | Fred | Brandt | $300,000.00 | P.O Box 550181 | South Lake Tahoe | CA | 96155 | 12 |
| Stephen M. Cole | Cole | Stephen | Lawton | $500,000.00 | 850 Virginia St | El Segundo | CA | 90245 | 9 |
| Tigris Insurance Company LMTD. | Cole | Stephen | Lawton | | 850 Virginia Street | El Segundo | CA | 90845 | 12 |
| First Commerce Bank Cust. FBO - Robert J. Comer | Comer | Robert | Lawton | $55,275.00 | 1531 Curson Ave | Los Angeles | CA | 90046 | 12 |
| Gerald D. Coulter | Coulter | Gerald | Brandt | $250,000.00 | 11161 Sumac Lane | Santa Rosa Valley` | CA | 93012 | 12 |
| Gerald D. Coulter | Coulter | Bobbie | Brandt | | 11161 Sumac Lane | Santa Rosa Valley` | CA | 93012 | 12 |
| First Commerce Bank Cust. FBO - Michael Dilger | Dilger | Michael | Brandt | $66,765.48 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| First Commerce Bank Cust. FBO - Philip Dipaola | Dipaola | Philip | Lawton | $99,142.00 | 22232 Craft Ct. | Calabasas | CA | 91302 | 9 |
| Michael Dixon | Dixon | Michael | Brandt | $800,000.00 | 260 Princeton Dr | Costa Mesa | CA | 92626 | 9 |
| Michael Dixon | Dixon | Linda | Brandt | | 260 Princeton Dr | Costa Mesa | CA | 92626 | 9 |
| Arlene Dodson-Franssen | Dodson-Franssen | Arlene | Brandt | $124,000.00 | 132 Driftwood Dr. | Florence | OR | 97439 | NULL |
| Duarte Family Trust 7-7-06 | Duarte | Alberto | Brandt | $100,000.00 | 635 Covington Ave. | Simi Valley | CA | 93065 | 9 |
| Revocable Living Trust of John T. Duff III and Janet Duff | Duff | Janet | Brandt | $140,000.00 | 10700 Bloomfield St | Toluca Lake | CA | 91602-278 | 12 |
| Revocable Living Trust of John T. Duff III and Janet Duff | Duff | John | Brandt | $350,000.00 | 10700 Bloomfield St | Toluca Lake | CA | 91602-278 | 12 |
| First Commerce Bank Cust. FBO - James R. Dugue | Dugue | James | Brandt | $12,850.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| Jack E. Dunn | Dunn | Jack | Brandt | $100,000.00 | 1540 Paul Street | Simi Valley | CA | 93065 | 12 |
| Durose Family Trust Dated November 16, 2006 | Durose | Kelly | Brandt | $217,881.48 | 2212 Raintree Ct | Rucklin | CA | 95765 | 12 |
| First Commerce Bank Cust. FBO - Michele Durose | Durose | Michele | Brandt | $115,612.00 | 17550 Sunburst St. | Northridge | CA | 91325 | 12 |
| First Commerce Bank Cust. FBO - Wayne Durose | Durose | Wayne | Brandt | $21,538.00 | 17550 Sunburst St. | Northridge | CA | 91325 | 12 |
| Tracy Anne Durose | Durose | Tracy Anne | Brandt | $17,469.00 | 2212 Raintree Ct | Rucklin | CA | 95765 | |
| Christophe Eme | Eme | Christophe | Lawton | $337,694.76 | 11845 W. Olympic Blvd | Los Angeles | CA | 90064 | 9 |
| Jerry M. Engelhardt & Lynda T. Engelhardt Living Trust dated October 29, 1997 | Engelhardt | Jerry | Belfer/Kroner | $500,000.00 | 1349 S. Empire St. | Anaheim | CA | 92804 | 12 |
| Jerry M. Engelhardt and Lynda T. Engelhardt Living Trust dated October 29, 1997 | Engelhardt | Lynda | Belfer/Kroner | | 1349 S. Empire Street | Anaheim | CA | 92804 | 9 |
| David M. Engert | Engert | David | Corzan | $1,275,000.00 | 5702 Palo Cristi Rd. | Paradise Valley | AZ | 85253 | 9 |
| David M. Engert | Engert | Kimberly | Corzan | $250,000.00 | 5702 Palo Cristi Rd. | Paradise Valley | AZ | 85253 | 9 |
| First Commerce Bank Cust. FBO - Edward English III | English, III | Edward | Lawton | $258,477.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| Steven Eric Feir | Feir | Steven | Brandt/AEI | $653,992.25 | P.O. Box 7848 | Mammoth Lakes | CA | 93546 | 9 |

Exhibit 1, p. 2 of 9

Exhibit J - 000295

| DUG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Yield |
|---|---|---|---|---|---|---|---|---|---|
| Pilar Feir | Feir | Pilar | Brandt | $480,000.00 | 119 Eastwind Street | Marina Del Rey | CA | 90292 | 12 |
| Jules Feir | Feir | Jules | Cano/AEI | $147,997.35 | 13523 Cheltenham Dr. | Sherman Oaks | CA | 91423-481 | 12 |
| Jules Feir | Feir | Francine | Cano/AEI | | 13523 Cheltenham Dr. | Sherman Oaks | CA | 91423-481 | 12 |
| First Commerce Bank Cust. FBO -Jules Feir | Feir | Jules | Cano/AEI | $437,958.00 | c/o Polycomp | Woodland Hills | CA | 91423-481 | |
| Francesco Ferrario | Ferrario | Francesco | Brandt | $50,000.00 | 2626 Armacost Ave. | Los Angeles | CA | 90064 | 12 |
| Ira Fine | Fine | Ira | Belfer/Kroner | $612,312.30 | 3915 Hayvenhurst Ave | Encino | CA | 91436 | 9 |
| The WDF Living Trust of 1995 dated April 21, 1995 | Forsyth | Seth | Lawton | $70,835.49 | 2128 Tapia Dr. | Malibu | CA | 90265 | 9 |
| WDF Living Trust 1995 | Forsyth | William | Lawton | $782,000.00 | 6128 Tapia Dr | Malibu | CA | 90265 | 12 |
| Shaina Forsyth | Forsyth | Shaina | Lawton | $65,000.00 | 6128 Tapia Dr. | Malibu | CA | 90265 | 9 |
| Wesley Forsyth | Forsyth | Wesley | Lawton | $75,000.00 | 4087 N. Paua Way | Lahaina | HI | 96761 | |
| Karen Forsyth | Forsyth | Karen | Lawton | $250,000.00 | 4087 N. Paua Way | Lahaina | HI | 96761 | 9 |
| William D. Forsyth II | Forsyth II | William | Lawton | $250,000.00 | 6128 Tapia Dr | Malibu | CA | 90265 | 9 |
| William D. Forsyth II | Forsyth II | William | Lawton | | 6128 Tapia Dr. | Malibu | CA | 90265 | 9 |
| William Frankenstein | Frankenstein | William | Russon | $150,000.00 | 22750 Sparrow Dell | Calabasas | CA | 91302 | 9 |
| Fraser Communications Defined Benefit Pension Plan | Fraser | Renee | Belfer/Kroner | $91,000.00 | 2811 Wilshire Blvd. | Santa Monica | CA | 90403 | 12 |
| First Commerce Bank Cust. FBO - Harvin Galper | Galper | Harvin | Lawton | $1,000,000.00 | 11815 Dorothy Street | Los Angeles | CA | 90049 | 9 |
| First Commerce Bank Cust. FBO - Harvin Galper | Galper | Merle | Lawton | $300,000.00 | 11815 Dorothy Street | Los Angeles | CA | 90049 | 12 |
| First Commerce Bank Cust. FBO - Burton Galper | Galper | Burton | Lawton | $228,355.00 | 9594 Castillana Court | Las Vegas | NV | 89147 | 9 |
| Sheila Galper | Galper | Sheila | Lawton | $174,565.00 | 9594 Castillana Court | Las Vegas | NV | 89147 | 9 |
| Elizabeth Gibbons | Gibbons | Elizabeth | Ianerelli | $135,000.00 | 7105 Geyser | Reseda | CA | 91335 | 12 |
| Ilisa C. Gilmer | Gilmer | Ilisa | Corzan | $61,000.00 | 12731 Pacific Ave | Los Angeles | CA | 90066 | 9 |
| First Commerce Bank Cust. FBO - Chad Gledhill | Gledhill | Chad | Cano | $50,000.00 | 4121 Witherow Road | Winston-Salem | NC | 27106 | 12 |
| First Commerce Bank Cust. FBO - Mary Gledhill | Gledhill | Mary | Cano | $125,000.00 | 4121 Witherow Road | Winston-Salem | NC | 27106 | 12 |
| Jil Glyman | Glyman | Jil | Lawton | $315,000.00 | 1905 Spyglass Dr. | Henderson | NV | 89014-104 | 9 |
| Ron Gonzalez | Gonzalez | Ron | Brandt | $132,500.00 | 21510 Chirping Sparrow Road | Diamond Bar | CA | 91765 | 12 |
| Ron Gonzalez | Gonzalez | Maria | Brandt | | 21510 Chirping Sparrow Road | Diamond Bar | CA | 91765 | 12 |
| John F. Gregory | Gregory | John | Lawton | $50,000.00 | 4536 Skye Dr. | Bakersfield | CA | 93308 | 12 |
| Samuel Gupta | Gupta | Samuel | Brandt | $42,500.00 | 2736 Armour Ln | Redondo Beach | CA | 90278 | 12 |
| Samuel Gupta | Gupta | Janet | Brandt | | 2736 Armour Ln | Redondo Beach | CA | 90278 | 12 |
| First Commerce Bank Cust. FBO - Patricia Hank | Hank | Patricia | Brandt | $275,384.00 | 4261-3 Las Virgines Rd. | Calabasas | CA | 91302 | 12 |
| John Hank | Hank | John | Brandt | $45,000.00 | 4261-3 Las Virgines Rd. | Calabasas | CA | 91302 | 12 |
| Michael J. Hansen | Hansen | Michael | Brandt | $250,000.00 | 1221 Ocean Ave #1006 | Santa Monica | CA | 90401 | 12 |

Exhibit 1, p. 3 of 9

Exhibit J - 000296

| DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Yield |
|---|---|---|---|---|---|---|---|---|---|
| The Hartshorne Family Trust dated September 12, 2002 | Hartshorne | Robert | Brandt | $200,000.00 | 7790 Highway 126 | Florence | OR | 97439 | 12 |
| The Hartshorne Family Trust dated September 12, 2002 | Hartshorne | MaryAnn | Brandt | | 7790 Highway 126 | Florence | OR | 97439 | 12 |
| First Regional Bank Cust. FBO - John Haynes | Haynes | John | Brandt | $50,000.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| California National Bank Cust. FBO - Harold Henson | Henson | Harold | Lawton | $100,000.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 9 |
| James Heyward | Heyward | James | Ianerelli | $15,050.00 | 3645 W. Chapman Lane | Inglewood | CA | 90305 | 12 |
| First Commerce Bank Cust. FBO- Robert E. Hiett | Hiett | Robert | Lawton | $136,050.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| Horwitz Living Trust dated April 19, 1995 | Horwitz | Hermine | Lawton | | 5320 Orville Ave | Woodland Hills | CA | 91367 | 9 |
| Horwitz Living Trust dated April 19, 1995 | Horwitz | Lewis | Lawton | $700,000.00 | 5320 Orville Ave. | Woodland Hills | CA | 91367 | 12 |
| First Commerce Bank Cust. FBO - Toni Iannarelli | Iannarelli | Toni | Russon | | 3739 Calle Jasmin | Calabasas | CA | 91302 | 12 |
| First Commerce Bank Cust. FBO - Michael Iannarelli | Iannarelli | Michael | Russon | $102,000.00 | 3739 Calle Jasmin | Calabasas | CA | 91302 | 12 |
| Kevin Troy Idukas | Idukas | Kevin | Brandt | $50,000.00 | 19 McAfee Court | Thousand Oaks | CA | 91360 | 12 |
| Karla D. Ives | Ives | Karla | Giovanni Pizzoferra | $50,000.00 | 3570 Cortner Ave | Long Beach | CA | 90808 | 9 |
| Itzen Family Trust 5-24-90 | Itzen | Ted | Cano | $50,000.00 | 23280 Bluebird Dr. | Calabasas | CA | 91302 | 12 |
| Steve Jacobs Defined Benefit Plan | Jacobs | Steve | AEI | $723,300.00 | Box 13926 | South Lake Tahoe | CA | 96151 | 12 |
| Gayle G. Johnson | Johnson | Gayle | Lawton | $100,000.00 | 176 Reservoir | Stanardsville | VA | 22973 | 12 |
| Donald K. Jong | Jong | Donald | Brandt | $250,000.00 | 4699 Via Canada | Newbury Park | CA | 91320 | 12 |
| Donald K. Jong | Jong | Janet | Brandt | | 4699 Via Canada | Newbury Park | CA | 91320 | 12 |
| Carol Jonsson | Jonsson | Carol | Brandt | $50,000.00 | P.O. Box 270454 | San Diego | CA | 92198 | 9 |
| Lace Jordan | Jordan | Lace | Iannarelli | $530,000.00 | 1501 Ironbank Dr. | Henderson | NV | 89014 | 12 |
| Kassap Family Trust 05/01/92 | Kassap | Stanley | Brandt | $300,000.00 | 19635S Mandalay Dr. | Encino | CA | 91436 | 12 |
| First Commerce Bank Cust. FBO - Ralph A. Khan | Khan | Ralph | Lawton | $202,762.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| First Commerce Bank Cust. FBO - Tara Kahn | Khan | Tara | Lawton | $58,923.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| Law Offices of George Knopfler Defined Benefit Pension Plan | Knopfler | Deborah | Brandt | | 31194 La Baya | Westlake Village | CA | 91361 | 12 |
| Law Offices of George Knopfler 401 (K) Profit Sharing Plan | Knopfler | George | Brandt | $318,094.39 | 31194 La Baya Drive | Westlake Village | CA | 91362 | 12 |
| Sharlene E. Kreiner Trust Dated November 10, 2000 | Kreiner | Sharlene | Brandt | $70,000.00 | 434 S. Walter | Newbury Park | CA | 91320 | 12 |
| First Commerce Bank Cust. FBO - Cletus Kuhla | Kuhla | Cletus | Lawton | $39,729.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 9 |
| Linda Lessing | Lessing | Linda | Lawton | $144,463.00 | 10345 Almayo Ave. | Los Angeles | CA | 90064 | 9 |

Exhibit I, p. 4 of 9

Exhibit J - 000297

| DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Yield |
|---|---|---|---|---|---|---|---|---|---|
| Soltman, Levitt & Flaherty, LLP 401K Profit Sharing Plan | Levitt | John | Kroner/Belfer | $79,901.62 | 1445 Pleasant Oaks Pl | Thousand Oaks | CA | 91362 | 9 |
| John Levitt | Levitt | John | Kroner/Belfer | $52,319.53 | 2535 Townsgate Road | Westlake Village | CA | 91361 | 9 |
| Baldassare Licata Revocable Trust Dated March 25, 1991 | Licata | Baldassare | Lawton | $51,600.00 | 2104 NE 44th St. | Fort Lauderdale | FL | 33308 | 9 |
| Maddalena Licata Revocable Trust Dated March 25, 1991 | Licata | Maddalena | Lawton | $51,600.00 | 2104 NE 44th St. | Fort Lauderdale | FL | 33308 | 9 |
| Johanna Lieberman | Lieberman | Johanna | Brandt | $25,000.00 | Address unknown | | | | |
| Francisco Ferrario Lieberman | Lieberman | Francisco | Brandt | | Address unknown | | | | |
| Charles F. Logan | Logan | Charles | Brandt | $180,000.00 | 1342 Caren Ct. | Lancaster | CA | 93534 | 12 |
| The Marilyn D. Long Revocable Trust | Long | Marilyn | Belfer | $100,000.00 | 3117 East Cortez St. | Pheonix | AZ | 85028 | 9 |
| First Commerce Bank Cust. FBO - Tracy Anne Lopez | Lopez | Tracy | Brandt | $21,326.00 | 6400 Canoga Ave. | Woodland Hills | CA | 93105 | 12 |
| First Commerce Bank Cust. FBO - Charles T. Mahew | Mahew | Charles | Lawton | $400,000.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| First Commerce Bank Cust. FBO - Leonard R. Mains | Mains | Leonard | Lawton | $48,500.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| First Commerce Bank Cust. FBO- Marilyn M. Malloy | Malloy | Marilyn | Lawton | $73,198.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| Alan Mandel | Mandel | Alan | Brandt | $125,000.00 | 7425 NW 79th St | Miami | FL | 33166 | 12 |
| Alan Mandel | Mandel | Janine | Brandt | | 7425 NW 79th St | Miami | FL | 33166 | 12 |
| Mann Family Trust dated November 15, 2007 | Mann | Michael | Brandt | $320,000.00 | 14380 E. Loyola St. | Moorpark | CA | 93021 | 12 |
| Mann Family Trust dated November 15, 2007 | Mann | Janet | Brandt | | 14380 E. Loyola St. | Moorpark | CA | 93021 | 12 |
| David Mann | Mann | David | Brandt | $88,905.87 | 191 Welsh Ct | Simi Valley | CA | 93065 | 12 |
| David Mann | Mann | Linda | Brandt | | 191 Welsh Ct | Simi Valley | CA | 93065 | 12 |
| Noel McCord | McCord | Noel | Belfer | $200,000.00 | 444 Summer Ave | Aptos | CA | 95003 | 12 |
| Noel McCord | McCord | Jessica | Belfer | | 444 Summer Ave | Aptos | CA | 95003 | 12 |
| First Commerce Bank Cust. FBO- Lawrence McCorkle | McCorkle | Lawrence | Brandt | $25,593.42 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| California National Bank Cust. FBO - Howard P. McKeon | McKeon | Howard | Brandt | $110,826.75 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| California National Bank Cust. FBO - Patricia McKeon | McKeon | Patricia | Brandt | $59,069.31 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| Mendes Family Trust | Mendes | Pari | Brandt | $56,000.00 | 1004 Poplar Ct. | Simi Valley | CA | 93065 | 12 |
| Sally Mendoza | Mendoza | Sally | Belfer/ Kroner | $150,000.00 | 87 Rivo Alto Canal | Long Beach | CA | 90803 | 9 |
| First Commerce Bank Cust. FBO - Robert Mishkin | Mishkin | Robert | Brandt | $24,567.75 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| Edward George Mitchell | Mitchell | Edward | Lawton | $50,000.00 | 33872 Pequito Dr | Dana Point | CA | 92629 | 9 |
| Edward George Mitchell | Mitchell | Eileen | Lawton | | 33872 Pequito Dr | Dana Point | CA | 92629 | 9 |
| First Commerce Bank Cust. FBO - Donald A. Moffat | Moffat | Donald | Lawton | $46,367.55 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |

Exhibit 1, p. 5 of 9

Exhibit J - 000298

| DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Yield |
|---|---|---|---|---|---|---|---|---|---|
| First Commerce Bank Cust. FBO - Robert E. Moran | Moran | Robert | Lawton | $24,203.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| Caryn Mower | Mower | Caryn | Brandt | $50,000.00 | 388 Jenny Dr | Newbury Park | CA | 91320 | 12 |
| First Commerce Bank Cust. FBO - Joseph J. Munroe | Munroe | Joseph | Brandt | $50,000.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| First Commerce Bank Cust. FBO - Michael C. Murphy | Murphy | Michael | Brandt | $250,000.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| First Commerce Bank Cust. FBO - Laura Murphy | Murphy | Laura | Brandt | $500,000.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| Joyce Newlin | Newlin | Joyce | Lawton | $500,000.00 | 4735 Pine Hurst | Pasadena | CA | 77505 | 12 |
| Stanley Nisenson | Nisenson | Stanley | Belfer | $500,000.00 | 12431 Henzie Place | Granada Hills | CA | 91344 | 9 |
| First Commerce Bank Cust. FBO - Dianne R. Ophelia | Ophelia | Dianne | Corzan | $183,182.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 9 |
| Candie Ortiz | Ortiz | Candie | Cano | $53,197.00 | 28901 Cecil Ave. | Delano | CA | 93215 | 12 |
| Candie Ortiz | Ortiz | Gabino | Cano | | 28901 Cecil Ave. | Delano | CA | 93215 | 12 |
| Candi Ortiz | Ortiz | Candi | Cano | | 30554 Orange Street | Shafter | CA | 93263 | 12 |
| First Commerce Bank Cust. FBO - Margaret Owen | Owen | Margaret | Corzan | $224,464.53 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| First Commerce Bank Cust. FBO - Timothy Owens | Owens, Sr. | Timothy | Brandt | $18,980.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| First Commerce Bank Cust. FBO - Laura Partridge | Partridge | Laura | Corzan | | c/o Polycomp | Woodland Hills | CA | 91367 | 12 |
| Laura Partridge | Partridge | Laura | Corzan | $880,000.00 | 10400 Pine Cone Drive | Truckee | CA | 96161 | 12 |
| Laura Patridge | Patridge | Jeff | Corzan | | 10400 Pine Cone Drive | Truckee | CA | 96161 | 12 |
| Gloria Paulsen | Paulsen | Gloria | Lawton | $60,000.00 | 60 Livingston Ct | Novato | CA | 94949 | 9 |
| Expert Building Maintenance, L | Pedder | Robert | Brandt | $50,000.00 | 1871 Tapo St. | Simi Valley | CA | 93063 | 12 |
| Pereida Family Trust | Pereida | Sandra | Brandt | $45,000.00 | 4917 El Dorado Drive | Laverne | CA | 91750 | 9 |
| Pereida Family Trust | Pereida | Robert | Brandt | | 4917 El Dorado Drive | Laverne | CA | 91750 | 9 |
| Frank Perna | Perna | Frank | Belfer/ Kroner | $8,800,000.00 | 26802 Malibu Cove Colony Dr | Malibu | CA | 90265 | 12 |
| James Pero | Pero | James | Brandt | | 2750 Edgeview | Newbury Park | CA | 91320 | 12 |
| Pomonik Family Trust dated August 1, 2006 | Pomonik | George | Brandt | $353,978,74 | 4144 Meadow Lark Dr | Calabasas | CA | 91302 | 12 |
| Pomonik Family Trust dated August 1, 2006 | Pomonik | Roslyn | Brandt | | 4144 Meadow Lark Dr | Calabasas | CA | 91302 | 12 |
| Joel Pomonik and Denise Pomoni | Pomonik | Denise | Brandt | $322,000.00 | 4491 Poe Ave | Woodland Hills | CA | 91364 | 12 |
| Joel Pomonik | Pomonik | Joel | Brandt | | 4491 Poe Ave | Woodland Hills | CA | 91364 | 12 |
| Ronald Popper, M.D. | Popper, M.D. | Ronald | Belfer/ Kroner | $50,000.00 | 921 Ellesmere Way | Oak Park | CA | 91377 | 12 |
| John Ports | Ports | John | Brandt | $100,000.00 | 13131 Knotty Pine | Moorpark | CA | 93021 | 12 |
| John Ports | Ports | Roneale | Brandt | | 13131 Knotty Pine | Moorpark | CA | 93021 | 12 |
| Dale Pritchard | Pritchard | Dale | Brandt | $402,819.00 | 811 Fowler Avenue | Newbury Park | CA | 91320 | 12 |
| C.L. Quin, III Family Trust '00 | Quin, III | Carroll | Brandt | $110,000.00 | 12723 Park St. | Cerritos | CA | 90703-114 | 12 |
| Christine Ramirez | Ramirez | Christine | Brandt | $284,000.00 | 855 Links View Dr. | Simi Valley | CA | 93065 | 12 |

| DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Yield |
|---|---|---|---|---|---|---|---|---|---|
| First Commerce Bank Cust. FBO - Pamela Richardson | Richardson | Pamela | Brandt | $29,530.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| Linda Robinson | Robinson | Linda | Lawton | $44,115.00 | Address unknown | | | | 12 |
| Kabir Sabherwal | Sabherwal | Kabir | Brandt | $192,750.00 | 12145 Holly Glen Place | Studio City | CA | 91604 | 12 |
| Inderjit & Janak Sabherwal Family Trust of June 1, 1981 | Sabherwal | Janak | Brandt | $35,500.00 | 12145 Holly Glen Place | Studio City | CA | 91604 | 12 |
| Candi Ortiz | Salazar | Angelina | Cano | | 30554 Orange Street | Shafter | CA | 93263 | 12 |
| Wayne & Lauren Sanda Revocable Trust dated July 11, 1998 | Sanda | Wayne | Brandt | $65,000.00 | 22488 Domingo Rd | Woodland Hills | CA | 91364 | 12 |
| George Savatgy | Savatgy | George | Brandt | $23,750.00 | 1233 Ruberta | Glendale | CA | 91201 | 9 |
| Douglas Schoen | Schoen | Douglas | Lawton | $25,000.00 | P.O. Box 1727 | Pacific Palisades | CA | 90272 | 9 |
| Douglas Schoen | Schoen | Susan | Lawton | | P.O. Box 1727 | Pacific Palisades | CA | 90272 | 9 |
| Charles Scholer | Scholer | Charles | Lawton | $40,700.00 | 23909 Lakeside Road | Valencia | CA | 91355 | 9 |
| California National Bank Cust. FBO - Donald J. Scotti | Scotti | Donald | Brandt | $48,980.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| Vivian Hsin Yin Seng | Seng | Vivian | Keng | $50,000.00 | 529 S. Everett Ave. | Monterey Park | CA | 91755 | 9 |
| Shanna Hsin Kuang Seng | Seng | Shanna | Keng | $100,000.00 | 529 S. Everett Ave. | Monterey Park | CA | 91755 | 9 |
| Alan Shapiro | Shapiro | Alan | Brandt | $38,725.73 | 455 La Loma Rd. | Pasadena | CA | 91105 | 12 |
| Dorothy Sheperd | Sheperd | Dorothy | Belfer/ Kroner/Can | $510,382.14 | 9518 La Canada Way | Sunland | CA | 91040 | 9 |
| California National Bank Cust. FBO- Gary Shiger | Shiger | Gary | Brandt | $300,000.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| Charlene Shinn | Shinn | Charlene | lawton | $100,000.00 | PO Box 6771 | Big Bear Lake | CA | 92315 | 12 |
| Kristopher Smith | Smith | Kristopher | Lawton | $150,000.00 | 119 So. Monte Vista | Covina | CA | 91723 | 12 |
| First Regional Bank Cust. FBO - Jerome Smith | Smith | Jerome | Lawton | $87,300.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| Scott Snyder | Snyder | Scott | Brandt | $236,363.61 | 1049 Calle Ruiz | Thousand Oaks | CA | 91360 | 12 |
| Scott Snyder | Snyder | Dawna | Brandt | | 1049 Calle Ruiz | Thousand Oaks | CA | 91360 | 12 |
| Gary D. Snyder & Lynette E. Snyder Trust, dated July 18, 1985 | Snyder | Gary | Brandt | $772,246.73 | 3034 Rollings Ave. | Thousand Oaks | CA | 91360 | 12 |
| Gary D. Snyder and Lynnette E. Snyder Trust dated July 18, 1985 | Snyder | Lynette | Brandt | | 3034 Rollings Ave. | Thousand Oaks | CA | 91360 | 12 |
| Steven Soltman | Soltman | Steven | Belfer/Kroner/Cano | $1,690,000.00 | 7057 Heron Circle | Carlsbad | CA | 92011 | 9 |
| Marvin Spira | Spira | Marvin | Lawton | $70,000.00 | 7611 SouthHampton | Tamarac | FL | 33321 | 9 |
| First Commerce Bank Cust. FBO - Charlotte B. St.John | St. John | Charlotte | Lawton | $41,424.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 9 |
| First Commerce Bank Cust. FBO - Douglas C. Stevens, Sr. | Stevens, Sr. | Douglas | Lawton | $79,050.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 9 |
| California National Bank Cust. FBO - Larry W. Stilley | Stilley | Larry | Brandt | $600,000.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| Capriccio Trading Inc. A Delaware Corporation & Seabourne Partners, LP | Straatsma | Cynthia | Brandt | $1,300,000.00 | 200 Spalding Dr. # A | Beverly Hills | CA | 90212 | 12 |
| First Commerce Bank Cust. FBO - Brenden S. Suter | Suter | Brenden | Lawton | $65,604.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 9 |

Exhibit J - 000300

| DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Yield |
|---|---|---|---|---|---|---|---|---|---|
| First Commerce Bank Cust. FBO - John Sykes | Sykes | John | Brandt | $9,387.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| Tentser Family Trust | Tentser | Yakov | AEI | $40,000.00 | 1120 22nd St. | Santa Monica | CA | 90403 | 9 |
| Jerome H. Tepperman, PH.D., Inc. 401(k) Profit Sharing Trust | Tepperman | Jerome | Belfer/Kroner/Cano | $50,000.00 | 171 N. Church Lane | Los Angeles | CA | 90049 | 12 |
| The Robert and Carole Thornton Family Trust dated July 25, 2000 | Thornton | Robert | Belfer | $900,000.00 | 1503 Seabright Ave | Santa Cruz | CA | 95062 | 12 |
| The Robert and Carole Thornton Family Trust dated July 25, 2000 | Thornton | Carole | Belfer | | 1503 Seabright Ave | Santa Cruz | CA | 95062 | 12 |
| First Commerce Bank Cust. FBO - Rebecca Tuell | Tuell | Rebecca | Lawton | $180,930.00 | 2493 NW 118th Terrace | Coral Springs | FL | 33065 | 9 |
| Turina Family Trust | Turina | Boris | Carlson | $50,000.00 | 5117 La Crescenta Ave. | La Crescenta | CA | 91214-211 | 9 |
| Karen L. Van Sant | Van Sant | Karen | Cano | | 1339 N. Columbus Ave | Glendale | CA | 91202-164 | 12 |
| William W. & Eleanor C. Waddell Revoc Inter-Vivos U/T/D Trust dated July 29, 1993 | Waddell, Trust | William | Lawton | $200,000.00 | 2552 Kelvin Ave. | Irvine | CA | 92614 | 12 |
| William & Eleanor Waddell Revoc Inter-Vivos Trust dated U/D/T July 29, 1993 | Waddell, Trustee | Eleanor | Lawton | | 3241 San Amadeo | Laguna Woods | CA | 92637-307 | 12 |
| Richard Wade | Wade | Richard | Brandt | $408,774.00 | 32440 Saddle Mountain Dr. | Westlake Village | CA | 91361 | 12 |
| California National Bank Cust. FBO - Hilary C. Wade | Wade | Hilary | Brandt | $332,304.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| Mark A. Wagner | Wagner | Mark | Brandt | $100,000.00 | 2801 Ocean Park Blvd. # 177 | Santa Monica | CA | 90405 | 12 |
| Paul Walker | Walker | Paul | Brandt | $460,000.00 | 3196 Deer Valley Ave | Newbury Park | CA | 91320 | 12 |
| First Commerce Bank Cust. FBO - Ricky Harold Walters | Walters | Ricky | Lawton | $51,000.00 | 14021 Marquesas Way | Marina Del Rey | CA | 90292 | 12 |
| Sheila Warner Trust | Warner | Sheila | Lawton | $700,000.00 | 1138 20th St | Santa Monica | CA | 90403 | 12 |
| Bernard Warner | Warner | Bernard | Lawton | $1,469,750.52 | 150 Ocean Park Blvd | Santa Monica | CA | 90405 | 12 |
| The Wynne Warner Trust, Dated August 24, 1990 | Warner | Wynne | Lawton | $400,000.00 | 150 Ocean Park Blvd. # 324 | Santa Monica | CA | 90405 | 12 |
| The Dona Rothman Family Trust dated February 11, 1994 | Warner | Dona | Lawton | $395,468.18 | 3902 Davana Rd | Sherman Oaks | CA | 91423 | 12 |
| LJ Warner Trust 03-95 | Warner | Lawrence | Lawton | $300,000.00 | 3902 Davana Rd | Sherman Oaks | CA | 91423 | 12 |
| Lawrence Warner | Warner | Lawrence | Lawton | $600,000.00 | 3902 Davana Rd | Sherman Oaks | CA | 91423 | 12 |
| First Commerce Bank Cust. FBO - Dona Warner | Warner | Dona | Lawton | $125,040.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| First Commerce Bank Cust. FBO - Bernard L. Warner | Warner | Bernard | Lawton | | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| First Commerce Bank Cust. FBO - Wynne N. Warner | Warner | Wynne | Lawton | $280,175.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| Frank Weisz | Weisz | Frank | Belfer/kroner | $1,100,000.00 | 5 East Germantown Pike | Plymouth Meeting | PA | 19462 | 9 |

Exhibit J - 000301

| DLG Account Name | Last Name | First Name | Name of Agent | Amount Invested | Address #1 | City | State | ZipCode | Yield |
|---|---|---|---|---|---|---|---|---|---|
| First Commerce Bank Cust. FBO - Jeffrey White | White | Jeffrey | Belfer/Kroner | | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| William Wilson | Wilson | William | Brandt | $704,500.00 | 3016 Silver Lea Ter. | Los Angeles | CA | 90039-303 | 12 |
| First Commerce Bank Cust. FBO - William L. Wilson | Wilson | William | Brandt | $400,000.00 | 6400 Canoga Ave. | Woodland Hills | CA | 91367 | 12 |
| Revon Wolf | Wolf | Revon | Lawton | $200,000.00 | 7306 Raintree Circle | Culver City | CA | 90232 | 12 |
| Juliet Wong | Wong | Juliet | Kroner | | 3428 Cool Heights Drive | Rancho Palos Verdes | CA | 90275 | 9 |
| First Commerce Bank Cust. FBO - Stephen K. Worrell | Worrell | Stephen | Lawton | $175,000.00 | c/o Polycomp | Woodland Hills | CA | 91367 | 9 |
| First Commerce Bank Cust. FBO - Curtis M. Worrell | Worrell | Curtis | Lawton | $49,000.00 | 4429 Rosecrest Road | Roanoke | VA | 24018 | 9 |
| 5525 Trust | Zimmerman | Sharon | Lawton | $4,777,855.00 | P.O. Box 260098 | Encino | CA | 91426 | |
| Road West Retirement Plan | Campos | Bruno | Lawton | $39,476.37 | Address unknown | | | | |
| Stephen Flaherty | Flaherty | Stephen | Belfer | | 209 Rimrock Road | Thousand Oaks | CA | 91361 | |
| | | | total | $61,472,238.63 | | | | | |
| | | | | | | | | | |

Exhibit J - 000302

# EXHIBIT K

1    Counsel Listed on Following Page

2

3

4

5

6

7

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

         COUNTY OF LOS ANGELES – CENTRAL CIVIL WEST DIVISION

9

10   ***IN RE DLG RELATED CASES***     )   Assigned for All purposes to the Hon. Elihu

11   ——————————————— )   M. Berle, CCW Dept. 323 – All Related

                                  )

12   THIS PLEADING RELATES TO:       )

                                    )   CASE NOS. BC446497, BC443270,

13   All DLG Related Cases            )   BC446630, BC450293, BC452092,

14                                     )   BC456412, BC456561, SC108930,

                                    )   LC090700, BC454198, BC454632,

15                                     )   BC456560, BC460697, BC456405,

16                                     )   BC456651, BC480029, BC456425,

                                    )   VC053815

17                                     )

18                                     )   **PLAINTIFF LAWRENCE J. CANTOR'S**

                                    )   **RESPONSES TO SPECIAL**

19                                     )   **INTERROGATORIES PROPOUNDED**

                                    )   **BY DEFENDANTS METLIFE, INC.;**

20                                     )   **NEW ENGLAND LIFE INSURANCE**

                                    )   **COMPANY; NEW ENGLAND**

21                                     )   **SECURITIES CORPORATION (SET**

                                    )   **FOUR, AMENDED)**

22                                     )

23                                     )   Hearing date:   July 28, 2011

                                    )   Hearing time:   10:00 a.m.

24                                     )   Department:    323

                                    )

25   ——————————————— )   LEAD CASE NO. BC446497

26

27

28

Exhibit K - 000303

1  Thomas Foley, Esq. (SBN 65812)
   Robert A. Curtis, Esq. (SBN 203870)
2  Justin P. Karczag, Esq. (SBN 223764)
   **FOLEY, BEZEK, BEHLE & CURTIS, LLP**
3  15 W. Carrillo Street
   Santa Barbara, CA 93101
4  Telephone: (805) 962-9495
5  Facsimile: (805) 962-0722
   tfoley@foleybezek.com
6  rcurtis@foleybezek.com
7  jkarczag@foleybezek.com

8  Richard E. Donahoo, Esq. (SBN 186957)
9  Sarah, Kokonas, Esq. (SBN 262875)
   **DONAHOO & ASSOCIATES**
10 440 West First Street, Suite 101
   Tustin, CA 92780
11 Telephone:(714) 953-1010
12 Facsimile: (714) 953-1777
   rdonahoo@donahoo.com
13 skokonas@donahoo.com

14 John A. Stillman, Esq. (SBN 43731)
   Heidi Stilb Lewis, Esq. (SBN 98046)
15 **GOOD, WILDMAN, HEGNESS & WALLEY**
16 5000 Campus Drive
   Newport Beach, California 92660
17 Telephone: (949) 955-1100
   Facsimile: (949) 833-0633
18 jstillman@goodwildman.com
   hlewis@goodwildman.com
19
   *Attorneys for Plaintiffs and all others similarly situated*
20

21

22

23

24

25

26

27

28

---

PLAINTIFF LAWRENCE J. CANTOR'S RESPONSES TO SPECIAL INTERROGATORIES
PROPOUNDED BY DEFENDANTS METLIFE, INC.; ET AL. (SET FOUR, AMENDED)        2
Lead Case No. BC446497

| | |
|---|---|
| 1 | PROPOUNDING PARTIES: Defendants METLIFE, INC.; NEW ENGLAND LIFE |
| 2 | INSURANCE COMPANY; NEW ENGLAND |
| 3 | SECURITIES CORPORATION |
| 4 | RESPONDING PARTY: Plaintiff LAWRENCE J. CANTOR |
| 5 | SET NO.: FOUR (Amended) |

6      Plaintiff LAWRENCE J. CANTOR (hereinafter "Plaintiff," "Responding Party" or

7 "Respondent") by and through his attorneys of record, DONAHOO & ASSOCIATES, does

8 herein respond to Special Interrogatories, Set Four (Amended), propounded by Defendants

9 METLIFE, INC.; NEW ENGLAND LIFE INSURANCE COMPANY; NEW ENGLAND

10 SECURITIES CORPORATION (hereinafter "Defendant" or "Propounding Party").

11

12      **<u>INTRODUCTORY STATEMENT AND GENERAL OBJECTIONS</u>**

13      1.     Respondent and his counsel have not completed their investigation and analysis of

14 the facts of this case, discovery, or trial preparation. As discovery proceeds, facts, information,

15 evidence, documents and things may be discovered that are not set forth in these responses but

16 which may have been responsive to this set of Special Interrogatories. The following responses

17 are based on Respondent's knowledge, information and belief at this time and are complete as to

18 Respondent's best knowledge at this time after a reasonable and diligent effort to obtain the

19 information necessary to respond. Furthermore, these responses were prepared based on

20 Respondent's good faith, interpretation and understanding of the Special Interrogatories and are

21 subject to correction for inadvertent errors or omissions, if any. Respondent reserves the right to

22 refer to, to conduct discovery with reference to or to offer into evidence at the time of trial, any

23 and all facts, evidence, documents and things developed during the course of discovery and trial

24 preparation, notwithstanding the reference to facts, evidence, documents and things in these

25 responses. Accordingly, the following responses are given without prejudice to Respondent's right

26 to produce evidence of any subsequently discovered facts, evidence, documents and things and/or

27 to add to, modify, or otherwise change or amend these responses, although Respondent assumes

28 no obligation to do so.

---

PLAINTIFF LAWRENCE J. CANTOR'S RESPONSES TO SPECIAL INTERROGATORIES
PROPOUNDED BY DEFENDANTS METLIFE, INC.; ET AL. (SET FOUR, AMENDED)     3
Lead Case No. BC446497

Exhibit K - 000305

2.  Respondent objects generally to each and every Interrogatory to the extent it calls for information which is within the attorney-client privilege, work product immunity (including, but not limited to, California Code of Civil Procedure Section 2018), or any other recognized privilege or immunity, and Respondent and their counsel hereby asserts such privileges and immunities.

3.  Inadvertent production of any information which is privileged or otherwise immune from discovery shall not constitute a waiver of any privilege or any other ground for Objection to discovery with respect to such information or any other information, or the right of Respondent to object to the use of any such information during any subsequent proceeding.

4.  Respondent further objects generally to each and every Interrogatory, to the extent that it seeks information which is protected by constitutional rights or personal or individual privacy and confidentiality.

5.  Respondent objects generally to each and every Interrogatory to the extent that these requests are overbroad, oppressive and unduly burdensome. Respondent further objects generally to each and every Interrogatory, to the extent that these requests are overly broad as to time and scope. Respondent further objects generally to each and every Interrogatory to the extent these requests are intended to vex and harass Respondent in that many requests are duplicative of other requests.

6.  Respondent objects generally to each and every Interrogatory to the extent that they are irrelevant and immaterial to the pending action and are not reasonably calculated to lead to the discovery of admissible evidence. Respondent further objects generally to each and every Interrogatory to the extent that they are unintelligible in the context of this matter and are vague and ambiguous.

7.  Subject to and without waiving the foregoing Objections, all which are incorporated by reference into all of the following Responses as though fully set forth therein, and to the extent Respondent understands each individual Interrogatory, Respondent hereby submits their Objections and Responses to Defendant's First Set of Special Interrogatories.

---

PLAINTIFF LAWRENCE J. CANTOR'S RESPONSES TO SPECIAL INTERROGATORIES
PROPOUNDED BY DEFENDANTS METLIFE, INC.; ET AL. (SET FOUR, AMENDED)
Lead Case No. BC446497

4

Exhibit K - 000306

**SPECIFIC OBJECTIONS**

To avoid repetition in setting forth the specific Objections to the subject Interrogatories herein, Respondent sets forth herein below the following definitions and specific Objections which will be made in response to certain Interrogatories.

A.     Attorney-Client Privilege Objection:

To the extent that Defendant's Interrogatories seek information which is or may be invasive of the attorney-client privilege, Respondent objects. Specifically, to the extent that certain Interrogatories are so overbroad as to be potentially invasive of the confidential communications of Respondent and Respondent's outside counsel for the seeking or rendering of legal advice in regard to these or other subject matters, Respondent objects. When Defendant's Interrogatories are objected to on this ground, such Objection shall be referred to as the "Attorney-Client Privilege Objection." Further, due to the breadth and volume of documents involved, to the extent that documents, if any, containing privileged materials are produced, it shall not constitute a waiver of the attorney-client privilege.

B.     Work-Product Objection:

To the extent that certain of Defendant's Interrogatories seek documents or information which are or may be invasive of the attorney work-product privilege, Respondent objects. Specifically, to the extent that certain Interrogatories are so overbroad as to potentially invade and disclose the actual legal work conducted by, or the impressions and evaluations of Respondent's counsel in connection with the stated matter, Respondent objects. When Defendant's Interrogatories are objected to on this ground, such Objection shall be referred to as the "Work-Product Objection."

C.     Burden Objection:

To the extent that Defendant's Interrogatories are unreasonably burdensome, oppressive and harassing in that they seek information which places an extreme burden upon Plaintiff while seeking information which is not relevant (or only tangentially relevant) to the present litigation, Respondent objects. When Defendant's Interrogatories are objected to on this ground, such Objection shall be referred to as the "Burden Objection."

---

PLAINTIFF LAWRENCE J. CANTOR'S RESPONSES TO SPECIAL INTERROGATORIES PROPOUNDED BY DEFENDANTS METLIFE, INC.; ET AL. (SET FOUR, AMENDED)
Lead Case No. BC446497

5

Exhibit K - 000307

D.   Relevance Objection:

     To the extent that Defendant's Interrogatories seek information which is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence, Respondent objects. When Defendant's Interrogatories are objected to on this ground, such Objection shall be referred to as the "Relevance Objection."

E.   Ambiguity Objection:

     To the extent that Defendant's Interrogatories are phrased in language that is so vague, ambiguous and uncertain that responses cannot be ascertained without speculation as to the nature and meaning of the language in the context of the request, Respondent objects. When Plaintiff's Interrogatories are objected to on this ground, such Objection shall be referred to as the "Ambiguity Objection."

F.   Time-Frame Objection:

     To the extent that Defendant's Interrogatories fail to specify, or give any indication of the time frame referenced therein, Respondent objects. When Defendant's Interrogatories are objected to on this ground, such Objection shall be referred to as the "Time-Frame Objection."

G.   Privacy Objection:

     To the extent that Defendant's Interrogatories, due to their over breadth and ambiguity, are or may be invasive of confidential information of Respondent, as well as the rights of privacy afforded to Respondent's employees under the United States Constitution, California Constitution and related Federal and California case law, Respondent objects. When Defendant's Interrogatories are objected to on this ground, such Objection shall be referred to as the "Privacy Objection."

H.   Compound Objection:

     To the extent that Defendant's Interrogatories are compound as phrased, Respondent objects. When Defendant's Interrogatories are objected to on this ground, such Objection shall be referred to as the "Compound Objection."

/ / /

/ / /

---

PLAINTIFF LAWRENCE J. CANTOR'S RESPONSES TO SPECIAL INTERROGATORIES
PROPOUNDED BY DEFENDANTS METLIFE, INC.; ET AL. (SET FOUR, AMENDED)
Lead Case No. BC446497

6

**I.     Legal Opinion Objection:**

To the extent that Defendant's Interrogatories seek legal opinions from the layperson responding to these Interrogatories, Respondent objects. When Defendant's Interrogatories are objected to on this ground, such Objection shall be referred to as the "Legal Opinion Objection."

**J.     Equally Available Objection:**

To the extent that Defendant's Interrogatories seek information equally available to the propounding parry, Respondent objects because the Interrogatories are therefore designed merely to burden, harass, and vex Respondent. When Defendant's Interrogatories are objected to on this ground, such Objection shall be referred to as the "Equally Available Objection."

**K.     Compilation Objection**

To the extent that Defendant's Interrogatories seek to require Responding Party to list documents that evidence the monetary amount, Responding Party objects on the grounds that the request seeks to require Responding Party to compile a list or draft a request for production, which Responding Party is not required to do.

**L.     Limit Objection**

The interrogatory violates the Case Management Order ("CMO") entered in this case which requires Common Defendants, including Propounding Party, to serve a "single set" of interrogatories.  And, the interrogatories requested cause the number of interrogatories served to Plaintiff to be in excess of 35.  Propounding Party fails to provide a declaration regarding additional discovery as required by CCP 2030.050.

Subject to and without waiving these Objections, or any other Objections or claims of privilege, Responding Party hereby responds and objects to Defendant's Special Interrogatories, Set Number One, as follows:

## RESPONSES TO SPECIAL INTERROGATORIES

**SPECIAL INTERROGATORY NO. 28:**

With respect to any of the individuals included in the Schedule attached hereto as Exhibit 1, IDENTIFY each and every identified person included in Exhibit 1 who has indicated to YOU that

PLAINTIFF LAWRENCE J. CANTOR'S RESPONSES TO SPECIAL INTERROGATORIES
PROPOUNDED BY DEFENDANTS METLIFE, INC.; ET AL. (SET FOUR, AMENDED)
Lead Case No. BC446497

7

Exhibit K - 000309

they did receive a "Welcome Packet" as referenced in Paragraph 33 of the Plaintiffs' Third Amended Complaint, which states, in part, as follows: "All Persons who entered into a Contract with DLG and invested funds with DLG between December 2004 and March 4, of 2009, after being provided with a copy of the DLG Welcome Packet by an insurance agent affiliated with Defendants NELICO and MetLife, or by a registered representative affiliated with Defendant NES, and whose entire principal investment was not repaid by DLG (the "Class")."

**RESPONSE TO SPECIAL INTERROGATORY NO. 28:**

Plaintiffs incorporate the General Objections as though fully stated herein. In addition, Plaintiffs assert the following specific Objections: Attorney-Client Privilege Objection, Work Product Objection, Burden Objection, Relevance Objection, Ambiguity Objection, Compound Objection, Equally Available Objection, Compilation Objection and Limit Objection. Notwithstanding the Objections, Responding Party responds as follows:

Responding Party and Plaintiffs' counsel are continuing to research to determine each person who received some form of a "Welcome Packet." That investigation is continuing. Plaintiffs' counsel is informed and believes, from the deposition testimony of Scott Brandt, that persons who invested in DLG through Scott Brandt received a Welcome Packet. See Exhibit 1 which lists those individuals who invested through Scott Brandt. In addition, Plaintiffs Larry Cantor, Larry Stilley and Sam Gupta received documents included as a Welcome Packet. Discovery is continuing. Responding Party reserves the right to supplement this response.


**SPECIAL INTERROGATORY NO. 29:**

IDENTIFY the bates numbers of the pages that constitute the "Welcome Packet" as referenced in Special Interrogatory No. 31 and/or any documents included in the "Welcome Packet."

**RESPONSE TO SPECIAL INTERROGATORY NO. 29:**

Plaintiffs incorporate the General Objections as though fully stated herein. In addition, Plaintiffs assert the following specific Objections: Attorney-Client Privilege Objection, Work Product Objection, Burden Objection, Relevance Objection, Ambiguity Objection, Compound

---

PLAINTIFF LAWRENCE J. CANTOR'S RESPONSES TO SPECIAL INTERROGATORIES
PROPOUNDED BY DEFENDANTS METLIFE, INC.; ET AL. (SET FOUR, AMENDED)
Lead Case No. BC446497

8

Exhibit K - 000310

1   Objection, Equally Available Objection, Compilation Objection, and Limit Objection.

2   Notwithstanding the Objections, Responding Party responds as follows:

3     The interrogatory is unintelligible as the term "Welcome Packet" is not referenced in

4   special interrogatory no. 31 and therefore the interrogatory is vague and ambiguous, and requires

5   the Responding Party to speculate as to the substance of the interrogatory.

6     Without waiving these objections, the copy of the form of Welcome Packet which was

7   provided to Larry Cantor was produced with Bates numbers LC-000223-000245, inclusive.

8

9   **SPECIAL INTERROGATORY NO. 30:**

10     With respect to any of the individuals included in the Schedule attached hereto as Exhibit 1,

11   IDENTIFY each and every identified person included in Exhibit 1 who has received compensation,

12   remuneration, or reimbursement for his or her entire principal investment into DLG.

13   **RESPONSE TO SPECIAL INTERROGATORY NO. 30:**

14     Plaintiffs incorporate the General Objections as though fully stated herein.  In addition,

15   Plaintiffs assert the following specific Objections:  Attorney-Client Privilege Objection, Work

16   Product Objection, Burden Objection, Relevance Objection, Ambiguity Objection, Compound

17   Objection, Equally Available Objection, Compilation Objection, and Limit Objection.

18   Notwithstanding the Objections, Responding Party responds as follows:

19     Responding Party is unaware of the terms of each and every settlement, or the dollar

20   amount, of each DLG investor.  Responding Party, through his attorneys, is informed and believes

21   that numerous individuals received settlements from MetLife or its subsidiaries New England

22   Securities and New England Life Insurance Company and therefore such information is in the

23   possession of propounding party. Whether those individuals who received a settlement from

24   MetLife Defendants received a return of all their principal is unknown by Plaintiffs' counsel.  To

25   the extent any individuals received settlement funds from the DLG Receiver, that information is

26   available to propounding party from the Receiver and is therefore equally available. With respect

27   to any of the individuals listed in Exhibit 1 who entered into a settlement with Jackson National

28   Life Insurance Company relating to DLG, Plaintiffs' counsel is informed and believes the net

---

PLAINTIFF LAWRENCE J. CANTOR'S RESPONSES TO SPECIAL INTERROGATORIES
PROPOUNDED BY DEFENDANTS METLIFE, INC.; ET AL. (SET FOUR, AMENDED)
Lead Case No. BC446497

9

settlement amounts paid to these individuals are set forth in Exhibit A attached hereto.

**SPECIAL INTERROGATORY NO. 31:**

With respect to any of the individuals included in the Schedule attached hereto as Exhibit 1, IDENTIFY each and every identified person included in Exhibit 1 who is related to any of the Doe Defendants, which include "individuals who acted as Agents of the MetLife Defendants."

**RESPONSE TO SPECIAL INTERROGATORY NO. 31:**

Plaintiffs incorporate the General Objections as though fully stated herein. In addition, Plaintiffs assert the following specific Objections: Attorney-Client Privilege Objection, Work Product Objection, Burden Objection, Relevance Objection, Ambiguity Objection, Compound Objection, Equally Available Objection, Compilation Objection, and Limit Objection. Notwithstanding the Objections, Responding Party responds as follows:

The interrogatory is vague, ambiguous and unintelligible. Plaintiffs have not identified any "Doe" defendants, therefore the interrogatory is not full and complete in and of itself and requires Responding Party to speculate as to the identity of an unnamed Doe defendant.

**SPECIAL INTERROGATORY NO. 32:**

With respect to any of the individuals included in the Schedule attached hereto as Exhibit 1, IDENTIFY each individual who is a member of the Elder Abuse Subclass, as that term is defined in Plaintiffs Third Amended Complaint, Paragraph 62, which states as follows: "A subclass of the Class is comprised of all persons who had attained age sixty-five (65) at the time that they were provided with a copy of the DLG Welcome Packet by an insurance agent affiliated with Defendants NELICO and/or MetLife, or a registered representative affiliated with Defendant NES, and in reliance upon the representations contained in the Welcome Packet, entered into a Contract with DLG between December 2004 and March 2009, based on the representations contained in the Welcome Packet, and whose entire investment was not repaid by DLG (the "Elder Abuse Subclass")."

/ / /

---

PLAINTIFF LAWRENCE J. CANTOR'S RESPONSES TO SPECIAL INTERROGATORIES
PROPOUNDED BY DEFENDANTS METLIFE, INC.; ET AL. (SET FOUR, AMENDED)
Lead Case No. BC446497

10

Exhibit K - 000312

**RESPONSE TO SPECIAL INTERROGATORY NO. 32:**

Plaintiffs incorporate the General Objections as though fully stated herein. In addition, Plaintiffs assert the following specific Objections: Attorney-Client Privilege Objection, Work Product Objection, Burden Objection, Relevance Objection, Ambiguity Objection, Compound Objection, Equally Available Objection, Compilation Objection, and Limit Objection. Notwithstanding the Objections, Responding Party responds as follows:

Responding Party and Plaintiffs' counsel are unaware of the date of birth of each person identified in Exhibit 1. Plaintiff Larry Stilley had attained age 65 at the time he invested in DLG. Plaintiffs are informed and believe there are likely other investors who were over 65 but Plaintiffs do not have sufficient information to compile a complete list of the ages of each individual but are endeavoring to do so. Responding Party reserves the right to supplement this response.

**SPECIAL INTERROGATORY NO. 33:**

IDENTIFY (for purposes of this interrogatory the term "IDENTIFY" shall mean state the name, last known address, and telephone number of the person or entity) each and every potential member of the proposed class that is excluded from the class for the reasons set forth in Paragraph 64 of the Complaint, which states as follows: "Excluded from the definition of the Class and Elder Abuse Subclass are the Defendants and any person, corporation, or other entity related to, controlled by, or affiliated with, any Defendant. Also excluded from the Class are the Court, the Court's spouse, all persons within the third degree of relationship to the Court, and the spouses of such persons. Included in the term 'Persons' in the definitions of the Class and Subclass are entities and representatives of these entities. Also excluded from the Class and Subclass are individuals who have previously settled their claims with Defendants."

**RESPONSE TO SPECIAL INTERROGATORY NO. 33:**

Plaintiffs incorporate the General Objections as though fully stated herein. In addition, Plaintiffs assert the following specific Objections: Attorney-Client Privilege Objection, Work Product Objection, Burden Objection, Relevance Objection, Ambiguity Objection, Compound Objection, Equally Available Objection, Compilation Objection, and Limit Objection.

PLAINTIFF LAWRENCE J. CANTOR'S RESPONSES TO SPECIAL INTERROGATORIES
PROPOUNDED BY DEFENDANTS METLIFE, INC.; ET AL. (SET FOUR, AMENDED)
Lead Case No. BC446497

11

Exhibit K - 000313

Notwithstanding the Objections, Responding Party responds as follows:

Responding Party and his attorneys at this time are unaware of persons listed in Exhibit 1 who are related to, controlled by, or affiliated with any Defendant or the Court. With respect to individuals who have previously settled their claims with Defendants, propounding party is in possession of this information, therefore the interrogatory is burdensome and harassing. Additionally, Responding Party and his counsel are not aware of the identity of all individuals who entered into settlement agreements with MetLife.

**SPECIAL INTERROGATORY NO. 34:**

With respect to any of the individuals included in the Schedule attached hereto as Exhibit 1, IDENTIFY the State in which the individual is a citizen.

**RESPONSE TO SPECIAL INTERROGATORY NO. 34:**

Plaintiffs incorporate the General Objections as though fully stated herein. In addition, Plaintiffs assert the following specific Objections: Attorney-Client Privilege Objection, Work Product Objection, Burden Objection, Relevance Objection, Ambiguity Objection, Compound Objection, Equally Available Objection, Compilation Objection, and Limit Objection. Notwithstanding the Objections, Responding Party responds as follows:

Responding Party and his attorneys direct propounding party to Exhibit 1 which identifies the state which, based on information and belief, the individual is domiciled or resided at the time of their investment in DLG.

**SPECIAL INTERROGATORY NO. 35:**

With respect to any of the individuals included in the Schedule attached hereto as Exhibit 1, IDENTIFY each specific individual who provided a copy of a DLG Welcome Packet to each individual listed in Exhibit 1.

**RESPONSE TO SPECIAL INTERROGATORY NO. 35:**

Plaintiffs incorporate the General Objections as though fully stated herein. In addition, Plaintiffs assert the following specific Objections: Attorney-Client Privilege Objection, Work

---

PLAINTIFF LAWRENCE J. CANTOR'S RESPONSES TO SPECIAL INTERROGATORIES PROPOUNDED BY DEFENDANTS METLIFE, INC.; ET AL. (SET FOUR, AMENDED)
Lead Case No. BC446497

12

Exhibit K - 000314

Product Objection, Burden Objection, Relevance Objection, Ambiguity Objection, Compound Objection, Equally Available Objection, Compilation Objection, and Limit Objection. Notwithstanding the Objections, Responding Party responds as follows:

Responding Party, through his attorneys, is informed and believes that documents in the form of a "kit" or "Welcome Packet" were provided by agents who were selling the DLG investment. At this time, Plaintiffs have not identified each specific individual who provided a copy of a DLG Welcome Packet to each individual listed in Exhibit 1 sufficient to provide a verified response. Discovery is continuing. With respect to those individuals who invested in DLG through Scott Brandt, he testified that he provided the "kit" or Welcome Packet information to each of those to whom he marketed to. See Brandt's deposition. In addition Brandt provided a Welcome Packet to Plaintiffs Stilley, Cantor and Gupta.

**SPECIAL INTERROGATORY NO. 36:**

IDENTIFY any of the individuals responsive to Special Interrogatory No. 38 who you allege are affiliated with any MetLife Defendant as an insurance agent and/or a registered representative or a relative of same.

**RESPONSE TO SPECIAL INTERROGATORY NO. 36:**

Plaintiffs incorporate the General Objections as though fully stated herein. In addition, Plaintiffs assert the following specific Objections: Attorney-Client Privilege Objection, Work Product Objection, Burden Objection, Relevance Objection, Ambiguity Objection, Compound Objection, Equally Available Objection, Compilation Objection, and Limit Objection. Notwithstanding the Objections, Responding Party responds as follows:

The interrogatory is vague and ambiguous and unintelligible, as it refers to individuals responsive to special interrogatory no. 38. Special interrogatory no. 38 does not request the identity of individuals, therefore this interrogatory no. 36 is vague and unintelligible. Without waving these objections, agents of MetLife who solicited class members to invest in DLG include Tony Russon, Scott Brandt, Steve Corzan, Dennis Lawton, Milt Belfer, Toni Inarrelli, Larry Bagby, James Davidson, Diane Cano and Applied Equities, Inc.

---

PLAINTIFF LAWRENCE J. CANTOR'S RESPONSES TO SPECIAL INTERROGATORIES PROPOUNDED BY DEFENDANTS METLIFE, INC.; ET AL. (SET FOUR, AMENDED) Lead Case No. BC446497

13

Exhibit K - 000315

**SPECIAL INTERROGATORY NO. 37:**

With respect to any of the individuals included in the Schedule attached hereto as Exhibit 1, IDENTIFY the date each of the individuals made their investment in DLG.

**RESPONSE TO SPECIAL INTERROGATORY NO. 37:**

Plaintiffs incorporate the General Objections as though fully stated herein. In addition, Plaintiffs assert the following specific Objections: Attorney-Client Privilege Objection, Work Product Objection, Burden Objection, Relevance Objection, Ambiguity Objection, Compound Objection, Equally Available Objection, Compilation Objection, and Limit Objection. Notwithstanding the Objections, Responding Party responds as follows:

Responding Party and his attorneys do not have readily-available in their possession, custody or control the dates of each individual's investment in DLG. Plaintiffs' counsel is endeavoring to obtain that information from the receiver and potential class members, and will supplement this response. Discovery is continuing.

**SPECIAL INTERROGATORY NO. 38:**

With respect to any of the individuals included in the Schedule attached hereto as Exhibit 1, IDENTIFY whether each of the individuals invested in the 9% or 12% DLG notes.

**RESPONSE TO SPECIAL INTERROGATORY NO. 38:**

Plaintiffs incorporate the General Objections as though fully stated herein. In addition, Plaintiffs assert the following specific Objections: Attorney-Client Privilege Objection, Work Product Objection, Burden Objection, Relevance Objection, Ambiguity Objection, Compound Objection, Equally Available Objection, Compilation Objection, and Limit Objection. Notwithstanding the Objections, Responding Party responds as follows:

The information is contained in Exhibit 1 attached to the interrogatory, and therefore propounding party is in possession of the information set forth in Exhibit 1, and the interrogatory is burdensome and harassing.

/ / /

---

PLAINTIFF LAWRENCE J. CANTOR'S RESPONSES TO SPECIAL INTERROGATORIES
PROPOUNDED BY DEFENDANTS METLIFE, INC.; ET AL. (SET FOUR, AMENDED)
Lead Case No. BC446497

14

**SPECIAL INTERROGATORY NO. 39:**

With respect to any of the individuals included in the Schedule attached hereto as Exhibit 1, IDENTIFY which of the individuals engaged in premium financing of a MetLife Defendant product with their DLG investment.

**RESPONSE TO SPECIAL INTERROGATORY NO. 39:**

Plaintiffs incorporate the General Objections as though fully stated herein. In addition, Plaintiffs assert the following specific Objections: Attorney-Client Privilege Objection, Work Product Objection, Burden Objection, Relevance Objection, Ambiguity Objection, Compound Objection, Equally Available Objection, Compilation Objection, and Limit Objection. In addition, the term "engaged in premium finance" is vague and ambiguous, and calls for speculation. Notwithstanding the Objections, Responding Party responds as follows:

Responding Party and his attorneys are not aware of each individual who engaged in premium financing, and therefore cannot provide a comprehensive list of such individuals. However, to the extent that the individuals engaged in premium financing for the purchase of a MetLife product, Defendants have knowledge of those individuals who purchased a MetLife product, and therefore the interrogatory is burdensome, oppressive and harassing. A list of individuals who entered into premium financing after being solicited to by Larry Bagby and James Davidson was marked as an exhibit at the deposition of Larry Bagby, and Mr. Bagby testified as to which individuals on that list purchased DLG as a form of premium financing. Counsel for MetLife was present at that deposition and has that information. Additional individuals are Michael Hansen, Sam and Janet Gupta and Lauren Sanda.

**SPECIAL INTERROGATORY NO. 40:**

IDENTIFY all facts that support your statement in Plaintiffs' Third Amended Complaint, Paragraph 65, that the class does not exceed 100 members.

**RESPONSE TO SPECIAL INTERROGATORY NO. 40:**

Plaintiffs incorporate the General Objections as though fully stated herein. In addition, Plaintiffs assert the following specific Objections: Attorney-Client Privilege Objection, Work

---

PLAINTIFF LAWRENCE J. CANTOR'S RESPONSES TO SPECIAL INTERROGATORIES
PROPOUNDED BY DEFENDANTS METLIFE, INC.; ET AL.. (SET FOUR, AMENDED)
Lead Case No. BC446497

15

Exhibit K - 000317

Product Objection, Burden Objection, Relevance Objection, Ambiguity Objection, Compound Objection, Equally Available Objection, Compilation Objection, and Limit Objection. Notwithstanding the Objections, Responding Party responds as follows:

At the time that the Third Amended Complaint was drafted, Plaintiffs' counsel was not aware, after conducting a reasonable investigation of the names of all individuals who had received a Welcome Packet, as referenced in the class definition included in the Third Amended Complaint. The individuals that Plaintiffs' counsel were aware of at the time they drafted the Third Amended Complaint who had received a Welcome Packet at the time they made their investment in DLG were less than 100 people.

**SPECIAL INTERROGATORY NO. 41**:

IDENTIFY all facts that support your response to Request for Admission 8 denying that the number of class members exceeds 100 members.

**RESPONSE TO SPECIAL INTERROGATORY NO. 41**:

Plaintiffs incorporate the General Objections as though fully stated herein. In addition, Plaintiffs assert the following specific Objections: Attorney-Client Privilege Objection, Work Product Objection, Burden Objection, Relevance Objection, Ambiguity Objection, Compound Objection, Equally Available Objection, Compilation Objection, and Limit Objection. Notwithstanding the Objections, Responding Party responds as follows:

At the time that the Request for Admission 8 was drafted, Plaintiffs' counsel was not aware, after conducting a reasonable investigation of the names of all individuals who had received a Welcome Packet, as referenced in the class definition included in the Third Amended Complaint. The individuals that Plaintiffs' counsel were aware of at the time they drafted the Third Amended Complaint who had received a Welcome Packet at the time they made their investment in DLG were less than 100 people.

/ / /

/ / /

---

PLAINTIFF LAWRENCE J. CANTOR'S RESPONSES TO SPECIAL INTERROGATORIES
PROPOUNDED BY DEFENDANTS METLIFE, INC.; ET AL. (SET FOUR, AMENDED)
Lead Case No. BC446497

16

Exhibit K - 000318

**SPECIAL INTERROGATORY NO. 42:**

IDENTIFY all facts that support your response to Request for Admission No. 9 admitting that the amount of alleged damages claimed by all known potential class members exceeds $5 million.

**RESPONSE TO SPECIAL INTERROGATORY NO. 42:**

Plaintiffs incorporate the General Objections as though fully stated herein. In addition, Plaintiffs assert the following specific Objections: Attorney-Client Privilege Objection, Work Product Objection, Burden Objection, Relevance Objection, Ambiguity Objection, Compound Objection, Equally Available Objection, Compilation Objection, and Limit Objection. Notwithstanding the Objections, Responding Party responds as follows: Scott Brandt at his deposition produced a document which listed some of the individuals that he worked with to invest in DLG. The amounts that those individuals invested was in excess of $5,000,000.

DATED: September 20, 2013

    **GOOD, WILDMAN, HEGNESS & WALLEY DONAHOO AND ASSOCIATES**

    **FOLEY, BEZEK, BEHLE, & CURTIS LLP**

By: _____
Thomas G. Foley, Jr.
Attorneys for Plaintiffs Lawrence J. Cantor, Larry W. Stilley and Sam and Janet Gupta.

PLAINTIFF LAWRENCE J. CANTOR'S RESPONSES TO SPECIAL INTERROGATORIES PROPOUNDED BY DEFENDANTS METLIFE, INC.; ET AL. (SET FOUR, AMENDED)
Lead Case No. BC446497

17

Exhibit K - 000319

**VERIFICATION**

Cantor, et al., v. MetLife, Inc., et al.
Los Angeles County Superior Court, Case No. BC 446497

I, Lawrence J. Cantor, have read **PLAINTIFF LAWRENCE J. CANTOR'S RESPONSE TO SPECIAL INTERROGATORIES, SET FOUR (AMENDED), PROPOUNDED BY METLIFE, INC., NEW ENGLAND LIFE INSURANCE COMPANY, NEW ENGLAND SECURITIES CORPORATION** and know the content thereof. I am a one of the Plaintiffs in the above-referenced matter and make this verification on my own behalf. Based on my personal knowledge and discussions with my attorneys, I am informed and believe that the responses, other than objections, set forth therein are true and correct.

I declare, under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at this ___ day of September, 2013, in the County of Los Angeles, State of California.

*Signed Verification to follow*

_____
Lawrence J. Cantor
Plaintiff and Responding Party

Exhibit K - 000320

# EXHIBIT A

# EXHIBIT A

Exhibit K - 000321

Potential Class Members JNL Settlements

| Class Member Name | Net Settlement Amount to Client |
|---|---|
| Brandt-Wilson, Julanne | $8,745.90 |
| Caldarone, Richard | $140,240.46 |
| Coble, Brenda | $27,253.10 |
| Dipaola, Philip | $12,904.89 |
| Dodson-Franssen, Arlene | $32,438.05 |
| Eme, Christophe | $45,057.82 |
| Engert, David and Kimberly Kay | $47,082.72 |
| Feir, Jules & Francine | $55,727.95 |
| Feir, Steve | $116,168.12 |
| Fine, Ira | $55,907.47 |
| Flaherty, Steve | $6,760.13 |
| Forsyth, William II trustee of WDF Living Trust of 1995; Forsyth, Seth; Forsyth, Shaina; Forsyth, William III; Forsyth, William II FBO Wesley Forsyth; Forsyth, William II FBO William Forsyth III | $158,730.96 |
| Galper, Burton | $90,616.72 |
| Galper, Harvin | $282,591.51 |
| Galper, Sheila | $66,338.91 |
| Gillmer, Ilisa | $12,361.94 |
| Gledhill, Chad & Mary | $28,972.87 |
| Glyman, Jil | $93,289.17 |
| Hansen, Michael | $2,080.00 |
| Hartshorne, Robert & Marianne | $20,189.91 |
| Henson, Harold | $74,058.16 |
| Horwitz, Lewis & Hermine | $164,631.75 |
| Ives, Karla | $11,770.21 |
| Izen, Ted (Izen Family Trust) | $30,592.66 |
| Johnson, Gayle | $21,409.03 |
| L.J. Warner Trust | $94,382.03 |
| Lessing, Linda | $47,906.43 |
| Levitt, John S. | $14,921.50 |
| Licata, Baldassare | $13,618.02 |
| Licata, Maddelena | $13,602.36 |
| Mendoza, Sally | $35,925.45 |
| Moore, Linda and Marilyn Long as co-trustees (Marilyn D. Long Revocable Trust) | $24,515.30 |
| Nisenson, Stanley | $139,582.74 |
| Ophelia, Dianne | $22,216.61 |
| Partridge, Laura | $165,350.50 |

Exhibit K - 000322

| Class Member Name | Net Settlement Amount to Client |
|---|---|
| Pereida, Robert & Sandra (Pereida Family Trust) | $25,447.52 |
| Popper, M.D., Ronald | $12,610.63 |
| Rothman, Dona (The Dona Rothman Family Trust) | $69,796.91 |
| Schoen, Douglas & Susan | $17,505.99 |
| Soltman, Steven B. | $429,789.24 |
| Spira, Marvin | $16,006.65 |
| Tuell, Rebecca | $23,432.88 |
| Turina, Boris & Nevenka | $11,288.94 |
| Wolf, Revon | $57,751.11 |
| Wong, Juliet | $13,184.14 |
| Worrell, Curtis | $10,448.12 |
| Worrell, Steve | $37,582.60 |
| Zimmerman, Sharon | $895,858.12 |

## PROOF OF SERVICE

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 15 West Carrillo Street, Santa Barbara, California 93101. On September 20, 2013, I served the foregoing document described as:

**PLAINTIFF LAWRENCE J. CANTOR'S RESPONSES TO SPECIAL INTERROGATORIES PROPOUNDED BY DEFENDANTS METLIFE, INC.; NEW ENGLAND LIFE INSURANCE COMPANY; NEW ENGLAND SECURITIES CORPORATION (SET FOUR, AMENDED)**

on the interested parties in this action on the dates and in the manner that follow:

☐    by placing the document listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below:

☒    BY E-MAIL: I submitted an electronic version of the above-referenced document(s) to the persons whose e-mail addresses are known to me as set forth below:

| | |
|---|---|
| Cheryl L. Haas | Email: Cheryl.haas@sutherland.com |
| Bryan M. Ward | Bryan.ward@sutherland.com |
| Yvonne Williams-Wass | Yvonne.williams-Wass@sutherland.com |
| Jaliya S. Faulkner | Jaliya.faulkner@sutherland.com |
| Aaron Furniss | Aaron.furniss@sutherland.com |
| SUTHERLAND ASBILL & BRENNAN LLP | |

☒    by electronic transmission via FTP – by transmitting electronically a true and correct copy of the above-listed document(s) on counsel of record on this date to www.CaseHomePage.com by file transfer protocol (FTP) upload pursuant to the Case Management Order dated April 22, 2011.

☐    by placing the document listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a FedEx agent for Delivery.

☐    by personally delivering the document listed above to the persons at the address set forth below.

**SEE ONLINE SERVICE LIST *IN RE DLG RELATED CASES* ON CASEHOMEPAGE**

Executed on September 20, 2013 at Santa Barbara, California.

☒    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
Colleen Connors

Counsel Listed on Following Page

1

2

3

4

5

6

7

SUPERIOR COURT OF THE STATE OF CALIFORNIA

8

COUNTY OF LOS ANGELES – CENTRAL CIVIL WEST DIVISION

9

10

*IN RE DLG RELATED CASES* ) Assigned for All purposes to the Hon. Elihu
) M. Berle, CCW Dept. 323 – All Related

11 ————————————————— )
)
12 THIS PLEADING RELATES TO: ) Case No: BC446497
)
13 ) CASE NOS. BC446497, BC443270,
LAWRENCE J. CANTOR, et al., ) BC446630, BC450293, BC452092,
14 ) BC456412, BC456561, SC108930,
Plaintiffs, ) LC090700, BC454198, BC454632,
15 ) BC456560, BC460697, BC456405,
v. ) BC456651, BC480029, BC456425,
16 ) VC053815
METLIFE, INC., et al, )
17 Defendants. )
)
18 ) **SIGNED VERIFICATION PAGE OF**
) **PLAINTIFF LAWRENCE J. CANTOR**
19 ) **AS TO HIS RESPONSES TO SPECIAL**
) **INTERROGATORIES, SET FOUR**
20 ) **(AMENDED), PROPOUNDED BY**
) **DEFENDANTS METLIFE, INC.; NEW**
21 ) **ENGLAND LIFE INSURANCE**
) **COMPANY; NEW ENGLAND**
22 ) **SECURITIES CORPORATION**
)
23 )
)
24 ) LEAD CASE NO. BC446497
)
25 )
)
26 ————————————————— )

27

28

SIGNED VERIFICATION PAGE OF PLAINTIFF LAWRENCE J. CANTOR AS TO HIS        1
RESPONSES TO SPECIAL INTERROGATORIES, SET FOUR (AMENDED),
PROPOUNDED BY METLIFE, INC., et al.,
LASC Case No.: BC446497

1   Thomas Foley, Esq. (SBN 65812)
    Robert A. Curtis, Esq. (SBN 203870)
2   Justin P. Karczag, Esq. (SBN 223764)
    **FOLEY, BEZEK, BEHLE & CURTIS, LLP**
3   15 W. Carrillo Street
    Santa Barbara, CA 93101
4   Telephone: (805) 962-9495
5   Facsimile: (805) 962-0722
    tfoley@foleybezek.com
6   rcurtis@foleybezek.com
7   jkarczag@foleybezek.com

8   Richard E. Donahoo, Esq. (SBN 186957)
9   Sarah, Kokonas, Esq. (SBN 262875)
    **DONAHOO & ASSOCIATES**
10  440 West First Street, Suite 101
    Tustin, CA 92780
11  Telephone:(714) 953-1010
12  Facsimile: (714) 953-1777
    rdonahoo@donahoo.com
13  skokonas@donahoo.com

14  John A. Stillman, Esq. (SBN 43731)
    Heidi Stilb Lewis, Esq. (SBN 98046)
15  **GOOD, WILDMAN, HEGNESS & WALLEY**
    5000 Campus Drive
16  Newport Beach, California 92660
17  Telephone: (949) 955-1100
    Facsimile: (949) 833-0633
18  jstillman@goodwildman.com
    hlewis@goodwildman.com
19
    *Attorneys for Plaintiffs and all others similarly situated*
20

21

22

23

24

25

26

27

28

SIGNED VERIFICATION PAGE OF PLAINTIFF LAWRENCE J. CANTOR AS TO HIS            2
RESPONSES TO SPECIAL INTERROGATORIES, SET FOUR (AMENDED),
PROPOUNDED BY METLIFE, INC., et al.,
LASC Case No.: BC446497

Exhibit K - 000326

**VERIFICATION**

<u>Cantor, et al., v. MetLife, Inc., et al.</u>
Los Angeles County Superior Court, Case No. BC 446497

    I, Lawrence J. Cantor, have read **PLAINTIFF LAWRENCE J. CANTOR'S RESPONSE TO SPECIAL INTERROGATORIES, SET FOUR (AMENDED), PROPOUNDED BY METLIFE, INC., NEW ENGLAND LIFE INSURANCE COMPANY, NEW ENGLAND SECURITIES CORPORATION** and know the content thereof. I am a one of the Plaintiffs in the above-referenced matter and make this verification on my own behalf. Based on my personal knowledge and discussions with my attorneys, I am informed and believe that the responses, other than objections, set forth therein are true and correct.

    I declare, under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at this <u>20th</u> day of September, 2013, in the County of Los Angeles, State of California.

                            Lawrence J. Cantor
                            Plaintiff and Responding Party

1

LASC Case No.: BC446497

PLAINTIFF LAWRENCE J. CANTOR'S RESPONSE TO SPECIAL INTERROGATORIES, SET FOUR

Exhibit K - 000327

### PROOF OF SERVICE

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 15 West Carrillo Street, Santa Barbara, California 93101. On September 24, 2013, I served the foregoing document described as:

**SIGNED VERIFICATION PAGE OF PLAINTIFF LAWRENCE J. CANTOR AS TO HIS RESPONSES TO SPECIAL INTERROGATORIES, SET FOUR (AMENDED) PROPOUNDED BY DEFENDANTS METLIFE, INC.; NEW ENGLAND LIFE INSURANCE COMPANY; NEW ENGLAND SECURITIES CORPORATION**

on the interested parties in this action on the dates and in the manner that follow:

☐    by placing the document listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below:

☒    BY E-MAIL: I submitted an electronic version of the above-referenced document(s) to the persons whose e-mail addresses are known to me as set forth below:

| | |
|---|---|
| Cheryl L. Haas | Email: Cheryl.haas@sutherland.com |
| Bryan M. Ward | Bryan.ward@sutherland.com |
| Yvonne Williams-Wass | Yvonne.williams-Wass@sutherland.com |
| Jaliya S. Faulkner | Jaliya.faulkner@sutherland.com |
| Aaron Furniss | Aaron.furniss@sutherland.com |
| SUTHERLAND ASBILL & BRENNAN LLP | |

☒    by electronic transmission via FTP – by transmitting electronically a true and correct copy of the above-listed document(s) on counsel of record on this date to www.CaseHomePage.com by file transfer protocol (FTP) upload pursuant to the Case Management Order dated April 22, 2011.

☐    by placing the document listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a FedEx agent for Delivery.

☐    by personally delivering the document listed above to the persons at the address set forth below.

**SEE ONLINE SERVICE LIST *IN RE DLG RELATED CASES* ON CASEHOMEPAGE**

Executed on September 24, 2013 at Santa Barbara, California.

☒    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Colleen Connors

# EXHIBIT L

1   Thomas G. Foley, Jr. (SBN 65812)
2   Robert A. Curtis (SBN 203870)
    Justin P. Karczag (SBN 223764)
3   **FOLEY BEZEK BEHLE & CURTIS LLP**
    15 West Carrillo Street
4   Santa Barbara, California 93101
    Telephone:(805) 962-9495
5   Facsimile: (805) 962-0722
    E-mail:    tfoley@foleybezek.com
6              rcurtis@foleybezek.com
7              jkarczag@foleybezek.com

8   Richard E. Donahoo (SBN 186957)        John A. Stillman (SBN 43731)
    Sarah L. Kokonas (SBN 262875)          Heidi S. Lewis (SBN 98046)
9   **DONAHOO & ASSOCIATES**               **GOOD, WILDMAN, HEGNESS &**
10  440 West First Street, Suite 101       **WALLEY**
    Tustin, California 92780               5000 Campus Drive
11  Telephone:(714) 953-1010               Newport Beach, California 92660
    Facsimile: (714) 953-1777              Telephone:(949) 955-1100
12  E-mail:    rdonahoo@donahoo.com        Facsimile: (949) 833-0633
13             skokonas@donahoo.com        E-mail:    jstillman@goodwildman.com
                                                      hlewis@goodwildman.com
14
    Attorneys for Plaintiffs
15
16              **UNITED STATES DISTRICT COURT**
           **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
17

18  ***IN RE DLG RELATED CASES***          CASE NO. 2:13-CV-07139-R (RZ)
    _____            (Removed from Superior Court of
19                                         California, County of Los Angeles, Lead
    THIS PLEADING RELATES TO               Case No. BC446497; BC456651
20  THE CONSOLIDATED CASES OF:             Consolidated with BC446497)

21  LAWRENCE J. CANTOR, et al.,
22           Plaintiffs,                    **PLAINTIFFS' NOTICE OF**
                                            **MOTION AND MOTION FOR**
23      vs.                                 **ORDER REMANDING MATTER**
                                            **TO STATE COURT**
24  METLIFE, INC., et al.,
25           Defendants.                    Date: December 2, 2013
    _____            Time: 10:00 a.m.
26  AND CONSOLIDATED CASE                  Location: Courtroom 8
27
28

---

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 2, 2013, at 10:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 8, located at the United States Courthouse at 312 North Spring Street Los Angeles, California, Plaintiffs Lawrence J. Cantor, *et al.* ("Plaintiffs") will move and hereby do move for the entry of an Order remanding this action to Department 323 of the Los Angeles Superior Court, Civil Complex Division, the Honorable Elihu M. Berle presiding, the state trial court in which this case was originally filed on September 30, 2010.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on October 21, 2013. Declaration of Thomas G. Foley, Jr. ¶18.

The grounds for this Motion are the following:

*First,* Defendants removed this case under the Class Action Fairness Act 28 U.S.C. 1332(d) ("CAFA"), claiming therein the 100-class member requirement was met by submitting evidence that the potential class membership in this case is the 109 DLG investors who invested through salesperson Scott Brandt. But, Defendants' showing is knowingly false. The Third Amended Class Action Complaint ("TACC") expressly excluded from the class all persons who settled their individual claims with Defendants (TACC, ¶64) and Defendants previously settled with at least 23 of the 109 (Foley Decl., ¶41). This means that even accepting everything else Defendants set forth in their Notice of Removal ("NOR") as true, removal was improper and this Court must remand because CAFA jurisdiction "shall not apply to any class action in which…(B) the number of members of all proposed plaintiff classes in the aggregate is less than 100." 1332(d)(5).

*Second*, Defendants' removal three years after the complaint was filed is untimely. Defendants claim an exception under the Ninth Circuit's recent decision in *Roth v. CHIA Hollywood Med. Ctr., L.P.,* 720 F.3d 1121 (9th Cir., 2013), Defendants' own evidence shows that exception is not available to them. This is

because *Roth* provides that the exception applies only where Defendant did not previously receive any "other paper" in the litigation that showed the case was removable, *and a defendant instead learns the facts from its own independent investigation*. Only then, may a Defendant remove a case using such information, as long as those subsection (b)(1) and (b)(3)'s two statutory provisions were not yet triggered and expired. Here, the totality of Defendants' evidence in support of the NOR consists solely of Plaintiffs' discovery responses; there is nothing about any independent investigation. *Roth* does not apply.

      *Third*, even if Defendants had filed a competent and timely NOR, the case is subject to <u>mandatory</u> remand under CAFA's local controversy <u>exception</u> (28 U.S.C. § 1332(d)(4)(A)) because (1) more than 2/3s of the class are more likely than not California citizens; (2) at least one Defendant from whom (a) "significant relief is sought," and (b) whose alleged conduct is a "significant basis of the claims," (c) is a California citizen; (3) the "principal injuries" resulting from the alleged conduct were incurred in the forum state; and (4) no class action asserting similar factual allegations has been filed against any of the defendants in the preceding three years. (28 U.S.C. § 1332(d)(4)(A).) As shown below Plaintiffs meet the required showing.

      *Fourth*, even when none of the above circumstances exist, CAFA still provides for a discretionary remand, under the "interests of justice" exception, which Plaintiffs submit should be exercised in this case to remand it back to the Complex Department of the Superior Court, which for three years has adjudicated this action, and twenty (20) other related actions arising out of the collapse of Diversified Lending Group, Inc., ("DLG"), with comprehensive judicial case management. This "interests of justice" exception applies if, looking at the "totality of the circumstances" it would be "in the interests of justice" to remand where (1) at least 1/3 but no greater than 2/3s of the class are California citizens, (2) the primary defendants are California citizens.

*Fifth* the Court should remand an individual <u>non-class</u> case, *Sam Gupta, et al. v. Larry Bagby, et al.* (LASC Case No. BC456651, filed 3/4/11) ("*Gupta*"). The *Gupta* individual case was consolidated by the LASC with this class action, *Cantor, et al. v. MetLife, Inc., et al.* There is no diversity between the parties in that individual action and there is no basis for federal jurisdiction.

Finally, Plaintiffs should also be awarded their attorneys' fees and costs in connection with the instant Motion for Remand. 28 U.S.C. § 1447(c); *Balcorta v. Twentieth Century Fox Film Corp.*, 208 F.3d 1102, 1106 n.6 (9th Cir. 2000). This is appropriate given the pronounced numerosity deficiency in the NOR and the fact that Defendants themselves created the circumstances that they know show that the 100-person requirement is not met--Defendants have already settled with at least 23 of the 109 Brandt class members, yet they still present the entirety of the 109 Brandt investors as potential plaintiffs.

This Motion is based on this Notice of Motion and Motion for Order Remanding Matter to State Court; the accompanying Memorandum of Points and Authorities; the Declarations of Thomas G. Foley, Jr., Richard E. Donahoo, Aaron Arndt, Mark Anchor Albert and David A. Gill, and declarations of the following potential class members: (1) Albee, Mary, (2) Bejarano, Jaime & Rosalba, (3) Blagg, Dean & Cynthia, (4) Borden, Robert & Charene, (5) Brandt, Chelsea, (6) Brandt, Julanne, also invested as Julanne Wilson Living Trust dated November 3, 2008, (7) Brandt, Rory, (8) Brandt, Timothy, invested as First Commerce Bank Customer FBO Timothy Brandt, (9) Brown, Jerome & Gregory, (10) Campos, Bruno, invested as Bruno Campos Revocable Trust and Road West Retirement Plan, (11) Calvert, Marlene, E., (12) Cantor, Lawrence & Patti, (13) Chapa, Olga, (14) Choi, Youngmin, (15) Cohen, Fred, (16) Comer, Robert, invested as First Commerce Bank Customer FBO Robert Comer, (17) Dipaola, Philip, invested as First Commerce Bank Customer FBO Philip Dipaola, (18) Dixon, Michael & Linda, (19) Dugue,

James, invested as First Commerce Bank Customer FBO James Dugue, (20) Durose, Kelly, invested as the Durose Family Trust Dated November 16, 2006, (21) Durose, Michele, invested as First Commerce Bank Customer FBO Michele Durose, (22) Durose, Wayne, invested as First Commerce Bank Customer FBO Wayne Durose, (23) Eme, Christophe, (24) Engelhardt, Jerry & Linda, invested as Jerry M. Engelhardt & Lynda T. Engelhardt Living Trust dated October 29, 1997, (25) Feir, Jules & Francine, also invested as invested as First Commerce Bank Customer FBO Jules Feir, (26) Feir, Pilar, (27) Feir, Steven, (28) Ferrario, Francesco, (29) Flaherty, Stephen, (30) Forsyth, Seth, invested as the WDF Living Trust of 1995 dated April 21, 1995, (31) Forsyth, Shaina, (32) Forsyth, William II & Karen, also invested the WDF Living Trust of 1995 dated April 21, 1995, (33) Forsyth, William III, (34) Forsyth, Wesley, (35) Frankenstein, William, (36) Fraser, Renee, also invested as Fraser Communications Defined Benefit Pension Plan, (37) Galper, Harvin & Merle, invested as First Commerce Bank Customer FBO Harvin Galper and Merle Galper, (38) Gibbons, Elizabeth, (39) Gilmer, Ilisa [correct spelling is "Gillmer"], (40) Gregory, John, (41) Gupta, Sam & Janet, (42) Hansen, Michael, (43) Horwitz, Lewis & Hermine, invested as the Horwitz Living Trust dated April 19, 1995, (44) Iannarelli, Michael, invested as First Commerce Bank Customer FBO Michael Iannarelli, (45) Iannarelli, Toni, invested as First Commerce Bank Customer FBO Toni Iannarelli, (46) Ives, Karla, (47) Izen, Ted & Marsha, invested as the Izen Family Trust 5-24-90, (48) Jacobs, Steven, invested as Steve Jacobs Defined Benefit Plan, (49) Kassup, Stanley & Susan, invested as Kassap Family Trust 05/01/92, (50) Lessing, Linda, (51) Levitt, John, also invested as Soltman, Levitt & Flaherty LLP 401K Profit Sharing Plan, (52) Lieberman, Johanna, (53) Logan, Charles, (54) Lopez, Tracy Anne, invested as First Commerce Bank Customer FBO Tracy Anne Lopez, also invested as Tracy Anne Durose, (55) Mann, Michael & Janet, invested as Mann Family Trust dated November 15, 2007, (56) Mishkin, Robert, invested as

First Commerce Bank Customer, FBO Robert Mishkin, (57) Mitchell, Edward & Eileen, (58) Mower, Caryn, (59) Munroe, Joseph, invested as First Commerce Bank Customer FBO Joseph Munroe, (60) Nisenson, Stanley, (61) Ortiz, Candie & Gabino, (62) Owen, Margaret, invested as First Commerce Bank Customer FBO Margaret Owen, (63) Owens, Timothy, invested as First Commerce Bank Customer FBO Timothy Owens, (64) Partridge, Laura, also invested as invested as First Commerce Bank Customer FBO Laura Partridge, (65) Paulsen, Gloria, (66) Pedder, Robert, also invested as Expert Building Maintenance, (67) Pereida, Robert and Sandra, invested as Pereida Family Trust, (68) Perna, Frank, (69) Pomonik, George & Roslyn, invested as Pomonik Family Trust dated August 1, 2006, (70) Pomonik, Joel & Denise, (71) Ports, John & Roneale, (72) Pritchard, Dale, (73) Ramirez, Christine, (74) Rothman, Dona, invested as The Dona Rothman Family Trust dated February 11, 1994, (75) Savatgy, George, (76) Scotti, Donald, invested as California National Bank Customer FBO Donald J. Scotti, (77) Shepherd, Dorothy, (78) Shinn, Charlene, (79) Soltman, Steven, (80) Stilley, Larry, invested as California National Bank Customer FBO Larry Stilley, (81) Tentser, Yakov, invested as Tentser Family Trust, (82) Tepperman, Jerome H., PH.D, Inc., 401(k) Profit Sharing Trust, by Roberta Tepperman, surviving spouse and successor trustee, (83) Thornton, Robert & Carole, invested as The Robert and Carole Thornton Family Trust dated July 25, 2000, (84) Van Sant, Karen, (85) Waddell, William & Eleanor, invested as the William W. & Eleanor C. Waddell Revoc Inter-Vivos U/T/D Trust dated July 29, 1993, (86) Walker, Paul, (87) Warner, Bernard, invested as First Commerce Bank Customer FBO Bernard Warner, (88) Warner, Lawrence & Dona, also invested as First Commerce Bank Customer FBO Lawrence Warner and Dona Warner, and L.J. Warner Trust 03-95, (89) Warner, Sheila, invested as Sheila Warner Trust, (90) Warner, Wynne, invested as the Wynne Warner Trust, Dated August 24, 1990 and as First Commerce Bank Customer FBO Wynne N. Warner, (91) Wilson, William,

also invested as First Commerce Bank Customer FBO William Wilson, (92) Wolf, Revon, (93) Wong, Juliet, and (94) Zimmermann, Sharon, invested as Trustee of the 5255 Trust, and the exhibits attached thereto; Plaintiffs' Request for Judicial Notice; any papers and records on file in this matter; and such oral and documentary evidence as may be presented to the Court in connection with this Motion.


Dated: October 28, 2013          **FOLEY BEZEK BEHLE & CURTIS LLP**
                                 **GOOD, WILDMAN, HEGNESS & WALLEY**
                                 **DONAHOO & ASSOCIATES**


                                 By __/s/Thomas G. Foley, Jr._____
                                     Thomas G. Foley, Jr.
                                     John A. Stillman
                                     Richard E. Donahoo
                                     Attorneys for Plaintiffs

# TABLE OF CONTENTS

TABLE OF AUTHORITIES. .................................................................x

INDEX OF EXHIBITS. ..................................................................26

I.     INTRODUCTION. ..................................................................1

II.    REMOVAL WAS PROCEDURALLY IMPROPER. ...................................2

    A. Defendants' NOR Does Not Satisfy CAFA's Numerosity Requirement. 3

    B. Defendants' Notice of Removal Is Untimely. ........................................ 4

        1. Defendants' Reference to *Roth* Does Nothing to Change the  Fact that the 30-day Limitation in (b)(3) Expired. ............................................ 4

        2. Defendants' Made No Showing that the Evidence They Possessed As of the Expiration of Time to  Remove Under (b)(3), Would Have Failed Under *Lowerdermilk,* but Is Sufficient Under *Rodriguez.* ........ 7

III.   THE CASE SHOULD BE REMANDED UNDER CAFA'S STATUTORY EXCEPTIONS. ..................................................................8

    A. The Case Must Be Remanded Under the Local Controversy Exception. . 8

    B. LASC Procedural History, the Related Cases and LASC Judicial Management. ......................................................... 9

    C. Allegations in the Operative Third Amended Consolidated Complaint. 12

    D. MetLife's Structure. ......................................................... 13

    E. Agents' Involvement In Selling DLG. ................................................. 13

    F. MetLife and Russon and Russon Financial's Obligation to  Supervise Brandt, Bagby and Davidson. ................................................. 14

    G. Russon Uses DLG as a Premium Financing Program. .......................... 14

    H. The Number of Class Members Who Invested Thru Brandt Is Actually Only 84 Potential Members and More than 2/3s Are Citizens of California. ......................................................... 15

    I. Even Considering the "Potential" of 247 Potential Class Members, More than 2/3s Are Citizens of California. ........................................................ 17

    J. Russon And Russon Financial Are Primary Defendants From Whom Significant Relief Is Sought And Are California Citizens. ...................... 18

    K. Principal injuries were incurred in California. ........................................ 20

    L. No other class actions filed in 3-years preceding this action. ................. 23

    M. Alternatively, Court Should Exercise Discretionary Remand. ............... 23

IV.    DEFENDANTS' REMOVAL OF THE GUPTA INDIVIDUAL CASE IS IMPROPER. ..............................................................................................24

V.    THIS COURT SHOULD AWARD PLAINTIFFS' COSTS AND FEES. ....24

VI.    CONCLUSION. ............................................................................................25

**TABLE OF AUTHORITIES**

**Cases**

*Abrego v. The Dow Chem. Co.*,
        443 F.3d 676 (9th Cir. 2006) ........................................................... 1

*Balcorta v. Twentieth Century Fox Film Corp.*,
        208 F.3d 1102 (9th Cir. 2000) ............................................. iv, 22

*Bey v. SolarWorld Indus. Am.*,
        904 F.Supp.2d 1096 (D. Or. Nov. 13, 2012) .................................. 2

*Boggs v. Lewis*,
        863 F.2d 662 (9th Cir. 1988) ........................................................... 1

*Coleman v. Estes Express Lines, Inc.*
        631 F.3d 1010 (9th Cir. 2011) ............................................. *passim*

*Critney v. National City Ford, Inc.*
        255 F. Supp. 2d 1146 (S.D. Cal. 2003) ....................................... 24

*Dead Kennedys v. Biafra*
        46 F. Supp. 2d 1028 (N.D. Cal. 1999)......................................... 24

*Flores v. Chevron Corp.*
        2011 U.S. Dist. LEXIS 59884 (C.D. Cal. May 31, 2011)............................ 2

*Gaus v. Miles, Inc.*
        980 F.2d 564 (9th Cir. 1992) ........................................................... 1

*Gonzales v. Sears Outlet Stores, LLC*
        2013 U.S. Dist. LEXIS 90142 (C.D. Cal. June 26, 2013)........................ 16

*Haynes v. EMC Mortg. Corp.*
        2010 U.S. Dist. LEXIS 46436 (N.D. Cal. Apr. 12, 2010)........................ 2

*Kaufman v. Allstate N.J. Ins. Co.*
        561 F.3d 144 (3d Cir. N.J. 2009)................................................. 20

*Lew v. Moss*
        797 F.2d 747 (9th Cir. 1986) ....................................................... 16

*Li v. Eddy*,
   324 F.3d 1109 (9th Cir. 2003) ................................................................ 20

*Lyddy v. World of Jeans & Tops*
   2012 U.S. Dist. LEXIS 30806 (S.D. Cal. Mar. 7, 2012) ........................... 22

*Moss v. Kroner*
   197 Cal.App.4th 860 (2011) ............................................................... 10, 11

*Quesada v. Herb Thyme Farms, Inc.*
   2011 U.S. Dist. LEXIS 37697 (C.D. Cal. Mar. 28, 2011) ........................... 2

*Romo v. Panda Rest. Group, Inc.*
   2012 U.S. Dist. LEXIS 128689 (C.D. Cal. Sept. 7, 2012) ...................... 1, 2

*Roth v. CHA Hollywood Med. Ctr., L.P.*
   720 F.3d 1121 (9th Cir. 2013) ......................................................... *passim*

*Serrano v. 180 Connect, Inc.*
   478 F.3d 1018 (9th Cir. 2007) .......................................................... 1, 3

*Villa v. United Site Servs. of Cal.*
   2013 U.S. Dist. LEXIS 78499 (N.D. Cal. June 4, 2013) ........................... 16

*Williams v. Ruan Transp. Corp.*
   2013 U.S. Dist. LEXIS 150374 (E.D. Cal. Oct. 17, 2013) ........................... 7

**Statutes**

Federal:

28 U.S.C.

   § 1332(c)(1) ................................................................................ 18

   § 1332(d) ................................................................................. ii, 1

   § 1332(d)(3) ................................................................................ 23

   § 1332(d)(4)(A) ........................................................... Ntc 3,1, 8, 9

   § 1332(d)(4)(A)(i)(II)(aa) and (bb) ............................................ 12, 13

   § 1332(d)(5) ............................................................................. ii, 3

§ 1441(a) ................................................................. 4, 5, 6

§ 1446(b)(1) ........................................................... 4, 5, 6

§ 1446 (b)(3) .......................................................... 4, 5, 6

§ 1447(c) ................................................................. iv, 24

California Business & Professions Code

§17200 ..................................................................... 22

California Corporations Code

§2504 ........................................................................ 21

§25504.1 ................................................................... 21

California Welfare and Institutions Code

§15600 ..................................................................... 22

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION.

Defendants' removal was procedurally improper and jurisdiction lacking under the Class Action Fairness Act of 2005 ("CAFA") (28 U.S.C. § 1332(d)). Even if it was removable, Plaintiffs meet the "local controversy" exception which requires remand. Even if the local controversy exception is not found, the Court should exercise its discretion and remand under the "interest of justice" exception.

There is a strong presumption against removal, and the removing defendant always bears the burden of showing that removal is proper. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). It is well established by Ninth Circuit precedent that the removal statutes are to be strictly construed against the exercise of removal jurisdiction. *Gaus*, 980 F.2d at 566, citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988). Accordingly, if "any doubt exists" as to the appropriateness of "removal in the first instance," federal jurisdiction must be rejected. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)

Furthermore, the Ninth Circuit has also held that "under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006). Even when a removing defendant successfully meets CAFA's threshold standards, under CAFA's "local controversy" exception, a district court "**shall decline**" to exercise jurisdiction if the requirements set forth in 28 U.S.C. § 1332(d)(4)(A) are met. "In this Circuit, once a party establishes federal jurisdiction under CAFA, a party seeking to apply an exception to CAFA has the burden to so prove by a preponderance of the evidence." *Romo v. Panda Rest. Group, Inc.*, 2012 U.S. Dist. LEXIS 128689, at *1-4 (C.D. Cal. Sept. 7, 2012), citing *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007). When determining whether the requirements of a CAFA exception apply a court should apply common sense and

reasonable inferences. *Bey v. SolarWorld Indus. Am.*, 904 F.Supp. 2d 1096, 1102 (D. Or. Nov. 13, 2012); *Romo*, 2012 U.S. Dist. LEXIS 128689, at *9-10; *Haynes v. EMC Mortg. Corp.*, 2010 U.S. Dist. LEXIS 46436, at *9 (N.D. Cal. Apr. 12, 2010); *Quesada v. Herb Thyme Farms, Inc.*, 2011 U.S. Dist. LEXIS 37697, at *9 (C.D. Cal. Mar. 28, 2011); *Flores v. Chevron Corp.*, 2011 U.S. Dist. LEXIS 59884, at *10 (C.D. Cal. May 31, 2011). Plaintiffs' burden is merely proof by a preponderance of evidence. *Romo* 2012 U.S. Dist. LEXIS 128689, at *1, 4. Moreover, the Ninth Circuit has determined that based upon the plain reading of the statute, when it comes to the local controversy exception, certain elements of the local controversy exception are to be met only by reference to the allegations in the complaint. *See Coleman v. Estes Express Lines, Inc.*, 631 F.3d 1010, 1015-16 (9th Cir. 2011).

Here, Defendants failed to meet their burden on removal. In contrast, Plaintiffs meet their burden to require remand.

## II.    REMOVAL WAS PROCEDURALLY IMPROPER.

This action arises out of the collapse of Diversified Lending Group, Inc., ("DLG"), which was seized by the Securities and Exchange Commission ("SEC") on March 4, 2009 after the SEC identified DLG as a Ponzi scheme. (*SEC v. Diversified Lending Group, Inc. et al.,* Case No. 2:09-cv-01533-R-JTL, (herein after "*SEC v. DLG*") Doc. 1.) DLG's principal, Bruce Friedman, was aided and abetted by an individual insurance broker, Defendant Tony Russon, and California licensed agents and representatives affiliated with his California agency, Defendant Russon Financial, Inc. (TACC, ¶¶ 40, 42.) During the relevant time period, Russon and his agency were contracted with MetLife-affiliate Defendants New England Life Insurance Company ("NELICO"), as a Corporate Managing Partner, and with New England Securities ("NES"), as Registered Principal in an Office of Supervisory Jurisdiction ("OSJ") for Southern California. (TACC, ¶¶ 15.)

On September 26, 2013, after three years of litigation before the Los Angeles

Superior Court ("LASC"), Defendants MetLife, Inc., NELICO and NES (collectively "MetLife Defendants") filed a Notice of Removal ("NOR") of this action under CAFA.

### A. Defendants' NOR Does Not Satisfy CAFA's Numerosity Requirement.

The class definition is pleaded as:

All Persons who entered into a Contract with DLG and invested funds with DLG between December 2004 and March 4, of 2009, after being provided with a copy of the DLG Welcome Packet by an insurance agent affiliated with Defendants NELICO and MetLife, or by a registered representative affiliated with Defendant NES, and whose entire principal investment was not repaid by DLG (the "Class").

TACC ¶ 61. Expressly excluded from the Class are individuals who have previously settled their claims with Defendants MetLife, NEF and/or NES related to their investments in DLG and executed a release of claims. *Id.* at ¶ 64.

Defendants removed this case on the purported basis that the potential class membership consisted of 100 or more persons. (NOR ¶ 4.) Defendants assert that they have established that the class exceeds 100 (NOR ¶10), but the true facts known to them show otherwise. Defendants contend that Plaintiffs' combined discovery responses show that the potential class membership is comprised of 109 persons who invested with DLG by way of recommendation from Scott Brandt, who provided them a "welcome packet" or kit (the "Brandt investors"). NOR ¶ 10. ¶¶ 36, 37, 44.

The fundamental flaw with this position is that the MetLife Defendants actually knew that of those 109 persons, at least *23 of them did not qualify* for membership in the class because they settled with the MetLife Defendants prior to removal. (Declaration of Thomas G. Foley ("Foley Dec.") dated 10/28/13, ¶41.) As stated in mandatory exclusionary language, CAFA's removal provisions do "not apply to any class action…which the number of all proposed plaintiff classes in the aggregate is less than 100." 1332(d)(5). *See Serrano v. 1800 Connect, Inc.*, 478 F.3d

1018, 1020-1021 and n.3 (9th Cir. Cal. 2007) (numerosity of 100 is <u>jurisdictional</u>, not merely an exception, and burden is on Defendant to show that it has been met). Defendants have failed to meet this jurisdictional requirement and remand should be granted on this basis alone.

**B.    Defendants' Notice of Removal Is Untimely.**

**1.    Defendants' Reference to *Roth* Does Nothing to Change the Fact that the 30-day Limitation in (b)(3) Expired.**

Notwithstanding three years of litigation, Defendants argue that they retained a right to remove under the general provisions of 28 U.S.C. 1441(a) because their 30-day time period to remove under 28 U.S.C. 1446(b)(1) or (b)(3) had not yet expired, citing *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121 (9th Cir. 2013). (NOR ¶¶ 6-8.) In a convoluted series of assertions in their NOR, Defendants contend that the period did not expire because they did not know the case was removable until Plaintiffs' most recent interrogatory responses dated September 20, 2013, which stated that Brandt testified in a deposition that he provided a welcome packet to investors he solicited. (NOR ¶¶19-24.) Defendants posit that because those September 20th responses stated that Brandt provided a welcome packet containing misrepresentations to class members, Defendants now (for the first time, apparently) had a critical bit of new evidence that they could tie to the earlier interrogatory responses dated July 29, 2013, which listed potential class members. (NOR ¶26.) Defendants allege that with these two pieces of "new" evidence, they could determine, for the first time, that the potential class members were 109 Brandt investors. Therefore, Defendants conclude that because they filed their NOR six days later, it must be timely filed under *Roth*, *supra*.

Defendants are wrong for two reasons:

First and foremost, Defendants were actually aware as early as three years ago, when in the initial Complaint, Plaintiffs alleged that Brandt provided the

welcome packet's misrepresentations to potential class members.[1] And, they have been reminded of it time and time again with each amended version of the complaint. See, e.g., TACC, ¶¶ 96-99, exh A to NOR. Defendants' argue that they had to wait until the September 20, 2013 discovery response (which stated that Brandt had testified that he gave the welcome packet to all investors) for additional evidence to support the allegation in the TACC concerning Brandt before the case could be "ascertainably" removable. But the argument is countered by an additional irrefutable fact. Specifically, the MetLife Defendants received an entire transcript of Scott Brandt's deposition testimony in *Soltman, et al., v. Jackson National, et al.* Case No. 2:10-cv-00612-R (RZx) on April 15, 2013 in Brandt's response to MetLife's discovery demand. It is in that deposition in the *Soltman* case wherein Brandt testified to providing the welcome packet/kit information to all investors he sold to. Declaration of Mark Anchor Albert ¶¶ 3-9, Exhibit A Brandt Deposition Transcript). The MetLife Defendants had the Brandt testimony regarding providing the welcome packet to investors, the alleged "new" fact, over five months before removal.

Under *Roth,* removal remains, as it always has been, governed by 28 U.S.C. 1441(a), which *authorizes* a defendant to remove, and by 28 U.S.C. 1446(b)(1) and (b)(3), which provide mandatory 30-day limits upon which a Defendant must remove. *Roth*, 720 F.3d 1124 (citing (b)(1): "The notice of removal of a civil action

---

[1] Note, Plaintiffs' original allegation that the class was less than 100 was based on information and belief at the time. (Foley, ¶¶27-28). Plaintiffs acknowledge that because the pleading itself pled that the class size was less than 100, the allegations in the original complaint, standing alone, were not sufficient to trigger the 30-day removal period set forth in 28 U.S.C. § 1446(b)(1), which applies to the initial pleading. However, the fact is that the critical bit of information that Defendants contend they were waiting on, that Brandt provided the misrepresentations to class members, was in the original complaint, thus, their only true missing bit of information was the number of potential class members, which they received July 29, 2013. The schedule provided July 29, 2013, included a column entitled "Agent" that listed the agent who solicited the investment. This is the source for Defendants number of "109" "Brandt" investors. (See NOR ¶37.) Thus Defendants were aware of the 109 Brandt investors on July 29, 2013.

or proceeding *shall be filed* within 30 days after the receipt by the defendant").

Subsection (b)(3) sets forth the requirements for when a matter later becomes subject to removal, providing that "removal may be filed *within thirty days after receipt by the defendant, through service or otherwise, of a copy* of an amended pleading, motion, order or *other paper from which it may first be ascertained that the case is one which is or has become removable."* (Emphasis added.)

Thus, when it comes to removal under CAFA subsequent to *Roth*, the proper analysis proceeds as follows: First, did any of the triggering events in (b)(1) or (b)(3) occur to commence the 30-day period running? If so, then, did defendant timely remove within the 30-day period? If not, the removal is untimely. Second, if the triggering events did not yet occur and expire, did defendant conduct its own independent investigation to discover facts that show the case is removable? If so, then removal under *Roth* and §1441(a) is permissible. If not, there is no existing authority for removal.

Defendants present no analysis in their NOR, instead, they simply cite *Roth*, and assert that: "This case is subject to removal because neither of the thirty-day removal periods were previously triggered," and then they cross-reference their allegations concerning Plaintiffs' discovery responses. NOR ¶ 8. The first problem is that even if their contentions were true and the removal periods were not yet triggered, Defendants fail to show any independent investigation, as *required* by *Roth*. Instead, they rely solely upon information they received *in this case* in the form of a "pleading," the TACC (and its class definition) and "other papers," Plaintiffs' various discovery responses. Consequently, it is patently obvious that *Roth* is inapplicable.

Defendants' own evidence shows that subsection (b)(3)'s removal period had expired. The interrogatory and response that they attach to the NOR simply asks Plaintiffs to identify the potential class members; in response, on July 29, 2013,

Plaintiffs provide a list of 247 persons or entities; herein after referred to as "Preliminary Schedule." Plaintiffs' July 29, 2013 discovery response was patently an "other paper" under (b)(3), consequently, at this moment, the matter was "ascertainably" "removable" and the time to remove expired on August 28, 2013. It cannot be revived under *Roth* or any other authority.

Thus, the case became "ascertainably removable" on July 29 2013 when Defendants obtained the list of potential class members, the Preliminary Schedule; no subsequent information was required. *See Williams v. Ruan Transp. Corp.*, 2013 U.S. Dist. LEXIS 150374, at *2-3 (E.D. Cal. Oct. 17, 2013) (defendant attempted to remove 3 ½ years after the complaint was filed, citing *Roth:* "Additionally, *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121 (9th Cir. 2013), is inapplicable in this action as Defendants received an 'other paper' providing them with notice of jurisdiction under the Class Action Fairness Act" and imposed sanctions).

     **2.**    **Defendants' Made No Showing that the Evidence They Possessed As of the Expiration of Time to Remove Under (b)(3), Would Have Failed Under *Lowerdermilk,* but Is Sufficient Under *Rodriguez*.**

Defendants have a problem with attempting to rely upon the September 20, 2013 discovery response as a triggering event for removal—they know that there is nothing in that response that was not already provided to them earlier. Given Defendants' discussion in their NOR of *Lowdermilk,* (NOR ¶ 41) and *Rodriguez* (NOR ¶¶ 42-43), Defendants may argue in opposition to this motion that the NOR was timely by claiming *Rodriguez* changed the evidentiary burden from "legal certainty" to a "preponderance" standard, and, therefore, on August 27, 2013, that change in the law "restarted" their time to file their NOR. Defendants argue that the information available to them on July 29, 2013, when they received the list of class members, was not sufficient to prevail under a *Lowerdermilk* standard but became

sufficient under the *Rodriguez* on August 27. The problem is they cannot succeed because there is no support for the contention that when Plaintiffs provided a discovery response with a list of potential class members, and that list is tied directly to their class definition, that it did not show class membership by a "legal certainty" but would by a "preponderance of the evidence."

## III. THE CASE SHOULD BE REMANDED UNDER CAFA'S STATUTORY EXCEPTIONS.

### A. The Case **Must** Be Remanded Under the Local Controversy Exception.

Under the "local controversy" exception in CAFA, a district court **shall decline** to exercise jurisdiction over a class action in which:

1. greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

2. at least 1 defendant is a defendant (a) from whom significant relief is sought by members of the plaintiff class; (b) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and (c) who is a citizen of the State in which the action was originally filed; and

3. principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

4. during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons …

28 U.S.C. § 1332(d)(4)(A).

Here, the exception is met. Primary defendants include Defendant Russon, and Russon Financial. It is undisputed that Mr. Russon and his corporation are citizens of California. The DLG Contract Specimen attached to the TACC as exhibit "D," pp. 47-70 states the contract was issued in California, and that the law of the

state where the contract was issued is to apply. As set forth below, Plaintiffs submit evidence that more than 2/3s of the putative class as defined in the TACC are citizens of California. The evidence comes from three sources: (1) sworn declarations from potential putative class members, (2) <u>certified</u> Assessor's Real Property Records of potential putative class members showing their real property ownership, in many cases with a "Homeowners Exemption," from the County Assessors in the Counties of Los Angeles, Ventura, Orange, Kern, Placer, El Dorado and Santa Cruz evidencing property ownership, and (3) a declaration from the court-appointed Receiver David Gill in *SEC v. DLG* identifying addresses from the Receiver's updated Schedule of Creditors. (Foley, ¶¶35, 37; Exhs. HH and II.)

Under the CAFA "local controversy" exception, 28 U.S.C. §1332(d)(4)(A), the Court **must** decline federal jurisdiction where two-thirds or more of the class and at least one of the primary defendants—are citizens of the state in which the action was originally filed, and where the principle injuries resulting from the defendants' alleged wrongful conduct were suffered in the state where the action was filed. Here, remand is mandatory.

**B.  LASC Procedural History, the Related Cases and LASC Judicial Management.**

Plaintiffs filed this case in the Los Angeles County Superior Court ("LASC") on September 30, 2010 (LASC Case No. BC446497. (Decl. of Richard E. Donahoo ("Donahoo Decl.") ¶2.) Ultimately, twenty separate cases involving DLG were filed in the LASC. (Donahoo, Exh. A, *Cantor* Docket, p.1) [2] All of the twenty cases have been deemed "related" pursuant to Cal. Rule of Court 3-300 and assigned to Judge Elihu M. Berle in Dept 323 of the LASC Civil Complex Division (Donahoo, ¶5). Six of the 20-related cases involve direct claims or cross-complaints against the

---

[2] Plaintiffs request the Court take judicial notice of the dockets of the six DLG-related cases where the MetLife Defendants are named either as direct Defendants or Cross-Defendants. (See Donahoo, Exhs. B-G; See Plaintiffs' Request for Judicial Notice.)

1    MetLife Defendants. (Donahoo Decl. ¶¶8-13.; Exhs. B-G.)[3]

2          Judge Berle has actively supervised the litigation of the DLG-related cases.

3    (Donahoo ¶15.) Judge Berle entered a detailed Case Management Order ("CMO")

4    governing discovery in the DLG-related cases, including the MetLife cases.

5    (Donahoo, ¶15.) The purpose of the CMO was to manage and coordinate discovery

6    between the DLG-related cases, including common interrogatories, document

7    productions, and depositions. (Donahoo, ¶15; Exh. I.)

8          Not only has the LASC exercised comprehensive case management of this

9    case and the other DLG-related cases, but the California Court of Appeal for the

10   Second District has heard and ruled on a significant legal issue in a DLG case, which

11   Judge Berle cited in overruling the MetLife Defendants' demurrer in this case.  In

12   *Moss v. Kroner*, 197 Cal.App.4th 860 (2011), *review denied*, the Second District

13   considered the facts of one of the six DLG-related cases pending before Judge Berle,

14   which alleged claims against Robert Kroner who was an agent for MetLife Investors

15   USA and reversed the trial court's granting of a demurrer. (Donahoo Decl. ¶19.)

16   Judge Berle has ruled on multiple demurrers and motions to strike including a

17   demurrer and motion to strike in this case directed at Plaintiffs' operative TACC

18   (NOR, exh. A) (Donahoo, ¶14.) On January 31, 2012, Judge Berle heard the MetLife

19   Defendants' demurrer to the TACC, and overruled the demurrer as to the first nine

20   causes of action and sustained the demurrer solely as to the tenth cause of action.

21   (Donahoo ¶14, Exh. H, pp. 56-64). In addressing the *Cantor* Plaintiffs' claims for

22   violation of California securities laws, the court specifically cited and relied on

23

24   [3] One of the related cases, *Sam Gupta, et al. v. MetLife, et al.* (LASC Case No. BC456651, filed
25   3/4/11) ("*Gupta*") is an individual case brought by Sam Gupta and Janet Gupta against MetLife
     and Tony Russon for negligent retirement planning. At a status conference on October 25, 2011
26   Judge Berle consolidated the *Gupta* individual action with the *Cantor* putative action and ordered
     Plaintiffs to file an amended consolidated complaint consolidating the *Gupta* causes of action in
27   the same complaint as the *Cantor* causes of action. See Donahoo, ¶27, **Exhibit O.**  Plaintiffs in
     this action and the *Gupta* action thereafter filed the operative TACC that included the *Gupta* non-
28   related DLG claims into this complaint as separate causes of action. (Donahoo, ¶27)

*Moss*. ("The court will follow the reasoning of the <u>Moss</u> case which involves the same DLG notes in the present case." Exh H, 62:1-2.)  Prior to removal, the parties in *Cantor* and the other 19-related cases engaged in discovery including written discovery, document productions and depositions. (Donahoo, ¶16.)

After resolution of the demurrers and motions to strike, and prior to removal, Judge Berle held a hearing to discuss how the DLG-related cases, or certain issues, may be tried together. (Donahoo, ¶17, Exh J, July 11, 2013.)  At the hearing, counsel for the MetLife Defendants stated MetLife was "completely comfortable" with trying all DLG cross-claims affecting the MetLife Defendants together, and possibly others. Judge Berle directed the parties to attempt to identify which cases and/or which common issues could be bifurcated and tried together to facilitate judicial efficiency and economy. (Donahoo Decl. ¶18.)

On September 27, 2013 the MetLife Defendants removed the *Cantor/Gupta* TACC.  On October 17, 2013, subsequent to the Notice of Removal being filed, Judge Berle conducted a Status Conference in the 20 DLG-related cases which he is managing. (Foley Decl. ¶50; Donahoo Decl. ¶28.)  There was no court reporter at the 10/17/13 Status Conference because of budgetary cutbacks experienced by the Los Angeles County Superior Court. (Foley Decl. ¶50.) Thomas Foley and Richard Donahoo participated because they are counsel in two other cased related to DLG, which have been "related" for purposes of judicial management.  Cheryl Haas, lead counsel for the MetLife Defendants participated telephonically at that Status Conference. The local California counsel for the MetLife Defendants did not participate. (Foley Decl. ¶57.)

At the October 17, 2013 Status Conference, Judge Berle once again asked all counsel with cases with direct claims and cross-complaints involving the MetLife Defendants if they would agree in concept for purposes of efficient and economic judicial management, and to avoid potential inconsistent verdicts, to allow one consolidated proceeding involving the MetLife Defendants and MetLife Cross-

Defendants, to be tried either by the court sitting without a jury, or with the same jury for all the MetLife related cases, on the sole issue of what, if any, "duty" was owed by the MetLife Defendants to the individuals who invested in DLG after being solicited to do so by an insurance agent or registered representative affiliated with MetLife. (Foley Decl. ¶49; Donahoo Decl. ¶29.) Cheryl Haas, lead counsel for MetLife, replied to Judge Berle's request by stating, words to the effect that the MetLife Defendants and Cross-Defendants would in concept agree to one consolidated trial on the duty of what, if any, duty the MetLife Defendants owed to individuals who invested in DLG after being solicited by an insurance agent or registered representative affiliated with MetLife, and she further stated that she would recommend to her clients that they waive jury and allow Judge Berle to rule on the duty issue. (Foley Decl. ¶52; Donahoo Decl. ¶29.)

## C. Allegations in the Operative Third Amended Consolidated Complaint.

For purposes of determining whether a plaintiff making a motion to remand has satisfied his burden of proof under the local controversy exception for purposes of §1332(d)(4)(A)(i)(II)(aa) and (bb), the district court looks only to the complaint: "We hold that CAFA's language unambiguously directs the district court to look only to the complaint in deciding whether the criteria set forth in §1332(d)(4)(A)(i)(II)(aa) and (bb) are satisfied." *Coleman v. Estes Express Lines, Inc.* 631 F.3d 1010, 1015 (9th Cir. 2011).

The following paragraph from the TACC establish that Plaintiffs are seeking significant relief from Defendants Russon, Russon Financial and James Davidson ("Davidson") in the TACC, and that the conduct alleged in the TACC forms a significant basis for the claims asserted by the proposed plaintiffs' class:

Defendant Russon Financial, its managing partner and principal Defendant Russon, and Defendant Davidson along with, Larry Bagby and Scott Brandt, who were MetLife agents working under the supervision and control of Defendants Russon and Russon Financial,

---

sold unregistered securities, i.e. promissory notes, issued by DLG as a form of "premium financing" to generate additional sales of insurance products offered by the MetLife Enterprise Defendants. (TACC, ¶39.)

## D. MetLife's Structure.

Defendants MetLife and NELICO's products were sold and distributed through an agency system. (TACC, ¶13.) NELICO sells securities through its subsidiary, NES. (TACC, ¶13.) NES conducts its securities business from NELICO's 45 regional general agencies, where a Field Management Registered Principal supervises NES' registered representatives (collectively, hereinafter MetLife, NELICO, NEF, and NES are referred to as the "MetLife Defendants"). (TACC, ¶13.)

Defendant Russon Financial was a NELICO general agency and Corporate Managing Partner, as well as a NES Corporate Registered Principal. (TACC, ¶14.) Russon Financial was also NES' Office of Supervisory Jurisdiction for Southern California, conducting MetLife's business under the NEF service mark. (TACC, ¶15.) Defendant Russon was the Managing Partner of Russon Financial and the Field Management Registered Principal for NES. (TACC, ¶16.)

Russon Financial, NELICO, and MetLife received a portion of the premium generated when its life insurance agents sold NELICO and MetLife insurance products. (TACC, ¶¶17, 47.) Russon Financial and NES received a portion of the commissions earned when its registered representatives affiliated with NES sold securities. (TACC, ¶18.)

## E. Agents' Involvement In Selling DLG.

Scott Brandt ("Brandt") was a Career Agent affiliated with MetLife and NELICO, who was affiliated with the Russon Agency. TACC, ¶¶36. Defendant Davidson had "Company Appointments" to sell insurance and annuity business on behalf of MetLife, was an agent of NELICO, and a registered representative affiliated with NEF and NES, and he was also affiliated with the Russon Agency.

(TACC, ¶¶12, 38, 44.) Larry Bagby ("Bagby") was a registered representative affiliated with NEF and NES, and he worked at Russon Financial. (TACC, ¶¶37, 44.) Based on their positions as Managing Partner for NELICO and Field Management Registered Principal of NEF, Defendants Russon and Russon Financial had a duty to supervise Brandt, Davidson, and Bagby while they were acting as agents. (TACC, ¶¶36-38.)

### F. MetLife and Russon and Russon Financial's Obligation to Supervise Brandt, Bagby and Davidson.

NELICO and NES were subject to oversight and supervision by the MetLife Enterprise Home Office Compliance Department ("HOCD") and related regional compliance and field managers. (TACC, ¶20.) There was a supervisory and compliance structure to prevent customers transacting business with the MetLife Enterprise from purchasing insurance or financial products that were not suitable for the customer. (*Id.*, ¶20.) HOCD was tasked with monitoring and reviewing the business activities of NELICO, its Managing Partners and agents, and NES' Field Management Registered Principals and agents, and ensuring compliance with applicable laws, regulations, and internal policies. (TACC, ¶21.) NES' registered representatives were prohibited from selling promissory notes that were not approved by HOCD. (TACC, ¶23.) Additionally, in compliance with FINRA Conduct Rule 3010(D)(2), NELICO and NES had an audit and compliance review system that applied to Career Agents to prevent them from selling insurance or financial products that were not suitable for its customers. (TACC, ¶24.)

### G. Russon Uses DLG as a Premium Financing Program.

In December 2004, Defendant Russon, acting within the course and scope of his agency with the MetLife Defendants, organized a meeting of MetLife agents at his office in Sherman Oaks, at which he authorized Bruce Friedman, the president of DLG, to make a presentation about using DLG products as a form of "premium

financing." (TACC, ¶¶39, 40.) Friedman told the attendees, including Brandt, Bagby, and Davidson, that DLG offered two investment "contracts": (1) a 9% Note that paid investors a "minimum guaranteed rate of 9%" and that the entire amount of the principal investment was guaranteed through the use of a collateral assignment of an annuity, and (2) a 12% Note that paid investors a "minimum guaranteed rate of 12%" and that DLG guaranteed the principal payment and interest. (TACC, ¶¶42-44.) Friedman provided marketing materials, including copies of DLG's "Welcome Packet" for use in soliciting participation in the DLG Note Programs. (TACC, ¶45.) Defendant Russon, acting in the course and scope of his MetLife Enterprise agencies, encouraged the insurance agents and registered representatives to solicit their existing customers and new customers to purchase DLG's Notes in order to sell more MetLife Enterprise products. (TACC, ¶46.)

After the December 2004 meeting, Russon and Russon Financial knew that Brandt, Bagby and Defendant Davidson were encouraging existing and potential MetLife and NELICO clients to purchase DLG Notes as a form of premium financing when soliciting customers to purchase MetLife and NELICO products. (TACC, ¶50.) This knowledge is imputed to the MetLife Defendants, as Brandt and Defendants Russon and Davidson, as well as Bagby, were all acting within the course and scope of their respective agencies when recommending DLG's premium financing plan to Plaintiffs. (TACC, ¶52.)

## H. The Number of Class Members Who Invested Thru Brandt Is Actually Only 84 Potential Members and More than 2/3s Are Citizens of California.

To demonstrate citizenship for diversity purposes a party must (a) be a citizen of the United States, and (b) be domiciled in a state of the United States. [citation] Our cases have established several principles to guide this inquiry. First, the party asserting diversity jurisdiction bears the burden of proof. [citation]. Second, a person is "domiciled" in a location where he or she has established a "fixed habitation or abode in a

particular place, and [intends] to remain there permanently or indefinitely.'" [citation]. Third, the existence of domicile for purposes of diversity is determined as of the time the lawsuit is filed. [Citation]. *Lew v. Moss*, 797 F.2d 747, 749-750 (9th Cir. 1986)

In the context of CAFA removal and remand, where the complaint is silent as to "citizenship" District Courts have acknowledged that in the absence of a declaration from each class member attesting to citizenship, a party may provide "competent proof" of citizenship utilizing a variety of objective forms of evidence, including "location of real and personal property." *See Villa v. United Site Servs. of Cal.*, 2013 U.S. Dist. LEXIS 78499, at *6-8 (N.D. Cal. June 4, 2013) (citing *Lew*, *supra*, and finding that defendant had failed to meet its burden of diversity of citizenship for purposes of CAFA removal); *see also Gonzales v. Sears Outlet Stores, LLC*, 2013 U.S. Dist. LEXIS 90142, at *3-5 (C.D. Cal. June 26, 2013) .

To summarize the evidence presented in support of this Motion, Plaintiffs prepared a Revised Schedule of Potential Class Members ("the Revised Schedule") (Foley, ¶ 37, Exh. HH) and a subset of the Revised Schedule, solely depicting investors listed as DLG investors thru Brandt ("Revised Brandt Subset") (Foley, ¶37, Exh. II. The revised schedules summarize the evidence Plaintiffs present with this Motion to establish that more than 2/3s of the potential class members who invested in DLG thru Brandt are more likely than not citizens of California. (See Foley, ¶44). Plaintiffs meet the 2/3s threshold whether the class is measured, as Defendants' allege, solely as investors who invested through Brandt, or as the larger "potential" class members identified in Plaintiffs July 29, 2013, discovery response, herein after referred to as the "Preliminary Schedule." A copy of the Preliminary Schedule is attached to the NOR as Exhibit "L."

As described in the Foley Declaration, Plaintiffs' further investigation subsequent to preparing the Preliminary Schedule has identified individuals or entities on the original schedule who settled their claims with the MetLife Defendants prior to removal, thus excluding them from the class definition. In

addition to the settled claims, Plaintiffs identified individuals or entities who were duplicative entries in the list of 247 in Plaintiffs' Preliminary Schedule.[4] (Foley, ¶42.)

With regard to the 109 DLG investors who invested through Scott Brandt, Plaintiffs have now identified 23 individuals or entities who previously settled their claims prior to removal and 2 who are duplicates. (Foley, ¶¶41). Thus, after reducing for the settled and duplicative entries, the total number of potential putative class members in the Revised Brandt Subset is 84 ("Revised Brandt Subtotal"). (Foley, ¶¶43; Arndt Decl. ¶4.) Of the 84 Revised Brandt Subtotal, Plaintiffs have obtained putative class member declarations, certified Assessors' Property Records **and/or** a declaration from Court-appointed Receiver David Gill in *SEC v. DLG*, evidencing California citizenship for 69 individuals or entities, or 82.1% of the Revised Brandt Subset. (Foley, ¶44, Exh. II.)

## I. Even Considering the "Potential" of 247 Potential Class Members, More than 2/3s Are Citizens of California.

Even if the size of the potential class members is not Defendants' alleged 109 Brandt investors, but rather the list in Plaintiffs' July 29, 2013 discovery responses, i.e. the Preliminary Schedule, Plaintiffs meet the 2/3s requirement. As described in the Foley Declaration 7/29/13 the Preliminary Schedule, Plaintiffs have now identified 23 persons who previously settled their claims prior to removal and 4 others who are duplicates. (Foley, ¶¶41-42.)[5] Reducing the total for the settled and duplicative entries, the total number of potential class members is 220; see "Revised Schedule." (Foley, ¶43, Ex. HH.)

Of the 220 individuals identified on the Revised Schedule, Plaintiffs have obtained putative class member declarations, certified Assessors' Property Records

---

[4] Some investors had multiple investments in DLG, with some investments by their IRA accounts, others by their trusts, and some as individuals.

[5] The Revised Brandt Subset is a subset of the Revised Schedule.

**and/or** a declaration from Court-appointed Receiver David Gill, evidencing California citizenship for 161 individuals or entities, or 73.2 % of the individuals identified on the Revised Schedule. (Foley, ¶45, Exh. HH.)

As the Receiver for DLG, Mr. Gill's duties included maintaining an updated and accurate Schedule of Creditors. (Gill, ¶5.) The Receiver has obtained and maintained the addresses as part of the DLG claims process administered by this Court in the *SEC v. DLG* litigation, which includes a claim form submitted by creditors under penalty of perjury. (Foley Decl., ¶8.)

### J.     Russon And Russon Financial Are Primary Defendants From Whom Significant Relief Is Sought And Are California Citizens.

For diversity of citizenship, a corporation is deemed to be a citizen of every state in which it has been incorporated and where it has its principal place of business. 28 U.S.C. § 1332(c)(1). Here, there is undisputed evidence that Russon Financial's principal place of business is California.

With regard to the Russon Defendants, attached as **Exhibits "K" and "L,"** respectively, to the Declaration of Richard E. Donahoo, are the verified answers to Form Interrogatories of Defendants Russon and Russon Financial, which establish California citizenship of these Defendants. In addition, Russon's contract with NELICO lists Russon's primary place of business as Woodland Hills, California, and his deposition testimony confirms it. See, Donahoo Decl ¶26, Exhs. L, N.

Moreover, Russon and Russon Financial are primary Defendants. Under *Coleman, supra*, only the allegations in the complaint are to be considered. However, looking to the same examples as the *Coleman* court, and applying the same reasoning, the same result inures here, but with even more force: Russon and the Russon Financial are primary Defendants from whom significant relief is sought. In conducting its analysis, the *Coleman* Court looked to the legislative history, which provided examples of the local controversy exception, and when it should and should

---

not apply:

> A class action is brought in Florida state court against a Florida funeral home regarding alleged wrongdoing in burial practices. Nearly all the plaintiffs live in Florida (about 90 percent). The suit is brought against the cemetery, a Florida corporation, and an **out-of-state parent company that was involved in supervising the cemetery**. No other class action suits have been filed against the cemetery. **This is precisely the type of case for which the Local Controversy Exception was developed.** Although there is one out-of-state defendant (the parent company), the controversy is at its core a local one, and the Florida state court where it was brought has a strong interest in resolving the dispute. Thus, this case would remain in state court. *Coleman* at 1018-9, quoting S. Rep. No. 109-14, at 41.

Here, the allegations against Russon and Russon Financial vis-a-vis the MetLife Defendants are nearly directly on all fours with the example above. Plaintiffs' allege Russon aided and abetted by permitting his agency and agents and representatives to be used to market DLG's investment notes. Mr. Russon introduced the DLG principal Bruce Friedman to his agents and representatives (TACC, ¶42). The agents and representatives proceeded to sell or recommend those investment opportunities without conducting any due diligence of DLG to determine if the statements concerning DLG were true or not.

But, in addition to this case being directly on par with the latter example in *Coleman*, the present case, as pleaded, makes an even stronger case than the complaint in *Coleman.* Plaintiffs make the same agency allegations as in *Coleman*, and Plaintiffs allege the exact same five causes of action against Russon and Russon Financial as with MetLife.  As in *Coleman,* there is nothing within the TACC to suggest that Russon and Russon Financial are nominal Defendants or that significant money is not sought from them or to specifically delineate Russon and Russon Financial from MetLife.  Moreover, there is nothing to indicate that if MetLife were removed from the complaint that any of the Causes of Action against Russon and Russon Financial would be diminished

**K.    Principal injuries were incurred in California.**

The Ninth Circuit has not yet ruled on what constitutes a "principal injury" "resulting from the alleged conduct" for purposes of the local controversy exception. The only Circuit Court to address this issue was the Third Circuit in *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 158 (3d Cir. N.J. 2009) a case that the Ninth Circuit cited with approval in *Coleman* for its analysis of the local controversy exception's requirements. *Kaufman* explains that looking to whether or not Defendants also committed wrongful conduct outside the state *when the complaint does not reference such conduct*, is contrary to the plain language of the statute, that by use of the disjunctive, allows plaintiffs to prevail merely by showing that the injury resulting from "the alleged conduct" was incurred in the local state. Moreover, the statute cannot be construed to require that all plaintiffs be citizens of the home state for the injury to have been incurred there, or else it would render the 2/3s citizenship requirement meaningless. *See  Li v. Eddy*, 324 F.3d 1109, 1110 (9th Cir. 2003) ("The parties' contention thus runs squarely against the canon of construction that courts interpret statutes so as not to render any section meaningless.") The allegations from the TACC referenced herein above strongly allege that the wrongful conduct, and, therefore, harm, occurred in California. (TACC, ¶¶39-45.)

Not only were Russon, Brandt, Bagby and Davidson all licensed by California to sell insurance, but Russon and Russon Financial, were the Corporate Managing Partner of NELICO and the Registered Principal of NES. (TACC, ¶¶15, 16, 36, 37, 38.) The Russon office was NES's Office of Supervisory Jurisdiction ("OSJ") for Southern California and Russon oversaw not only his office but satellite offices in Irvine, Pasadena and Monrovia. (Russon Depo, Donahoo Decl, Exh.M.) And, when it comes to the MetLife Defendants, the allegations pertaining to them come in two forms: (1) liability imputed to them under respondeat superior for the conduct of the California insurance agents, including Russon, and (2) direct liability for failure to

supervise these same California insurance agents. Moreover, the genesis of the wrongful conduct, as alleged in the TACC, was the December 2004 meeting held in California, in which Russon introduced DLG principal Friedman and DLG's investment products to the California insurance agents "in the same way and the same manner" that he had with other MetLife-endorsed products. (TACC, ¶42.) It was at this meeting that Friedman distributed the information to the California insurance agents that contained both false statements and material omissions that are at issue in this case. (TACC, ¶¶42-43.) Moreover, the actual paperwork provided to the class members shows that this was a California investment because the company they invested in, DLG, was allegedly licensed and regulated by the State of California:

> Regulation….'The Company' conducts is real estate mortgage business under a license issued by the State of California. As of May 1, 2004, 'The Company' is regulated by the Mortgage Lending Division of the State of California, Department of Real Estate. Under applicable California law, the division has broad discretionary authority over 'The Company's' activities, including the authority to conduct periodic regulatory audits of all aspects of 'The Company's' operations. TACC, exh. D, page 22 of 72.

And, when it comes to the actual DLG investment contract itself, it states that the "Issue State: California" (exh. D to TACC, p. 51 of 72), indicating that the contract was entered into, and, therefore, the false representations contained therein were made to Plaintiffs, in the State of California. That same investment contract also has an explicit choice of law provision that ties it to the issuing state, California. (See exh. D to TACC, p. 55 of 72 under "Conformity with State Laws.")

Looked at another way, when it comes to the actual five causes of action pleaded against all Defendants, only California state law claims are alleged, including three (3) of the five (5) which are California-only claims, and not claims of general applicability: COA 3—violation of Cal. Corp. Code §§2504 and 25504.1,

COA 4—violation of California's Unfair Competition law, Cal. B&P § 17200 et seq and COA 5—California's Financial Elder Abuse law, Cal. Welfare and Institutions Code § 15600 et seq.

      Looked at yet another way, and as alleged in the TACC, plaintiffs are injured in California because as a result of the recommendations of the California insurance agents, they invested in a California company that did not utilize nor safeguard their money as promised on the welcome guide, consequently, they suffered injury the moment that their money arrived in the California company's hands and DLG did not safeguard it as promised, or utilize it as promised. Critically, the TACC alleges that "Russon, Brandt, Bagby and Davidson were all acting within the course and scope of their respective agencies with Defendants MetLife, NELICO, NES and NEF at the time they recommended the clients purchase DLG products as a form or premium financing." TACC. ¶ 52. This is critical because the course and scope of their agency was as a licensed California insurance agent in Southern California. There is no indication in the TACC that they ever stepped out of that role.

      Finally, as set forth above, the evidence shows that over 2/3s of the potential class members are California citizens. This evidentiary showing is stronger than a class definition that is artificially drafted to restrict national conduct to just the harm of California citizens who suffered it. As such, it provides a strong indication that the principal injuries occurred in California. That the injury occurred in California is further bolstered by the fact that there have not been any other class action lawsuits filed inside or outside of California against the MetLife Defendants since DLG collapsed over three years ago. (Foley, ¶¶21-23.) See Defendants' Notice of Related Cases, identifying all cases in which they are parties and the issues concerned DLG.

      Moreover, at least one Court has found that when most of Defendants' wrongful conduct occurs in one state, but some occurs out of that state, Plaintiffs may still meet their burden on this element. *See e.g., Lyddy v. World of Jeans & Tops*, 2012 U.S. Dist. LEXIS 30806, at \*10-11 (S.D. Cal. Mar. 7, 2012)**,** (where court found element met in claim against California company that sold unlawful gift

cards in California, even where Defendant presented extrinsic evidence that 15% of the class purchased their gift cards out of state: "Further, all of the alleged wrongful conduct occurred in the State of California, thereby satisfying the local controversy exception."

**L.     No other class actions filed in 3-years preceding this action.**

Within the preceding three years, no other similar class actions against MetLife, Russon, Russon Financial or James Davidson have been filed. (Foley Decl. ¶21.)

**M.     Alternatively, Court Should Exercise Discretionary Remand.**

Alternatively, if the Court finds that the mandatory exception does not apply, the Court **may** nevertheless remand an action under the discretionary "interests of justice" exception, 28 U.S.C. §1332(d)(3), if: greater than one-third of the class, as well as the primary defendants, are citizens of the same state, and when remand would serve the interests of justice after considering the totality of the circumstances.[6] Here, even if the Court should find that the conditions for mandatory remand under the local controversy exception have not been established here, discretionary remand under subsection (d)(3) is warranted. In the present case, well over one-third of Plaintiffs' class is comprised of California citizens. And, considerations outlined in subsection (d)(3) overwhelmingly favor discretionary remand.

California possesses a substantial interest in resolving this case. The state Superior Court has successfully managed this case, and 20 related cases, for three years, including entering a Case Management Order and coordinating discovery. (Donahoo Decl., ¶¶ 4, 14-14.)  The state Court of Appeals has issued a significant legal ruling in this case which has been followed by the LASC. (Donahoo, ¶19.).  The LASC is managing the cases, including contemplating joint

---

[6] Under the Ninth Circuit's decision in *Coleman*, even if this Court finds against Plaintiffs on all of the foregoing bases, it may still exercise its discretion to allow amendment of the pleading to address CAFA's exceptions.

motions for summary adjudication and/or joint trials. (Donahoo, ¶29; Foley Decl. ¶48).   Metlife Defendants have agreed to joint trials of the issue of duty owed by the MetLife Defendants on all direct claims and all cross-complaints in LASC (Donahoo Decl., ¶29; Foley Decl. ¶49.) Thus, Metlife anticipates adjudicating facts and claims in LASC for the other six DLG-related cases where it is named, but seeks a separate forum for the instant action.  The strategy creates the risk of inconsistent and contradictory legal rulings.

## IV.    DEFENDANTS' REMOVAL OF THE GUPTA INDIVIDUAL CASE IS IMPROPER.

There is also a removed individual <u>non-class</u> case, with state claims only; *Sam Gupta, et al. v. Larry Bagby, et al.* (LASC Case No. BC456651, filed 3/4/11) ("*Gupta*"), which was consolidated by the LASC with this class action, *Cantor, et al. v. MetLife, Inc., et al.* CAFA does not apply to individual actions, and, therefore, this case is improperly removed and should be remanded.

## V.    THIS COURT SHOULD AWARD PLAINTIFFS' COSTS AND FEES.

Under 28 U.S.C. § 1447(c), the Court is authorized to award Plaintiffs' the payment of reasonable costs and any actual expenses, including attorneys' fees, that were incurred as a result of Defendants' removal. *See Critney v. National City Ford, Inc.*, 255 F. Supp. 2d 1146, 1149 (S.D. Cal. 2003) (award of reasonable fees and costs incurred as a result of improvident removal is appropriate). The purpose of an award of fees and costs is not to punish the removing party, but instead to reimburse the other party for costs incurred as a result of the unnecessary removal and to discourage improper removal. *Dead Kennedys v. Biafra,* 46 F. Supp. 2d 1028, 1030 (N.D. Cal. 1999); *see also Balcorta v. Twentieth Century Fox Film Corp.*, 208 F.3d 1102, 1106 n.6 (9th Cir. 2000) (holding that an award of costs and fees is appropriate when removal was "wrong as a matter of law," even if defendant's removal was

"fairly supportable"). A prevailing plaintiff need not show that removal was done in bad faith. *Id.*

## VI. CONCLUSION.

For the foregoing reasons, Plaintiffs respectfully request that the Court remand this action to Superior Court, and award Plaintiffs reasonable attorneys' fees and costs incurred as a direct result of Defendants' removal.

Dated: October 28, 2013 **FOLEY BEZEK BEHLE & CURTIS LLP**

By __/s/ Thomas G. Foley, Jr._____
Thomas G. Foley, Jr.
Attorneys for Plaintiffs

| INDEX OF EXHIBITS | | |
|---|---|---|
| **Exhibit No.:** | **Document Description** | **Identifying Declaration:** |
| **A** | A true and correct copy of the LASC docket in *Cantor, et al. v. MetLife, Inc., et al.* | Richard E. Donahoo |
| **B** | A true and correct copy of the LASC docket in *Lucenta*. | Richard E. Donahoo |
| **C** | A true and correct copy of the LASC docket in *Auceluzzo*. | Richard E. Donahoo |
| **D** | A true and correct copy of the LASC docket in *Quijano*. | Richard E. Donahoo |
| **E** | A true and correct copy of the LASC docket in *Hoffarth*. | Richard E. Donahoo |
| **F** | A true and correct copy of the LASC docket in *Poepping*. | Richard E. Donahoo |
| **G** | A true and correct copy of the LASC docket in *Gupta*. | Richard E. Donahoo |
| **H** | A true and copy of the Reporter's Transcript Proceedings dated January 31, 2012. | Richard E. Donahoo |
| **I** | A true and correct copy of the Notice of Entry of Case Management Order entered in the DLG-related cases. | Richard E. Donahoo |
| **J** | Reporter's Transcript of Proceedings dated July 11, 2013. | Richard E. Donahoo |

| | INDEX OF EXHIBITS | |
|---|---|---|
| **Exhibit No.:** | **Document Description** | **Identifying Declaration:** |
| **K** | A true and correct copy of Tony Russon's Verified Responses to Plaintiffs' Form Interrogatories. | Richard E. Donahoo |
| **L** | A true and correct copy of Russon Financial Services, Inc.'s Verified Responses to Plaintiffs' Form Interrogatories. | Richard E. Donahoo |
| **M** | True and correct copies of portions of the transcripts of Volumes 1 and 2 of the deposition of Tony Russon. | Richard E. Donahoo |
| **N** | A true and correct copy of Mr. Russon's Corporate Managing Partner Contract with New England Life Insurance Company ("NELICO"). | Richard E. Donahoo |
| **O** | A true and correct copy of the Notice of Rulings and Orders at Status Conference from the October 25, 2011 status conference. | Richard E. Donahoo |
| **P** | Real property records certified by the Assessor of the County of Los Angeles. | Aaron Arndt |
| **Q** | Real property records certified by the Assessor of the County of Ventura. | Aaron Arndt |
| **R** | Real property records certified by the Assessor of the County of Orange. | Aaron Arndt |
| **S** | Real property records certified by the Assessor of the County of Kern. | Aaron Arndt |
| **T** | Real property records certified by the Assessor of the County of El Dorado. | Aaron Arndt |

| INDEX OF EXHIBITS | | |
|---|---|---|
| **Exhibit No.:** | **Document Description** | **Identifying Declaration:** |
| **U** | Real property records certified by the Assessor of the County of Placer. | Aaron Arndt |
| **V** | Real property records certified by the Assessor of the County of Santa Cruz. | Aaron Arndt |
| **W** | Real property records certified by the Assessor of the County of Riverside. | Aaron Arndt |
| **X** | A true and correct copy of Thomas G. Foley, Jr.'s October 10, 2013 letter to Ms. Haas requesting an Early Meeting of Counsel pursuant to FRCP 26(f) and Local Rule 26-1. | Thomas G. Foley, Jr. |
| **Y** | Ms. Haas email dated October 14, 2013 in response to Thomas G. Foley, Jr.'s October 10, 2013 letter. | Thomas G. Foley, Jr. |
| **Z** | October 16, 2013 emails from Ms. Haas and Mr. Peters. | Thomas G. Foley, Jr. |
| **AA** | October 18, 2013 Thomas G. Foley, Jr. email. | Thomas G. Foley, Jr. |
| **BB** | A true and correct copy of David Gill's Declaration in support of the Ex Parte application with a copy of the proposed claim form attached. | Thomas G. Foley, Jr. |
| **CC** | A copy of an Order signed by Judge Manuel L. Real approving the claim form submitted by the Receiver in *SEC v. DLG*. | Thomas G. Foley, Jr. |

| INDEX OF EXHIBITS | | |
|---|---|---|
| **Exhibit No.:** | **Document Description** | **Identifying Declaration:** |
| **DD** | October 18, 2013 subpoena on the Receiver, David Gill. | Thomas G. Foley, Jr. |
| **EE** | October 21, 2013, Ms. Haas email. | Thomas G. Foley, Jr. |
| **FF** | True and correct copies of Ms. Haas' October 23, 2013 letter and Mr. Donahoo's email response. | Thomas G. Foley, Jr. |
| **GG** | A copy of the Plaintiffs' Preliminary Schedule attached as Exhibits "L" and "M" to MetLife Defendants NOR. | Thomas G. Foley, Jr. |
| **HH** | A true and correct copy of the Revised Schedule. | Thomas G. Foley, Jr. |
| **II** | Revised Brandt Schedule of Potential Class Members ("Revised Brandt Subset"). | Thomas G. Foley, Jr. |
| **MAA-A** | Cover Pages of Scott T. Brandt's Deposition, the appearance page of that Deposition, pages 32-37, 44-45, 53-54, 57, 135-136, 142-145 and 236-237 of that Deposition. | Mark Anchor Albert |
| **DG-A** | A true and correct copy of a pleading entitled "Receiver's Second Report; Declarations of David A. Gill and David W. Callaghan" | David A. Gill |
| **DG-B** | A true and correct copy of the "Schedule of Creditors" filed in Case No. 2:09-cv-01533-R (JTLx). | David A. Gill |

1

2

3

| INDEX OF EXHIBITS | | |
|---|---|---|
| **Exhibit No.:** | **Document Description** | **Identifying Declaration:** |
| **DG-C** | A copy of a current updated list of investor creditors prepared from information made available to, or obtained by, the DLG receivership estate. | David A. Gill |

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28